# EXHIBIT B

## ANTWERP DIAMOND BANK NV

## ANTWERPSE DIAMANTBANK NV

Head Office
Pelikaanstraat 54
B-2018 Antwerpen - Belgium

Representative Office New York
125 West 55th Street - 11th Floor
USA - New York, NY 10019

*November 2001*

# General credit granting conditions

## General conditions

### Article 1

In these General Credit Granting Conditions, the parties refer to the Antwerpse Diamantbank NV, which grants the loan, as the "Bank" and each physical or legal person in whose favor it is granted is referred to as the "borrower."

### Article 2

Unless otherwise provided in writing, the loan facilities granted by the Bank, including all transactions entailing an obligation vis-a-vis the Bank, are governed by the General Conditions for Banking Operations and the provisions laid down hereinafter.

### Article 3

The variety of the forms in which the loan is taken up and the special conditions particular to each form of loan shall not prejudice the unity of the loan as a single obligation which is secured by any and all collateral, including, without limitation, any guarantee and third-party collateral and/or security.

### Article 4

The Bank is entitled at any time and without prior warning to the borrower to convert the loan in whole or in part into euros and/or all minor units thereof and/or any other currencies at the rate applicable on the conversion date. If within 30 days of written notice from the Bank to the borrower of such conversion, borrower has not repaid the loan in full in the original currency in which the loan was denominated, together with all accrued interest and charges due thereon in such original currency, the borrower shall be deemed to have accepted such conversion with respect to any loan then outstanding and may thereafter only repay its debt in euros or all minor units thereof or other converted currency, as applicable, plus the interest and charges due thereon that are applicable for similarly denominated loans and/or credits. In addition, if any loan is converted, is not repaid in full within such 30-day period and is withdrawn or revoked pursuant to Section 10 or 12 or otherwise, the borrower may only repay the remaining debt outstanding and accrued and unpaid interest and other charges (the "outstanding balance") in euros and all minor units thereof or in the other converted currency, as applicable, plus, from the date of withdrawal or revocation until the outstanding balance is paid in full, interest and charges on the outstanding balance as are applicable for current account cash advances.

### Article 5

There may be added to the loans(s) and credit(s) granted, and incorporated in the debt to be repaid, any direct or indirect obligations on the part of the borrower vis-a-vis the Bank, in particular those concerning:

a) bills of exchange drawn by third parties on the borrower, together with bills of exchange, payment of which for any reason whatsoever can be claimed against the borrower;

b) bonds of guarantee granted by the borrower in favor of the Bank as surety for obligations of third parties;

c) insurance premiums paid by the Bank in connection with the guarantees granted;

d) all outlays incurred by the Bank on behalf of the borrower, including, without limitation: taxes, levies, registration dues, stamp duty, costs and fees in connection with proceedings brought relating to the loan, the fees of notaries public, experts' costs, attorneys' fees, etc. These provisions shall also apply to obligations that have been incurred by the borrower vis-a-vis the Bank before the loan facility was opened.

### Article 6

The fact that one or more excess drawings of credit may be tolerated by the Bank does not have the effect that it agrees to increase the credit limit laid down in the loan facility.
On the contrary, in the event the limit is exceeded, the Bank shall at all times be entitled to demand an immediate and sufficient payment of funds in order to reduce the loan obligations back down to the amount stipulated.

### Article 7

Unless otherwise provided, debit interest shall be calculated quarterly. Interest and charges shall be calculated in accordance with the conditions laid down upon opening the loan facility. The Bank may at any time adjust the interest and commissions and other conditions of the loan during the term of the loan consistent with its lending practices. The sums owed by the borrower upon taking out the loan shall continue to bear interest and commission under the terms then in effect as determined by the Bank.

