UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LAZARE KAPLAN INTERNATIONAL INC.,

        Plaintiff,

    -against-

KBC BANK N.V. and ANTWERP DIAMOND BANK N.V.,

        Defendants.

Civil Action No.: 11-CV-9490 (ALC)

**REPLY DECLARATION OF BEATRIX VANLERBERGHE**

---

I, Beatrix Vanlerberghe, pursuant to 28 U.S.C. §1746, declare as follows:

    1.    At the request of counsel for KBC Bank N.V. ("KBC"), I have read the materials filed in this action on behalf of Lazare Kaplan International Inc. ("Lazare"), including the memorandum of law submitted in opposition to the motions of KBC and Antwerp Diamond Bank N.V. ("Antwerp Bank") to dismiss the Complaint ("Opposition"), as well as the declarations in support of that Opposition by Eric Laevens, William Moryto and Francine Wachsstock.

    2.    I submit this declaration in support of KBC and Antwerp Bank's reply memoranda to respond to and correct several assertions regarding Belgian law raised in the Opposition and the declaration of Eric Laevens ("Laevens Decl."). I address only those areas of Belgian law the Opposition or its supporting declarations contest or contradict.

**I.    Lazare's Claims of Bias and Lack of Supporting Authority Are Unfounded.**

    3.    Counsel for Lazare has challenged the validity of my declaration based on the fact that I am Of Counsel to the Linklaters firm, which has represented and provided legal advice to KBC, but has provided no substantive challenge to my expertise or knowledge. The Belgian and

EU legal authority upon which I rely here and in my initial declaration ("Vanlerberghe Decl.") clearly support the points of law I have described.

4. Additionally, my qualifications as an expert on the subjects as to which I have provided my opinion are clearly established. (*See* Vanlerberghe Decl. (Dkt. No. 32) Ex. A.)

5. Lazare has also asserted that I have not submitted to the Court all the Belgian legal authority supporting my conclusions. In order to eliminate any concern on this point, I am attaching to this declaration the statutory provisions upon which I rely in this declaration and my previous declaration,[1] and I offer to provide the Court with any additional legal authority – in the form of relevant statutory, case law or scholarly writings.

## II. Lazare Has Not Challenged Key Aspects of Belgian Law Set Forth in My Prior Declaration.

6. Neither Lazare's Opposition nor its supporting declarations raise any challenge to several key points of Belgian law described in my earlier declaration. Thus, the following discussion and conclusions of Belgian law that I provided relating to the claims in this action are unopposed:

   a. That, pursuant to provisions of the Belgian Code of International Private Law ("BCIPL") and the Regulation CE n° 44/2001 of December 2001 concerning Judicial Jurisdiction, Recognition and Enforcement of Judgments in Civil and Commercial Matters, a Belgian court would have jurisdiction over all the individuals and entities identified in the Complaint. (Vanlerberghe Decl.¶¶ 34-41.)

   b. A Belgian court can hear and adjudicate all claims asserted in Lazare's New York Complaint. (*Id.*)

   c. A Belgian court can compel any of the individuals or entities named in the Complaint (including Mr. Daleyot, his companies, Gulfdiam and others) to appear

---

[1] Authorities relied upon in my initial declaration are attached as Exhibits A-O. I have provided complete copies of cases and excerpts of the articles that I have cited in their original language, with English translations or summaries of the relevant language of those authorities. Complete copies and/or English translations of articles and opinions can be provided to the Court upon request.

before a Belgian court and direct those parties to give testimony and produce documents. (*Id.* ¶¶ 42-50.)

**III. Lazare's Challenges to My Declaration Are Mistaken.**

7. The assertions made by Mr. Laevens and Lazare regarding the accuracy of my declaration with respect to Belgian law are all incorrect and, in several instances, misleading.

**A. A U.S. Judgment in This Action Would Not Be Enforceable in Belgium.**

8. In his declaration, Mr. Laevens incorrectly contends that a U.S. judgment that Lazare might obtain in this action would be enforceable in Belgium. (Laevens Decl. ¶ 74.)

