# EXHIBIT G

**Excerpt from S. Stijns, "De overlegging van stukken in het Gerechtelijk Wetboek", Jur.Falc. 1984-85, 217.**

The following thesis is defended in the doctrine and has not yet been contradicted by case law: the obligation of discretion of the banker can sometimes form a legal justification in the sense of Article 929 of the Code of Civil Procedure. The banker may invoke his "duty of professional secrecy" and the judge is not allowed to *a priori* reject this, but must assess this carefully.

bovendien onontbeerlijk indien restitutie niet als vorm van objectieve aansprakelijkheid wordt aanvaard.

Harding (62) meent twee mogelijke methoden te zien: *ofwel* bekomt men volledige schadevergoeding van de Lidstaat en stelt deze een vordering krachtens artikel 215(2) E.E.G.-Verdrag in tegen de Gemeenschap, *ofwel* beveelt het Hof van Justitie volledige schadeloosstelling door de Gemeenschap en bepaalt tegelijk dat, zo tevens voor de nationale rechter wordt gevorderd en schadevergoeding wordt bekomen, het bedrag van deze schadevergoeding door de particulier aan de Gemeenschap moet worden terugbetaald.

Het Hof van Justitie heeft meer dan eens getuigd van moed en creativiteit. Hopelijk zal het dit in de toekomst blijven doen...

---

(62) HARDING, C., *a.c.*, *C.M.L.R.*, 1979, 404.

# De overlegging van stukken in het Gerechtelijk Wetboek

*Sophie Stijns*

*Sinds de hervorming van het Gerechtelijk Wetboek in 1967 wordt het bewijsrecht door 2 beginselen beheerst: de loyale medewerking van de partijen aan de bewijsvoering en de actieve tussenkomst hierbij van de rechter om partijen en derden tot samenwerking aan te zetten. De procedure van overlegging van stukken concretiseert deze nieuwe tendenzen.*

*In deze bijdrage wordt dan, naast een beschrijving van deze evolutie in het bewijsrecht, ook deze procedure zelf ontleed in haar voorwaarden, rechtspleging, grenzen en sancties.*

*Depuis la réforme du Code Judiciaire en 1967, deux principes dominent le droit de la preuve: la participation loyale des parties à l'administration de la preuve et l'intervention active du juge pour inciter les parties et les tiers à cette collaboration. La procédure de production de documents concrétise ces nouvelles tendances.*

*Cet article décrit non seulement cette évolution dans le droit de la preuve, mais analyse également les conditions, la procédure d'application, les limites et les sanctions de la procédure de production de documents.*

*Since the reform of the Judicial Code in 1967, two principles govern the law of evidence: Loyal participation of the parties to the argumentation and active intervention of the judge in order to put parties and thirds up to this cooperation. The procedure of presentation and surrender of the documents shapes these new tendencies. This article describes not only this evolution in the law of evidence, but also analyses the conditions, the administration of justice, the limits and the sanctions of the procedure of presentation and surrender of the documents.*

## § 1 INLEIDENDE BEGRIPSOMSCHRIJVING

Met de hervorming van het Gerechtelijk Wetboek in 1967 deed de procedure tot overlegging van stukken haar «wettelijke» intrede in het bewijsrecht. De artikelen 877 tot en met 882 voorzien immers in een middel voor de bewijslevering dat reeds eerder in de rechtspraak en de rechtsleer burgerrecht had verworven. Deze artikelen definiëren *de macht* die *aan de rechter* is gegeven *om in bepaalde omstandigheden en onder bepaalde voorwaarden de overlegging te bevelen in origineel of in afschrift van elk stuk waarvan een partij in het geschil of waarvan een derde houder is.* Het betreft hier een verplichte overlegging van

