# EXHIBIT I

**Excerpt from A. Bruyndeel, "Le secret bancaire en Belgique après l´arrêt du 25 octobre 1978", J.T. 1979, 376.**

In their study, Duquesne and co-authors have analysed in detail the application of this provision to the case of the banker, and rightly observed that even a reinforced, but not criminally sanctionable obligation of discretion may sometimes constitute a legitimate justification in the sense of Article 929; from a practical and balanced point of view, they conclude that the banker may invoke his duty of professional secrecy, which the judge may not *a priori* reject, but has to assess carefully.

Cass. (2ᵉ ch.), 25 octobre 1978

Prés. : M. Legros, cons., prés. sect.
Rapp. : M. Legros.
Min. publ. : M. Charles, av. gén.
Plaid. : Mᵉ Saels.

(Gérard.)

BANQUIER. — Secret professionnel. — Article 458 du Code pénal inapplicable.

*L'article 458 du Code pénal s'applique à tous ceux qui, par état ou par profession, sont dépositaires des secrets qu'on leur confie; son application ne peut s'étendre à ceux tenus seulement d'un devoir de discrétion.*

*Ni la nature des fonctions exercées par les banquiers, ni aucune disposition légale, ne leur confèrent la qualité de personnes tenues au secret professionnel au sens de l'article 458 du Code pénal.*

Ouï M. le conseiller Legros en son rapport et sur les conclusions de M. Charles, premier avocat général;

Vu l'arrêt attaqué rendu le 21 avril 1978 par la cour d'appel de Mons;

Sur le premier moyen, pris de la violation des articles 97 de la Constitution et 458 du Code pénal,

en ce que la poursuite exercée contre le demandeur du chef d'émission de chèques sans provision était fondée sur une violation du secret professionnel de la part de son banquier et, dès lors, illégale :

Attendu que l'article 458 du Code pénal s'applique à tous ceux qui, par état ou par profession sont dépositaires des secrets qu'on leur confie; que son application ne peut s'étendre à ceux qui sont seulement tenus d'un devoir de discrétion;

Attendu que ni la nature des fonctions exercées par les banquiers, ni aucune disposition légale, ne confèrent à ceux-ci la qualité de personnes tenues au secret professionnel au sens de l'article 458 du Code pénal;

Que l'arrêt qui, dans un motif surabondant, assimile à un témoignage en justice la communication de renseignements faite à la demande du procureur du Roi, justifie légalement sa décision par la considération que le banquier n'est pas tenu au secret professionnel au sens de l'article 458 du Code pénal.

Que le moyen ne peut être accueilli;

*(Suite sans intérêt.)*

*Par ces motifs :*

LA COUR,

Rejette le pourvoi.

### OBSERVATIONS
*Le secret bancaire en Belgique, après l'arrêt du 25 octobre 1978*

1. — En conclusion d'une note publiée il y a quelques mois dans ces colonnes (1), le professeur Robert Henrion écrivait :

« ... sans prétendre se livrer à un exercice de futurologie judiciaire, il est vraisemblable que saisie de la question (du secret bancaire), la Cour de cassation persévérerait dans la conception (exclusion de l'art. 458 du C. pén.) appliquée déjà à l'agent de change (2) et à l'expert comptable (3) ».

Par son arrêt du 25 octobre 1978 (4), la Cour suprême a permis à la prédiction de se réaliser. Après avoir rappelé que l'application de la disposition précitée (5) « ne peut s'étendre à ceux qui sont seulement tenus d'un devoir de discrétion », la Cour a décidé « que ni la nature des fonctions exercées par les banquiers ni aucune disposition légale, ne confèrent à ceux-ci la qualité de personnes tenues au secret professionnel au sens de l'article 458 de Code pénal ».

Sans doute la brièveté de cette motivation décevra-t-elle les banquiers et les juristes, alors surtout que l'arrêt de la 2ᵉ chambre tranche une question de principe importante et controversée. Toutefois, si l'on tient compte de l'évolution doctrinale et jurisprudentielle (6) dans laquelle l'arrêt se situe, ce reproche perd, selon nous, beaucoup de son importance; il ne saurait du moins être soutenu que la Cour a procédé par pure affirmation.

