# EXHIBIT J

**Excerpt from K. Mauen en J. Fastenaekels, "De discretieplicht van Belgische Banken – Een onderzoek naar haar grondslagen en toepassingsgebieden Deel 2", T.Fin.R. 2006, 1365-1366.**

Article 929 of the Code of Civil Procedure is also important. In the framework of this provision the duty of professional secrecy can be invoked as a legal justification to be excused from the obligation to take an oath or to testify. In light of the wording of Article 929 CCP (*"as legal justification is a.o. accepted the duty of professional secrecy by which the witness is bound"*), it can be accepted that the professional obligation of discretion can also be taking into account as reason to be excused from the obligation to testify or to take an oath.

# De discretieplicht van belgische banken

## Een onderzoek naar haar grondslagen en toepassingsgebieden[1]

### Deel 2

*Kim MAUEN Juridisch Adviseur Fortis*
*Jeroen FASTENAEKELS - Advocaat Eubelius*

**B. De discretieplicht in fiscale zaken**

**46.** In tegenstelling tot het strafrecht, beschikt het fiscaal recht over een vrij uitgebreid arsenaal aan specifieke wettelijke bepalingen m.b.t. de banksector en de hiermee verbonden discretieplicht.[2] In het hierna volgende overzicht zal een onderscheid worden gemaakt tussen de discretieplicht inzake de directe belastingen *enerzijds* en de indirecte belastingen *anderzijds*.

*1. Inzake directe belastingen*

**47.** Inzake directe belastingen kan worden teruggegrepen naar art. 318 W.I.B. 1992.[3] Vóór de Wet van 8 augustus 1980[4] beschikte de fiscus over onbeperkte controle- en onderzoeksbevoegdheden. Banken werden verondersteld alle boeken en bescheiden voor te leggen die noodzakelijk waren voor het bepalen van de belastbare inkomsten van de bank, en daarenboven kon de fiscus deze gegevens gebruiken om derden te belasten.[5]

**48.** Hierin kwam verandering nadat door de Wet van 8 augustus 1980 het toenmalige artikel 224 (het huidige artikel 318, lid 1 W.I.B. 1992) werd ingevoerd. De administratie is sindsdien niet langer gemachtigd inzage te nemen in de boeken en rekeningen van de bank, met het oog op het belasten van haar cliënten,[6] en bovendien mag zij ook geen kennis nemen van gegevens betreffende een cliënt van de bank, tenzij dit noodzakelijk zou zijn voor het vaststellen van de fiscale situatie van de bank.[7]

**49.** De ratio legis van een dergelijk bankgeheim ten overstaan van de fiscus is in hoofdzaak het behoud van cliënteel, gelet op het feit dat niemand nog bereid zal zijn zich tot de bankier te wenden, wanneer deze laatste de gegevens van zijn cliënten zomaar kan prijsgeven.[8] In secundaire orde kan overigens ook worden teruggegrepen naar de bescherming van het privé-leven in het algemeen.

**50.** Het eerste lid van Artikel 318 W.I.B. 1992 laat echter ruimte voor interpretatie. Zo rees de vraag wat nu juist begrepen moest worden onder *"bank-, wissel-, krediet- en spaarinstellingen"*.[9] In de administratieve commentaar bij Artikel 318 W.I.B. 1992 vinden we een lijst terug van instellingen die worden geviseerd[10]:

1. De Belgische banken en Spaarkassen.
2. De Belgische kredietinstellingen, leningmaatschappijen, hypotheekmaatschappijen en kapitalisatieondernemingen, de Deposito-en Consignatiekas en het Bestuur der postcheques.
3. De Belgische vennootschappen die de financiering van verkopen op afbetaling tot doel hebben.
4. De Belgische ondernemingen en particulieren die zich inlaten met wisselverrichtingen.
5. De Belgische inrichtingen van buitenlandse ondernemingen, gelijkaardig aan die welke hiervoor zijn bedoeld.

