# EXHIBIT L

**Excerpt from Commercial Court of Brussels, 22 November 2001, JLMB 2003, 980.**

In addition, the bank has the right to refuse, on the basis of its obligation of discretion, the communication to the claimant of documents relating to the financial situation of another client which has not even been implicated in these proceedings by the claimant.

Que la réponse à cette question est aisée même si seul le procès-verbal d'inventaire des biens mobiliers dépendant de la faillite de la S.C.S. Di M. & Cie est produit;

Attendu que l'actif de la S.C.S. ne saurait être réduit au seul matériel apporté lors de la constitution de la société; qu'il peut être considéré, dès lors que l'activité commerciale exercée à ... l'a été à partir de 1998 par la seule S.C.S. et que V. Di M. ne revendique pas la propriété d'une partie du matériel, que la société faillie est propriétaire du fonds de caisse, du véhicule, du matériel et des marchandises inventoriés le 6 juin 2002 ainsi que V. Di M. l'a d'ailleurs déclaré lors de la clôture du procès-verbal;

Que, pour ce qui est du mobilier privé garnissant l'immeuble, il peut être admis que celui-ci est la propriété des époux Di M.-F.;

Que la confusion des patrimoines du commandité et de la société faillie n'est donc pas telle que deux liquidations parallèles s'avéreraient impossibles;

Qu'il n'y a dès lors pas matière à jonction des masses active et passive des deux faillites.

Dispositif conforme aux motifs.

Siég. : MM. R. de Francquen, M. Ligot et Mme A. Jacquemin.
       Greffier : M. J.-J. Boussa.
Plaid. : Me S. Bertrand.

*J.L.M.B. 03/245*

## Tribunal de commerce de Bruxelles (10e chambre)
### 22 novembre 2001

**Banque – Généralités – Secret professionnel – Devoir de discrétion – Preuve – Matières civiles – Production de documents.**
*C'est à juste titre que le banquier invoque son devoir de discrétion professionnelle pour s'opposer à la demande de production de documents sur la situation financière d'un client alors que, d'une part, ce client n'a pas été appelé à la cause par le demandeur et que, d'autre part, la demande ne porte pas sur la production d'un document précis utile à la solution du litige.*

(C. / S.A. Fortis Banque)

La demande principale tend à entendre condamner la S.A. Générale de Banque (actuellement S.A. Fortis Banque) à payer la somme provisionnelle de 508.855 francs.

La demande reconventionnelle tend à entendre condamner F.C. à payer 105.000 francs.

Le 16 juillet 1991, G. Di C., en sa qualité de président de la New York Soccer Associated Inc (N.Y.S.A.), a tiré sur le compte bancaire de cette société ouvert chez la défenderesse (auprès de l'agence Montjoie) un chèque de 200.000 dollars US payable à l'ordre de F.C.

Le 7 août 1991, le demandeur a ouvert un compte à l'agence Montjoie afin d'encaisser ce chèque.

Le document d'ouverture signé par le demandeur donne comme instructions «interdiction d'écrire» et la mise à disposition des extraits à l'agence.

Le demandeur ne conteste pas que, lors de l'ouverture du compte, il était accompagné de G. Di C.

H.L., le préposé de la banque, a déclaré, lors de son audition par la gendarmerie le 3 janvier 1995, que tous les deux (C. et Di C.) lui avaient demandé de garder le chèque en attendant l'arrivée des fonds des Etats-Unis, qui ne sont jamais arrivés.

H.L. a rendu le chèque après un certain temps à Di C.

Di C. a remis le chèque au demandeur aux Etats-Unis. Le demandeur l'a représenté via une banque américaine le 8 avril 1992.

La banque a renvoyé le chèque en indiquant qu'il n'était pas provisionné.

Le compte de C. a été clôturé d'office en août 1992.

Le demandeur a cité, le 22 janvier 1993, la banque en vue d'obtenir le paiement de la somme de 200.000 dollars US.

Le demandeur y soutenait qu'une somme de 200.000 dollars US avait été déposée sur le compte qu'il avait ouvert auprès de la défenderesse.

Il a porté plainte en se constituant partie civile le 17 mai 1994 à l'encontre de G. Di C. et de H.L.

La chambre des mises en accusation a confirmé, le 31 mai 1999, qu'il n'y avait pas lieu à poursuivre tant Di C. que H.L.

Dans ses conclusions déposées le 10 avril 2000, le demandeur soutient que la banque a commis des fautes.

Il lui reproche d'avoir accepté de mettre un chèque à l'encaissement alors qu'elle savait que ce dernier n'était pas provisionné, de ne pas le lui avoir fait savoir, d'avoir remis le chèque au tireur plusieurs mois plus tard et de n'avoir pas fait dresser le protêt dans les délais légaux.

Or, il ressort des faits sur la base du dossier pénal que C. savait que le chèque n'était pas provisionné lorsqu'il a été remis à la banque, qu'il savait que son compte ne serait pas crédité du montant du chèque tant que le compte de la N.Y.S.A. ne serait pas crédité d'un montant équivalent au chèque, que C. a reçu le chèque après sa restitution par la banque à Di C., qu'il l'a représenté et que la banque a fait savoir que le chèque n'était pas provisionné.

La banque a donc respecté les instructions qui lui avaient été données de commun accord par C. et Di C.

La banque n'a dès lors commis aucune faute et, au surplus, à supposer même l'existence d'une faute professionnelle, cette faute n'a causé aucun préjudice à C. et est sans aucun lien causal avec le dommage subi par le demandeur en raison du non-paiement du chèque.

Le demandeur allègue que la banque a consenti une ouverture de crédit qui aurait été suffisante pour payer son chèque.

