# EXHIBIT M

**Excerpt from Court of First Instance of Brussels, 25 February 2000, TBH 2001, 860.**

In the case at hand, the defendant communicated confidential information, relating both to the private and the professional sphere, to a third party. Apart from the issue whether the third party would have made use of this information (which would be material harm) or not, it is undisputed that claimant's legitimate confidence in the services of the defendant has been violated. Taking account of the defendant's capacity, a bank institution to whom claimant confided its entire financial status for years and assuming that this information would remain strictly confidential, the moral harm is much larger now that it has been established that the defendant did not abide by its obligation of discretion, even only by mistake.

*4.2. DEVOIR DE DISCRÉTION PROFESSIONNELLE – PROFESSIONELE DISCRETIEPLICHT*

## 12. Rechtbank van Eerste Aanleg te Brussel

25 februari 2000

**BANK**
Privaatbankrecht – Beroepsgeheim van de bankier – Professionele discretie – Morele schade

*De bank die, zelfs per vergissing, informatie overmaakt aan een derde betreffende de financiële situatie van één van haar cliënten, overtreedt haar professionele discretieplicht. De schade van de cliënt kan materieel en moreel zijn.*

*Het herstel van de morele schade strekt ertoe de smart, de pijn of elke andere morele droefenis te herstellen die door de cliënt werd ondergaan.*

*Onafhankelijk van het onrechtmatig gebruik dat de derde zou kunnen maken van de informatie die op onregelmatige wijze werd overgemaakt (en die een materiële schade zou betreffen), kan de cliënt verstoord zijn, in zijn noodzakelijke en legitieme vertrouwensrelatie die hij met zijn bankier onderhoudt, evenals door het niet respecteren van zijn privéleven.*

**BANQUE**
Droit bancaire privé – Secret bancaire – Discrétion professionnelle – Dommage moral

*Viole son devoir de discrétion professionnelle, le banquier qui transmet, même par erreur, à un tiers des informations sur la situation financière d'un de ses clients. Le préjudice du client peut être matériel et moral.*

*La réparation du préjudice moral tend à soulager la douleur, la peine ou tout autre mal moral subi par le client.*

*Indépendamment de l'usage irrégulier que le tiers pourrait faire de l'information transmise irrégulièrement (et qui consisterait en un dommage matériel), le client peut avoir été troublé dans la relation de confiance nécessaire et été légitime qu'il entretient avec son banquier et par le non respect de sa vie privée.*

(Bauwens / Generale Bank)

### I. De feiten

Bij brief van 20 december 1993, vroeg de Duitse vennootschap Linde-KCA-Dresden GmbH aan verweerster informatie betreffende haar rekening nr. 220-0212145-42 (rekening Walter Bauwens/R. Linde KCA) te verstrekken aan haar commissaris-revisor, de Duitse vennootschap KPMG Rheinische Treuhand-Union GmbH (hierna "KPMG") (stuk 1 eiser).

Voormelde rekening betrof een rubriekrekening geopend door eiser betreffende Linde-KCA-Dresden GmbH.

Bij brief van 20 januari 1994, maakte verweerster de gevraagde informatie over aan KPMG, met kopie aan eiser (stukken 2 en 3 eiser).

Hierbij vergiste verweerster zich en, in plaats van zich te beperken tot de financiële toestand van de Duitse vennootschap, maakt verweerster de volledige financiële situatie van eiser over (o.a. zichtrekening, financieringen, bewaargeving, stand van alle andere klantenrekeningen).

Bij brief van 28 januari 1994, drukte eiser zijn ongenoegen uit over het feit dat deze informatie verstrekt werd zonder zijn toestemming (stuk 3 eiser).

Bij brief van 1 februari 1994 bood verweerster haar excuses aan aan eiser voor de door haar begane administratieve vergissing (stuk 4 eiser), excuses die door eiser niet aanvaard werden (stuk 6 eiser).

Onderhandelingen tussen partijen, waarbij eiser aanvankelijk een schadevergoeding van 4.000.000 fr. vorderde, hebben niet geleid tot een minnelijke regeling van de zaak.

Per aangetekend schrijven van 2 maart 1994, stuurde KPNG de voor haar niet bestemde documenten terug aan verweerster, met mededeling hiervan aan eiser (stukken 8 en 9 verweerster).

### II. In rechte

Verweerster betwist niet dat zij een fout heeft begaan bij het verstrekken aan KPMG van meer informatie dan gevraagd.

Ten onrechte stelt zij dat eiser de geleden morele schade, in oorzakelijk verband met de fout, niet aantoont.

Eiser vordert geen materiële schade, maar enkel morele schade.

Volgens het Hof van Cassatie heeft de vordering tot schadevergoeding wegens morele schade tot doel de pijn, de smart of enig ander moreel leed te lenigen en in die mate de schade te herstellen (cf. Cass. 3 februari 1987, *R.W.* 1987-88, p. 220).

Enkel de werkelijk geleden schade dient in aanmerking te komen voor vergoeding, zonder enige vorm van burgerlijke sanctionering van verweerster te beogen.

*In casu* heeft verweerster vertrouwelijke informatie, zowel met betrekking tot het privéleven als tot het professionele, overgemaakt aan een derde.

