# EXHIBIT N

**Excerpt from J. De Meyer, "Het overgangsrecht voor executie van vreemde beslissingen," RW 2009-10, 1393.**

In the case at hand, the decision was rendered in the US. Since Belgium did not enter into an exequatur treaty with this country, the court of appeal had to apply Belgian common law.

[…]

The court of appeal decided that it had to examine the decision of the New York Supreme Court in light of the new exequatur rules of the Code of International Private Law […]

trokken met andere schendingen van het recht van verdediging. Zo leidt miskenning van het zwijgrecht tot niet-ontvankelijkheid van de strafvordering als de verdediging dermate is verzwakt dat geen eerlijk proces meer mogelijk is (Cass. 13 mei 1986, *R.D.P.* 1986, 905, met conclusie van advocaat-generaal du Jardin; Cass. 6 mei 1993, *R.W.* 1993-94, 382, met conclusie van advocaat-generaal G. Bresseleers). De redelijke termijn van het strafproces is dus geen feitenkwestie meer waarover enkel de vonnisrechter het laatste woord heeft.

10. Voor de wetgever komt het erop aan snel duidelijkheid te verschaffen en art. 21*ter* Voorafgaande Titel Sv. bij te schaven (J. Meese, *o.c.*, *N.C.* 2008, 362). De strafprocedure moet immers zoveel mogelijk gebaseerd zijn op wettelijke voorschriften (art. 12 G.W.). In de fase ten gronde heeft de rechter slechts de keuze tussen eenvoudige schuldigverklaring en strafvermindering (art. 21*ter* Voorafgaande Titel Sv.). Nu verval van de strafvordering mogelijk is als sanctie tijdens het vooronderzoek, past het deze bepaling aan te passen, zodat ook de vonnisrechter de procedure kan stopzetten bij ernstige vertragingen. Niet alle strafzaken maken immers het voorwerp uit van een gerechtelijk onderzoek en de bijhorende regeling van de rechtspleging. Recentelijk oordeelde het Grondwettelijk Hof dat er geen verschil in behandeling meer bestaat tussen de onderzoeksgerechten en de vonnisgerechten inzake de sanctie verbonden aan de redelijke termijn. Als wegens vertragingen het recht van verdediging ernstig en onherstelbaar is aangetast, dient de vonnisrechter de niet-ontvankelijkheid van de strafvordering vast te stellen (GrwH 18 februari 2010, arrest 16/2010, hiervoren in dit nummer opgenomen, overweging B.2.). De sancties vermeld in art. 21*ter* Voorafgaande Titel Sv. gelden bijgevolg enkel voor vertragingen die het recht op tegenspraak niet aantasten en enkel als nadeel hebben dat de beklaagde te lang in de onzekerheid blijft over de uitkomst van het strafproces. De nieuwe leer van het Hof van Cassatie over de redelijke termijn getoetst in de voorbereidende fase van het strafproces heeft meteen repercussies op de fase ten gronde. De vraag rijst evenwel of de vonnisrechter gebonden is door het oordeel van het onderzoeksgerecht over de gevolgen van een strafonderzoek dat te lang aansleept. Mag de vonnisrechter het verval van de strafvordering nog vaststellen als de kamer van inbeschuldigingstelling deze sanctie niet gepast acht? Het leerstuk over de redelijke termijn is dus nog niet afgesloten.

Bart De Smet
Hoofddocent Universiteit Antwerpen
Substituut-procureur des Konings te Antwerpen

Hof van Beroep te Gent
1e Kamer – 17 april 2008

*Voorzitter:* de h. Floren
*Raadsheren:* de hh. Jocqué en Wylleman
*Advocaten:* mrs. Lambers en Maerten

Internationaal privaatrecht – Exequatur – Wetboek van Internationaal Privaatrecht – Inwerkingtreding – Rechterlijke controle

*Sinds de inwerkingtreding van het Wetboek van Internationaal Privaatrecht op 1 oktober 2004 is de rechter, bij de beoordeling van een verzoek tot het verlenen van een exequatur van een buitenlandse rechterlijke beslissing, niet langer verplicht om het buitenlandse geding opnieuw in feite en in rechte te controleren, ook wanneer dit vóór 1 oktober 2004 heeft plaatsgevonden.*

B. of S. t/ V.B., D'H. en G.

...

