UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
LAZARE KAPLAN INTERNATIONAL INC.,   :   Civil Action No. 11 Civ. 9490-ALC
                                    :
                Plaintiff,          :
                                    :
        - against -                 :
                                    :
KBC BANK N.V. and ANTWERP DIAMOND BANK :
N.V.,                               :
                Defendants.         :
---------------------------------------- x

**SUR-REPLY DECLARATION OF WILLIAM H. MORYTO**

STATE OF NEW YORK )
COUNTY OF NEW YORK ) ss.:

    WILLIAM H. MORYTO, being duly sworn, deposes and says:

1. I submit this sworn Declaration to correct certain factual misstatements made by ADB based on the second declaration of Ms. Veerle Snyers (Dkt. # 50), and to provide documentation refuting ADB's false assertion that Lazare maintained a demand bank account in Belgium with ADB.[1] Contrary to Ms. Snyers's assertion, Lazare did <u>not</u> maintain a bank account as alleged by ADB, and did not receive any statements, correspondence or notices from ADB relating to any such bank account.[2] Rather, Lazare maintained only a credit facility with ADB (# 640043340148), and received folios (<u>i.e.</u>, loan statements) from ADB-NY relating solely to that New York credit facility (the "Lazare Credit Facility").[3] As explained below, the unredacted versions of ADB's own documents refute Defendants' position and demonstrate that the foundation of their motions to dismiss does not withstand scrutiny.

## Ms. Snyers's Contradicting Sworn Declarations

2. In her first declaration, Ms. Snyers neglected to inform the Court that ADB had entered into an agreement with Lazare in 2001 pursuant to which the KBC-NY Bank Account would be the exclusive account through which Lazare and Defendants funded, operated, administered and accepted repayments of the Lazare Credit Facility.[4] Instead, Defendants proffered a bank account owned by LKB (Lazare's Belgian subsidiary) to argue that Lazare

---

[1] Capitalized terms have the same meaning as in my prior Declaration (Dkt. # 40) unless otherwise indicated.

[2] As Lazare's CFO, I am responsible for Lazare's bank accounts and credit facilities. I have reviewed Lazare's files with respect thereto and base this declaration thereon and on my own personal knowledge.

[3] Examples of such folios are attached hereto as **Exhibit 1** (which, as explained below, cannot be confused with bank account statements). **Exhibits 1-16** submitted herewith are true and correct copies of such documents.

[4] The *only* bank account for which such an agreement exists is the KBC-NY Bank Account, and the governing KBC Banking Conditions contain a mandatory New York law and <u>New York</u> forum clause. See Dkt. # 40 at Ex. D.

1

maintained a bank account at ADB used in connection with the Lazare Credit Facility. After Defendants' misleading submission was exposed, Ms. Snyers, in her second declaration, concedes the existence of the ADB/KBC Agreement, which requires the exclusive use of the KBC-NY Bank Account, but nonetheless wrongly contends that in addition to the KBC-NY Bank Account, Lazare maintained and used, during all times, a demand bank account at ADB Belgium in connection with the Lazare Credit Facility. See Dkt. # 50 at ¶¶ 2-16.

3. Ms. Snyers then ignores the inherent contradictions between the KBC-NY Bank Account's exclusive role in the Lazare Credit Facility and the newly purported existence of a Lazare demand bank account at ADB, and ignores the bank statements and other documentary evidence attached as exhibits to my prior declaration (and indeed the unredacted versions of her own exhibits), which prove that the Lazare Credit Facility was operated exclusively through the KBC-NY Bank Account (through which hundreds of millions of dollars flowed).

4. Instead, Ms. Snyers asserts that: (a) "[o]n December 20, 2000, in connection with establishing its first line of credit with [ADB] …, Lazare completed an application requesting that [ADB] open a bank account in its name in Antwerp, Belgium;" (b) "[ADB] approved Lazare's application and thereafter established bank account number 4334 in Lazare's name [which Ms. Snyers refers to as the "Lazare Antwerp Bank Account"]," that "[i]t was through [bank account number "4334"] that Lazare borrowed, and failed to repay, nearly $45 million;" and that (c) account number "4334" is a type of bank account known as "*zichtrekening* [which] was translated in the February 1999 and November 2001 English language versions of [the ADB

2

Banking Conditions] as a 'demand account.'" Id. at ¶¶ 2-3.[5] This simply is not true, and proof of this fallacy may be found in ADB's own unredacted documents.

