UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- X
                          :

LAZARE KAPLAN INTERNATIONAL, INC.,   :

                          :

                   Plaintiff,         :            11 Civ. 9490 (ALC)

                          :

           -against-              :           **OPINION & ORDER**

                          :

KBC BANK N.V. and ANTWERP DIAMOND BANK, :
N.V.,                                :

                          X

                   Defendants.

------------------------------------------

**ANDREW L. CARTER, JR., District Judge:**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: **9-5-12**

## INTRODUCTION

Plaintiff Lazare Kaplan International brings the present suit against Defendants KBC Bank N.V. and Antwerp Diamond Bank, N.V. alleging racketeering, fraud, money-laundering, tortious interference with prospective business advantage, commercial bad faith, conversion, negligence, breach of the covenant of good faith and fair dealing, and unjust enrichment. Plaintiff asserts that this Court has subject matter jurisdiction over Defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 28 U.S.C. § 1961, et seq. Defendants challenge subject matter jurisdiction and move for dismissal of the Complaint pursuant to Rules 8 and 9(b) or in the alternative, 12(e) and (f) of the Federal Rules of Civil Procedure. Defendants seek to dismiss the Complaint pursuant to the doctrine of forum non conveniens. Defendants also move to dismiss the charges in the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). On April 5, 2012, the Court stayed discovery pending Defendants' motions.

For the reasons stated below, the Court grants Defendants' motion to dismiss the Complaint pursuant to the doctrine of forum non conveniens.

## BACKGROUND

Plaintiff is a diamond company named Lazare Kaplan International Inc. ("Lazare" or "Plaintiff"). Lazare is headquartered in New York. Lazare did business in Belgium through its Belgian subsidiary, Lazare Kaplan Belgium, N.V. ("LKB"). (See Compl. ¶¶ 15, 98.)

Defendant Antwerp Diamond bank N.V. ("ADB") is a Belgian bank corporation headquartered in Belgium. (See Compl. ¶¶ 7, 101.) ADB has been one of Lazare's primary lenders for more than a decade. Defendant KBC Bank N.V. ("KBC"), ADB's parent, is one of the largest banks located in Belgium. (See Compl. ¶¶ 8, 101.) Both ADB and KBC were established under Belgian laws, separately incorporated and organized, and report separately to Belgian banking authorities. Both banks maintain representative offices in New York State. (See Compl. ¶¶ 102, 111.) ADB's New York office has five employees and originates loans to New York-based businesses, but has no lending authority. All extensions of credits are made at ADB's Antwerp headquarters. (Weiss Aff. ¶ 2.)

In 1999, ADB agreed to provide LKB a line of credit pursuant to a loan agreement that provided that the obligations of the parties are "governed solely by the laws of Belgium" and the "courts of Antwerp have sole competence." In December 2000, Lazare submitted an application to open a bank account at ADB. Lazare had been approved for a $10 million line of credit at ADB. In 2008, ADB agreed to continue Lazare's unsecured line of credit to a maximum of $45 million. Lazare renewed its most recent unsecured $45 million credit facility with ADB in New York as the "Lazare Credit Facility." (See Compl. ¶ 139.)

In 2009, ADB became concerned about Lazare's financial condition because Lazare had not provided financial statements to regulators or ADB despite multiple requests. ADB requested that Lazare devise a plan to restructure its debt, which at that time was close to the maximum approved by ADB. Lazare and LKB's principals insisted that KBC become involved in discussions among those entities and ADB.

Lazare alleges that a Belgian bank dealer, Erez Daleyot, misappropriated Angolan diamonds and diamond sales proceeds through affiliates around the world. The property in question allegedly belonged to LKB and Gulfdiam DMCC, a Dubai company partly owned by Lazare's subsidiary. Lazare alleges that ADB, its banker, facilitated the misappropriation and allowed Mr. Daleyot to use funds taken from LKB and Gulfdiam to repay Mr. Daleyot's debts to ADB. Lazare furthers that ADB was acting at the direction of KBC to make large loans to the Daleyot Entities. Lazare alleges that "KBC exercised such control and domination over [ADB] that [ADB] became a mere instrumentality of KBC . . . ." (See, e.g., Compl. ¶¶ 696, 712, 726, 741, 753, 772, 781).

