# EXHIBIT E

I-22

# HERRICK

NEW YORK
NEWARK
PRINCETON

CHRISTOPHER J. SULLIVAN
PARTNER
Direct Tel: 212.592.1417
Direct Fax: 212.545.3330
Email: csullivan@herrick.com

December 4, 2013

**VIA FEDERAL EXPRESS AND E-MAIL**

Francine Wachsstock, Esq.
Wachsstock & Scharf
Van Breestraat 20
B-2018 Antwerpen 1
Belgium

Re:   Antwerp Commercial Court Lawsuit Entitled *Antwerp Diamond Bank, N.V. v. Lazare Kaplan International Inc.* No. 10/3460

Dear Ms. Wachsstock:

Further to our prior letters dated June 23, 2010, August 26, 2011, July 17, 2012, and July 18, 2012, we write to provide you with additional information relating to the issue of the proper jurisdiction and venue for the dispute among Lazare Kaplan International Inc. ("Lazare"), KBC Bank N.V. ("KBC"), and Antwerp Diamond Bank N.V. ("ADB").

## A.   UPDATE REGARDING PROCEEDINGS IN THE U.S.A

We write to update you on the proceedings in the U.S.A. Both ADB and KBC will be producing additional documents to Lazare in the coming months, which may have substantial bearing on the jurisdictional issues presently pending before the Antwerp Commercial Court in connection with ADB's lawsuit against Lazare.

As you know, in June 2013, the United States Court of Appeals for the Second Circuit vacated the United States District Court for the Southern District of New York's dismissal of Lazare's complaint, and remanded the action (the "U.S. Lawsuit") to the district court for further proceedings. In short, the Second Circuit recognized that the district court should have determined which of two forum selection clauses governed each of Lazare's claims against KBC and ADB, and thus should not have dismissed Lazare's action based on the doctrine of *forum non conveniens*. At that time, the Second Circuit made clear that "unresolved factual disputes over the banking arrangements between Lazare and defendants" made it impossible for the Second Circuit to decide that issue. *Lazare Kaplan International Inc. v. KBC Bank N.V., et al.*, 2013 WL 3064857 at *2 (2d Cir. June 20, 2013).

As a result of the Second Circuit's decision, Lazare's U.S. lawsuit against KBC and ADB is in the midst of a non-merits discovery phase, pursuant to which the parties have exchanged (and KBC and ADB have been ordered to produce additional) documents concerning whether

HERRICK, FEINSTEIN LLP
A New York limited
liability partnership
including New York
professional corporations

2 PARK AVENUE, NEW YORK, NY 10016 • TEL 212.592.1400 • FAX 212.592.1500 • www.herrick.com

Case 1:11-cv-09490-ALC-JCF   Document 109-5   Filed 04/24/14   Page 3 of 5

HERRICK

Francine Wachsstock, Esq.
December 4, 2013
Page 2

Lazare was an "account holder" at ADB in Belgium, and concerning the framework of the parties' relationships and the practical implementation of those banking arrangements.

We are not at liberty to discuss the vast majority of the documents produced (or that will be produced) by KBC and ADB in the context of the U.S. Lawsuit due to a protective order (the "Protective Order") that KBC and ADB insisted that Lazare agree to in connection with the production of documents in the U.S. Lawsuit.[1] Nonetheless, it is our opinion that certain of the documents produced thus far by KBC and ADB (and those we expect to receive over the course of the next few months) will have a substantial bearing on what the true banking arrangements were among the parties, what were the respective roles of KBC and ADB with respect to those arrangements, and how to interpret the forum selection clauses proffered by the parties in light of those banking arrangements. Indeed, we believe that the Services Agreement (which ADB produced in the context of ADB's lawsuit against Lazare in Antwerp), among other documents, has strengthened Lazare's position that it did not maintain a bank account at ADB in Belgium, and that therefore the forum selection clause contained in ADB's Banking Conditions is not even arguably applicable to the parties' dispute. Thus, Lazare's position remains that the courts of New York have exclusive jurisdiction over the parties' dispute.

