# EXHIBIT B

# TransLingua
**YOUR MESSAGE IN TRANSLATION**

# CERTIFICATE OF ACCURACY

This is to certify that the attached document, Opinion of Antwerp Public Prosecutor in re: *Lazare Kaplan International Inc. v. NV Antwerpse Diamantbank*, dated April 19, 2013, has been translated from Flemish into English by staff members of TRANSLINGUA who are familiar with both the Flemish and English languages, and is to the best of our knowledge, ability and belief a true and accurate translation.

_____
For TRANSLINGUA

_____
NOTARY

Sworn to and subscribed before me
this 15th day of May, 2014

MARIA C. DAGOSTINO
Notary Public, State of New York
No. 01DA5047105
Qualified in Kings County
Commission Expires July 24, 2017

**New York**
211 East 43rd Street
Suite 1404
New York, NY 10017

T 212.697.2020
F 212.697.2891
E nyc@translingua.com

**Boulder**
1445 Pearl Street
Suite 215
Boulder, CO 80302

T 303.442.3471
F 303.442.5805
E boulder@translingua.com

www.translingua.com



Public
Prosecutor

Office of the Public Prosecutor
ANTWERP
SECTION 300: FINANCIAL AND FISCAL CRIME

Address: Public Prosecutor – Bolivarplaats 20 bus 2 - Antwerp

OPINION OF THE PUBLIC PROSECUTOR

FILE HANDLED BY
Paul Hannes
T  +32 (0)3/257.90.53
F  +32 (0)3/257.90.48
Bolivarplaats 20 bus 2
Antwerp
paul.hannes@just.fgov.be

NUMBER OF OFFICE HANDLING THE FILE
314

DATE
April 19, 2013

Our reference
AN.20.97.238/13

This document contains the opinion of the Public Prosecutor concerning the direct summons which LAZARE KAPLAN INTERNATIONAL INC. issued on 3/21/2013 against NV ANTWERPSE DIAMANTBANK.

The Public Prosecutor believes that acquittal is an appropriate course of action insofar as the criminal proceedings were instituted in an admissible and acceptable manner (which in this case they were not). This is essentially a matter of a provocative and reckless complaint which contains defamatory allegations.

1.
The Public Prosecutor has requested from the Court of Commerce the procedural documents (summons and trial briefs) of the case in which LAZARE KAPLAN INTERNATIONAL INC. was summoned by NV ANTWERPSE DIAMANTBANK to pay outstanding credits.

The Public Prosecutor has annexed these procedural documents to the file of the direct summons, as these documents show the background against which LAZARE KAPLAN INTERNATIONAL INC. believed it necessary to proceed to the service of the direct summons.

2.
The direct summons of the Plaintiff may be summarized as follows:
- Nos. 1-3: summary of the alleged claims: abuse of trust, deception, money laundering
- Nos. 4-5: identity of the allegedly aggrieved persons
- No. 6: identity of Defendant
- Nos. 7-9: identity of the DALEYOT Group

Public
Prosecutor

- Nos. 10-16: summary. NV ANTWERP DIAMOND BANK supposedly systematically planned "(i) to misappropriate diamonds from LAZARE, (ii) to complicate tracing these diamonds and the proceeds thereof by setting up a series of both legitimate and fake transactions, (iii) to launder the proceeds from these diamonds through a tangle of legal and illegal corporations and accounts (through ADB accounts), and (iv) to use the proceeds from the diamonds to repay the ADB loans to DALEYOT, and for other purposes of ADB"
- Nos. 17-24: account of the "facts" concerning the "LAZARE – ADB credit relationship"
- Nos. 25-32: account of the "facts" concerning the "LAZARE – DALEYOT commercial relationship"
- Nos. 33-42: account of the "facts" concerning "the illegal banking relationship between DALEYOT and ADB"
- Nos. 43-47: account of the "facts" concerning "the embezzlement of monies of GULFDIAM for, among other things, investments in real estate projects in Central and Eastern Europe"
- Nos. 48-59: account of the "facts" concerning the "misappropriation of LAZARE diamonds", more specifically "misappropriation of 38,275,665 USD in diamonds delivered by LKB to DALEYOT"
- Nos. 60-68: account of the "facts" concerning the "misappropriation of LAZARE diamonds", more specifically "misappropriation of diamonds supplied by GULFDIAM"
- Nos. 69-84: account of the "facts" concerning the "misappropriation of LAZARE diamonds", more specifically "additional actions to hide the proceeds from the LAZARE diamonds". The bank has supposedly refused (to allow) an investigation/audit to be carried out at the request of LAZARE. The bank has supposedly taken collateral in the name of Erez DALEYOT. The bank has supposedly exploited a (back-to-back) guarantee with HSBC, disregarding the indications of money laundering.

The businesses of the DALEYOT Group had accounts at NV ANTWERPSE DIAMANTBANK, and had credit open with NV ANTWERPSE DIAMANTBANK – just as the Plaintiff had both an account and an outstanding credit with NV ANTWERPSE DIAMANTBANK.

