| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#: _____<br>DATE FILED: 7-22-16 |

------------------------------------------------------------ x

LAZARE KAPLAN INTERNATIONAL, INC.,

                              Plaintiff,

                      -against-

KBC BANK N.V. and ANTWERP DIAMOND BANK N.V.,

                             Defendants.

------------------------------------------------------------ x

1:11-cv-09490 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

        Plaintiff Lazare Kaplan International, Inc. ("Lazare") brings suit against Defendants KBC Bank N.V. ("KBC") and Antwerp Diamond Bank N.V. ("ADB"). By motion dated March 25, 2014, Lazare moved for an order compelling KBC to produce to the Court for *in camera* review certain documents, for which it sought to challenge KBC's assertions of privilege and designations of confidentiality. (*See* ECF No. 94.) KBC opposed this motion. (*See* ECF No. 114.) On March 31, 2015, this Court granted Lazare's motion to compel KBC to produce the documents for *in camera* review.[1] (ECF No. 142.) Having reviewed the documents in question, the Court now addresses whether the documents in question are in fact properly designated as privileged and/or confidential.

## DISCUSSION

        Plaintiffs argue that five documents are improperly classified as privileged and that four documents are improperly classified as confidential. Each of the documents, in redacted or

---

[1] On July 13, 2016, Lazare submitted a supplemental letter brief arguing that the documents are neither privileged nor confidential. (ECF No. 165.) Defendants responded on July 15, 2016 (ECF No. 166), and Lazare filed a reply on July 18, 2016. (ECF No. 167.) The Court has considered the arguments raised in these letters but finds that they do not change the analysis set out below.

original form, was attached to a declaration filed by Christopher J. Sullivan under seal. (ECF No. 96). As the parties did, the Court will refer to the documents as follows:

| Exhibit Number | Bates Number | Defendants' Assertion |
| --- | --- | --- |
| Exhibit A | Bates Number 4225 | Privileged |
| Exhibit B | Bates Number 4276 | Privileged |
| Exhibit C | Bates Number 4310 | Privileged |
| Exhibit D | Bates Number 4347 | Privileged |
| Exhibit E | Bates Number 4794 | Privileged |
| Exhibit F | Bates Number 4224-25 | Confidential |
| Exhibit G | Bates Number 4278-80 | Confidential |
| Exhibit H | Bates Number 4310 | Confidential |
| Exhibit I | Bates Number 4787-88 | Confidential |

## I. Attorney-Client Privilege

Plaintiff challenges Defendants' classification of five documents as privileged. Plaintiff argues: (1) that attorney-client privilege does not apply because the documents are business in nature, rather than legal; (2) that the documents do not constitute attorney work-product because they address business concerns and not litigation; (3) that even if the documents are privileged, privilege has been waived here because the documents were shared between entities that did not have a "common interest"; and (4) that even if the documents are privileged, at least one falls within the "crime-fraud" exception.

### A. Legal Standard

#### 1. Attorney-Client Privilege Generally

Under federal common law,[2] "[t]he attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*,

---

[2] Plaintiff brings this action pursuant to this Court's federal question jurisdiction. *See* Compl., ECF No. 1, ¶ 91. Thus, the Court applies federal common law to the privilege issues implicated in the instant motion. *See, e.g., von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 390 (S.D.N.Y. 2015); *Asuncion v. Metro. Life Ins. Co.*, 493 F.Supp.2d 716, 720 (S.D.N.Y. 2007);

2

655 F.3d 126, 132 (2d Cir. 2011) (citation omitted). Because the privilege only extends to communications made for the purpose of obtaining or providing legal advice, a question commonly arises "whether the communication was generated for the purpose of obtaining or providing legal advice as opposed to business advice." *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Id.* But because a lawyer's "duty to society as well as to his client involves many relevant social, economic, political, and philosophical considerations . . . the privilege of nondisclosure is not lost merely because relevant nonlegal considerations are expressly stated in a communication which also includes legal advice." *Id.* (quoting *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 359 (D. Mass. 1950)). Thus, the Court must "consider whether the predominant purpose of the communication is to render or solicit legal advice." *Id.* (collecting cases).