### Article 8

Unless agreed to the contrary, the loan is granted for an unlimited period of time. However, the Bank shall have the right at any time to suspend the loan or terminate it in the manner laid down in Article 10 or Article 12. The time limit on using the loan in one or more forms or use thereof as a term loan shall not prejudice the fact that the loan as a whole is granted for an unlimited period. In any case, novation of debt is expressly excluded, so that sureties shall continue to be liable notwithstanding any suspension or termination of the loan, so that all securities, personal guaranties and joint and several obligations, continue to be in effect notwithstanding any suspension or termination of the loan, or revocation or withdrawal of the credit granted.

*Article 9*

a) In the event of the death of any borrower, the loan agreement may be pursued by its successors in title, without any express acceptance being required by any of the parties, unless the loan is terminated in accordance with Article 10 or 12.

b) Where a corporate borrower is taken over by another company or the two of them merge into a new company, the loan may likewise be pursued with the company effecting the take-over or the new company emerging from the merger, unless the loan is terminated in accordance with Articles 10 or 12. In either of these cases, it is expressly stated and accepted by the borrower that all existing securities, personal guarantees and, joint and several obligations and all the existing preferences and securities shall expressly remain in place.

The Bank may at any time, in whole or in part, assign the loan or credit facility agreement to third parties, under express retention of, and subject to, the existing preferences and securities of the Bank. The borrower will be advised of the assignment by certified mail, by hand delivery, or by a recognized overnight delivery service.

With the consent of the Bank, the loan or credit facility agreement may, subject to the same reservation, be assigned by the borrower to third parties, or same may be assumed as co-debtors.

*Article 10*

Where the notice period for termination is not laid down, the Bank is entitled to put an end to the loan on a notice period of one month, served by letter sent by registered mail. After the expiry of any applicable notice period, the borrower's accounts shall be closed. Immediately upon notice of the termination of the loan being served, unless the Bank consents thereto, the borrower may not carry out any further transactions thereunder, the due date of which falls after the termination date. Any debt-claim by the Bank flowing from the termination of the loan, plus accrued interest, costs and charges (including, without limitation, attorneys' fees), shall be due and payable ipso iure upon the expiry of the aforementioned period.

*Article 11*

The due debt-claim referred to in the foregoing Article shall encompass the account balance. This shall be duly determined by production of a statement of account. This account may still be debited upon closure with the amount of the surety and guarantees provided by the Bank at the request of the borrower. Likewise, the account may be deducted with the amount of any guaranty given by the borrower in favor of the Bank, on behalf of and covering a third party's obligations towards the Bank, wherever the third party does not meet its obligations when called upon.

*Article 12*

Regardless of whether or not the term of the loan is limited, the Bank may without prior notice and by simple notification immediately terminate or suspend the loan in whole or in part:

1. Where the borrower has submitted inaccurate or incomplete information, have allowed their signatures to be protested or have failed to honor returned unpaid letters of exchange the day after they have been presented or in the event that cheques have been issued not covered by funds or other criminal conduct is ascertained to have been committed;

2. Where events occur in general that undermine the trust enjoyed by the borrower or that reduce the value of guarantees attaching or collateral applicable to the loan;

3. In the event of a breach by the borrower or a third party guarantor of any statutory or contractual obligation flowing from the loan agreement or obligation;

4. In the event of non-payment by the borrower of its debts as they become due or the entry of one or more judgments against the borrower, even when not final, in an aggregate amount representing 10% of the loan(s) and/or credit(s) granted; provided, however, that another percentage may be agreed upon in the specific loan and/or credit granting agreement.

5. In the event of the winding-up or voluntary liquidation of a borrower or in the event that it is taken over by another company or the two merge and form a new company, in the event that its objects are altered or in the event that a resolution is passed to reduce its capital, in the event borrower becomes unmanageable as a consequence of a lack of unanimity amongst the members or directors;

6. In the event of the death of the borrower or any guarantor or surety;

7. Where a judgment exists against the borrower or it has called its creditors to a meeting in order to arrange an extra-judicial settlement;