9. In making this statement, Mr. Laevens mistakenly refers to Article 27 of the BCIPL, which refers to *foreign authentic instruments*, and ignores the BCIPL's exceptions to the recognition and enforceability of *foreign judgments*, which are specifically set out in Article 25 of the BCIPL, and which I discussed in my previous declaration. (Vanlerberghe Decl. ¶¶ 32, 56-62; *see also* Ex. E, Art. 25, BCIPL.)

10. The BCIPL makes a clear distinction between foreign judgments, on the one hand, and foreign authentic instruments, on the other hand. Thus, Section 6 of the BCIPL, which encompasses Articles 22 to 31 BCIPL, is entitled "*Effect of foreign judgments and foreign authentic instruments*." (Ex. E, § 6.) Articles 22 to 26 BCIPL address the recognition and enforceability of foreign judgments, while Article 27 refers only to the recognition and enforceability of foreign authentic instruments. (Ex. E, Art. 22-27.)

11. In fact, the heading of Article 27 (the translation of which was omitted from Exhibit C to the Laevens Declaration), which Mr. Laevens relies on, is "*Recognition and executory force of foreign authentic instruments*." In contrast, the heading of Article 22 is "*Recognition and enforcement of foreign judgments*." (Ex. E, Arts. 22, 27.)

-3-

12.     Internal inconsistencies in the Laevens Declaration regarding the recognition of foreign judgments demonstrate that Mr. Laevens's statements regarding enforcement of foreign judgments are incorrect.  In contradiction to his statement that Article 27 governs the enforcement of foreign judgments, Mr. Laevens correctly states in paragraph 74 of his declaration that in order to enforce a foreign judgment, "*the procedure explained in Article 23 BCIPL*" must be followed.  Mr. Laevens fails to explain, however, that the procedures identified in Article 23 require review of a foreign judgment for the presence of one of the exceptions to recognition and enforceability that are provided for in *Article 25* of the BCIPL (*see* Ex. E, Art. 23), *not Article 27*.  (Vanlerberghe Decl. ¶¶ 56-62.)

13.     As I stated previously, the exceptions to recognition of foreign judgments set forth in Article 25 include the following:  (1) when a proceeding is pending in Belgium involving the same parties and subject matter, where the Belgian proceeding was initiated first; (2) where the Belgian courts had exclusive jurisdiction over the claims; and (3) where a foreign judgment conflicts with a Belgian judgment.  (*Id.* at ¶¶ 60-62; *see also* Ex. E, Art. 25, §§ 1, 7 .)  These exceptions would render any judgment in the U.S. action unenforceable in Belgium.  (Vanlerberghe Decl. ¶ 32; Ex. E, Art. 25, § 1, 7 .)  The Laevens Declaration does not discuss any of these exceptions, even though the first and second plainly apply to this case, and the third could apply.

14.     Moreover, although Mr. Laevens omits any reference to BCIPL Article 25 in his primary discussion of the enforceability of a New York judgment in Belgium (Laevens Decl. ¶¶ 74-75), he expressly references Article 25 in paragraph 53 of his declaration when discussing the doctrine of *forum non conveniens*.  In that section of his declaration, Mr. Laevens correctly states

that the provisions of Article 25 BCIPL *must be applied* for the enforcement of a foreign judgment.  (Laevens Decl. ¶ 53.)

15. As Article 22 of the BCIPL plainly states, "[a] [foreign] judgment may only be recognized or declared enforceable if it does not violate the conditions of article 25 [BCIPL]." (Ex. E, Art. 22.)

16. Accordingly, Mr. Laevens's contention that a U.S. judgment would be enforceable in Belgium is mistaken, and his omission of the provisions of Article 25 is misleading. Additionally, Article 27 BCIPL is completely irrelevant to the recognition and enforceability of foreign judgments.

17. For the reasons detailed in my earlier declaration and as provided in Article 25 of the BCIPL, any judgment in this action would not be enforceable in Belgium.