geheim die de getuigenis betreffen moeten analogisch worden toegepast op de overlegging van stukken. Het beroepsgeheim dekt zowel de geschriften als de mondelinge mededelingen (87). Een advocaat zal dus de overlegging van een stuk moeten weigeren als dit gedekt is door het beroepsgeheim. De vraag welke stukken onder het beroepsgeheim vallen en welke niet is een delicaat probleem. Reeds in hogervernoemd arrest van 1958 (88), dat werd bevestigd door het arrest van 30 oktober 1978 (89), heeft het Hof van Cassatie aanvaard dat de rechter een appreciatiebevoegdheid heeft en controle uitoefent over de werkelijkheid van de voorwaarde voor het bestaan van het beroepsgeheim. Zo kan men bijvoorbeeld een onderscheid maken tussen de briefwisseling tussen de cliënt en de advocaat, en de documenten die een cliënt bij zijn raadsman in bewaring geeft. Het zal een voorzichtig afwegen worden van het al of niet confidentieel karakter (90).

### b. Het medisch beroepsgeheim

Het beroepsgeheim van de geneesheer dekt de geheimen die hem uit hoofde van zijn staat en in de uitoefening van zijn beroep, zijn toevertrouwd. Indien hij verzocht wordt documenten over te leggen, dan heeft hij, ingevolge art. 458 S.W., het recht om hierop bevestigend te antwoorden, zonder strafsancties op te lopen. Maar zijn geweten van «noodzakelijke confident» en de deontologische regels van zijn beroep zullen hem de tegenstrijdige belangen doen afwegen. Hij mag dus de overlegging ook weigeren in naam van het beroepsgeheim. Het Hof van Cassatie bevestigde dit expliciet: «L'article 458 du Code Pénal dispense le médecin non seulement de témoigner au sujet de faits secrets de leur nature ou confiés expressément ou tacitement par le patient, mais encore de produire un document consignant de tels faits.» (91) Bovendien kunnen noch de patiënt zelf, noch zijn erfgenamen of rechthebbenden, de geneesheer ontslaan van zijn beroepsgeheim (92).

Een geneesheer zal dus nooit bij vonnis gedwongen kunnen worden om stukken over te leggen die vallen onder het beroepsgeheim (93). Documenten die met miskenning van het beroepsgeheim, op onregelmatige wijze werden opgevorderd, moeten uit de debatten geweerd worden (94). Wel bepaalde het Hof van Cassatie in hogervernoemd arrest van 30 oktober 1978 dat de feitenrechter in elk geval behoort na te gaan of het stilzwijgen van de geneesheer niet van zijn doel afwijkt, doordat de feiten niet van nature geheim zijn, of niet uitdrukkelijk of stilzwijgend aan hem toevertrouwd werden door de patiënt (95).

Het is nog niet voorgevallen dat de overlegging werd bevolen van stukken die door het beroepsgeheim gedekt zijn (96). Men merkt hieruit hoe voorzichtig de rechters zijn. Maar men kan zich de vraag stellen of een bevel tot overlegging van een stuk dat de waarheid aan het daglicht zou brengen, niet moet verkozen worden boven een stilzwijgen wegens beroepsgeheim dat een verlammende uitwerking heeft op het gerechtelijk debat?

### c. Het beroepsgeheim van de bankier?

Alhoewel er tot 1978 geen gepubliceerde rechtspraak hierover bestond, was de doctrine het eens dat een bankier zich niet kon beroepen op het beroepsgeheim zoals beschermd in artikel 458 S.W. (97). De bankier is immers geen noodzakelijk confident. Met een arrest van 25 oktober 1978 heeft het Hof van Cassatie uitdrukkelijk verklaard dat een bankier niet gebonden is door het beroepsgeheim in de zin van artikel 458 S.W., maar enkel door een contractuele verplichting tot discretie (98). Het beroepsgeheim is voor hem geen reden om de overlegging van stukken te weigeren. De vraag die zich hier stelt is of de discretieplicht van een bankier, alhoewel niet strafrechtelijk gesanctioneerd, een wettige reden kan uitmaken voor een weigering. In de doctrine wordt de volgende stelling verdedigd, die in de rechtspraak nog niet is tegengesproken (99): de discretieplicht van de bankier kan soms een wettige reden uitmaken in de zin van artikel 929 Ger.W. (100). De bankier mag