2. — Il est utile de se référer ici à la doctrine antérieure à 1963, année de parution de la première édition de l'ouvrage, devenu rapidement classique, de M. Henrion : *Le secret professionnel du banquier* (7). On rappellera seulement que la tendance des auteurs récents de droit pénal était favorable à l'application de l'article 458 au cas des banquiers — sans justifier pour autant cette solution (8) — tandis que les privatistes (en ce compris les auteurs les plus proches des activités bancaires) y étaient presque tous hostiles (9), avec parfois quelque réserve ou nuance il est vrai (10).

M. Henrion, après avoir admis que la question était fort délicate, la résolvait toutefois négativement, pour trois motifs (11) :
1) la fonction sociale du banquier ne s'identifie pas avec l'exercice d'une haute mission morale (contrairement par exemple à la fonction remplie par le médecin ou l'avocat);
2) l'exercice de la fonction bancaire n'est pas *au premier chef* caractérisé par la réception nécessaire et obligatoire de confidences; contrairement aux médecins, aux confesseurs, aux avocats, etc., les banques ne sont pas fondamentalement *destinées* à recevoir les secrets d'autrui;
3) le ministère du banquier n'est pas imposé par la loi; le banquier ne jouit pas d'un monopole pour la plupart des opérations qu'il traite (12).

Quinze ans plus tard (13), M. Henrion concluait dans le même sens et de manière encore plus nette, d'une part sous l'influence des arrêts de la Cour de cassation relatifs à l'agent de change et à l'expert fiscal et, d'autre part, en tenant compte de la très nette évolution vers une plus grande « transparence » dans la vie économique et sociale (14).

On constatera avec intérêt qu'en 1963, M. Henrion avait réservé l'hypothèse d'une plus grande « publicisation » de la fonction bancaire, notamment sous la forme d'une « agréation » des principaux dirigeants des banques privées (15). Or, quinze ans plus tard, cette hypothèse n'est plus évoquée alors que la publicisation de la fonction bancaire a manifestement progressé (16) et que le recours au ministère du banquier a été imposé par la loi dans un nouveau cas fort important (17). L'auteur aura considéré, pensons-nous, que ces données nouvelles ne suffisent pas à contrebalancer l'importance de l'évolution en cours vers plus d'information et de transparence dans la vie économique et sociale (18).

---

(1) « Secret économique et évolution jurisprudentielle », *J.T.*, 1978, p. 415.

(2) Cass., 2ᵉ ch., 26 sept. 1966, *Pas.*, 1967, I, 89 et *Rev. dr. pén.*, 1966-67, 301 (avec les concl. conf. de M. l'avocat général Colard).

(3) Cass., 2ᵉ ch., 16 mai 1977 (également rendu sur les concl. conf. de M. l'avocat général Colard), *Pas.*, 1977, I, 947; *J.T.* 1977, p. 528 (avec l'arrêt *a quo* rendu le 22 févr. 1977 par la cour d'appel de Mons) et *R.W.*, 1977-1978, col. 2587, obs. Vandeplas. Les faits de l'espèce — pour l'essentiel une dénonciation par le conseiller fiscal et ses suites — étaient particulièrement déplaisants.

(4) *Supra*, p. 371; l'arrêt a été également publié à la *Revue de la banque*, 1979, p. 163 avec un très bref commentaire du professeur Heenen; à la *Revue du notariat belge*, 1979, 154; à la *Revue de droit pénal*, 1979, 69. Le prochain numéro de cette dernière revue publiera au sujet de l'arrêt une note de J. Spreutels, « Secret bancaire et droit pénal ».

(5) C. pén., art. 458 : « Les médecins, chirurgiens, officiers de santé, pharmaciens, sages-femmes et toutes autres personnes dépositaires, par état ou par profession, des secrets qu'on leur confie, hors le cas où ils sont appelés à rendre témoignage en justice et celui où la loi les oblige à faire connaître ces secrets, les auront révélés, seront punis d'un emprisonnement de huit jours à six mois et d'une amende de cent francs à cinq cents francs ». Comp. l'art. 459, plus limitatif et spécifique aux employés des anciens monts-de-piété (disposition reprise de la loi du 30 avril 1848).