**51.** Bovendien bevestigde de Minister van Financiën dat ook kredietkaartmaatschappijen als bank- of kredietinstelling worden aangemerkt.[11]

**52.** Dergelijke administratieve ingrepen zijn er echter niet in geslaagd alle betwistingen te bannen. Recente rechtspraak toont aan hoezeer deze begrippen onderhevig blijven aan interpretatie.[12] Zo is er bijvoorbeeld de vraag of ook leasingmaatschappijen kunnen worden beschouwd als een bank-, wissel-, krediet- of spaarinstelling[13]. Bovendien heeft een recent vonnis van 13 februari 2004[14] uitdrukkelijk gesteld dat artikel 318 W.I.B. 1992 niet van toepassing is op de ontvanger: "*uit dit artikel volgt dat de invorderingsambtenaren voor hun invordering van de belasting niet beperkt worden in hun onderzoeksbevoegdheden, zodat het verbod van de artikelen 318 en 322 WIB 1992, volgens dewelke de Administratie geen inlichtingen mag inzamelen bij financiële instellingen met het oog op het belasten van hun cliënten, op hen niet van toepassing is*". Dit vonnis is bovendien een bevestiging van eerdere rechtspraak. Zo werd reeds in een ophefmakend arrest van 26 november 2003 duidelijk aangegeven dat het bankgeheim, zoals bepaald in artikel 318, de *uitzondering* is op de algemene regel dat de fiscus in principe aan eender wie inlichtingen kan vragen[15]. De toepassing van artikel 318 W.I.B. 1992 op de fiscus lijkt dus niet meteen een uitgeklaarde zaak te zijn. Toch is deze rechtspraak stellig aan kritiek onderhevig geweest. VANDEN BERGEN wijst erop dat deze interpretatie alvast geen steun vindt in de voorbereidende werken bij het W.I.B. 1992. In het licht van deze voorbereidende werken dient, aldus VANDEN BERGEN dan ook te worden aangenomen dat *het bankgeheim tevens tegenwerpbaar is aan de met invordering belaste ambtenaar*[16].

De vraag luidt daarenboven ook of de "zogenaamde" bescherming van artikel 318 W.I.B. 1992 niet kan worden omzeild door artikel 322 W.I.B. 1992. Zo kan de Administratie derden horen, een onderzoek instellen, en alle inlichtingen vorderen die zij nodig acht om de juiste heffing van de belasting te verzekeren.[17] In de parlementaire werkzaamheden werd dit alleszins ontkend[18]. Ook bepaalde rechtspraak bewees hierover ontkennend te zijn.[19]

---

[1] Dit artikel is bijgewerkt tot 4 juli 2005.
[2] F. DESTERBECK, "Het Zwitsers bankgeheim in fiscale zaken vanuit Belgisch standpunt nader bekeken". *A.F.T.* 1998, 320-341.
[3] Art. 318 Wetboek van de Inkomstenbelastingen 1992.
[4] Wet van 8 augustus 1980 betreffende de budgettaire voorstellen 1979-80, *B.S.* 15 augustus 1980.
[5] W. DIERICK, « De fiscus en het bankgeheim », *A.F.T.* 1982, 211-220.
[6] D. MAREELS en M. BIHAIN, "Le secret bancaire en droit fiscal belge", *J.D.F.* 1996, 193-240.
[7] B. BOONE, "Opheffing bankgeheim: versoepeling van de voorwaarden", *Fiscoloog* 1996, afl.590, 1-2.
[8] P. MIHAIL, "La portée et les raisons du secret bancaire en Belgique", *R.G.F.* 2003, afl.2, 2-11.
[9] X., "Is het fiscaal bankgeheim ook van toepassing op 'Banksys'", *Fiscoloog* 2001, afl.806, 7.
[10] Com. I.R., 1992, nr. 318/4.