La banque affirme n'avoir pas consenti d'ouverture de crédit.

La N.Y.S.A. a ouvert un compte le 3 juillet 1991.

Lors de la clôture du compte au 14 décembre 1992, ce dernier était débiteur d'un montant de 2.695.855 francs.

Il ressort du relevé du compte que ce débit résulte de deux dépassements, l'un de 2.177.000 francs le 2 août 1991 et l'autre de 209.594 francs le 8 octobre 1991.

La banque explique que le compte a été débité de 2.117.000 francs suite à des opérations de devises et que l'augmentation du solde débiteur entre la première remise du chèque à l'encaissement le 7 août 1991 et la clôture du compte le 14 décembre 1992 provient de la comptabilisation mensuelle des intérêts de retard sur découvert.

Elle soutient dès lors avoir donné des facilités de caisse à N.Y.S.A.

A supposer même que la banque ait consenti une ouverture de crédit et non des facilités de caisse, il ressort du relevé de compte que le montant de cette ouverture de crédit n'était pas suffisant pour couvrir le montant du chèque.

Si H.L. déclare que «de l'argent a été prêté par la Générale à Soccer sur la base de mon enquête sur place et de mon avis», il précise également «tous deux (c'est-à-dire C. et Di C.) m'ont demandé de garder le chèque en attendant l'arrivée des fonds des Etats-Unis. Ils avaient convenu entre eux ces dispositions car ils attendaient que les sponsors américains paient la Soccer, le compte de la Soccer approvisionné, je pouvais donc transférer les fonds vers le compte de C.».

H.L. ne déclare dès lors pas que le compte devait être approvisionné par une ouverture de crédit mais qu'il devait l'être par des fonds provenant de sponsors.

Par ailleurs, il fait état non d'une ouverture de crédit mais d'un prêt accordé après son enquête sur place et son avis.

C. demande la production de l'intégralité des documents relatifs à la N.Y.S.A., donc de toute la correspondance échangée entre la banque et la N.Y.S.A. ainsi que le rapport de H.L. concernant la crédibilité de la N.Y.S.A., c'est-à-dire des documents entre un tiers et la banque ou des documents internes de la banque concernant un tiers.

Cette demande tendant à la production de l'intégralité des documents relatifs à la N.Y.S.A. est formulée de manière générale et ne concerne dès lors pas un document précis.

Le fait que le client d'une banque soit débiteur envers un tiers n'a, par ailleurs, pas pour conséquence que le banquier doit lui refuser un crédit ou que ce crédit doit nécessairement avoir pour objet de couvrir la dette de ce tiers.

Les documents relatifs à un prêt éventuel accordé à N.Y.S.A. ne sont donc pas utiles à la solution du présent litige.

Au surplus, c'est à juste titre que la banque refuse, sur la base de son devoir de discrétion, de communiquer au demandeur des documents relatifs à la situation financière d'un autre client qui n'a même pas été appelé à la cause par le demandeur.

Il n'y a dès lors pas lieu de faire droit à la demande de production de l'intégralité des documents relatifs à la New York Soccer Associated Inc et du rapport interne concernant la crédibilité de cette société.

Interrogée par le conseil du demandeur, la banque l'a informé que le compte avait été clôturé d'office le 27 août 1992 et elle a demandé, conformément au règlement des opérations, auquel le demandeur avait adhéré en ouvrant le compte, un montant de 5.000 francs pour la couverture des frais de recherche concernant le chèque litigieux de 200.000 dollars US.

Le demandeur n'a pas payé ce montant mais a cité la banque le 22 janvier 1993 en vue d'obtenir le paiement de la somme de 200.000 dollars US en soutenant qu'une telle somme avait été déposée sur le compte qu'il avait ouvert auprès de la défenderesse et en alléguant qu'il s'agissait de débats succincts et alors qu'il savait que le montant du chèque litigieux n'avait pas été déposé dans sur son compte !

Il a ensuite porté plainte en se constituant partie civile le 17 mai 1994, non seulement à l'encontre de G. Di C. mais également à l'encontre du préposé de la banque, H.L., pour émission d'un chèque sans provision et escroqueries.

La chambre des mises en accusation a confirmé, le 31 mai 1999, l'ordonnance de la chambre du conseil en décidant qu'il n'y avait pas lieu à poursuivre tant Di C. que H.L.

Il ressort du dossier pénal que la banque a agi avec l'accord du demandeur.

Le demandeur continue cependant de prétendre que, par ses actions (acceptées et connues du demandeur), la banque a commis une faute.

Par ailleurs, tout en soutenant que le chèque était sans provision (après avoir porté plainte en se constituant partie civile), il prétend également que le chèque était provisionné car couvert par une ouverture de crédit ...

Le relevé de compte démontre qu'aucune ouverture de crédit n'a été consentie à N.Y.S.A.

Le demandeur continue à exiger la production par la défenderesse de documents qui ne sont pas pertinents à la solution du litige et qui concernent la situation financière d'un tiers qui n'est pas à la cause.

Il ressort de ces faits que la demande et son maintien a un caractère téméraire et vexatoire.

Il convient, par conséquent, de condamner le demandeur à payer *ex æquo et bono* 100.000 francs à titre de dommages et intérêts.

Il y a lieu, en outre de le condamner à payer 5.000 francs pour les frais de recherche.

Dispositif conforme aux motifs.

Siég. : Mme **Rubinstein**, MM. **Rayé** et **Courtin**.   Greffier : Mme **Giels**.
Plaid. : M<sup>es</sup> **Ph. Claeys** (loco M. **Spandre**) et **J.-P. Buyle**.

*J.L.M.B. 02/49*