Los van het feit of de derde al dan niet gebruik zou hebben gemaakt van deze informatie (dit zou materiële schade zijn), staat het vast dat eiser gekrenkt werd in het rechtmatig vertrouwen dat hij stelde in de diensten van verweerster.

Gelet op de hoedanigheid van verweerster, een bankinstelling aan wie eiser het geheel van zijn financiële toestand sinds jaren toevertrouwde, in de veronderstelling dat deze informatie strikt vertrouwelijk zou blijven, is deze morele schade des te groter nu vaststaat dat verweerster zich niet gehouden heeft aan haar discretieplicht, zij het per vergissing.

De morele schade bestaat niet alleen in het feit dat de noodzakelijke vertrouwensrelatie tussen partijen verbroken werd door een fout van verweerster. Ook de mededeling aan een derde van informatie die de privacy van eiser raken, wordt als krenkend ervaren in hoofde van eiser.

Deze morele schade is des te groter gelet op de hoedanigheid van de derde, een concurrent op professioneel gebied, die kennis krijgt van de financiële toestand zowel van eiser, als van zijn volledige klantenbestand.

Hierdoor blijft eiser in het onzekere over de intenties van de derde met betrekking tot de kennisname van deze informatie. Dit is geen materiële schade – er wordt niet bewezen dat KPMG gebruik of misbruik heeft gemaakt of zal maken van deze informatie – maar maakt wel concrete morele schade uit.

De schade dient per definitie *ex aequo et bono* geraamd te worden, gelet op de afwezigheid van voldoende maatstaven om de te herstellen schade op precieze wijze te beoordelen.

Gelet op hetgeen voorafgaat, wordt de schade heden door de rechtbank begroot op 100.000 fr.

Om deze redenen,

de rechtbank,

Verklaart de vordering ontvankelijk en gegrond in de hierna volgende mate,

Veroordeelt verweerster om te betalen aan eiser het bedrag van 100.000 fr., te vermeerderen met de gerechtelijke interesten vanaf de datum van uitspraak.

D.d 25 februari 2000 – Rb. Brussel
Zet.: de Heer Vanwinsen, kamervoorzitter, H. Cardon en Mevrouw Vander Steene, rechters
Pl.: Mrs Van Steen loco Goris en Michiels loco Buyle

### Observations

1. Cette décision est coulée en force de chose jugée.

2. Un établissement de crédit doit garder le secret tant sur les opérations traitées avec son client que sur les renseignements donnés par celui-ci en vue de leur réalisation[1].

Cette obligation, fondée sur les usages[2], ne porte que sur les informations confidentielles confiées, surprises ou apprises à l'occasion des opérations, ou sur les opérations elles-mêmes ainsi que sur la situation des comptes[3].

Les informations confidentielles doivent présenter un caractère suffisamment précis (p.e., le montant ou le mouvement en compte) et de nature à porter atteinte au secret des affaires ou au secret de la vie privée ou des fortunes.

Sont ainsi considérées comme des informations couvertes par le secret professionnel:
– le versement périodique fait par un client à une tierce personne et la nature des relations du client avec ce tiers[4],
– l'identité de la personne à laquelle un titulaire d'un compte a pu donner procuration[5],
– les informations données en matière d'escompte-fournisseur sur la situation financière du tiré à l'égard du tireur[6],
– les informations que le banquier tiré possède sur la situation du compte du tireur d'un chèque[7],
– les renseignements concernant les comptes d'un client[8] qu'ils soient d'espèces ou de titres, créditeurs ou débiteurs.

En l'espèce commentée, la faute de l'établissement de crédit n'était pas contestée. Au lieu de transmettre au reviseur chargé de contrôler les comptes annuels d'une entreprise des informations concernant un compte rubriqué ouvert conjointement par cette entreprise et l'un des clients de la banque (par ailleurs lui-même reviseur d'entreprise) l'établissement de crédit transmit par erreur d'autres informations confidentielles sur les avoirs de son client (soldes des comptes privés et professionnels, financements et crédits octroyés, situation de tous les autres comptes clients, dépôts …).

---

[1] J. Van Ryn et J. Heenen, *Principes de droit commercial*, T. III, p. 290, n° 2049.
[2] *Novelles, Droit bancaire*, T. III, livre XIII, discrétion professionnelle, p. 531, n° 1; J. Van Rijn et J. Heenen, *o.c.*, T.III, p. 290, n° 2049; J. Pardon, *Le droit des normes professionnelles et techniques*, Commission droit et vie des affaires, 1983, p. 16 et s.; A. Willems, J.P. Buyle, Les usages en droit bancaire, *DAOR*, 1990/17, p. 90.
[3] R. Henrion, *Le secret professionnel du banquier*, ULB, Institut de sociologie, 1963, p. 55.
[4] Th. Samin, *Le secret bancaire*, Afr. Diffusion, n° 9 et s.
[5] CA Rouen 1er ch., 4 décembre 1996, *Juris-Data*, n° 056586.
[6] Bruxelles 25 janvier 1990, *R.D.C.* 1992, p. 71.
[7] Bruxelles 18 mai 1998, *R.D.C.* 1999, p. 699 et obs. J.P. Buyle et M. Delierneux.
[8] CA Paris 17 octobre 1931, *Gaz. pal.* 12 décembre 1931, CA Paris 6 février 1998, *Rev. dr. bancaire et bourse*, n° 69, septembre-octobre, 1998, p. 175.