1. Overeenkomstig art. 126, § 2, eerste lid, van het Wetboek van Internationaal Privaatrecht (hierna: WIPR) zijn de artikelen van dit wetboek betreffende de uitwerking van buitenlandse rechterlijke beslissingen van toepassing op de beslissingen die na de inwerkingtreding van de wet (nl. 1 oktober 2004) zijn tot stand gekomen.

Art. 126, § 2, tweede lid, WIPR bepaalt evenwel dat een beslissing die vóór de inwerkingtreding van de wet is tot stand gekomen – zoals ter zake het vonnis van de Supreme Court van de Staat New York van 26 juni 1991 – gevolgen kan hebben in België indien zij aan de voorwaarden van de wet voldoet. Deze bepaling voorziet aldus in een begunstigingsregel voor buitenlandse rechterlijke beslissingen die dateren van vóór 1 oktober 2004. Deze begunstigingsregel, die ertoe strekt de erkenning en uitvoerbaarverklaring van buitenlandse rechterlijke beslissingen te bevorderen, laat toe om vroegere, strengere erkennings- of tenuitvoerleggingsregels terzijde te schuiven (zie: J. Erauw e.a., *Het Wetboek Internationaal Privaatrecht Becommentarieerd*, Antwerpen, Intersentia, 2006, 673) en heeft tot gevolg dat een vonnis uitvoerbaar kan worden verklaard wanneer het aan één van de beide systemen, nl. hetzij het vroegere art. 570 Ger. W., hetzij het nieuwe art. 25, § 1, WIPR voldoet.

2. Omdat art. 25, § 1, WIPR dat de weigeringsgronden voor erkenning of tenuitvoerlegging van buitenlandse rechterlijke beslissingen op limitatieve wijze opsomt, niet meer voorziet in de «controle van het geschil zelf», is er geen grond meer om over te gaan tot een hernieuwde beoordeling in feite en in rechte

van de grond van de zaak (zie reeds in dezelfde zin: Brussel 8 mei 2007, *J.T.* 2007, 622).

3. Mede gelet op het feit dat er geen nieuwe beoordeling van het geschil dient te geschieden in feite en in rechte, is er geen reden om aan appellante op te leggen om een beëdigde vertaling voor te leggen van de door haar aangewende stavingsstukken in de Engelse taal.

Deze stukken zijn voor het hof voldoende begrijpbaar met het oog op de door te voeren toets.

Ongetwijfeld zijn zij dat ook voor de voorlopig bewindvoerder van C. Investment and Trading SA Ltd. (hierna: «C.»).

Overigens ligt van de voornaamste stukken hetzij een beëdigde vertaling voor – dit is het geval voor het vonnis waarvan het exequatur wordt gevraagd – hetzij een vrije vertaling.

4. Appellante legt een uitgifte voor die volgens de wet van de Staat New York voldoet aan de voorwaarden gesteld voor haar authenticiteit/echtheid. Van deze beslissing wordt tevens een beëdigde vertaling voorgelegd.

5. Het vonnis van 26 juni 1991 dient enkel te worden getoetst aan de weigeringsgronden bepaald in art. 25, § 1, WIPR.

De daarin opgenomen klassieke weigeringsgronden zijn overigens grotendeels dezelfde als die van het vroegere art. 570 Ger. W. (nl. geen kennelijke onverenigbaarheid met de openbare orde, eerbiediging van het recht van verdediging, beslissing niet meer vatbaar voor een gewoon rechtsmiddel).