### The Alleged "Demand Account" Documents

5.   In late 2000, in connection with Lazare agreeing to establish the Lazare Credit Facility in New York with ADB's newly opened New York office, Philippe Loral of ADB-NY explained to me that ADB-NY would also be able to open a bank account for Lazare in New York either directly or through the New York branch of its parent bank, Defendant KBC. As a result, on December 20, 2000, Lazare began the process of providing information to both ADB and KBC in anticipation of being able to open a bank account in New York with one of the two banks. Attached as part of **Exhibit 2** are documents dated December 20, 2000, that Lazare submitted to Defendant KBC as part of this process.

6.   By March 2001, when Lazare first borrowed under the Lazare Credit Facility, it had become clear that ADB-NY could not open a bank account for Lazare in New York. As a result, Lazare continued to work with KBC-NY to complete the process it began in December 2000 to open the KBC-NY Bank Account.[6]

7.   On May 31, 2001, I signed the ADB/KBC Agreement, which as Defendants concede, directly linked the Lazare Credit Facility to the KBC-NY Bank Account. It was not until November 16, 2001, however, that KBC-NY informed me that the KBC-NY Bank Account was operational.[7] As a result, KBC-NY provided bank account number "24079801" for the

---

[5] Defendants do so because they concede that in order for the ADB Banking Conditions to even arguably be applicable (which is the crux of Defendants' motions), Lazare would have to have had a bank account referenced in the ADB Banking Conditions and used during 2007-2009 in connection with the Lazare Credit Facility.

[6] Included in **Exhibit 2** are additional documents submitted to KBC-NY in connection with Lazare's application.

[7] See **Exhibit 3** attached hereto, which is a facsimile from KBC-NY to me, dated November 16, 2001, stating, among other things, "We are pleased to inform you that we have received the authorization from [ADB] to make the following account operational: # 24079801 Lazare Kaplan International Inc."

3

KBC-NY Bank Account linked to Lazare's New York credit facility at ADB-NY (# 640043340148), and pursuant to the ADB/KBC Agreement, the KBC-NY Bank Account was the exclusive account for all payments and disbursements under the Lazare Credit Facility.

8. In support of her incorrect assertion that Lazare opened a demand bank account at ADB in Belgium, Ms. Snyers cobbles together a few misleading and meaningless documents (including some in which critical information was redacted and others that are facially different from Lazare's copies). None of these documents supports her assertion in the least.

9. According to Ms. Snyers, Lazare completed an application requesting that ADB open an account for Lazare in Belgium, submitted a signature specimen form in connection therewith and, in response to such application, ADB opened account number "4334" for Lazare. Dkt. # 50 at ¶¶ 5-6, Exs. B, D.[8] Attached as **Exhibits 4** and **5**, respectively, are the unredacted versions of these documents that Defendants provided to Lazare's counsel. As seen therein, there is no reference to any bank account number "4334." Both documents instead reference a twelve-digit account number "640043340181."[9]

10. In addition, I attach as **Exhibit 6** Lazare's copy of the same application and signature specimen form as they appeared when Lazare submitted them to ADB-NY. By comparing ADB's unredacted versions (**Exhibits 4** and **5**) to **Exhibit 6**, it is clear that ADB added the date (in European style, "20-12-2000") next to the preprinted word "Antwerp" giving the false impression that I signed this application on December 20, 2000, in Antwerp, Belgium.

---

[8] Ms. Snyers's implies that Lazare completed the application process by submitting these two documents; however, this assertion is belied by the fact that applications for opening bank accounts require far more extensive and detailed documentation like those required to open the KBC-NY Bank account. See e.g., **Exhibit 2**.