Lazare engaged in numerous transactions with the Daleyot Entities in Belgium and other foreign jurisdictions. Lazare consigned diamonds to LKB, financed Gulfdiam, and guaranteed each of their debts. (Compl. ¶¶ 42-43, 98, 141, 316.)

Lazare also describes foreign diamonds that LKB consigned to two Belgian entities, DD and KT, in Belgium. (Compl. ¶ 361.)   Lazare alleges that DD and KT sold the diamonds, stole the proceeds, and used those funds to pay their debts to ADB. (Compl. ¶ 361.) These debts were allegedly incurred through failed investments in Belgian, Cypriot, and various Eastern European ventures. (Compl. ¶ 375.) U.S. dollar denominated transactions allegedly cleared through KBC in New York. (Compl. ¶¶ 100, 107.)

3

As a consequence of the alleged wrongful acts relating to the purported diamond theft, and the resulting losses, Lazare was unable to repay its own debt obligations to ADB. Lazare owed ADB $45 million pursuant to an unsecured credit line extended to Lazare that ADB terminated in December 2009.

Lazare acknowledges that this "Illegal Scheme" or RICO "enterprise" occurred in Belgium and countries other than the United States. (See Compl. ¶¶ 262 (chart), 313 (chart), 353-90.) In the Complaint, Lazare identified 24 non-parties as participants in the "Illegal Scheme" allegedly located principally, if not entirely, outside of the United States. (Compl. ¶¶ 101,110, 120-21.) All or virtually all of the alleged diamond thefts, diversions of diamond sales proceeds, and money-laundering, through transactions allegedly originating and terminating with foreign entities and banks, occurred either in Belgium or elsewhere outside of the United States. (See Compl. ¶ 320.) One chart in the Complaint illustrates the flow of Angolan diamonds through the United Arab Emirates, Hong Kong, Switzerland, Israel, and Belgium. (See Compl. ¶ 313.)

Lazare, LKB, and ADB are already parties to parallel proceedings in Belgium that arise from the same facts alleged in the Complaint. In March 2010, under the provisions in the operative agreement between ADB and Lazare that expressly permits ADB to bring "any legal action or proceeding with respect to any obligation owed to the Bank in the courts of Antwerp, Belgium," ADB commended proceedings against Lazare in Antwerp to recover the $45 million lent to Lazare. In responding to the Belgian action, both Lazare and LKB have asserted counterclaims against ADB based on virtually the same allegations and seeking similar relief as Lazare's Complaint at issue here, with the exception that Lazare did not name KBC as a party. LKB also has had separate ongoing litigation involving the same facts between Daleyot and

4

certain of the Daleyot Entities for several years in Belgium. (Comp. ¶¶ 439, 550; Declaration of Bob Delbaere, dated April 4, 2012 ("Delbaere Declaration"), ¶¶ 19-24, 35-39.)

On December 23, 2011, Lazare sued ADB and KBC in the Southern District of New York for more than $500 million in damages.  Lazare claims that this Court has subject matter jurisdiction under both federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332, as well as supplemental jurisdiction over state law claims. Both defendants moved to dismiss all causes of action for many reasons: ADB's mandatory forum selection provision provides Belgium with exclusive jurisdiction; lack of subject matter jurisdiction; improper venue; failure to state a claim under Fed. R. Civ. P 12(b)(6); the doctrine of forum non conveniens; the inapplicability of RICO to conduct committed outside the United States; lack of standing; and failure to comply with Fed. Civ. R. 8 and 9(b). Defendants argued that the mandatory forum selection provision in the Credit Agreement requires that all of Lazare's claims against ADB be brought in Antwerp.  (Declaration of Cynthia Okrent, Esq., dated April 6, 2012 ("Okrent Declaration"), ¶ 7.)  Finally, in the alternative, defendants moved for a more definite statement and to strike redundant, immaterial, prejudicial, and scandalous matter for failure to comply with Fed. Civ. R. 12(e) and (f).  For its part, Lazare opposes these motions and petitions the Court to enjoin ADB's legal action in the Belgian courts. A Belgian court is scheduled to hear the very issues disputed in this action in March 2013.