The aforementioned documents may also have substantial bearing on the jurisdictional issues presently before the Antwerp Commercial Court in connection with ADB's lawsuit against Lazare. Of course, whether those documents may be considered by the Antwerp Commercial Court may depend on whether the Antwerp Commercial Court is interested in seeing such documents. The Protective Order does not allow Lazare to make use in Antwerp of the vast majority of the documents that KBC and ADB produced (or will produce) in New York, unless KBC and ADB consent to such use or the district court determines that the documents are not entitled to the protections afforded to "Confidential" documents produced by KBC and ADB. Under applicable law, production of these documents in New York is mandatory pursuant to the order of the district court. Obviously, the Antwerp Commercial Court also is free to make its own determination as to whether KBC and ADB may withhold those documents from consideration by the Antwerp Commercial Court while simultaneously making them available to the district court in New York.

B.  **ADDITIONAL CASE LAW**

Finally, you have asked us to provide you with additional case law as a supplement to our prior letters relating to forum selection clauses and jurisdiction. As you may recall, in our August 26, 2011 letter we explained that New York courts will enforce choice of law and forum selection provisions such as those found in the General Credit Granting Conditions, and we cited a number of Second Circuit cases so holding. Since then, at least one New York federal district court has reinforced the prima facie validity of such clauses, holding that a resident of another

---

[1] A copy of the Protective Order is attached hereto as **Appendix 1**.

HERRICK

Francine Wachsstock, Esq.
December 4, 2013
Page 3

state may not escape New York jurisdiction where she "signed the agreement containing the forum selection clause" and failed to "demonstrate that enforcement [was] unreasonable under the circumstances." See Leviton Mfg. Co., Inc. v. Reeve, 2013 WL 504020 (E.D.N.Y. Feb. 7, 2013).[2]

We also would like to bring to your attention a recent decision in a case titled Motorola Credit Corp. v. Uzan, 2013 WL 6098388 (S.D.N.Y. Nov. 20, 2013).[3] In that case, the issue before the district court was whether a parent bank must search its subsidiaries' files (including the files of its subsidiary bank) in order to comply with a subpoena under New York and federal law. The district court found that the subsidiary bank's documents were within the "control" of the parent bank, and thus discoverable pursuant to Federal Rule of Civil Procedure 45 and N.Y.C.P.L.R. §5224. As the district court stated, "'control' encompasses a relationship to the documents beyond mere 'possession' or 'custody.'" Id. at *3. The district court went on to explain:

> This pragmatic approach to understanding "control" will often result in a finding that a parent corporation has, practically speaking, sufficient control over its subsidiaries to require that it search them in compliance with a subpoena served on the parent.
>
> This outcome follows even where a parent corporation may not "legally compel" the subsidiary to produce the document, but where there is evidence, "which strongly suggests that, as a practical matter, [the parent] can secure the documents from [the subsidiary]." The evidence credited by [another court] that informed its practical finding of "control" for discovery purposes included overlapping management between the parent and subsidiary, and the fact that the parent had "established basic principles for coordination of the activities of its subsidiaries," including "a clear vision of a ... global business, requiring cooperation and coordination among its many-parts." Similarly, in a banking context, "control" for discovery purposes has been found where the parent "exercises operational control and oversight over the activities of its" subsidiary, has established company-wide policies applicable to the subsidiary, and has management overlap.

Motorola, 2013 WL 6098388, at *3-4 (internal citations omitted).

---

[2] A copy of the Leviton decision is attached hereto as **Appendix 2**.
[3] A copy of the Motorola decision is attached hereto as **Appendix 3**.

HERRICK

Francine Wachsstock, Esq.
December 4, 2013
Page 4

      The district court ultimately found that the "parent corporation ... wholly own[ed] its subsidiaries and [ ] 'established basic principles for coordination of the activities of its subsidiaries,' including 'a clear vision of a ... global business, requiring cooperation and coordination among its many parts,'" and that there was "substantial 'overlap between the managing executives for [the parent] and the [subsidiary].'" Id. at *4 (internal citations omitted). Moreover, the district court found that the parent had the "'practical ability to request from, or influence'" [the bank subsidiary] to comply with the subpoenas and Discovery Order ... even though [the bank subsidiary] maintain[ed] separate customer-account databases and observe[d] corporate formalities." Id. As a result, the district court ordered the production of the requested documents, finding that the parent bank "had practical 'control' over its wholly owned subsidiaries [including its subsidiary bank] and their documents for the purposes of discovery under Fed.R.Civ.P. 45 and N.Y.C.P.L.R. §5224." Id. at *5.

                                        Very truly yours,

                                        Christopher J. Sullivan