In that regard, the bank requested company information from its borrowers (Plaintiff and the DALEYOT corporations), including information about the diamonds which they all purchased and sold themselves.

3.
Based on a review of the complaint, the Plaintiff states that it bought 38,275,665 USD in diamonds and consigned them to its (100%) subsidiary LAZARE KAPLAN BELGIUM N.V., which sold these diamonds under the condition of reservation of ownership to businesses in the DALEYOT Group.

This (These) buyer(s) did not pay for the diamonds, and sold them – allegedly disregarding the reservation of ownership.

Nevertheless, the Plaintiff made no complaint against the DALEYOT corporations, due to alleged abuse of trust. It is proceeding with a direct summons of the banker of the DALEYOT corporations – which was also its own banker.

2

Public
Prosecutor

The (sales) proceeds were transferred by the various buyers to the DALEYOT corporations' account with NV ANTWERPSE DIAMANTBANK.

> The Plaintiff does not demonstrate that NV ANTWERPSE DIAMANTBANK was responsible for the fact that the buyers of the diamonds paid to the vendor DALEYOT corporations, and not directly to LAZARE KAPLAN BELGIUM NV, or the Plaintiff.

The DALEYOT corporations directed these transferred monies to their own account in order to pay off the DALEYOT credits with NV ANTWERPSE DIAMANTBANK. The DALEYOT corporations did not pass on the sales proceeds to either LAZARE KAPLAN BELGIUM NV or the Plaintiff.

> The Plaintiff does not demonstrate that NV ANTWERPSE DIAMANTBANK was responsible for the fact that the vendor DALEYOT corporations decided to use the monies in their accounts to pay off the DALEYOT corporations' credits – instead of for another purpose (such as proceeding with the payment to KAPLAN BELGIUM NV or the Plaintiff, or proceeding with new purchases of diamonds).

The Plaintiff believes that NV ANTWERPSE DIAMANTBANK has "misappropriated" its diamonds (title of Nos. 48-59) because the DALEYOT corporations have sold the diamonds without having paid Plaintiff (or its Belgian subsidiary).

> *55. Indeed, ADB allowed the proceeds of the diamonds which they knew came from LAZARE to be deposited in accounts of DD / KT. In doing so, ADB covered its exposure to the illegitimate investments and debts of ADB and DALEYOT, to the detriment of LAZARE.*
>     (Direct summons, No. 55)

This statement does not make sense, for several reasons:

- the Plaintiff does not demonstrate that NV ANTWERPSE DIAMANTBANK "allowed" the proceeds of the diamonds "to be deposited".
  *Since when is it the role of a bank to indicate on a sales invoice to which account the purchase price should be paid?*
  The DALEYOT corporations allegedly sold the diamonds, autonomously determining which accounts their buyers should pay into.

- once the buyers deposited the purchase prices into the account of the DALEYOT corporations, it was up to the holders of these accounts to determine what they would do with them: either pay the Plaintiff (or its Belgian subsidiary) with the monies, purchase new diamonds (or other company assets), or pay off the DALEYOT credits.

3

> *Since when does a bank have a legal obligation to insist that one of its (thousands of) account holders must first pay its contractual debts with another account holder with its incoming monies?*
> NV ANTWERPSE DIAMANTBANK, as a banker, is incapable of imposing imperative demands on the DALEYOT corporations, including any demand that they pay the Plaintiff.
> NV ANTWERPSE DIAMANTBANK, as a banker, is also incapable of simply drawing and transferring those monies transferred by buyers to the account of the DALEYOT corporations, to the account of the Plaintiff (or its Belgian subsidiary).

The bank accounts of both the Plaintiff and the DALEYOT corporations are completely independent of each other.

The bank could not just carry out transactions between these accounts at the request of the Plaintiff. In that case, the bank would indeed be liable with respect to the DALEYOT corporations, which had given no order or mandate to the bank to carry out such transactions.

> By analogy with case law: a bank cannot carry out transactions itself between two accounts which belong to unmarried but de facto cohabiting account holders – the accounts are independent. See E. Wymeersch, R. Steennot and M. Tison, "Overzicht van rechtspraak. Privaat bankrecht (1999-2007) [Overview of case law: Private banking law]", *TPR* 2008, 1136, No. 124.
>
> If a bank cannot carry out transactions between accounts of cohabiting partners who share a life together, why would a bank then have power over the accounts of account holders who have nothing to do with each other, except for the fact that one sells things to the other from time to time?

A bank should always follow up on credit loans, because a civil liability may arise towards third parties through the enforcement of an inappropriate credit. The bank should therefore have followed up on the conduct of both the Plaintiff (with a credit line of 45,000,000 USD) and the DALEYOT corporations (also with a credit line of tens of millions of USD).

But following up on company information may not lead to involvement in the management of a corporation: the risk then exists that the bank may be seen as an actual manager, particularly if the bank imposes management decisions (G. Schrans and R. Steennot, *Algemeen deel van het financieel recht* [General volume of financial law], Antwerp, Intersentia, 2003, 472, No. 621).