In addition, despite its name, the attorney-client privilege extends beyond communications strictly between attorneys and their clients:

> "The attorney-client privilege, assuming its requirements otherwise are satisfied protects not only communications between corporate employees and lawyers for the corporation, but also communications of legal advice thus obtained among corporate employees responsible in a meaningful way for obtaining or acting upon such advice or participating in the dialogue between knowledgeable corporate agents and corporate counsel that is essential to the lawyers giving fully informed advice."

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12 MD 2335 (LAK), 2014 WL 4827945, at *1 (S.D.N.Y. Sept. 22, 2014) (citing *Verschoth v. Time Warner, Inc.*, No. 00 Civ. 1339, 2001 WL 546630, at *2 (S.D.N.Y. May 22, 2001); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995)).

## 2. Common Legal Interest

Generally, "[a] party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling itself from claiming that the communications were intended to be confidential." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). However, "the privilege is not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege." *Id.* "Under *United States v. Schwimmer,* 892 F.2d 237 (2d Cir. 1989), such disclosures remain privileged 'where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel in the course of an ongoing common enterprise and multiple clients share a common interest about a legal matter.'" *Id.* (internal alteration marks omitted).

"Parties may share a 'common legal interest' even if they are not parties in ongoing litigation." *Id.* (citing *Schwimmer*, 892 F.3d at 243). But while it is "unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply . . . only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected." *Id.* The common legal interest doctrine does not "provide an independent source of privilege or confidentiality. Accordingly, where the underlying communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply." *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 71 (S.D.N.Y. 2009) (internal citations and quotation marks omitted). Thus, "[i]t does not . . . 'encompass a joint business strategy which happens to include as one of its elements a concern about litigation.'" *Id.* (quoting *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995)).

4

### 3. Crime-Fraud Exception

"The crime-fraud exception strips the privilege from attorney-client communications that relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994) (quoting *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984)) (internal quotation marks omitted). "Given that the attorney-client privilege and work product immunity play a critical role in our judicial system, the limited exceptions to them should not be framed so broadly as to vitiate much of the protection they afford." *In re Richard Roe, Inc. ("Roe II")*, 168 F.3d 69, 71 (2d Cir. 1999) (internal citations omitted).

Thus, "[a] party wishing to invoke the invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997) *abrogated on other grounds by Loughrin v. United States*, 134 S. Ct. 2384 (2014). This is a two-step process. At step one, "the proposed factual basis must strike a prudent person as constituting a prudent person as constituting a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Id.* (quoting *John Doe*, 13 F.3d at 637) (internal quotation marks omitted). If that showing is made, the district court may, in its discretion, conduct an *in camera* review of the evidence. *Id.* At step two, "when there has been an *in camera* review, the district court exercises its discretion again to determine whether the facts are such that the exception applies." *Id.*

The exception applies only narrowly, and "a party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud

has been attempted or committed and that the communications were in furtherance thereof." *In re Richard Roe, Inc. ("Roe I")*, 68 F.3d 38, 40 (2d Cir. 1995). "The exception does not," therefore, "apply simply because privileged communications would provide an adversary with evidence of a crime or fraud." *Id.* Instead, it "applies only where there is probable cause to believe that the *particular communication with counsel* . . . was intended in some way to facilitate or to conceal the criminal activity." *Id.* (emphasis added).

### B. Application

#### 1. The Communications Are Privileged

As an initial matter, the Court's *in camera* review of each of the documents in question reveals a valid basis for the assertion of the attorney-client privilege. Though Lazare argues that attorney-client privilege does not apply, as the communications are between ADP and non-attorney third parties and they relate to some extent to business concerns, these arguments are unpersuasive. While the documents do, in fact, reference business concerns, "the predominant purpose" of each communication is to render legal advice. *See In re Cty. Of Erie*, 473 F.3d at 419. The documents are not stripped of privilege merely because "relevant nonlegal considerations are expressly stated" in the communications." *Id.* The Court's review reveals that the predominant purpose of each communication was to "guide future conduct or to assess past conduct," *id.*, and thus, each is a communication made for the purpose of obtaining or providing legal advice.