8. Where amounts due to another financial institution might be accelerated;

9. Where after depreciation and constitution of reserves and after deduction of any losses, the equity (share capital, reserves and profits or losses brought forward) as revealed by the balance sheet is substantially reduced, i.e., by more than 15% of the total balance sheet amount (total assets minus total liabilities) from the prior year, or in the event of a serious fall in the goodwill or if equity or goodwill becomes negative; provided, however, that another percentage may be agreed upon in the specific loan and/or credit granting agreement;

10. In any cases where the law and the general principles of law so empower it, and if the borrower fails strictly to observe the provisions of these General Credit Granting Conditions for opening a loan facility and/or the conditions laid down in any other deeds or correspondence; or

11. Any change in the condition or affairs (financial or otherwise) of borrower which, in the opinion of the Bank, may have a material adverse effect on (a) the condition, operations, assets, business or prospects of the borrower, (b) the ability of the borrower to repay the amounts due to the Bank or (c) the value of any collateral, the lien of the Bank upon such collateral, or the perfection or priority of the liens of the Bank upon such collateral.

If one or more of the events referred to above should occur and the Bank does not immediately proceed with terminating or suspending the loan, same may never be invoked by the borrower as a waiver by the Bank of its right to terminate or suspend the loan in future. The insolvency of a borrower shall ipso iure bring the loan to an end vis-a-vis the insolvent borrower. In such event, the Bank may also immediately terminate or suspend the loan vis-a-vis any other borrower.

Upon termination, the Bank may immediately close the account and demand payment of the balance of the account, determined in accordance with Article 11, without supplementary notice of default. The fact that the loan or a use thereof is linked to a certain due date shall not prejudice the foregoing.

### Article 13

The borrower shall be bound to make available all information regarded by the Bank as necessary for assessing their operating result and/or net asset status upon request.

At the same time, the borrower is obliged to advise the representatives of the Bank of any accounting documentation asked for and to lend cooperation in any due diligence regarding the elements making up the business. The costs resulting therefrom shall be borne by the borrower.

### Article 14

The Bank reserves the right to mobilize, sell or obtain financing based on the loan in whole or in part and may require the borrower to sign promissory notes or other negotiable instruments that satisfy the conditions for acceptability by rediscounting institutions. The costs arising from these obligations (including, without limitation, attorneys' fees) shall be borne by the borrower.

### Article 15

The borrower is obliged at the Bank's request to provide security, in the form and to the extent requested by it or to supplement existing security, that cover the Bank's exposure. In the event the borrower does not heed this request, the Bank is entitled in accordance with the provisions of Article 12, to close the account immediately and to require payment of the debit balance on demand and without any notice of default.

### Article 16

If it should in any manner appear that, in the assessment of the Bank, the market value of the goods or rights given as collateral has dropped in relation to the loan, or where as a consequence of a weakening in the exchange rate in respect of the currency in which any collateral is denominated, the value of the collateral has dropped in relation to the loan then outstanding (converted into the same currency), the borrower undertakes, failing a request by the Bank to provide such additional cover as the Bank shall see fit, to restore the use of the loan facility to a level regarded by the Bank as acceptable.

### Article 17

The opening of a loan facility involving more than one borrower shall entail the joint and several liability of the borrower and their respective successors and assigns.

### Article 18

The Bank is empowered to pass all information concerning the situation and obligations of the borrower to the Bank or to the guarantor or third-party pledgor guaranteeing the borrower's obligations or to the subsidiaries and all companies affiliated with the Bank.

### Article 19

The Bank may allow any changes to the conditions, provisions and procedures of the loan granted, including as regards the amount, without having to inform such persons as may have guaranteed the loan or granted a security interest in real or personal property in respect of the loan. It may also dispense with all or part of any real or personal property collateral or any guarantee without having to inform the other sureties or the borrower thereof. Real or personal property collateral or any guarantee of the borrower's obligations shall continue in full effect even if the borrower to which the loan funds are credited changes its structure in any manner, such as by taking on another legal form or where it changes its corporate objects, and the Bank is not obliged to inform the sureties thereof. Any of the foregoing changes shall not give rise to any novation or any release vis-a-vis any the sureties or limit the effectiveness of any surety's obligations [1].