**B. The Choice-of-Law Clause in the Credit Conditions Is Narrow and Applies Only to Claims Arising From That Agreement, While the Choice-of-Law Clause in the Banking Conditions Is Broad and Applies to the Tort Claims Asserted in the Complaint.**

18. Antwerp Bank's claim for repayment of the outstanding debt from the credit facility against Lazare in the Belgian action is governed by New York law.  This follows from Article 24 of the Antwerp Bank Credit Conditions, which states:

> These General Credit Granting Conditions and any loan extended pursuant to the terms hereof shall be governed by and construed in accordance with the law of the State of New York of the United States of America.  The foregoing choice of New York law to govern these General Credit Granting Conditions and any loan extended pursuant to the terms hereof shall prevail over any conflicting choice of law in any other document.

Credit Conditions, Art. 24.

19. However, contrary to Mr. Laevens's statements regarding the law applicable to Lazare's claims (Laevens Decl. ¶ 23), the fact that Antwerp Bank's claim against Lazare for

repayment of the outstanding balance is governed by New York law does *not* mean that Lazare's claims against Antwerp Bank and KBC in the New York action are governed by New York law.

20. Lazare and Antwerp Bank have agreed that their obligations to each other, other than those resulting from the credit facility, are governed by Belgian law. This follows from the Antwerp Bank Banking Conditions, which state:

> Except as provided with respect to Collateral in the next following sentence and subject, in the case of loans or the granting of credit, to any other choice of law made in the General Credit Granting Conditions or other agreement relating to such loans or granting of credit, <u>the obligations</u> of the account holder, any correspondent, guarantor, surety, third party pledgor or other third party involved and the Bank are subject to and shall be governed by <u>Belgian law</u>… .

Banking Conditions, Art. 37 (emphasis added).

21. This choice-of-law clause is thus very broad and applies to all obligations between Lazare and Antwerp Bank, including to the claims Lazare asserts in the New York action.

22. In the New York action, Lazare asserts RICO and other tort claims against Antwerp Bank and KBC. Lazare's tort and statutory claims are completely different from Antwerp Bank's claim against Lazare in the Belgian action for recovery of the amounts loaned to Lazare, and are not governed by the narrow choice-of-law provision in the Credit Conditions.

23. Lazare's claims against Antwerp Bank and KBC are not based on the terms and conditions of the Antwerp Bank Credit Conditions. Article 2 of the Credit Conditions defines the scope of application of those terms and conditions as follows:

> Unless otherwise provided in writing, the <u>loan facilities</u> granted by the Bank, including all transactions entailing <u>an obligation vis-à-vis the Bank</u>, are governed by the General Conditions for Banking Operations and the provisions laid down hereinafter.

Credit Conditions, Art. 2 (emphasis added).

The scope of the application of the Antwerp Bank Credit Conditions is, therefore, restricted to credit facilities granted by Antwerp Bank to Lazare.

24. The facts and transactions asserted by Lazare in the Complaint have nothing to do with the terms and conditions of Lazare's credit facility with Antwerp Bank. Lazare's claims instead relate to the existence of an alleged criminal organization in which Antwerp Bank and KBC allegedly participated together with two Belgian companies, DD Manufacturing and KT Collection, and other "Enterprise" members. More specifically – according to Lazare – Antwerp Bank allegedly diverted certain diamond payments and proceeds from diamond sales, allocating those monies in favor of DD Manufacturing and KT Collection, some of which were ultimately diverted to KBC real estate interests in Eastern Europe. Lazare's assertions, therefore, are not encompassed within the scope of the Antwerp Bank Credit Conditions. Article 24 of the Antwerp Bank Credit Conditions is thus irrelevant to Lazare's claims.