---

(87) DUSQUESNE, A., e.a., o.c., 249; zie ook: LAMBERT, P., Règles et usages de la profession d'avocat, Bruxelles, éd. du Jeune Barreau, 1980, 295.
(88) Cass., 23 juin 1958, J.T., 1958, 597.
(89) Cass., 30 october 1978, Pas., 1979, I, 248: zie verder hierover onder § 3, C, 2, b.
(90) Voor een uitvoerige, doch schematische ontleding van het beroepsgeheim van de notaris, zie: DUSQUESNE, A., e.a., o.c., 254-270.
(91) Cass. 30 oktober 1978, Arr. Cass. 1979, 135, J.T., 1979, 369. De Franse tekst is te verkiezen boven de vertaling die minder kernachtig is.
(92) Luik, 22 januari 1981, Jur. Liège, 1981, 133.
(93) Anders is het voor een geneesheer die als deskundige door de rechtbank wordt aangeduid. De rechter zal de overlegging van de stukken wel kunnen vragen op voorwaarde dat ze het resultaat zijn van de waarnemingen van de geneesheer-expert en dat ze deel uitmaken van het voorwerp van de opdracht. Zie: Brussel, 8 november 1973, J.T., 1974, 138.
(94) Cass. 30 oktober 1978, J.T., 1979, 369; Corr. Dinant, 7 mei 1968, J.T., 1968, 440.
(95) Cass., 30 oktober 1978, J.T., 1979, 369.
(96) KOHL, A., «Evidence law under the 1967 Judicial Code», o.c., 192.
(97) VAN COMPERNOLLE, J., o.c., 100.
(98) Cass., 25 oktober 1978, Pas., 1979, I, 237; J.T., 1979, 371, noot BRUYNEEL.
(99) BRUYNEEL, A., «Le secret bancaire en Belgique, après l'arrêt du 25 oktobre 1978», (noot onder Cass., 25 oktober 1978), J.T., 1979, 371; DUSQUESNE, A., e.a., o.c., 279-290. Bruyneel vermeldt één uitspraak, niet gepubliceerd, die de stelling van de rechtsleer bevestigt: Kh. Brussel, 12 maart 1973.
(100) In art. 929 Ger.W. is het beroepsgeheim immers niet beschouwd als enige wettige reden om een getuigenis te weigeren. Onder strenge controle van de rechter zou de discretieplicht van de bankier ook in aanmerking kunnen komen.

zich dan op «zijn beroepsgeheim» beroepen en de rechter mag dit niet a priori verwerpen maar moet dit met strengheid beoordelen. Maar zodra de stukken noodzakelijk zijn voor de oplossing van het geschil, mag die discretieplicht geen hindernis vormen voor de overlegging van de stukken (101).

Dezelfde discretieplicht rust op de wisselagent (102) en op de accountant (103).

### D. De sancties bij niet-overlegging van stukken

De overlegging van een stuk wordt verplicht gemaakt door een rechterlijke beslissing. Indien men zich daaraan wil onttrekken moet men zijn weigering rechtvaardigen. Maar zodra de rechter geconfronteerd wordt met een niet gerechtvaardigde weigering, is het nodig dat hij bestraffend zou kunnen optreden, zoniet zou de procedure van overlegging haar doeltreffendheid verliezen.

Drie sanctiemechanismen zijn voorzien.

#### 1. De schadevergoeding

Artikel 882 Ger. W. voorziet de veroordeling van de wederpartij of de derde, die de overlegging zonder wettige reden nalaat, tot een schadevergoeding op verzoek van de betrokken partij. Dit bleek de beste oplossing want het was redelijkerwijze onmogelijk om voor dergelijk verzuim een strafsanctie of de gedwongen uitvoering te voorzien (104) (105).