(6) *Infra*, nᵒˢ 2, 3 et 4.

(7) Institut de sociologie de l'Université libre de Bruxelles (études d'économie politique), 1963, 2ᵉ éd., 1968.

(8) Ainsi, voy. Constant, *Manuel de droit pénal*, 2ᵉ partie, II, nᵒ 1019 (éd. 1949); Marchal et Jaspar, *Droit criminel*, 1ʳᵉ éd., 1952, I, nᵒ 1175. En revanche, les pénalistes plus anciens (tels Beltjens, Goedseels, Nypels, Schuind) n'évoquent pas le cas du banquier à propos de l'art. 458.

(9) Voy. les auteurs relevés dans l'ouvrage et la note précitées d'Henrion; *adde*, réf. *in* note 1) à la *Pas.*, 1977, I, 947, sous l'arrêt précité du [illisible].

(10) Ainsi, par exemple Van Ryn et Heenen, *Principes de droit commercial*, III, nᵒ 2049.

(11) *Op. cit.*, pp. 42 à 46.

(12) Par ailleurs, Henrion écartait à juste titre, comme critère suffisant de l'assujettissement à l'article 458, l'existence d'un statut professionnel légal (p. 44); dans le même sens, voy. Van Reepinghen, « Le secret professionnel du banquier », *J.T.*, 1963, p. 461; *contra* : Scailteur, « Secret professionnel et devoir de discrétion — La situation des conseillers fiscaux », *Rev. gén. fisc.*, 1978, pp. 75 à 80, spéc. p. 78.

(13) Note précitée au *J.T.*

(14) Voy. à ce sujet « L'entreprise et ses devoirs d'information en matière économique et sociale » (XXXIᵉ séminaire de la commission droit et vie des affaires, 1978), Bruylant, à paraître, et réf.

(15) *Op. cit.*, p. 51.

(16) Nous pensons en particulier :
— à la loi du 28 décembre 1973 concernant les propositions budgétaires 1973-1974, qui a donné à la Banque nationale — indirectement — de larges pouvoirs en matière de politique monétaire (voy. not. à ce sujet Brisé, « De aanbevelingen van de Nationale Bank van België inzake geldpolitiek », *Rev. Banque*, 1975, pp. 124 et s);
— à la réforme de l'inscription à la liste des banques et au droit de contrôle direct de la commission bancaire (L. 30 juin 1975; voy. not. à ce sujet, Bruyneel, « La loi du 30 juin 1975 : « Mammouth », souris ou pot-pourri ? », *J.T.*, 1975, pp. 649 à 660);
— au procédé des « protocoles » convenus entre la commission bancaire et les banques privées, destiné à assurer l'autonomie de la fonction bancaire (voy. not. à ce sujet Henrion, « La concertation et l'autonomie bancaire », *J.T.*, 1972, p. 293; *commission bancaire*, rapport pour l'année 1973-74, pp. 15 à 38; Wtterwulghe et Philippe, « Le protocole bancaire, un code de comportement », in *Reflets et perspectives de la vie économique*, 1978, pp. 347 et s.);
— *adde*, l'article 18, non encore exécuté, de la loi du 5 août 1978 de réformes économiques et budgétaires (délégué du gouvernement auprès des grandes banques).

Signalons enfin, mais seulement pour l'anecdote, le jugement fantaisiste rendu le 10 juin 1976 par le tribunal du travail de Marche (*Rev. rég. dr.*, 1978, p. 602, obs. Poullet) sur la portée et les conséquences du contrôle des banques.

(17) A.R. nᵒ 56 du 10 novembre 1967 favorisant l'usage de la monnaie scripturale.

(18) Cf. la « prédiction » en ce sens formulée par Duquesne, Fontaine, Kellens, Kohl et Renard, *in* « La

taire. Le juge ne peut prononcer de condamnation qu'après avoir entendu le témoin en sa défense et les parties en leurs explications » (99).

Dans leur étude, Duquesne et coauteurs ont analysé avec finesse l'application de ce texte au cas du banquier, estimant à juste titre que même une obligation de discrétion renforcée *mais non pénalement sanctionnée* pouvait *parfois* constituer un motif légitime au sens de l'article 929; de manière pratique et équilibrée, ils concluaient que le banquier pouvait faire valoir son secret professionnel, que le juge ne devait pas *a priori* rejeter une telle objection mais l'appréciera avec sévérité (100).