[11] P. MALHERBE, "Le secret bancaire en Belgique et en Europe", *R.G.F.* 1996, deel 1 : 351-366.
[12] Kh. Charleroi 4 november 2003, *J.L.M.B.* 2005, 963, noot M. DAUBE en noot E. MERCIER.
[13] R. FORESTINI, "Un obstacle à la demande de renseignements émanant de l'administration fiscale: l'art. 318 C.I.R. 1992", (noot onder Rb. Namen (4e kamer), 23 oktober 2002), *R.G.C.F.* 2003, afl.4, 65-67; X., "Is een leasingmaatschappij dan toch geen kredietinstelling?", *Fiscoloog* 2003, afl.893,6. Hoewel een deel van de rechtspraak steeds heeft geoordeeld dat leasingmaatschappijen niet zouden onderworpen zijn aan artikel 318 W.I.B. 1992 (zie Rb. Brussel, 4 januari 2002, *T.F.R.* 2002, 658; Antwerpen 29 april 2003, *F.J.F.* 2004, 44, Antwerpen 29 april 2003, *NjW* 2004, nr 58, 122) is het Hof van Beroep te Gent onlangs lijnrecht tegen deze visie ingegaan (Gent 7 september 2004, *T.F.R.* 2005, 546). Volgens het Gentse Hof dient een leasingmaatschappij wel degelijk als een kredietinstelling in de zin van artikel 318 W.I.B. 1992 te worden beschouwd. Dit arrest heeft bovendien steun genoten in de rechtsleer (zie bijvoorbeeld H. LIBERT, "Leasing van roerende goederen, in X., *Bijzondere overeenkomsten. Artikelsgewijze commentaar met overzicht van rechtspraak en rechtsleer*. Antwerpen, Kluwer, 4-5, en recent F. JACOBS, "Leasingmaatschappijen dan toch onderworpen aan het bankgeheim", *T.F.R.* 2005, 548).
[14] Rb. Antwerpen, 13 februari 2004, *T.F.R.* 2005, 81.
[15] Rb. Gent, 26 november 2003, *F.J.F.* 2004, 164; Zie ook J. VANDEN BRANDEN, « Ontvanger moet geen rekening houden met bankgeheim ». *T.F.R.* 2005, 84.
[16] J. VANDEN BRANDEN, « Ontvanger moet geen rekening houden met bankgeheim », *T.F.R.* 2005, 86.
[17] P. GLINEUR, "De beperkingen van het bankgeheim ten opzichte van de Administratie der belastingen", *De Belg.Acc.* 1997, afl.1, 72-85; zie in dit verband ook Rb. Antwerpen, 13 februari 2004, *T.F.R.* 2005, 81, met kritische noot van J. VANDEN BRANDEN, « Ontvanger moet geen rekening houden met bankgeheim », *T.F.R.* 2005, 84.
[18] Wetsontwerp houdende hervorming van de inkomstenbelastingen, Memorie van Toelichting, *Parl. St.* Kamer, gew.zitt. 1961-1962, nr. 264/1, 110.
[19] Antwerpen 12 november 1992, *R.G.F.* 1993, 166.

successierechten de bankiers aan de Administratie alle inlichtingen te verschaffen die nodig zijn om de juiste heffing der successierechten te verzekeren.[40]

62. Het verzoek om inlichtingen vereist wel een bijzondere machtiging van de Directeur-generaal van de Registratie en Domeinen.[41] De gevraagde inlichtingen kunnen verband houden met alle handelingen, zowel voor als na het openvallen van de nalatenschap, ongeacht of deze handelingen zijn uitgevoerd door de erflater, diens echtgenoot, door een erfopvolger of een derde.[42] Het onderzoeksrecht is onbeperkt, zolang het gaat om handelingen, gesteld gedurende de laatste drie levensjaren van de erflater.[43] Gaan de handelingen verder terug in de tijd, dan zal het onderzoeksobject nader gepreciseerd moeten worden in de bijzondere machtiging.[44]

63. Daarnaast bevat het Wetboek der Successierechten ook nog een aantal verplichtingen tot kennisgeving en inventarisatie (*zie hiervoor* de artikelen 96, 97, 98, 101 tot 103). Het gaat meer bepaald om de volgende verplichtingen tot kennisgeving:

- De overdracht, overgang, conversie of betaling van inschrijvingen of effecten op naam. De bevoegde ambtenaar van de fiscus zal vooraf ter kennis moeten worden gebracht van deze activa.[45]
- De teruggave, betaling of overdracht van effecten, sommen of waarden die toekomen aan een erfopvolger ingevolge overlijden van een rijksinwoner, ook wanneer ze op naam staan van een echtgenoot.[46]
- De houder of schuldenaar van effecten, sommen of waarden die volgens de overeenkomst worden teruggegeven, betaald of overgedragen op order van een medeplichtige, is verplicht een lijst af te geven aan de bevoegde ambtenaar van de fiscus van zodra het overlijden van één der belanghebbenden of de echtgenoot ervan bekend is.