Enkel wat de vroegere weigeringsgrond inzake de bevoegdheid van de buitenlandse rechter betreft, bevat het WIPR nieuwe bepalingen: de tenuitvoerlegging dient te worden geweigerd wanneer de Belgische rechters exclusief bevoegd waren om kennis te nemen van de vordering (art. 25, § 1, 7°, WIPR) of wanneer de bevoegdheid van de buitenlandse rechter uitsluitend gegrond was op de aanwezigheid van de verweerder of van goederen zonder rechtstreeks verband met het geschil in de Staat waartoe die rechter behoort (art. 25, § 1, 8°, WIPR).

De nieuwe, in het vroegere art. 570 Ger. W. niet opgenomen weigeringsgronden, nl. wetsontduiking (art. 25, § 1, 3°, WIPR), onverenigbaar met een andere beslissing (art. 25, § 1, 5°, WIPR), anterioriteit van een Belgische procedure (art. 25, § 1, 6°, WIPR), zijn in voorliggend geval niet voorhanden.

5.1. *Toetsing van de weigeringsgronden ten aanzien van C.*

5.1.1. Uit de uitleg verschaft door advocaat Isler blijkt thans dat het vonnis van 26 juni 1991 niet meer



door rechtsmiddelen kan worden bestreden en dus in kracht van gewijsde is getreden, althans wat C. betreft.

Uit deze uiteenzetting onder ede, waarin o.m. wordt verwezen naar de toepasselijke bepalingen van het procesrecht van de Staat New York, blijkt dat de verstekverlatende verweerder beschikt over een termijn van één jaar te rekenen vanaf de kennisgeving (de «service») van de uitspraak bij verstek.

Uit stuk 11*bis* van appellant blijkt dat deze termijn met vijf dagen wordt verlengd wanneer de kennisgeving gebeurt per post.

Uit de «affidavit of service by mail» van 27 juni 1991 blijkt dat het vonnis van 26 juni 1991 nog dezelfde dag werd betekend, door toezending per post, aan C. op haar laatst bekende adres, nl. (...). Dit adres werd door hun advocaten opgegeven op het ogenblik dat deze laatsten zich terugtrokken uit de zaak. Deze betekeningswijze voldoet aan de voorschriften van het procesrecht van de Staat New York.

Eén jaar en vijf dagen na de verzending van het vonnis, op 1 augustus 1992 verstreek derhalve de termijn om het verstekvonnis teniet te laten doen («to vacate»). Nadien kon geen enkel rechtsmiddel meer worden aangewend tegen het vonnis en werd het definitief.

Het argument geput uit art. 56 van het (Belgisch) Ger. W., namelijk dat het overlijden van een partij het verloop van de termijn om verzet of beroep aan te tekenen schorst en deze pas opnieuw begint te lopen na een nieuwe betekening aan de woonplaats van de overledene, heeft geen relevantie ten aanzien van C. die een vennootschap is en dus geen partij is die overleden is.

Overigens kan op art. 56 Belgisch Ger. W. geen beroep worden gedaan om te beweren dat de termijn om een rechtsmiddel aan te wenden tegen het Amerikaans vonnis niet zou zijn beginnen lopen. Of een buitenlandse beslissing kracht van gewijsde heeft, moet immers worden beoordeeld naar het recht van de Staat waarin zij werd gewezen, te dezen naar het recht van de Staat New York, en niet naar Belgisch recht.

5.1.2. De uitvoerbaarverklaring heeft ter zake geen gevolgen die kennelijk onverenigbaar zijn met de Belgische internationale openbare orde. Appellante voert terecht aan dat de omstandigheid dat C. (en M.) werden veroordeeld tot betaling van haar advocatenkosten, niet strijdig is met de Belgische openbare orde. Daaraan kan thans, in het licht van de wet van 21 april 2007 betreffende de verhaalbaarheid van kosten en erelonen van advocaten, niet meer worden getwijfeld. Ook de tenlastelegging van kosten is niet strijdig met de Belgische internationale openbare orde.