[9] ADB's contention that a bank account has only 4 digits is suspect on its face. I have never heard of a four-digit bank account. Lazare's subsidiary, LKB, has numerous accounts at ADB, all of which have twelve digits. Contrary to Defendants' assertion, to my knowledge, not once in the twelve years since Lazare received its credit facility from ADB has Lazare received a single bank statement or other documents relating to a bank account numbered "4334" or one numbered "640043340181." The number "4334" would appear to be ADB's general client reference number for Lazare, just like ADB's general client reference number for LKB appears to be "5649."

4

11.     With respect to either purported account number "4334" or "640043340181," ADB does not provide the Court with a single payment/transfer request from Lazare reflecting either account number "4334" or "640043340181" as evidence that such account was ever opened, made operational, or used by Lazare, let alone linked to or used in connection with the Lazare Credit Facility (despite ADB's assertion that hundreds of millions of dollars flowed through such account). Indeed, Lazare never received any documents from ADB informing Lazare that a bank account bearing either the number "4334" or "640043340181" was opened -- a fact which stands in stark contrast to the notice Lazare received from KBC-NY when the KBC-NY Bank Account had become operational on November 16, 2001. See **Exhibit 3**. Lazare never signed any agreement (similar to the ADB/KBC Agreement) authorizing that payments and disbursements under the Lazare Credit Facility be reflected in any purported account number "4334" or "640043340181." ADB has produced no evidence that Lazare ever gave transfer instructions, deposited money or made withdrawals from (or received statements regarding) account number "4334" or "640043340181," because Lazare never did.

12.     Finally, Ms. Snyers asserts that account "4334" was the type of account (i.e., "*zichtrekening*") described in the ADB Banking Conditions as a "demand account" (i.e., a simple "savings" or "checking" account). Article 8 of the ADB Banking Conditions, however, states in relevant part that "[a]fter each movement on an account, or after a certain period and at least quarterly, the Bank will make a statement of account available to the account holder." See Dkt. # 40, Ex. C. No such statements for an account number "4334" or "640043340181" were ever made available to Lazare, further confirming that no such account existed.[10]

---

[10] Further, ADB never sent a notice closing this purported demand bank account when ADB terminated the Lazare Credit Facility, again demonstrating that there was no such bank account.

5

13.  It is thus clear that the one-page application form (requesting a bank account and providing a signature specimen form) was an incomplete, initial step in Lazare's ultimately aborted application for a twelve-digit bank account ("640043340181") submitted when Lazare believed that ADB-NY might be able to open a bank account for Lazare in New York.

14.  ADB, however, after concealing the actual account number noted on the one-page application and signature specimen form ("640043340181"), incredibly asserts that as a result of these two documents, ADB opened (and at all relevant times operated) a bank account number "4334" for Lazare through which hundreds of millions of dollars flowed. In support of this fiction, Ms. Snyers proffered an unconvincing "Fiscal Deduction Certification" form (Dkt. # 50, Ex. E), which she claims was submitted by Lazare in connection with this purported bank account number "4334."[11] The unredacted version of this document submitted by Defendants to Lazare's counsel (see **Exhibit 7**) contains a reference to an account number "4334." The version signed by me (see **Exhibit 8**), and submitted to ADB on behalf of Lazare as a foreign client of the bank not subject to taxation in Belgium, contains no reference to any bank account, let alone number "4334," as Lazare had no such bank account with ADB. Accordingly, this form does not support Defendants' argument.

15.  Ms. Snyers also proffers a letter from ADB dated June 2, 2008, and an updated copy of my passport as proof that Lazare had an account number "4334" at ADB. See Dkt. # 50, Ex. F. This assertion is ridiculous. I have no record of receiving that letter, and the mere fact that ADB has a copy of my passport does nothing to support Ms. Snyers's position.[12] Moreover,

---

[11] While ADB implies that this document was obtained in connection with the December 2000 opening of a demand bank account number "4334," the more viable explanation is that this tax form (dated October 2001) was requested once Lazare began using the Lazare Credit Facility in 2001 as part of ADB's standard procedures for foreign clients.