## DISCUSSION

### A. Motion to Dismiss based on Forum Selection Clause

Lazare's agreements with ADB contain a mandatory forum selection provision providing that "the courts of Antwerp shall have exclusive jurisdiction with respect to any action against the Bank." Delbaere Declaration, ¶ 10, Ex. C at Art. 37.  These agreements also provide: the

Credit Conditions and any loan extended pursuant to them are governed and construed under New York law; Belgian law governs any other obligations of the borrower or the bank; the bank may bring any legal action relating to the loan in the courts of the State of New York, New York County, the United States District Court for the Southern District of New York, the courts of Antwerp, Belgium, or any other court having jurisdiction under applicable law. Article 37 of the Banking Conditions provides that the bank may bring legal proceedings against Lazare in the courts of Antwerp, Belgium and grants that those courts shall have exclusive jurisdiction of claims against the bank.

Where parties to an international commercial contract agree that claims will be subject to the exclusive jurisdiction of a foreign court, the forum selection provision shall be enforced, unless the party seeking the escape its contractual commitment meets the heavy burden of showing that it will be deprived of its day in court or the provision was procured by fraud. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972); Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974); Roby v. Corporation of Lloyd's, 996 F.2d 1353 (2d Cir. 1993); AVC Nederland B.V. v. Atrium Investment Partnership, 740 F.2d 148 (2d Cir. 1984). The Supreme Court found that "in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside." Bremen, 407 U.S. at 15. The Second Circuit has also enforced forum selection clauses "even if that agreement tacitly includes the forfeiture of some claims that could have been brought in a different forum." Roby, 996 F.2d at 1360. The court further reasoned: "Forum selection and choice of law clauses eliminate uncertainty in international commerce and insure that the parties are not unexpectedly subjected to hostile forums and laws." Roby, 996 F.2d at 1363.

In dismissing a case pursuant to a forum selection clause, the Second Circuit explains that the court must determine that the clause (i) was reasonably communicated to the party resisting enforcement; (ii) has mandatory language requiring suit in a particular jurisdiction; and (iii) encompasses the plaintiff's claims. S.K.I. Beer Corp. v. Baltika Brewery, 612 F.3d 705 (2d Cir. 2010). First, ADB's forum selection clause was reasonably communicated to Lazare. Second, Lazare acknowledged receipt of the General Banking Conditions and confirmed its agreement with their terms at least five times. (Declaration of Veerle Snyers, dated April 4, 2012 ("Snyers Declaration"), ¶¶ 20-25.) The forum selection clause requires "any action" against ADB to be brought in Antwerp, thereby encompassing Lazare's claims in this Complaint. Third, the Court does not find that the clause was achieved by fraud or overreaching or that Lazare would lose its day in court due to any inadequacy of Antwerp as the chosen forum.

Lazare argues that the mandatory forum selection provision in the agreements memorializing the Lazare Credit Facility is inapplicable to Lazare's claims. In support of that argument, Lazare points to its account with KBC, which provides the Southern District of New York with exclusive jurisdiction over agreements with KBC Bank "relating to any accounts or disputes arising thereunder." While Lazare argues that the forum selection clause in the KBC Banking Conditions dismisses Defendants' jurisdictional objections, KBC counters that the narrow choice-of-law and forum clauses in the KBC Account Agreement do not encompass Lazare's claims, which are grounded in fraud, diversion of funds, and RICO. KBC further seeks to enforce ADB's forum selection clause, arguing that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." Weingrad v. Telepathy, Inc., No. 05-cv-2024 (MBM), 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005) (citations omitted). KBC argues that it meets the Second Circuit's criteria for when "a

7

forum selection clause in a contract may encompass claims made against a non-signatory where (1) those claims are 'nearly identical to' claims against the signatory, (2) 'arise out of' the same transaction as those claims, and (3) the non-signatory consents to the foreign jurisdiction. Horvath v. Banco Comercial Portegues, S.A., 461 Fed. Appx. 61, 62-63 (2d Cir. 2012). These criteria are met here.