NV ANTWERPSE DIAMANTBANK obtained, as part of a check during the granting of credit:
- from the Plaintiff, the invoices which proved that it had sold its diamonds to the DALEYOT corporations, under the condition of reservation of ownership.
- from the DALEYOT corporations, the invoices which proved that the diamonds were sold to third parties.

4

Public
Prosecutor

The bank had no obligation to make the management decisions (1) that the buyers of the diamonds should have paid the Plaintiff (or its Belgian subsidiary) directly, (2) that the vendor DALEYOT corporations should have transferred these monies to the Plaintiff on receipt of the purchase prices.

In addition, the bank had to make sure it adhered to its confidentiality obligation, which provides that the bank is required to exercise discretion concerning its client and may not provide any information about the financial situation of a certain account holder to third parties.

In other words, the bank could not inform the Plaintiff that the monies from the sale of the diamonds had actually moved into the account of the DALEYOT corporations, because then the bank would have violated its obligation of discretion with the DALEYOT corporations.

The Plaintiff believes that it sufficed to complain to the bank that it was not paid by its own buyer (the DALEYOT corporations) – apparently expecting that the bank would itself draw the money from the account of the DALEYOT corporations, acting as a *deus ex machina*...

The Plaintiff cannot expect a bank – with thousands of account holders – to act as its agent, even if its commercial counterparty also held accounts with the same bank.

4.
Another part of the complaint states that in the same manner – through payment to the account of the vendor DALEYOT corporations with NV ANTWERPSE DIAMANTBANK, of the sales proceeds of diamonds sold under the condition of reservation of ownership – diamonds owned by GULFDIAM in the amount of 94,147,422.65 USD were supposedly misappropriated.

However, GULFDIAM itself has filed no complaint.

The Plaintiff believes that it suffices to have held 30% of the shares in the GULFDIAM joint venture, in which a DALEYOT corporation held 45% of the shares. This obviously does not suffice: GULFDIAM is apparently not lodging a complaint about an abuse of trust and/or deception through the sale of its diamonds.

The Plaintiff also believes that NV ANTWERPSE DIAMANTBANK has created a "fraudulent structure in order to misappropriate the GULFDIAM proceeds", for "among other things, investments in real estate projects in Central and Eastern Europe" (summons, margin Nos. 43-47). Nevertheless, once again no complaint from GULFDIAM has been submitted.

The Plaintiff should respect the corporate rights of the corporation in which it holds 25% of the shares. It cannot issue a direct summons for abuse of corporate assets of the GULFDIAM corporation (margin Nos. 43-47) or abuse of trust through the sale of GULFDIAM diamonds (margin Nos. 60-68).

5

Public
Prosecutor

In this respect, the direct summons is inadmissible, as the Plaintiff has no legitimate interest.

5.
The Plaintiff appears to be summoned by NV ANTWERPSE DIAMANTBANK before the Antwerp Court of Commerce, for repayment of borrowed monies.

This direct summons is a procedural means employed by the Plaintiff in order to have the handling of this commercial dispute suspended.

The trial briefs that the parties in this procedure have deposited, and which the Public Prosecutor has obtained, show that the Plaintiff has come to a settlement agreement with (re)insurers with respect to diamonds allegedly stolen from the Plaintiff. Under this settlement agreement, the Plaintiff has collected the amount of 60,000,000 USD.

In the direct summons, the Plaintiff makes no mention of the existence of this settlement agreement, whereas the Plaintiff has in all likelihood been reimbursed for any severe loss due to the alleged theft of either its diamonds or those of GULFDIAM.

The direct summons is therefore also inadmissible in its entirety, given that the Plaintiff has no interest in submitting a claim.

6.
CONCLUSION

The direct summons cannot result in a successful prosecution: the Plaintiff has already been paid pursuant to a settlement agreement concluded in America (the existence of which it has concealed from the Court).

In addition, it cannot invoke an alleged criminal offense from which not itself, but a wholly different corporation, GULFDIAM (in which the Plaintiff allegedly holds 25% of the shares), would have been the victim – leaving aside the fact that GULFDIAM has not made a complaint and that the settlement agreement would have paid for this loss…

In subsidiary order, on the merits of the case concerning diamonds of the Plaintiff itself, there is not the slightest evidence that NV ANTWERPSE DIAMANTBANK has committed any crime of which the Plaintiff would be the victim.

If the Plaintiff feels aggrieved because its buyer (the DALEYOT corporations) did not pay the price of the diamonds purchased, it should appeal to its defaulting buyer – and not to the banker shared by the seller and buyer.

Public
Prosecutor

The only reason the Plaintiff is advancing such a bizarre claim is that it does not want to pay back the monies loaned by NV ANTWERPSE DIAMANTBANK – which means that the direct summons amounts to an abuse of procedure.

Antwerp, April 19, 2013

[signature]

Paul Hannes
Public Prosecutor

7