That the parties to the communications were non-lawyers does not change this analysis; the attorney-client privilege extends to communications of legal advice obtained from lawyers among corporate employees who were responsible for obtaining or acting upon such advice, or participating in discussions between corporate agents and corporate counsel. *See Forex*

6

*Transactions Litig.*, 2014 WL 4827945, at *1. Finally, as to Plaintiff's contention that there is no evidence that the communications were intended to be and were kept confidential, Defendants present evidence from the participants in the communications that they intended to keep the communications confidential and restricted their dissemination.

### 2. The Common Interest Doctrine Applies

Relatedly, Lazare argues that any privilege was waived by virtue of the fact that the banks communicated the information in question to each other. Defendants argue in response that the parties to the communications shared a common legal interest and so privilege is preserved. To establish the applicability of the common interest doctrine, Defendants must show: "(1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought [must have been] designed to further that interest." *Nordbank*, 259 F.R.D. at 71 (citations omitted).

Here, Defendants themselves and Defendants and third-party banks shared a common legal interest in enforcing Antwerp Bank's contractual rights under the documents governing Plaintiff's credit, avoiding a bankruptcy filing by Plaintiff in order to protect themselves, and defending against Plaintiff's allegations against Antwerp Bank. While it is plausible that all parties' interests were not aligned in all matters, "[t]he interests of the separately represented clients need not be entirely congruent . . ." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 cmt. e. It is sufficient that, so far as the subject of the communications go, "the nature of the interest [is] identical." *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012).

Here, the communications in question evince such a shared interest and furthermore, demonstrate that "a joint defense effort or strategy ha[d] been decided upon and undertaken by

7

the parties and their respective counsel." *Schwimmer*, 892 F.2d at 243. Thus, the common interest doctrine applies. *See Nordbank*, 259 F.R.D. 70-73 (finding that a bank and non-party lenders had a "common interest in enforcing defendants' obligations" and rejecting suggestion that doctrine does not apply because the common interest is a business interest, because "[w]hile the lenders' business interests may coincide or overlap with their legal interests, the obligations they seek to enforce are grounded in contract and, by definition, involve the pursuit of legal rights and remedies.")

### 3. The Crime-Fraud Exception Does Not Apply

Plaintiff argues that one document designated privileged, Exhibit C, is subject to the crime-fraud exception.[3] Having reviewed *in camera* the document, the Court finds no factual basis for a showing of probable cause to believe that a fraud or crime was committed and the communication in question was in furtherance of the fraud or crime. *See Jacobs*, 117 F.3d at 87. Lazare claim that the document reveals that Antwerp Bank and KBC were aware that certain receivables ADB had as security for one of its debtors in fact belonged to Lazare and that ADB and KBC were aware that they were collateralizing this other debtor[']s loans with receivables belonging to Lazare. (Rieder Decl., ECF No. 117.) But the document in question reveals no such knowledge. Further, even if the parties did have such knowledge and express it in the document, the document would at best be evidence relevant to a crime or fraud, but the crime-fraud exception only applies "where there is probable cause to believe that the *particular communication* . . . was intended in some way to facilitate or to conceal the criminal activity." *Roe I*, 68 F.3d at 40. That is not the case here. Therefore, the exception does not apply.

---

[3] Defendants argue that Lazare improperly bases its crime-fraud argument on its recollection of the document in question, prior to its recall by Defendants. The Court finds it unnecessary to delve into this area, as the crime-fraud exception does not strip the document of privilege regardless.

## II. Work Product Privilege

Because the documents are privileged under attorney-client privilege, the Court need not consider the applicability of the work-product privilege.