### Article 20

The guarantor and/or a third party granting a pledge or mortgage may not lodge any personal or subrogated claim vis-a-vis the borrower for so long as the debt due to the Bank as guaranteed by the surety has not been fully repaid [2].

### Article 21

All the guarantees and security interests granted are cumulative and guarantee and secure the direct and indirect obligations flowing from the loan as a whole.

### Article 22

So long as the borrower has not been released from all his obligations vis-a-vis the Bank, he may not, without the written consent of the Bank, encumber his moveable or immovable property with any security interest whatsoever; furthermore, this property may not be alienated for consideration or free of charge or hired out at a rental less than the normal real estate rental market price. Moreover, the borrower may not have his obligations vis-a-vis third parties guaranteed by personal security, nor may he grant such a security himself in favor of third parties, without the written consent of the Bank. Nor may individuals and legal entities guaranteeing the due performance of the borrower's obligations vis-a-vis the Bank grant a similar security in favor of third parties without the prior written consent of the Bank.

Promptly at the Bank's request, the borrower unconditionally will execute such documents and deliver such items to the Bank as is necessary to provide the Bank with a lien and/or security interest upon all of the assets of borrower in order to more fully secure the obligations due, or which may become due, to Bank by the borrower. The costs in relation to the effectuation thereof shall be borne by the borrower.

### Article 23

All costs, dues and fees flowing from the drawing up of any loan agreement, on the one hand, and the performance thereof, including the costs of recovery and attorneys' fees, on the other hand, shall be borne by the borrower and shall be booked to the debit of his account.

### Article 24

These General Credit Granting Conditions and any loan extended pursuant to the terms hereof shall be governed by and construed in accordance with the law of the State of New York of the United States of America. The foregoing choice of New York law to govern

---

[1]: Any guarantor and third-party pledgor will need to execute these General Credit Granting Conditions or agree to the terms of these General Credit Granting Conditions in another document in order to make these waiver and the others set forth herein (including article 20) enforceable against them.

[2]: Any guarantor and third-party pledgor will need to execute these General Credit Granting Conditions or agree to the terms of these General Credit Granting Conditions in another document in order to make this waiver and the others set forth herein (including article 19) enforceable against them.

these General Credit Granting Conditions and any loan extended pursuant to the terms hereof shall prevail over any conflicting choice of law in any other document.

The Bank may bring any legal action or proceeding with respect to these General Credit Granting Conditions or any loan extended pursuant to the terms hereof in the courts of the State of New York in the Borough of Manhattan, City of New York, United States of America or in the courts of the United States of America for the Southern District of New York, and each of the borrower and any guarantor, surety or pledgor in respect of the obligations of the borrower hereby accepts for itself, and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts. In addition, the Bank shall have the right to raise proceedings against any party before any other court having jurisdiction under applicable law. Each of the borrower and any guarantor, surety or pledgor in respect of the borrower's obligations hereby irrevocably waives, to the fullest extent permitted by applicable law, any objection, including, without limitation, any objection to the laying of venue or based on the grounds of forum non conveniens, which it may now or hereafter have to the bringing of any such action or proceeding in such respective jurisdictions. Each of the borrower and any guarantor, surety or pledgor in respect of the borrower's obligations hereby agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

Each of the borrower and any guarantor, surety or pledgor in respect of the borrower's obligations hereby irrevocably waives any right that it may have to trial by jury in any action, proceeding or counterclaim arising out of or relating to these General Credit Granting Conditions or any loan extended pursuant to the terms hereof.

Each of the borrower and any guarantor, surety or pledgor in respect of the borrower's obligations hereby appoints the person named in Schedule A attached hereto or in a related document as its agent for the service of legal process in New York in connection with these General Credit Granting Conditions or any loan extended pursuant to the terms hereof. Each of the borrower and any guarantor, surety or pledgor in respect of the borrower's obligations also consents to legal process being served in any suit, action or proceeding relating to these General Credit Granting Conditions or any loan extended pursuant to the terms thereof by the mailing of a copy thereof by registered or certified airmail, postage pre-paid, to such agent or to the borrower, guarantor, surety or pledgor at its address set forth in Schedule B or which the Bank may have on file from time to time. Nothing contained herein shall affect the right to serve process in any other manner permitted by law.