    **C.    The Laevens Declaration (Including His Choice of Law Analysis) Is Based Entirely on the False Assumption That Lazare Did Not Have an Account at Antwerp Bank.**

25. I have reviewed the Reply Declaration of Veerle Snyers and the documents attached to it ("Snyers Reply Declaration"). The Snyers Reply Declaration demonstrates clearly that Lazare did have a bank account with Antwerp Bank, contrary to the position asserted by Lazare and Mr. Moryto, which Mr. Laevens incorrectly assumed to be true. (Laevens Decl. ¶¶ 11, 36). Once the inaccuracy of that assumption is revealed, there remains no basis for Mr. Laevens's contentions regarding the application of New York law to the New York action, or his claim that New York, rather than Belgium, is the required forum for Lazare's claims.

26. I also note that Lazare's position that it did not have a bank account at Antwerp Bank, and that the Antwerp Bank Banking Conditions are thus not applicable, contradicts Lazare's previous statements in the Belgian action. Indeed, in its trial brief of 19 March 2012 in

the Belgian action, Lazare confirmed several times that the Antwerp Bank Banking Conditions are applicable and that it had not only a credit relationship with Antwerp Bank, but a banking relationship as well. (*See* Lazare's 19 March 2012 Trial Brief (a true and correct copy of which is attached hereto as Exhibit P), pp. 4, 9, 11-12.)

        **D.    Mr. Laevens Is Incorrect in Asserting That Lazare's Claims Have "No Meaningful Connection to Belgium" for Purposes of the Jurisdiction of the Belgian Courts.**

27.    Contrary to Mr. Laevens's assertion (Laevens Decl. ¶ 24), Article 6 §2 and Article 11 of the BCIPL do *not* provide that a Belgian court may only assert jurisdiction over a foreign party if the plaintiff's claim is closely connected to Belgium. (*See* Ex. E, Arts. 6 §2, 11.)

28.    Article 6 BCIPL only applies to situations where the parties have agreed that Belgian courts will have jurisdiction over existing or foreign disputes following from a legal relationship. (Ex. E, Art. 6.) In those situations, Article 6 §2 BCIPL provides that the Belgian court *may* (as opposed to *must*) refuse jurisdiction when all of the circumstances show that the dispute has *no meaningful connection with Belgium*. (*Id*.) Article 6 does not provide, as Mr. Laevens asserts, that the plaintiff's claim must be "closely connected to Belgium." (*Id*.)

29.    Further, Article 11 BCIPL provides that the Belgian Courts have exceptional jurisdiction if the case is closely connected to Belgium and a procedure abroad would be impossible or if it would be unreasonable to require that the claim be brought abroad. (Ex. E, Art. 11.) Those circumstances are simply not present here, and this provision is thus irrelevant to assessing the Antwerp Court's jurisdiction.

30.    As noted above, the Laevens Declaration fails to address the provisions set forth in Article 23 of Regulation CE n° 44/2001 of December 2001 concerning Judicial Jurisdiction, Recognition and Enforcement of Judgments in Civil and Commercial Matters (the "Regulation") (specifically discussed in my prior declaration at ¶¶ 26-33, and attached hereto as Exhibit D). As

a matter of clear Belgian law, Article 23 of the Regulation prevails over provisions of national law such as the BCIPL. Accordingly, as I stated previously, a Belgian court would have jurisdiction over the claims asserted in the New York action even if it were true that they were not closely related to Belgium. (Vanlerberghe Decl. ¶¶ 26-33.) Moreover, any fair reading of the Complaint leaves no question that the claims asserted by Lazare in this action are repeatedly and squarely related to Belgium.

   **E.**   **Lazare's Claim That Discovery Would Be Impractical in Belgium Because Belgium Is Not a Signatory to the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters Is Wrong.**

  31.   As I have previously stated, pursuant to Article 877 of the Belgian Code for Civil Procedure (attached hereto as Exhibit A), the Belgian Court can compel a third party to produce documentary evidence. (*See* Vanlerberghe Decl. ¶¶ 45-55.)

  32.   Because all members of the alleged "Enterprise" are subject to jurisdiction in Belgium, it would be unnecessary in a Belgian proceeding to resort to Letters of Request or Letters Rogatory to obtain evidence from entities outside of Belgium.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 15, 2012, Brussels, Belgium.

*Beatrix Vanlerberghe*
Beatrix Vanlerberghe