Het is geen sinecure deze civiele sanctie toe te passen. De grote moeilijkheid is gelegen in het bepalen van het verschuldigde bedrag. Hoe kan de rechter de schade ramen die uit de niet-overlegging vloeit, als hij het stuk niet heeft en zijn inhoud niet kent? De schade zal immers evenredig zijn met het belang van het stuk voor het geding. Om de mogelijke bijdrage van het stuk in het geschil te kunnen schatten zou hij de inhoud ervan moeten kunnen appreciëren (106). Ten aanzien van een derde moet de rechter zijn beslissing m.b.t. de schadevergoeding niet motiveren. Het artikel 882 stelt als het ware een vermoeden van fout in hoofde van degene die zonder wettige reden de overlegging weigerde. Het vonnis waarbij de overlegging werd bevolen houdt de motivering reeds in: namelijk, dat er geen wettige redenen waren voor de weigering.

Een uitzondering moet gemaakt worden als het stuk ten gevolge van overmacht teloor ging na het vonnis van de rechter. In dit geval zal de rechter dit door de derde bewezen motief tot weigering moeten appreciëren (107).

#### 2. De strafsanctie

Artikel 495 bis S.W., ingevoerd door de Wet van 10 oktober 1967, voorziet correctionele straffen voor hem, «die een stuk dat hij onder zich heeft en waarvan de overlegging in rechte bij een vonnis wordt bevolen, bedrieglijk vernietigt, verandert of verbergt» (108).

Uit de parlementaire voorbereidingen blijkt dat het misdrijf ook gepleegd wordt als de aantasting van het stuk vóór het vonnis plaatsheeft (al dan niet na voorafgaand verzoek) omdat het bedrieglijk opzet beslissend is, op welk moment de daad ook gesteld wordt. De handeling is pas strafbaar vanaf het vonnis tot overlegging (109).

Natuurlijk moet de vernietiging, de verandering of de verberging bewezen worden.

#### 3. De dwangsom

Sinds de wet van 31 januari 1980, houdende goedkeuring van de Benelux-overeenkomst houdende eenvormige wet betreffende de dwangsom, werd artikel 1385 bis in ons Ger.W. ingevoerd met de volgende bepaling (110): «De rechter kan, op vordering van één der partijen de wederpartij veroordelen tot betaling van een geldsom, dwangsom genaamd, voor het geval dat aan de hoofdveroordeling niet wordt voldaan, onverminderd het recht op schadevergoeding indien daartoe gronden zijn.»

De veroordeling tot een dwangsom is dus accessoir (bijkomende veroordeling), voorwaardelijk (de dwangsom is slechts verschuldigd bij

---

(101) Kort geding Kh. Luik, 3 februari 1978, *B.R.H.*, 1980, 387 met noot M.D. DESSARD.
(102) Cass., 26 september 1966, *Pas.*, 1967, 7, 89.
(103) Cass., 16 mei 1977, *Pas.*, 1977, I, 947; *J.T.*, 1977, 528; *R.W.*, 1977-1978, 2587, noot VANDEPLAS.
(104) VAN REEPINGHEN, Ch., *o.c.*, 361; zie nochtans Rb. Hasselt, beslagr., 16 december 1970, *Jur. Liège*, 1970-1971, 149, geciteerd door GUTT en STRANART, *o.c.*, 161.
(105) Sommigen hadden aanbevolen dat het feit dat moest bewezen worden door het stuk als waar werd beschouwd. Maar deze sanctie werd niet voorgesteld, daar zij de vrije beoordeling van de feiten door de rechter zou kunnen hinderen; zij zou trouwens niet op een derde kunnen toegepast worden.
(106) Een toepassing: Arb. rb., Brussel, 3 juni 1977, *J.T.*, 1977, 627.

(107) Uitvoeriger over het vermoeden van fout bij DUSQUESNE, A., e.a., *o.c.*, 242, e.v.
(108) Verbergen is ook bedrieglijk beweren dat men geen houder is van het document.
(109) Rapport Hermans, *Parl Stuk.*, Kamer, zitt. 1966-1967, nr. 59/49, p. 273.
(110) Zie hierover o.a.: STORME, M., «Een revolutionaire hervorming: de dwangsom», *T.P.R.*, 1980, 222 e.v.