Cette conclusion ne semble pas avoir été sérieusement contestée en doctrine (101) et elle a été approuvée par la seule décision de jurisprudence dont nous avons connaissance à ce sujet (102).

14. — Par ailleurs, cette conclusion nous paraît rester entièrement valable après l'arrêt du 25 octobre 1978, dès lors qu'elle avait précisément été formulée en considération d'une obligation de discrétion *non sanctionnée pénalement*. Toutefois, la solution de l'arrêt ne pourra qu'inciter, sinon les banques à ne pas invoquer trop souvent l'objection tirée du secret professionnel (103), du moins les tribunaux à apprécier avec une sévérité accrue cette objection et à résoudre en défaveur des banques les cas douteux.

L'apport de l'arrêt, en droit judiciaire privé, est donc fort limité. Ceci d'autant plus que, à notre avis, le problème le plus important dans la pratique judiciaire n'est nullement celui du secret professionnel que le banquier oppose mais l'abus de plus en plus fréquent que la partie adverse fait contre le banquier, de la procédure de production de documents.

15. — C'est en effet l'hypothèse du document dont la production est réclamée au banquier *par son adversaire au procès* qui se rencontre le plus souvent et qui crée les difficultés. En revanche, il reste relativement rare que le banquier, tiers par rapport au procès, soit appelé à témoigner ou à s'entendre ordonner de produire des documents; or, ces deux derniers cas sont précisément ceux où le problème du secret professionnel se pose le plus manifestement...

Lorsqu'une partie au procès réclame à l'autre partie, le banquier, la production de certains documents, puis demande au juge de l'ordonner (104), deux sortes de difficultés peuvent se présenter.

*a)* D'une part, et en définitive peu fréquemment, un *problème de secret professionnel* se pose lorsque les documents réclamés concernent, même partiellement, un client de la banque, qui n'est pas partie au procès (105). En ce cas, on appliquera les critères déjà rappelés : le banquier fera valoir l'objection tirée du secret professionnel, le juge ne la rejettera pas par principe mais l'appréciera avec sévérité.

Ainsi, pour prendre un exemple dans le domaine du cautionnement, le juge saisi d'un litige entre la caution et le banquier, rejettera normalement l'objection formulée par le banquier contre la production de documents relatifs aux rapports entre lui et le débiteur principal; en revanche, il pourra plus souvent accueillir l'objection formulée par le banquier contre la production de documents relatifs aux rapports entre lui et d'autres personnes que le débiteur principal (constituants de sûretés, autres banques, autorités de contrôle, etc.) (106).

16. — *b)* La pratique révèle toutefois que les vraies difficultés se situent beaucoup plus souvent sur un autre plan : celui des *conditions mises par la loi à la procédure de production de documents*. Dans la très grande majorité des cas, c'est parce qu'une de ces conditions fait défaut — et non pas pour un motif tiré du secret professionnel — que le juge décide de ne pas ordonner la production demandée.

La plupart des adversaires des banques ont en effet manifestement tendance, spécialement en matière de cautionnement et de responsabilité du donneur de crédit, à recourir aux articles 877 et suivants du Code judiciaire dans une optique strictement exploratoire; on réclame des documents « à toutes fins », les plus nombreux possible, sans même être assuré qu'ils existent, en espérant que cette « partie de pêche » (107) permettra de découvrir quelque chose, d'exploiter une phrase isolée, un fait anodin ou un mot malheureux (108), ou encore le cas échéant de réclamer des documents supplémentaires... Nous ne caricaturons pas, ou à peine : cet état d'esprit; inconsciemment nourri de suspicion à l'égard des organismes financiers, est vraiment très répandu.

Un bref rappel des conditions d'application de l'article 877 (109) n'est donc pas superflu.