64. De inventarisatieverplichting houdt in dat de bankier bepaalde inventarisaties zal moeten doorvoeren na het openvallen van de nalatenschap, wanneer de erflater of diens echtgenoot, één of meer brandkasten bij de bankier huurde.[47]

b. Inzake registratierechten

65. Inzake registratierechten is melding te maken van artikel 183 W. Reg. op grond waarvan de Administratie over onderzoeksrechten beschikt ten overstaan van de bankiers, met het oog op de taxatie van de banken, hun klanten, alsook derden.[48] Ook hier is echter een bijzondere machtiging vereist van de Directeur-generaal van de BTW, registratie en domeinen, *"houdende nauwkeurige aanduiding van het rechtsfeit omtrent hetwelk navorsing dient gedaan."*[49]

c. Inzake de B.T.W.

66. In het kader van Belasting over de Toegevoegde Waarde (BTW) kunnen de BTW-ambtenaren, in afwijking van de gewone regels, de voorlegging van stukken vorderen die nodig zijn voor een controle van de eigen fiscale situatie van de bank, maar ook hier opnieuw mits een voorafgaande machtiging van de Directeur-generaal van de BTW-administratie.[50]

67. Deze bijzondere machtiging moet de fiscale ambtenaren toelaten om uit de boeken en stukken de gegevens te putten die nuttig worden geacht voor de controle op de belastingheffing, met betrekking tot alle handelingen, verricht door derden.[51] Uit de parlementaire stukken blijkt evenwel dat deze machtiging van de Directeur-generaal uitzonderlijk en geval per geval moet worden toegekend, ter beveiliging van het bankgeheim.[52]

68. Op grond van Art. 61,§1 W.BTW zijn banken er toe gehouden hun boeken en stukken, zonder verplaatsing, voor te leggen aan de Administratie, teneinde de correcte belastingheffing mogelijk te maken, zowel wat betreft de bank zelf, als in hoofde van derden.[53] Daarnaast moeten de bankinstellingen, juist zoals de andere BTW-belastingplichtigen, voldoen aan bepaalde administratieve verplichtingen, zoals het opstellen van een jaarlijkse listing 'afnemers', waarin de klanten van de bank vermeld staan. Deze listing zal door de Administratie worden omgezet in een listing 'leveranciers'. Op die manier wordt een lijst verkregen van de BTW-belastingplichtige leveranciers, waaronder de banken.[54]

Ook in de materie van de indirecte belastingen wordt het bankgeheim aldus voldoende beperkt.[55]

*3. Fiscaalrechtelijk bankgeheim: conclusie*

69. Wat de discretieplicht in fiscale zaken betreft, is dus zowel bij de directe als bij de indirecte belastingen een voorafgaandelijke machtiging vereist voor het opvragen van inlichtingen en dit, om zogenaamde 'ontsporingen' te vermijden. De vraag is echter in welke mate deze machtiging een voldoende garantie vormt.[56]

*C. De discretieplicht in burgerlijke zaken*

70. Op grond van de artikelen 871, 877, 915 en 916 van het Gerechtelijk Wetboek dienen zowel de in een proces betrokken partijen als derden (eventueel op bevel van de rechter) hun medewerking te verlenen bij de ontdekking van de waarheid.[57] In voormelde artikelen worden in hoofdzaak de overlegging van stukken en het getuigenverhoor geviseerd.

71. Zo kan een kredietinstelling op grond van artikel 877 van het Gerechtelijk Wetboek door de rechter verplicht worden om welbepaalde stukken over te leggen, indien er gewichtige, bepaalde en met elkaar overeenstemmende vermoedens bestaan dat de kredietinstelling een stuk onder zich heeft dat het bewijs inhoudt van een ter zake dienend feit.[58] Artikel 915 van het Gerechtelijk Wetboek heeft bovendien tot gevolg dat de kredietinstelling kan opgeroepen worden om in rechte te getuigen[59], hoewel dit in de praktijk slechts sporadisch zou voorkomen.[60]

72. Ook artikel 929 van het Gerechtelijk Wetboek is van belang. In het kader van deze bepaling kan het beroepsgeheim als wettige reden worden ingeroepen om te worden ontslagen van de eedaflegging