5.1.3. Er dient verder te worden nagegaan of het recht van verdediging van C. werd gerespecteerd in de Amerikaanse procedure. De invulling van het «recht

van verdediging» dient te gebeuren overeenkomstig de Belgische opvattingen op dat vlak. Dit betekent niet dat de concrete regels van de Belgische procedure nageleefd dienen te worden, maar wel de fundamentele principes die ze beheersen, zoals de onpartijdigheid van de rechter en het in staat stellen van de verweerder om zijn verdediging tijdig en doeltreffend te organiseren. Ook de invulling van het recht van verdediging door het Europees Hof voor de Rechten van de Mens dient als toetssteen te worden gehanteerd.

Het hof is van oordeel dat het recht van verdediging van C. afdoende werd gerespecteerd.

Allereerst blijkt uit de bijkomende informatie die na het tussenarrest werd verstrekt dat C. aanvankelijk is verschenen en zich heeft verdedigd. Daaruit kan, zoals appellante terecht aanvoert, worden besloten dat de initiële dagvaarding C. tijdig heeft bereikt en dat zij in staat is geweest haar verdediging behoorlijk te organiseren. In geen enkel van de drie processtukken die C. en M. hebben neergelegd hebben zij ooit het tegendeel beweerd. In die optiek zijn de in het tussenarrest opgeworpen vragen in verband met het adres waarop de dagvaarding werd betekend en de persoon die ze in ontvangst heeft genomen, vanuit het oogpunt van het recht van verdediging, niet meer relevant.

Voorts blijkt uit de voorliggende gegevens dat op een bepaald ogenblik, meer bepaald begin juni 1990, de advocaten van M. en C. een verzoek hebben neergelegd om te worden ontlast als advocaten omdat zij niet werden betaald en omdat zij geen enkele medewerking kregen van hun cliënten. Bij beschikking van 13 november 1990 werd dit verzoek ingewilligd en werd beslist dat de procedure maar voortgang kon vinden dertig dagen nadat M. en C. zouden zijn op de hoogte gebracht dat zij een andere advocaat konden aanstellen. Er werd beslist dat deze kennisgeving mocht gebeuren via Federal Express aan het adres (...) te K., wat is gebeurd op 30 november 1990.

Het adres te K. was de feitelijke uitbatingszetel van C. en overigens ook de feitelijke verblijfplaats van M. tot aan zijn overlijden. Het recht van verdediging van C. is dan ook zeker niet geschonden doordat deze beschikking – en overigens ook het latere vonnis ten gronde – werden toegestuurd naar dit adres en niet naar het adres van de zetel van C. in Panama. Het adres te K. was het enige waar C. effectief kon worden bereikt en kennelijk ook is bereikt, omdat uit de beschikking van 14 februari 1991 houdende aanstelling, gelezen in samenhang met de beschikking van 21 november 1991 houdende vervanging van de voorlopige bewindvoerder van C., blijkt dat de voorlopig bewindvoerder werd aangesteld (dus in februari 1991) «om o.a. tegenspraak te verzekeren in de betwisting tussen B. of S. en de NV Z.D. en de NV C. Investment and Trading S. Ltd.».

Aan het bovenstaande kan overigens nog worden toegevoegd dat het bestaan van een procedure binnen de procedure waarbij een advocaat die niet langer wenst op te treden voor een cliënt door wie hij niet wordt betaald en van wie hij geen instructies krijgt, aan de rechtbank moet vragen om te worden ontlast, waarna aan de partij een termijn wordt gegeven om een nieuwe advocaat aan te duiden, een meer verdergaande bescherming is van het recht van verdediging dan naar Belgisch procesrecht geldt. Naar Belgisch procesrecht behoeft een advocaat geen enkele toelating van de rechtbank om zich terug te trekken als raadsman van een partij, wordt deze laatste daarvan niet op de hoogte gebracht door de rechtbank en wordt geen bijkomende termijn verleend om een andere raadsman aan te duiden.