[12] Requests for passports are routine (under AML/KYC and U.S. Patriot Act requirements) and in my case would be required in my capacity as an authorized signatory for various accounts at ADB owned by Lazare's various

6

my records show that in response to a request from ADB to LKB in September 2009, I provided my same updated passport to ADB via email. See **Exhibits 9** and **10**, respectively.[13] Thus, the fact that ADB has a copy of my passport does not support Defendants' argument.

16. The last document that Ms. Snyers offers as proof that bank account number "4334" was opened for Lazare, is a "Secretary's Certificate" dated December 20, 2000, whereby Lazare's Board of Directors authorized Lazare's officers to open a bank account. See Dkt. # 50, Ex. C. Ms. Snyers, however, fails to inform the Court that the broadly worded Secretary's Certificate also authorized Lazare's officers to, among other things, "borrow money and obtain credit ... apply for letters of credit ... pledge, mortgage, grant a security interest in, assign, endorse, negotiate, deliver or otherwise hypothecate or transfer to [ADB] any and all assets [of Lazare]." Id. While Lazare did obtain credit (i.e., the Lazare Credit Facility), it cannot be denied that Lazare's officers never applied for letters of credit, pledged, mortgaged or granted a security interest, etc., to ADB, just like Lazare's officers never actually opened the alleged demand bank account at ADB. Thus, the mere authorization to open a bank account (and to take other actions that also never took place) does not demonstrate that a bank account was opened.

### The Fictitious Belgian Demand Bank Account

17. In support of her incorrect assertion that it was through account number "4334" that Lazare borrowed $45 million, Ms. Snyers proffers no bank statements for any bank account

---

subsidiaries and affiliates, and in my capacity as Lazare's CFO in connection with Lazare's status as a borrower. I would have sent ADB a copy of my passport without questioning in which specific capacity it was being requested.

[13] ADB's copy of my passport (Dkt. # 50, Ex. F) compared to my copy (**Exhibit 10**) reveals that ADB used a single copy of my passport to update its administrative files for various entities related to Lazare. The handwritten notations on the upper right hand corner of ADB's copy reflect client reference numbers "4334" (Lazare), "5649" (LKB), and "4499" (Bellataire International LLC), the later two of which (unlike Lazare) have bank accounts at ADB for which I am an authorized signatory. These client reference numbers appear to have been written by someone at ADB. Why would ADB be asking for a copy of my new passport in order to update its files in September 2009 if it had already received a copy in response to its June 2, 2008 letter? In sum, there is no evidence that my passport was submitted in connection with a non-existent bank account number "4334."

7

(numbered "4334" or "640043340181"), and instead provides an internally generated computer printout of activity in Lazare's New York credit facility (# 640043340148), which Ms. Snyers implies is for bank account number "4334." See Dkt. # 50, Ex. G.

18. As seen in the unredacted version of this printout that Defendants provided to Lazare's counsel (see **Exhibit 11**), the purported activity reflected therein (which is not a bank account statement which would provide information such as the name and bank account information of the party to or from whom funds were remitted) shows only the dollar amount of borrowing and repayment activity under Lazare's New York credit facility (# 640043340148), and not in any bank account numbered "4334" or "640043340181." Indeed, the information reflected in the internal computer spreadsheet is also reflected on the loan folios Lazare received in connection with its New York credit facility (# 640043340148), which clearly are nothing like the bank account statements Lazare regularly received for the KBC-NY Bank Account. See Dkt. # 40, Ex. G. Thus, the record supports Lazare's position that no such separate bank account at ADB existed in connection with the Lazare Credit Facility.[14]

19. As noted, borrowings under the Lazare Credit Facility began in March 2001, while the KBC-NY Bank Account was not operational until November 16, 2001. During this initial period, borrowings and repayments by Lazare were debited/credited directly to the Lazare Credit Facility. On behalf of Lazare, I would write to Peter Driesen, a Vice President of ADB-NY, requesting that ADB-NY transfer funds drawn from the Lazare Credit Facility # 640043340148 at ADB-NY directly to a specified beneficiary (who's payment details I provided). See e.g., **Exhibit 12**. Repayments under the Lazare Credit Facility were handled the