In sum, the conflicting forum selection clauses between ADB and KBC do not weigh heavily in either direction. In light of the conflicting forum selection clauses, the Court proceeds to a forum non conveniens analysis. The Court considers the inclusion of the mandatory forum selection clause of Belgium in Article 37 of the ADB Banking Conditions as a factor for dismissal for forum non conveniens.

### B. Motion to Dismiss for Forum Non Conveniens

Under the common law doctrine of forum non conveniens, a district court has broad discretion to "dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998). "'[I]n the determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties.'" Base Metal Trading SA v. Russian Aluminum, 253 F.Supp.2d 681, 699 n. 13 (S.D.N.Y. 2003) (quoting Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645 (2d Cir. 1956)), aff'd, 98 Fed.Appx. 47 (2d Cir. 2004). The Second Circuit has "outlined a three-step process to guide the exercise of that discretion":

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citing Iragorri v. United Techs. Corp., 274 F.3d 65, 73–74 (2d Cir. 2001) (en banc)).

"[A] court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice for forum will stand." In re Optimal U.S. Litig., 837 F. Supp.2d 244, 251 (S.D.N.Y. 2011) (quoting Iragorri, 274 F.3d at 71). "However, 'the degree of deference given to a plaintiff's forum choice varies with the circumstances,'" id. (quoting Iragorri, 274 F.3d at 71), and "the greatest deference is [usually] afforded a plaintiff's choice of home forum." Norex Petroleum, 416 F.3d at 153 (citing Iragorri, 274 F.3d at 71). "In assessing the proper measure of deference," courts look to several factors, including, "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district," and whether plaintiff's choice was motivated by tactical forum shopping. In re Optimal, 837 F. Supp. 2d at 250–51. Ultimately, "the greater the plaintiff's or the lawsuit's bona fine connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be to gain dismissal whereas the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons the less deference the plaintiff's choice commands." Id. (quoting Palacios v. Coca-Cola Co., 757 F. Supp.2d 347, 352 (S.D.N.Y. 2010)) (quotation marks and ellipses omitted).

With regard to step two, "[t]he defendant bears the burden of establishing that a presently available and adequate alternative forum exists." Abdullahi v. Pfizer, Inc., 562 F.3d 163, 189 (2d Cir. 2009). "[A] forum may . . . be inadequate if it does not permit the reasonably prompt adjudication of a dispute, if the forum is not presently available, or if the forum provides a

9

remedy so clearly unsatisfactory or inadequate that it is tantamount to no remedy at all." Id.
Although the ultimate burden rests with the defendant, courts will not "adversely judg[e] the
quality of a foreign justice system," unless the plaintiff, for example, "produc[es] evidence of
corruption, delay or lack of due process in the foreign forum." Id. (citing PT United Can Co.,
138 F.3d at 73). "An alternative forum is adequate if the defendants are amenable to service of
process there, and if it permits litigation of the subject matter of the dispute." Pollux Holding
Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003). "Moreover, '[t]he availability of
an adequate alternative forum does not depend on the existence of the identical cause of action in
the other forum, nor on identical remedies.'" In re Optimal, 837 F. Supp. 2d at 251 (quoting
Norex Petroleum, 416 F.3d at 158).

At step three, the "burden is on the defendant to show 'the balance of private and public
interest factors tilts heavily in favor of the alternative forum.'" Id. at 252 (quoting Abdullahi,
562 F.3d at 189). The private interest factors include: "(1) the relative ease of access to
evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process
for unwilling witnesses; and (4) other factors that make the trial more expeditious or less
expensive." Id. These factors help the court balance "the hardships defendant would suffer
through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of
dismissal" and having to bring suit in another jurisdiction. Id. (quoting Iragorri, 274 F.3d at 74).