## III. Documents Designated Confidential

In addition to challenging the designation of certain documents as privileged, Plaintiff challenges the designation of four documents as "Confidential."[4]

Under Fed. R. Civ. P. 26(c), parties may move for a protective order in the course of discovery. The Court may, for good cause, issue an order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Lazare and KDB stipulated to a protective order under which either party was permitted to designate as confidential information disclosed in connection with this Action. (Protective Order, ECF No. 81, ¶ 3.) Once so designated, "All Confidential Information shall be used solely for the purpose of this Action, and no person receiving such Confidential Information shall, directly or indirectly, use, transfer, disclose, or communicate in any way the Confidential Information any person other than Qualified Persons."(*Id.* ¶ 4.) The Order allows either party to contest the designation of any information as "Confidential" at any time, and if the dispute cannot be resolved between the parties, it allows that "the party that disagrees with the designation may seek appropriate relief from the Court on an expedited schedule . . . The Producing Party shall at all times carry the initial burden of establishing that the contested information merits a 'Confidential' designation." (*Id.* ¶ 8.)

---

[4] Plaintiff challenges the designation of four documents as "Confidential." However, one of the challenged "Confidential" documents, Exhibit H, and one page of another of the challenged "Confidential" documents, page 1 of Exhibit F, were subsequently recalled as privileged. The Court only addresses the remaining documents.

9

In cases challenging the designation of materials as "Confidential," where the parties were subject to protective orders similar to the one here, "courts have generally examined *de novo* whether the designating party has shown good cause pursuant to Rule 26(c)." *Schiller v. City of New York*, No. 04 Civ. 7921 (KMK) (JCF), 2007 WL 136149, at *4 (S.D.N.Y. Jan. 19, 2007) (collecting cases). "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotation marks omitted). "In cases of unusual scope and complexity, however, broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause." *Id*.

Defendants argue that their "Confidential" designations should be upheld, because the documents in question contain commercially sensitive information that would give borrowers and competitors insight into the banks' internal processes and strategies.[5] Plaintiff counters, however, that the information is not commercially sensitive and to the extent that it is, its sensitivity has dissipated given its age.

The Court agrees that the sensitivity of the information has dissipated, given that at least five years have elapsed between the creation of the documents in question and this decision. "[W]here commercially sensitive information is stale, this can undermine the party's . . . claim that disclosure will create a competitive disadvantage." *Koch v. Greenberg*, No. 07 Civ. 9600 (BSJ) (DF), 2012 WL 1449186, at *4 (S.D.N.Y. Apr. 13, 2012) (collecting cases where information three or more years old was found to be stale). While it is true that "[i]n some circumstances, competitors may be able to extrapolate from outdated information to learn

---

[5] Defendants also ask that Plaintiff be barred from using confidential materials obtained through discovery here in any litigation in Belgium. The protective order in this case already contains a requirement barring the parties from sharing confidential materials, and so the Court does not address this request further here.

10

information that would still afford a competitive edge," *id.* (citations omitted), "[g]enerally . . . a court will not protect several-year-old information without a specific explanation of the harm that would be caused by disclosure." *Id.*

Here, the documents in question date from 2009 and 2010 and Defendants provide no specific explanation of the harm that would be caused by disclosure, instead asserting for in general terms that each document "contains commercially sensitive information that would give Antwerp Diamond Bank's and KBC's borrowers and competitors insight into the banks' internal processes, methodologies and deliberations related to the banks' propriety risk assessment model, internal loan provisioning, strategies for dealing with special risk files." (*See* Annex B, Def.'s Opp., ECF No. 114.) Given the age of the information contained in the documents and Defendants' failure to make any particularized showing as to why the information in each document remains commercially sensitive, the Court concludes that Defendants have not satisfied their burden of demonstrating good cause for continued confidentiality.

## CONCLUSION

For the reasons stated herein, the Court finds that the challenged documents designated privileged by Defendants are, in fact privileged, but it finds that Defendants have not satisfied their burden for sustaining the confidentiality of the challenged documents designated confidential.[6]

The parties shall appear at a status conference before this Court on September 26, 2016, at 10:30 a.m. in Courtroom 1306 at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. At that status conference, the parties should be prepared to

---

[6] As to the documents designated both privileged and confidential, the Court did not consider their confidentiality and the documents are to remain privileged.

11

discuss scheduling and proposed procedures for the hearing to be held pursuant to *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997).

**SO ORDERED.**

Dated:   July 21, 2016
         New York, New York

_____
ANDREW L. CARTER, JR.
**United States District Judge**