*Article 25*

Reserved.

Special Conditions

*Article 26*

The Bank expressly reserves the right, in its sole discretion, to refuse to accept for discounting or to discount at a rate that it sees fit any promissory notes, drafts, bills of exchange or other negotiable financial or security paper or instruments which are presented to the Bank for financing.

*Article 27*

Where negotiable instruments remain unpaid on the due date, the Bank is released from the obligation of protesting same, and it is not bound to give notice of non-acceptance or non-payment thereof or to observe the statutory deadlines in this regard. The borrower waives any objection it might raise against the non-fulfillment of these formalities. Nonetheless, if these formalities are satisfied in whole or in part, the costs resulting therefrom shall be borne by the borrower.

*Article 28*

The Bank reserves the right to debit the borrower's current account with the sum of any discounted securities unpaid on their due date and, in the event of an insolvency of the underlying obligor thereof, with the amount of any securities not yet due. Where the Bank makes use of this right, it may retain the securities in question for the exercise of the rights of the holder in due course in order to collect, to endorse for discount or for security said securities with the effect of constituting a pledge in its favor.

*Article 29*

On the maturity date of bills of exchange accepted by the Bank, the borrower is obliged to put the Bank in funds for the purpose of paying such accepted bills of exchange. The Bank hereby makes signature of accepted bills of exchange from the borrower expressly dependent on the borrower's obligation to relinquish all sums deriving from the gathering of the documents or sale of the goods, even prior to the maturity date of the accepted bills of exchange as cover for the Bank for payment of the bills of exchange granted, and the borrower hereby grants the Bank a security interest in the same to secure the Bank's payment of the bills of exchange.

*Article 30*

Taking up the loan in the form of fixed advances in euros or in any of the minor units thereof and/or other currencies shall not prejudice the Bank's right to put an end to the loan in accordance with Articles 10 and 12 of these General Credit Granting Conditions. As regards fixed advances in currencies other than euros or any minor unit thereof, the Bank shall always be entitled to refuse drawings where such currencies in question might not be available on the market for the Bank, for the deadlines and in the amounts requested by the borrower, or where drawings and/or lending abilities in such currencies might be limited or prohibited as a consequence of measures taken by monetary or other authorities. In the event that a loan taken up in currencies other than euros or any minor unit thereof is not repaid on the due date, the Bank may, without prejudice to the right provided for in Article 4 of these General Credit Granting Conditions, at any time and without prior warning, convert the outstanding balance into euros, or into any of the minor units thereof. Such conversion shall not entail any novation. It shall be effected at the exchange rate for the date of conversion. After this transaction, the borrower may only pay off its debt in euros or the minor units thereof. The interest laid down in Article 7 of these General Credit Granting Conditions shall accrue on the debit balance thus ascertained in euros or any of the minor units thereof.

*Article 31*

Sureties and other guarantees put up by the Bank are granted based upon the exclusive liability of the borrower. This liability of the borrower shall continue until such time as the Bank is expressly released from its obligations as a surety or guarantor and possession is restored to it of the document by dint of which it bound itself. The borrower is obliged to do all that is necessary at the appropriate time so that possession of the said document is restored to the Bank.

The Bank is entitled to fulfill its obligations arising from any such surety or guarantee upon the request of the beneficiary(ies) and without the prior notification to and accord of the borrower. The borrower expressly accepts that it is obliged, without delay, to repay to the Bank all sums that the Bank has paid after the surety or guarantee granted by it has been called upon, without the Bank having to prove that it has been forced to do so by judicial decision. The Bank may ex officio debit the account of the borrower to the extent of the sums paid by it. Costs linked to the surety and other guarantees granted by the Bank, including fees charged by the Bank's correspondents and attorneys' fees, shall be borne by the borrower.