(1) Il faut un document existant. Cette évidence est cependant parfois perdue de vue. Ainsi, nous avons récemment rencontré avec surprise des déviations telles les suivantes : sommation, puis demande au juge d'ordonner, à l'autre partie d'établir un document nouveau; sommation, puis demande au juge d'ordonner, à la banque non seulement de produire certains documents mais encore et surtout de les commenter et de répondre à diverses questions, les concernant ou non; demande de produire « toutes précisions » relatives à tel crédit. Il s'agit là, manifestement, de tentatives de renversement de la charge de la preuve, sans plus aucun rapport avec l'article 877 du Code judiciaire...

(2) Il faut qu'existent des présomptions graves, précises et concordantes que le document réclamé soit détenu par la partie (ou par le tiers) à qui on demande la production. Ces termes sont clairs et restrictifs (110). Ils suffisent à écarter les demandes de caractère trop général (« toutes pièces relatives à l'affaire ») ainsi que les suppositions (« puisque la banque X utilise tel type de formulaire, vous, banque Y, l'utilisez certainement aussi dans le même cas ») et les demandes purement hypothétiques.

(3) Il faut que le document réclamé contienne la preuve d'un fait pertinent (111). Cette condition est, dans le principe, claire mais son application s'avère parfois bien difficile. C'est le juge qui y procédera, souverainement (112); il écartera notamment les demandes de caractère trop général (113), les demandes purement hypothétiques, les demandes portant sur de purs détails, les demandes superflues parce qu'il s'estime déjà suffisamment informé sur l'affaire (114); sa décision tiendra compte, en complément, d'une éventuelle objection tirée du secret professionnel.

Cette appréciation est cependant, bien souvent, moins délicate qu'il n'y paraît. D'abord parce qu'il y a des cas certains de défaut de pertinence (115). Ensuite, parce que le juge sent très vite dans quel cas une partie « s'en va à la pêche », sans plus, et dans quel cas elle s'est réellement heurtée à la mauvaise volonté de la partie adverse; le juge comprend d'expérience quand un refus de poursuivre est suspect (116) et

---

(99) Cette disposition ne vise expressément que le témoignage mais il n'est pas contesté que l'exception s'applique, selon les mêmes conditions et nuances, à la procédure de production de documents. Cf. sur ce point l'art. 882 précité (« sans motif légitime ») et le rapport Van Reepinghen, p. 213; Van den Bossche, in *Trav. Fac. dr. Namur*, 1969, p. 105; Duquesne et autres, *op. cit.*, pp. 205 et 275; *adde*, en France, Marreaud, étude au *J.C.P.*, 1973; *D.*, 2572, n° 30.

(100) « L'article 929 du Code judiciaire considère *notamment* comme motif légitime de refus de témoigner le secret professionnel dont le témoin est dépositaire. L'emploi du terme « notamment » autorise à considérer comme légitimes d'autres motifs de refus, parmi lesquels il n'est pas déraisonnable de ranger une obligation de discrétion renforcée qui sans atteindre à la valeur d'un secret professionnel, n'en est pas tellement éloignée. Cependant, l'esprit du régime nouveau d'administration des preuves, caractérisé par la collaboration de tous à la recherche de la vérité, devrait justifier la sévérité du juge dans l'appréciation des motifs de refus. Le secret bancaire pourrait donc être invoqué en matière civile par un banquier appelé à témoigner, mais le tribunal procédera à une comparaison rigoureuse des intérêts en présence avant d'accueillir l'objection.

» Des principes similaires doivent régir la procédure de production de documents que le rapport du commissaire royal rapproche expressément de l'obligation de témoigner. Invité par le juge à déposer un document au dossier de la procédure, sur base de l'article 878 du Code judiciaire (par ex. un extrait de compte ou un ordre de virement), le banquier peut faire valoir ses « observations »; s'il le juge opportun, il se prévaudra donc à ce moment du secret bancaire pour solliciter une dispense de produire le document en cause. Le juge, en se prononçant, ne rejettera pas *a priori* cette objection, mais l'appréciera avec sévérité ».

(101) Henrion (in *Le secret bancaire dans la C.E.E. et en Suisse*. p. 61 et in *Rapport*, Ass. Capitant, p. 205) reproduit le texte cité ci-avant, sans le critiquer; voy. aussi *Het beroepsgeheim van de bankier, op. cit.*, p. 86 et De Clercq, *op. cit.*, p. 343; comp. Kohl, *op. cit.*, p. 121.