---

40  P. GLINEUR, "De beperkingen van het bankgeheim ten opzichte van de Administratie der belastingen", *De Belg. Acc.* 1997, afl. 1, 72-85.
41  Art. 100 Wetboek der Successierechten.
42  C. LANTONNOIS VAN RODE, "Het bankgeheim en de indirekte belastingen", *Fid. Ber.* 1987, afl. 6, 5-8.
43  P. GLINEUR, "De beperkingen van het bankgeheim ten opzichte van de Administratie der belastingen", *De Belg. Acc.* 1997, afl. 1, 72-85.
44  C. LANTONNOIS VAN RODE, "Het bankgeheim en de indirekte belastingen", *Fid. Ber.* 1987, afl. 6, 5-8.
45  W. DIERICK, "De fiscus en het bankgeheim", *A.F.T.* 1982, 211-220.
46  P. GLINEUR, "De beperkingen van het bankgeheim ten opzichte van de Administratie der belastingen", *De Belg. Acc.* 1997, afl. 1, 72-85.
47  W. DIERICK, "De fiscus en het bankgeheim", *A.F.T.* 1982, 211-220.
48  C. LANTONNOIS VAN RODE, "Het bankgeheim en de indirekte belastingen", *Fid. Ber.* 1987, afl. 6, 5-8.
49  P. GLINEUR, "De beperkingen van het bankgeheim ten opzichte van de Administratie der belastingen", *De Belg. Acc.* 1997, afl. 1, 72-85.

50  Art. 62 bis W. BTW; F. DESTERBECK, "Het Zwitsers bankgeheim in fiscale zaken vanuit Belgisch standpunt nader bekeken", *A.F.T.* 1998, 320-341.
51  W. DIERICK, "De fiscus en het bankgeheim", *A.F.T.* 1982, 211-220.
52  *Hand.* Kamer, 27 mei 1983, p.2394.
53  A. LEFEBVRE, "Bankgeheim: reëel of virtueel?", *Bull.Fisc.Fin.R.* 2000, afl.5, 13-33.
54  C. LANTONNOIS VAN RODE, "Het bankgeheim en de indirekte belastingen", *Fid. Ber.* 1987, afl. 6, 5-8.
55  B. BOONE, "Opheffing bankgeheim: versoepeling van de voorwaarden", *Fiscoloog* 1996, afl.590, 1-2.
56  A. LEFEBVRE, "Bankgeheim: reëel of virtueel?", *Bull.Fisc.Fin.R.* 2000, afl.5, 13-33.
57  G. DU BOIS, « Het bankgeheim », *T.P.R.* 1986, 433-469.
58  Artikel 877 Ger.W.
59  Artikel 915 Ger.W.
60  R. SMITS, "Privacy en bankgeheim", onuitgegeven.

of de getuigenis. Gelet op de bewoordingen van artikel 929 Ger.W. (*"als wettige reden wordt onder meer beschouwd het beroepsgeheim waarvan de getuige bewaarder is"*) kan worden aangenomen dat ook de professionele discretieplicht van de bankier in aanmerking kan komen voor een ontslag van getuigenis en eedaflegging.[61] Bovendien werd in het rapport van de Koninklijke Commissaris Van Reepinghen met betrekking tot het nieuw Gerechtelijk Wetboek de overlegging van stukken op één lijn geplaatst met het getuigenverhoor[62], waardoor artikel 929 Ger.W. zowel geldt voor het getuigenverhoor als voor de overlegging van stukken[63]. Is de kredietinstelling zelf partij in het geding, kan zij steeds gebruik maken van de data waarover zij beschikt met het oog op de verdediging van haar belangen.[64]

### D. De discretieplicht en de bescherming van persoonsgegevens

73. Gelet op het nauwe verband tussen de informatisering van de samenleving enerzijds en de hieruit voortvloeiende tendens tot privacy-bescherming anderzijds, dient ook in het licht van deze evolutie de vraag te worden gesteld naar de positie van het bankgeheim[65]. De werking van de banksector gaat immers automatisch gepaard met de aanwezigheid, registratie en verwerking van een aanzienlijke hoeveelheid gegevens. Deze gegevensverwerking neemt, gelet op de merkbare uitbreiding van het cliënteel en de stijging van het aantal bancaire verrichtingen, bovendien voortdurend toe.[66] Banken zijn vaak door de wet overigens vaak zelf verplicht om bepaalde persoonlijke gegevens te verwerken en te bewaren.[67] Er valt bijvoorbeeld te verwijzen naar Artikel 5 van de Wet op het Consumentenkrediet, op grond waarvan de kredietgever slechts een krediet mag verstrekken wanneer hij redelijkerwijze kan verwachten dat de consument in staat zal verkeren zijn contractuele verplichtingen na te komen[68].