Voorts blijkt uit niets dat appellante reeds tijdens de procedure voor het Supreme Court te New York zou hebben geweten dat M. op 25 november 1990 was overleden en dat zij desondanks, wetende dat de vennootschap zonder M. onthoofd was, de procedure zou hebben verdergezet en vonnis zou hebben genomen zonder van dit overlijden kennis te geven aan het hof. Appellante heeft in haar beroepsakte verklaard dat haar directeur contact heeft gehad met de voorlopig bewindvoerder van C. en met de curator over de onbeheerde nalatenschap van M., maar nergens heeft appellante verklaard dat dit in het voorjaar van 1991 is geweest. Uit de beroepsakte blijkt dat appellante bedoelt dat zij na de uitspraak van het vonnis van 26 juni 1991 met de voorlopig bewindvoerder en de curator contact heeft gehad.

Uit de omstandigheid dat C. nadien geen oproepingen heeft ontvangen voor de zittingen van 2 april 1991 en 5 april 1991, waarop de zaak werd behandeld – wat in de civiele procedure van de Staat New York blijkbaar niet gebeurt – volgt niet dat het recht van verdediging van C. werd miskend. C., wier voorlopig bewindvoerder op de hoogte was van de procedure, heeft voldoende de kans gehad om zich opnieuw aan te melden en haar verdediging verder waar te nemen.

Ten slotte werd het vonnis van 26 juni 1991 toegestuurd naar de werkelijke uitbatingszetel van C. te K. en staat het met zekerheid vast dat C. lang vóór het verstrijken van de termijn om een rechtsmiddel tegen het vonnis aan te wenden – welke termijn, zoals gezegd, verstreek op 1 augustus 1992 – kennis heeft gekregen van het bestaan van het vonnis, namelijk via de dagvaarding in de huidige zaak uitgebracht op 3 januari 1992. C. heeft dus over alle mogelijkheden beschikt om, indien zij dit wenste, het vonnis door het aanwenden van het daartoe bestemde rechtsmiddel te bestrijden.

5.1.4. Ten slotte waren de Belgische rechtbanken niet exclusief bevoegd om kennis te nemen van de vordering en was de bevoegdheid van de rechtbanken van de Staat New York niet uitsluitend gegrond op de (kort-stondige) aanwezigheid van C. of van haar goederen zonder rechtstreeks verband met het geschil in de Staat New York.

C. en haar zaakvoerder M. waren niet kortstondig aanwezig in de Staat New York, maar dreven er handel die zij financierden met kredieten toegestaan door appellante. In die omstandigheden is de bevoegdheid van de plaatselijke rechtbanken van de Staat New York geenszins exorbitant.

5.1.5. Uit wat voorafgaat volgt dat het vonnis van 26 juni 1991 ten aanzien van C. voldoet aan alle voorwaarden voor zijn uitvoerbaarverklaring opgelegd door art. 25, § 1, WIPR. De vordering kan derhalve ten aanzien van C. worden ingewilligd.

*5.2. Ten aanzien van M.*

Het hof heeft in zijn tussenarrest van 8 juni 2000 de vraag gesteld wat, naar het procesrecht van de Staat New York, de incidentie is van het overlijden van een partij op het verdere verloop van de procedure en op de rechtsgeldigheid van de nadien gestelde procesakten.

Uit de uitleg verstrekt door advocaat Isler in zijn verklaring onder ede van 5 februari 2001 en uit de daarbij gevoegde kopie uit de New York Treatise on Civil Practice, blijkt dat naar het procesrecht van de Staat New York, in geval van solidaire aansprakelijkheid, bij het overlijden van één van de solidaire debiteuren de procedure kan worden verdergezet tegen de overlevende partij en dat de uitspraak ten volle uitvoerbaar is tegen de overlevende partij. De erfopvolging van de overleden solidaire debiteur kan evenwel slechts worden aangesproken indien de overlevende de schuld niet kan voldoen.