---

[14] Even if Lazare owned the alleged demand bank account (and it did not), in order for such account to be relevant here, it would have to be used in connection with the Lazare Credit Facility during the relevant time period (2007-2009). There mere existence of a demand bank account, with respect to which no dispute is pending is insufficient to invoke the ADB Banking Conditions. Moreover, any ADB internally created and maintained computer printouts in no way demonstrate that Lazare had, was aware of or used a demand bank account at ADB.

same way. Incoming funds were directed to the Lazare Credit Facility # 640043340148. See e.g., **Exhibit 13**. Upon receipt, Lazare's loan balance would be reduced.

20. After KBC-NY informed me (on November 16, 2001) that the KBC-NY Bank Account was operational and thus was required to be used as the exclusive bank account for all Lazare Credit Facility activity, from that point forward when Lazare wished to draw down on the Lazare Credit Facility, I would complete a KBC transfer form (and not an ADB transfer form) directing payment to a particular third party and would send such transfer form to KBC-NY as required under the ADB/KBC Agreement. See e.g., **Exhibit 14**. Similarly, payments made to Lazare after November 15, 2001, were paid directly into the KBC-NY Bank Account. See e.g., **Exhibit 15**.

21. Ms. Snyers contends that in 2008-2009, Lazare made five wire transfers that did not run through the KBC-NY Bank Account, and implies that such transactions went through bank account "4334" instead. In fact, the five transactions to which ADB refers involved neither the KBC-NY Bank Account nor the alleged "4334" account. Instead, the relevant documentation (see **Exhibit 16**) shows that each of the five transactions simply passed through Lazare's New York credit facility # 640043340148. As seen therein, neither account number "4334" nor "640043340181" appears on any of the documentation for these five transactions, and Defendants have proffered no evidence to the contrary.

22. By way of example, on August 19, 2008, **LKB** (not Lazare) requested that ADB Belgium make a payment of $8,956,691.03 to "ROTHCHILD DIAMONDS LTD" for the purchase of "Sight" diamonds. See **Exhibit 16** at p. 1. Instead, ADB recorded an "Internal" book transfer debiting $8,956,691.03 to LKB (not Lazare). ADB-NY then recorded an "Internal" book transfer (i.e., credit) recording $8,956,691.03 received from LKB as a direct

9

reduction to the Lazare Credit Facility loan balance (# 640043340148) and recorded a direct (offsetting) debit advice to the Lazare Credit Facility (# 640043340148) as payment to Rothschild Diamonds Ltd. in the amount of $8,956,691.03. The purchased diamonds ($6,567,941.07 net of a refund for diamonds that ultimately were not purchased) were actually pledged by LKB (not Lazare) to ADB and ultimately were misappropriated by Defendants as part of the Illegal Scheme described in the Complaint. See id. at pp. 2-5.

23.     Because ADB processed this transaction as an internal transfer between LKB and Lazare, ADB apparently decided to by-pass the KBC-NY Bank Account in its internal record keeping. Notably, and contrary to ADB's assertion that the alleged "4334" bank account was somehow involved in this purchase, the attached documentation proves otherwise. The same is true for each of the remaining four transactions. See id. at pp. 6-17.

24.     In conclusion, for more than a decade (including at all times relevant to the present dispute), Lazare directed that all receipts and disbursements relating to the Lazare Credit Facility be executed through the KBC-NY Bank Account (# 24079801), with the net activity thereafter directly applied as a debit or credit to the Lazare Credit Facility (# 640043340148), and not a single transaction relating to the Lazare Credit Facility was executed via a demand bank account as alleged by ADB (numbered "4334," "640043340181," or otherwise).

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 9, 2012

_____
Notary Public

FRANK ROSELLI
Notary Public, State of New York
No. 01RO6104084
Qualified in New York County
Term Expires January 12, 20_16_

_____
William H. Moryto

10