The public interest factors include: "(1) settling local disputes in a local forum; (2)
avoiding the difficulties of applying foreign law; (3) avoiding the burden on jurors by having
them decide cases that have no impact on their community." Id. No single factor is dispositive,
and "each case turns on its facts." Piper Aircraft v. Reyno, 454 U.S. 235, 249, 102 S.Ct. 252
(1981). "In sum, '[t]he action should be dismissed only if the forum is shown to be genuinely

inconvenient and the selected forum significantly preferable." Id. (quoting Iragorri, 274 F.3d at 74–75).

1.   Level of Deference Afforded to Plaintiff's Choice

Plaintiff's choice of forum here is accorded a moderate level of deference.  First, the "convenience of the plaintiff's residence in relation to the chosen forum" weighs in favor of according deference to Plaintiff's home forum.  Norex Petroleum Ltd. v. Access Industries, Inc. 416 F.3d 146, 154 (2nd Cir. 2005).  However, Plaintiff's home forum is given less deference because circumstances generally indicate forum shopping, a "pursuit not simply of justice but of justice blended with some harassment." Id. at 155. In 2010, Lazare threatened Defendants with a "high visibility legal battle" in the form of a RICO action if ADB did not drop its Belgian lawsuit. (Snyers Declaration, ¶ 17 and Letter from Maurice Tempelsman, Chairman of the Board of Lazare, to Jan Vanhevel, Chief Executive Officer of KBC (May 26, 2010)).  Indeed, Courts have recognized that the possibility of a RICO treble damages award might attract plaintiffs to a United States forum regardless of convenience. Norex Petroleum Ltd. v. Access Industries, Inc., 416 F.3d 146, 155 (2nd Cir. 2005) (citing Iragorri v. United Techs. Corp., 274 F.3d at 71).

The substantive issues and conduct have a greater relation to Belgium than the United States. Although ADB's New York office administered and extended the Lazare Credit Facility in New York, Lazare's relationship with ADB began in Belgium when LKB first obtained credit from ADB in 1988 before ADB had a representative office in New York. (Okrent Declaration, ¶ 5 (Apr. 6, 2012); see also Snyers Declaration, ¶¶ 6, 7 (Apr. 4, 2012). All of the activities related to the alleged misappropriated diamonds consigned to LKB's own separate overdraft facility occurred in Belgium. (Snyers Declaration, ¶ 7). While New York may be a convenient location

11

for the Plaintiff to bring suit, the factual allegations are attenuated and weigh against according deference to Plaintiff's choice of forum.

Second, "the availability of witnesses or evidence to the forum district" does not strongly weigh in favor of deferring to Plaintiff's choice of forum.  Plaintiff claims that it filed its lawsuit in New York City because all parties do business in New York and the Lazare Credit Facility was negotiated, executed, extended, administered, paid, and ultimately terminated in New York. (Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp.") at 36.) While Plaintiff asserts that "[m]ost of the documents necessary to prove the allegations in the Complaint are in Defendants' possession here in New York . . . and are in English," (Opp. at 40) Defendants declare otherwise. Accordingly, this second factor does not strongly weigh in favor of deferring to Plaintiff's choice of forum.

The third factor, "the defendant's amenability to the suit in the forum district," weighs in favor of according deference to Plaintiff's choice of forum, but not by much.  ADB and KBC are subject to personal jurisdiction in New York.  Compare Norex Petroleum, 416 F.3d at 155 (noting that New York was a convenient, not tactical, choice of forum, where it was doubtful that plaintiff could have perfected jurisdiction over all defendants in any of the "presumptively convenient home forums" or "even in defendants' preferred forum").  The parties are subject to suit in Belgium. As such, this is not the case where a plaintiff's choice of forum is "made to obtain jurisdiction over defendant," Norex Petroleum, 416 F.3d at 156 (quoting Iragorri, 329 F.3d at 74), which cuts against a finding of deference on this factor.

Fourth, courts must ask whether the plaintiff's choice of forum was motivated by tactical reasons.  In light of the other deference factors above, and given that U.S. RICO allows for treble damages, an inference that forum shopping motivated Plaintiff's choice of New York forum is

12

not far-fetched.  Real evidence exists that Plaintiff was motivated to choose New York to take advantage of federal laws. Lazare waited nearly two years after making its threats to file this suit, during which time this litigation progressed in Belgium, until months from the conclusion of that Belgian proceeding. Thus, the Court finds that Plaintiff engaged in forum shopping. See, e.g., In re Herald, Primeo & Thema Sec. Litig., No. 09 Civ 289 (RMB), 2011 WL 5928952, at *12 (S.D.N.Y. 2011).