(102) Comm. Bruxelles, 1re ch., 12 mars 1973 (inédit, Banque de Bruxelles c. Van Muylders) : l'exception de l'art. 929 vaut également pour le cas de l'obligation de discrétion, même non sanctionnée pénalement.

(103) Sans toutefois perdre de vue que, dans certains cas, le client auquel le secret est dû pourrait à bon droit reprocher au banquier de ne pas avoir formulé l'objection.

(104) Il reste rare que le juge prenne lui-même une telle initiative.

(105) Citons seulement pour mémoire, et à titre anecdotique, le cas du demandeur qui prétendait empêcher le défendeur banquier de produire une partie de son dossier au motif que le secret professionnel *dû au demandeur*, son ex-client, le lui interdisait...

(106) Comp. le cas tranché par le jugement inédit précité du 12 mars 1973 : le tribunal a rejeté la demande de faire produire par la banque (qui poursuivait le tireur d'une traite suite à la défaillance du tiré son client bénéficiaire d'un crédit d'escompte-fournisseur) l'ensemble des contrats conclus entre la banque et le crédité. Le tribunal a fondé sa décision tant sur le secret professionnel que sur l'absence des conditions requises par l'art. 877; ce deuxième motif aurait d'ailleurs suffi.

(107) Expression qui traduit — pauvrement — l'imagé « fishing expedition » anglais...

(108) Voy. sur le danger de certains mots du jargon bancaire, les observations judicieuses du professeur Simont dans son rapport au XXXIe séminaire, 1978, de la C.D.V.A. (à paraître en 1979, chez Bruylant).

(109) Pour les conditions d'application des art. 878 à 882, voy. not. Duquesne et autres, *op. cit.*, pp. 214 à 221,

et réf. Pour l'enquête, voy. Gutt et Stranart-Thilly, *op. cit.*, pp. 162 à 169.

(110) Voy. aussi Duquesne et autres, *op. cit.*, pp. 205 et 206 et réf.

(111) Voy. à ce sujet Gutt et Stranart-Thilly, *op. cit.*, p. 160 et réf.; Kohl, *op. cit.*, p. 121, considère quant à lui que le fait doit être à la fois concluant et pertinent.

(112) Cf. à cet égard, à propos des enquêtes, Liège, 8 mai 1973, *Jur. Liège*. 1972-1973, p. 290 et Bruxelles, 31 déc. 1975, *J.T.*, 1976, p. 188; *adde*, en général, les deux arrêts de cassation cités à la note suivante.

(113) Dekkers, *op. cit.*, n° 20, p. 155 excluait déjà les productions générales de pièces, dénommées en termes excellents « l'étalage de toute la documentation de l'adversaire, dans l'espoir d'y trouver quelque chose de défavorable pour lui ». Et le rapport Van Reepinghen, pp. 328-329, précise aussi clairement que possible : « L'obligation de collaborer à l'administration de la preuve doit cependant être soumise à certaines conditions sous peine de dégénérer en un droit d'inquisition. Elle ne portera dès lors que sur les faits ou documents précis et pertinents dans la connaissance est utile à la solution du litige. Le juge se montrera particulièrement vigilant à cet égard, rejetant toute demande de collaboration ou de production de pièces insuffisamment précises et concluantes ».

(114) Cf. à cet égard Cass., 29 avril 1974, *Pas.*, 1974, I, 885 et Cass., 20 févr. 1975, *Pas.*, 1975, I, 633.

(115) C'était le cas du jugement inédit précité du 12 mars 1973 : la production des contrats conclus entre le tiré et la banque ne pouvait, en l'espèce, faire preuve d'aucun fait permettant au tireur d'échapper aux conséquences de sa signature apposée sur l'effet.

(116) Cf. à ce sujet Comm. Bruxelles, 2 oct. 1974 (Paribas c. Mantex, frappé d'appel), *J.T.*, 1975, p. 44 et note Zenner : production de treize pièces alors que le jugement d'avant-dire droit du 11 avril 1973 avait ordonné — de manière particulièrement large d'ailleurs — la remise de l'intégralité de la correspondance entre le crédité et la banque, ainsi que les rapports et notes internes relatives au crédit, pour une période de treize mois.