74. Er is vast te stellen dat, door de nauwe betrokkenheid van de banksector met de bescherming van de privacy in het algemeen, en de persoonlijke levenssfeer in het bijzonder, met zekere overtuiging kan worden gesproken van het bestaan van een spanningsveld tussen het recht op informatie over andermans vermogen *enerzijds*, en het recht op de bescherming van de persoonlijke levenssfeer *anderzijds*[69].

75. Het domein van de informationele privacy is echter veel ruimer dan het domein van de plicht tot beroepsdiscretie die op de bankier rust.[70] Ter illustratie verwijzen we naar DUMORTIER, die de informatieverwerking opdeelt in drie fasen, zijnde invoer, verwerking en uitvoer, en dit over twee grote niveaus, namelijk het interne en het externe.[71] Passen we DUMORTIERS indeling toe op de discretieplicht, dan komen we tot de vaststelling dat deze enkel betrekking heeft op de uitvoerfase en dit dan ook enkel op het externe niveau. Gelet op het feit dat de privacy wél de verschillende fasen en niveaus bestrijkt, lijkt het in eerste instantie zo dat deze veel ruimere verplichtingen voor de bankier

met zich meebrengt dan de discretieplicht *as such*.[72] Toch zal hieronder blijken dat de bescherming van de cliënt op basis van de *discretieplicht* op bepaalde vlakken ruimer is dan de bescherming volgens *de Wet op de persoonlijke levenssfeer*. Dit heeft alles te maken met het finaliteitsbeginsel van deze wet (cf. *infra* randnummer 78).

76. Naast de eigenlijke privacywet (Wet van 8 december 1992 ter bescherming van de persoonlijke levenssfeer)[73] kan in België worden teruggevallen op twee specifieke internationale verdragsbepalingen met directe werking. Het gaat meer bepaald om Artikel 8 van het EVRM[74] en Artikel 17 van het BUPO-verdrag[75] of het IVBPR. Vermits deze grondrechten in eerste instantie betrekking hebben op de relatie tussen de burger en de staat en dus in hoofdzaak een verticale werking genieten, is hun relevantie ten aanzien van de banksector vrij beperkt[76].

77. Naast deze verdragsrechtelijke bepalingen en de Wet betreffende de bescherming van de persoonlijke levenssfeer zijn er echter nog andere wettelijke bepalingen, die van belang zijn voor de banksector. Zo hebben de Wet op het Consumentenkrediet[77] en de Wet op het Hypothecair Krediet[78] in grote mate een invloed op de banksector.

78. Deze bijdrage zal zich enkel buigen over de Wet betreffende de bescherming van de persoonlijke levenssfeer (i.e. de problematiek van de mededeling van persoonsgegevens door de banksector). Daaromtrent moet allereerst benadrukt worden dat de Wet ter bescherming van de persoonlijke levenssfeer geen uitdrukkelijke regeling bevat over de mededeling van persoonsgegevens aan derden door de houder van een bestand, tenzij voor wat betreft medische gegevens, gevoelige gegevens, en de gegevensoverdracht van België naar het buitenland, waarvan de regeling vervat ligt in de artikelen 6, 7 § 4 en 22. Door het gebrek aan dergelijke specifieke bepalingen, kan worden verondersteld dat de verstrekking van gegevens door de kredietinstelling enkel kan gebeuren in overeenstemming met het in artikel 5 van deze privacywet geponeerde finaliteitsbeginsel[79], volgens hetwelk *persoonsgegevens slechts verwerkt mogen worden voor duidelijk omschreven en wettige doeleinden, zonder dat deze gegevens gebruikt mogen worden op een wijze die onverenigbaar is met deze doeleinden.*