In die omstandigheden kan vooralsnog geen exequatur worden verleend van het vonnis van 26 juni 1991 in zoverre dit M. heeft veroordeeld.

(...)

NOOT – Het overgangsrecht voor exequatur van vreemde beslissingen

*I. Achtergrond*

1. In het hier geannoteerde arrest moest het Hof van Beroep te Gent zich uitspreken over een verzoek tot uitvoerbaarverklaring van een arrest van de *Supreme Court* van New York, gedateerd op 26 juni 1991. Pas na de uitvoerbaarverklaring kan zo'n beslissing in België dezelfde gevolgen hebben als een beslissing van een Belgische rechter, onder meer op het vlak van de uitvoerbaarheid. Met de exequaturprocedure is de Belgische rechter dus als het ware grenswachter van de interne rechterlijke orde.

2. Om na te gaan of een buitenlandse beslissing in België uitvoerbaar kan zijn, moet ze worden getoetst aan bepaalde criteria. Afhankelijk van de herkomst van de vreemde beslissing, liggen die exequaturvoorwaarden vervat in verschillende instrumenten. Binnen de Europese Gemeenschap regelen verschillende Europese verordeningen het exequaturvraagstuk (men denke in het bijzonder aan de Brussel I-Verordening – Verordening (EG) nr. 44/2001 van de Raad van 22 december 2000 betreffende de rechterlijke bevoegdheid, de erkenning en de tenuitvoerlegging van beslissingen in burgerlijke en handelszaken, *Pb. L.* 16 januari 2001, afl. 12, 1). Met sommige landen van buiten de EG heeft ons land verdragsrechtelijke exequaturregimes uitgewerkt. Zo moeten beslissingen uit Zwitserland, Noorwegen en IJsland voldoen aan de voorwaarden uit het Lugano-verdrag (*Pb. L.* 25 november 1988, afl. 319, 9; vervangen door een nieuw verdrag van Lugano, zie: *Pb. L.* 10 juni 2009, afl. 147, 5). Met de meeste landen deelt ons land echter geen bijzondere exequaturregeling. Voor de uitvoerbaarverklaring van beslissingen die uit zulke landen afkomstig zijn, gelden de regels van het Belgische gemene recht. De herkomst van een buitenlandse beslissing bepaalt dus welke rechtsbron de uitvoerbaarverklaring zal beheersen.

3. In de besproken zaak was de beslissing afkomstig uit de Verenigde Staten. Aangezien België met dat land geen exequaturverdrag heeft gesloten, moest het hof van beroep het Belgische gemene recht toepassen. Dat interne recht was echter in de loop van de beroepsprocedure gewijzigd. In 2000 velde het hof nog een tussenarrest waarin het de appellante vroeg om meer informatie aan te brengen. De gegevens waarover het hof tot dan toe beschikte, bleken immers niet te volstaan om de Amerikaanse procedure en het eindarrest te kunnen toetsen aan de exequaturvoorwaarden van art. 570 Ger. W. De appellante deed er vijf jaar over om de gevraagde informatie bij te brengen. Intussen was op 1 oktober 2004 het nieuwe Wetboek van Internationaal Privaatrecht (hierna: WIPR) in werking getreden, dat in zijn art. 22 tot 31 nieuwe exequaturregels invoerde. Terwijl wel vaststond dat het Belgische gemene recht het exequaturverzoek moest beheersen, rees dus plots de vraag of de nieuwe dan wel de oude exequaturregeling toegepast moest worden.

Het hof van beroep oordeelde dat het de beslissing van de New Yorkse *Supreme Court* moest toetsen aan de nieuwe exequaturregels van het Wetboek van Internationaal Privaatrecht, en niet langer aan de oude voorwaarden van art. 570 Ger. W. Het baseerde zich daarvoor op het temporeel overgangsrecht inzake exequatur, dat de wetgever heeft opgenomen in art. 126, § 2, WIPR.

4. Hieronder gaan we dieper in op de juridische gronden die het hof van beroep tot zijn oordeel