In sum, Plaintiff is afforded a moderate level of deference because the lawsuit does have a bona fide connection to New York, but New York is not convenient for Defendants or the majority of available witnesses.

2.    Adequacy of Alternative Fora

Belgium is an adequate forum.  See Calavo Growers of Cal. v. Generali Belgium, 632 F.2d 963, 968 (2d Cir. 1980). "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Pollux Holding, 329 F.3d at 75. Here, both ADB and KBC are amenable to service of process in Belgium. Belgium is the only place where all the parties and non-parties, including LKB, Gulfdiam, Daleyot and the 24 members of the alleged "enterprise" can be brought before a single court. While the Court need not definitively resolve the choice of law issue on a forum non conveniens motion, Belgium can adequately adjudicate Lazare's claims even under New York law. Belgian courts apply foreign law according to the actual interpretation of the rule in the country of origin. (Belgian Supreme Court (Nov. 4, 2010) http://www.cass.be). Belgium is an adequate forum despite the fact that RICO, and its treble damages, are unavailable in Belgium. PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73-75 (2d Cir. 1998) (Indonesia held to be an adequate forum despite unavailability of RICO).

13

3.      Private and Public Factors

a. *Private Interests*

First, the "relative ease of access to evidence" weighs significantly in favor of Belgium.

Few potential witnesses are located in the United States. (Snyers Declaration, ¶¶ 26 (Apr. 4,

2012); Declaration of Walter Haeck, dated April 4, 2012 ("Haeck Declaration"), ¶¶ 11-17.)

Most witnesses with potentially relevant knowledge are located in Europe. (Haeck Declaration,

¶¶ 13-17.)  Current and former employees of KBC and ADB and much of the relevant

documentary evidence are located in Belgium. (Snyers Declaration, ¶¶ 25-27 (Apr. 4, 2012);

Haeck Declaration, ¶¶ 11, 15-17.)  Many witnesses speak Dutch and a substantial amount of the

documents are in Dutch, including most internal ADB and KBC electronic communications.

(Snyers Declaration, ¶¶ 27 (Apr. 4, 2012); Haeck Declaration, ¶ 17.) These documents must be

collected in Belgium and translated into English for use in this litigation, increasing the

Defendants' litigation costs.

Second, the "cost to transport witnesses to trial" weighs slightly in Defendants' favor.

Lazare's Chairman, Mr. Tempelsman, resides in New York and may testify. Nevertheless,

Defendants will have to fly its witnesses from Belgium to New York, but given that Defendants

conduct other business in New York and conceded to personal jurisdiction here, "any

inconvenience caused by travel to New York for this litigation will not be oppressive." In re

Optimal, 837 F. Supp. 2d at 258.  Messrs. Daleyot and Fass and Daleyot Entities employees

reside outside of the United States.  Many witnesses will require interpreters, thereby incurring

additional expenses. (See Haeck Declaration, ¶ 18; Snyers Declaration, ¶¶ 29 (Apr. 4, 2012).

Regardless, the Court does not find the cost to transport and lodge witnesses to have much

bearing on this analysis.

Third, the "availability of compulsory process for unwilling witnesses" weighs significantly in favor of Belgium. Most of the individuals and entities identified in the Complaint reside in Belgium or other foreign jurisdictions outside the Court's subpoena power and cannot be compelled to give evidence in this case. See Allstate Life Ins. Co. v. Linter Grp. Ltd., 994 F.2d 996, 1001 (2d. Cir. 1993) (private factors favored dismissal where "key witnesses no longer are within the subpoena power of the federal court and therefore cannot be compelled to appear at trial in New York."). Daleyot and Raphael Fass, the alleged perpetrators of the "Illegal Scheme," are Belgian nationals. (See Compl. ¶¶ 120(a), (j).) They allegedly direct many Belgian corporate entities, including DD, KT, and DDM Holding. (See Compl. ¶¶ 120(b)- (c).) The "scheme" participants who are not subject to this Court's compulsion can be joined as parties and compelled to give evidence in Belgium. (Vanlerberghe Declaration, ¶ 40.) Certain of the Daleyot Entities that are located in countries that are not party to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, including the United Arab Emirates, and cannot be subject to any discovery in connection with a U.S. proceeding, are subject to Belgian jurisdiction. (Id. at ¶¶ 36-41.) In sum, the private interests in this case do not favor maintaining this suit in New York.