79. De formulering "*duidelijk omschreven en wettige doeleinden*" impliceert dat de doeleinden transparant moeten zijn en de finaliteit in heldere en precieze termen moet zijn omschreven.[80] Inhoudelijk zal deze finaliteit onwettig zijn, wanneer ze indruist tegen een wettelijk verbod, zoals bijvoorbeeld de verwerking van gegevens betreffende de huidskleur, die in strijd is met het wettelijk verbod op racisme. De onwettigheid kan ook voortvloeien uit een disproportionaliteit van de finaliteit. Om dergelijke

---

61  G. Du Bois, "Het bankgeheim", *T.P.R.* 1986, 433-469.
62  Rapport Van Reepinghen, *Hand.*, Senaat, 1963-1964, nr.60, 213.
63  R. Smits, "Privacy en bankgeheim", onuitgegeven.
64  R. Smits, "Privacy en bankgeheim", onuitgegeven.
65  E. Meysmans, "Bancaire bestanden en privacy-bescherming in België", *T.Comp.*1992, 9-10.
66  Th. Leonard, "Banques et vie privée: deux problèmes d'application de la loi du 8 décembre 1992", in X., *Droit de l'informatique : enjeux-nouvelles responsabilités*, Brussel, Ed. du Jeune Barreau 1993, 445.
67  E. Meysmans, "De wet tot bescherming van de persoonlijke levenssfeer ten opzichte van de verwerking van persoonsgegevens, gevolgen voor de banksector", in X., *De bescherming van de persoonlijke levenssfeer.Toepassing van de Wet van 8 december 1992 in de banksector*, Brussel, Belgische Vereniging van Banken, 1-2.
68  Wet van 12 juni 1991 op het Consumentenkrediet, *B.S.* 9 juli 1991, laatst gewijzigd door de wet van 22 december 2003, *B.S.*31 november 2003.
69  A. Verbeke, "Informatie over andermans vermogen: belangenafweging tussen het recht op privacy van de schuldenaar en het recht op informatie van de schuldeiser", *R.W.* 1993-1994, 1141 e.v.
70  K. Van Raemdonck, "De invloed van de Wet van 8 december 1992 ter bescherming van de persoonlijke levenssfeer ten opzichte van de verwerking van persoonsgegevens op de banksector", *R.W.* 1996-97, deel 1: 897-914, slot: 937-947.
71  J. Dumortier, *Europese en Belgische reglementering over de behandeling van persoonsgegevens*, Leuven, ICRI 1993, 3-4.

72  K. Van Raemdonck, "De invloed van de Wet van 8 december 1992 ter bescherming van de persoonlijke levenssfeer ten opzichte van de verwerking van persoonsgegevens op de banksector", *R.W.* 1996-97, deel 1: 897-914, slot: 937-947.
73  Wet van 8 december 1992 ter bescherming van de persoonlijke levenssfeer, *B.S.* 18 maart 1993, laatst gewijzigd door de Wet van 5 augustus 2003, *B.S.* 7 augustus 2003.
74  Goedgekeurd bij Wet van 13 mei 1955, *B.S.* 19 augustus 1955.
75  Goedgekeurd bij Wet van 15 mei 1981, *B.S.* 6 juli 1983.
76  K. Van Raemdonck, "De invloed van de Wet van 8 december 1992 ter bescherming van de persoonlijke levenssfeer ten opzichte van de verwerking van persoonsgegevens op de banksector", *R.W.* 1996-97, deel 1: 897-914, slot: 937-947.
77  Wet van 12 juni 1991 op het consumentenkrediet, *B.S.* 9 juli 1991, laatst gewijzigd door de wet van 22 december 2003, *B.S.*31 november 2003.
78  Wet van 4 augustus 1992 op het Hypothecair Krediet, *B.S.* 19 augustus 1992, laatst gewijzigd door de Wet van 24 maart 2003, *B.S.* 2 mei 2003, en KB van 25 maart 2003, *B.S.* 31 maart 2003.
79  Th. Leonard, « Banques et vie privée: deux problèmes d'application de la loi du 8 décembre 1992 », in X., *Droit de l'informatique*, Brussel, Editions du jeune barreau, 1993, 476-479.
80  Th. Leonard, « Banques et vie privée: deux problèmes d'application de la loi du 8 décembre 1992 », in X., *Droit de l'informatique*, Brussel, Editions du jeune barreau, 1993, 455-456.