b. *Public Interests*

First, the fora's relative interests weigh in favor of dismissal. Despite Plaintiff's contentions to the contrary, New York does not ultimately have a stronger interest than Belgium in this particular lawsuit. Both Belgium and New York have strong interests in determining the truth of whether Belgian citizens committed fraud, theft, misconduct, and conspiracy against a New York entity. New York does not have an interest in the alleged misappropriation of diamonds and sales proceeds and banking activities occurring in Belgium or other counties

15

outside the United States.  Nonetheless, New York is interested in protecting New York residents who do business with foreign banks in New York.  Belgium also has a strong interest in regulating its own banks and holding a Belgium bank liable for allegedly harming a New York company.  *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 228-29 (S.D.N.Y. 2007).

Where a U.S. plaintiff does business with foreign entities, it can reasonably expect to litigate in foreign courts. Here, Lazare actively conducted its diamond business, including the activities alleged in the Complaint, outside of the United States, with and through foreign affiliates. Lazare's executives traveled to Belgium repeatedly to meet with ADB and KBC to discuss Lazare's dispute with the Daleyot Entities and Lazare's $45 million debt to ADB. (Snyers Declaration, ¶ 13.) Lazare can reasonably expect to continue to litigate the Belgian case.

Moreover, New York also has an interest in "avoiding the burden on [its] jurors by having them decide cases that have no impact on their community." Maersk, 554 F. Supp.2d at 454. This especially pertains to jurors before this Court: "It is well-recognized that the Southern District of New York is a congested district . . . and there is a legitimate interest in ensuring that disputes with little connection to the district be litigated elsewhere." Albert, 2002 WL 272408, at *6.

The doctrine of international comity militates against litigation in this country when an American citizen has voluntarily conducted business in a foreign country, and parallel litigation is proceeding abroad. Sussman v. Bank of Israel, 801 F.Supp. 1068, 1073 (S.D.N.Y. 1992). International comity also dictates that American courts enforce forum selection clauses out of respect for the integrity and competence of foreign tribunals. Roby, 996 F.2d at 1363.

Finally, the enforceability of any judgment rendered in the United States is relevant to the ease, expediency, and the expense of litigation in this forum. Albert Trading, Inc. v. Kipling

16

Belgium N.V./S.A., 2002 WL 272408, at *4 (S.D.N.Y. 2002). The fact of the exclusive jurisdiction clause and the pendency of the Belgian proceeding could render any judgment of this Court unenforceable in Belgium. Under similar circumstances, the Southern District of New York has found that "[j]udicial efficiency and avoidance of duplicative litigation argue in favor of [litigation] in Belgium," particularly where, as here, such litigation is pending. Albert, 2002 WL 272408, at *4 (dismissing complaint in favor of litigation pending for 18 months in Belgium). The public interests factors prefer dismissal.

Considering the moderate level of deference afforded Plaintiff's choice of forum, that Belgium is an adequate alternative forum, and that New York has minimal interest in this litigation, Defendants have sufficiently shown that a balance of the hardships in this case favors dismissal. Accordingly, this action is dismissed for forum non conveniens. The Court need not address Defendants' motion to dismiss for failure to state a claim or the motion for a more definite statement and to strike. The Court declines to enjoin ADB from continuing to pursue its claims against Lazare in pending Belgian proceedings.

## CONCLUSION

Based on the above, the Defendants' motion to dismiss the Complaint for forum non conveniens is GRANTED.


SO ORDERED.

Dated:      New York, New York
            September 5, 2012

_____
ANDREW L. CARTER, JR.
United States District Judge

17