**Plaintiff's Synopsis of**
**Diane Grimmig Deposition Designations**

Diane Grimmig ("Grimmig") is a New York licensed attorney, head of KBC Bank N.V.'s ("KBC") New York branch's ("KBC-NY") legal department, and its Chief Compliance Officer. Grimmig Tr. 10:08-17:23. She testified as KBC's Rule 30(b)(6) witness. Id. at 321:12-22.

Pursuant to an agreement dated October 15, 1999, between KBC-NY and ADB (the "Services Agreement"), KBC-NY provided operational banking services to ADB's New York based clients, including Lazare. Id at 74:22-82:20. In addition, pursuant to the Services Agreement, ADB was required to open a bank account (the "Pooling Account") at KBC-NY which was used in order to reimburse KBC for payments made by KBC on behalf of those New York based companies, including Lazare. Id. at 84:04-100:25. The Services Agreement required KBC-NY to open for ADB's New York customers, including Lazare, "current accounts" at KBC-NY, and Lazare did so in connection with its credit facility ("Lazare's KBC-NY Bank Account"). Id. at 164:08167:14. KBC-NY accepted payment orders from Lazare, matched payment orders with Lazare's available credit, accepted incoming payments to Lazare (including funds to repay Lazare's loans), reimbursed itself from ADB's Pooling Account for payments made on behalf of Lazare, and notified ADB of all credits and debits in Lazare's KBC-NY Bank Account. Id. at 164:08-168:09. Pursuant to an agreement with Lazare dated May 31, 2001 (the "May 31, 2001 Agreement"), all disbursements and payments under Lazare's credit facility with ADB were effectuated through Lazare's bank account with KBC-NY and resulted in a same day debit or credit to Lazare's "loan balance" with ADB, and KBC-NY relied on this agreement to communicate with ADB regarding Lazare's transactions (id. at 192:21-193:06, 193:17-195:14) and for permission to "zero out" Lazare's KBC-NY Bank Account at the end of each day into ADB's Pooling Account at KBC-NY. Id. at 233:06-22, 101:09-113:24, 151:21-25, 162:13-163:04. KBC-NY used its own funds to execute transactions for Lazare. Id. at 200:07-204:23, 234:20-235:09, 264:05-265:11, 271:19-272:09, 287:09-22. KBC-NY funded Lazare's requests even if ADB's Pooling Account did not have sufficient funds. Id. at 197:04-198:24, 271:19-272:09, 272:22-273:11.

KBC through its Extended Credit Committee ("ECC") was the credit committee that had the authority to make all relevant decisions regarding the approval, increase in credit limits, and termination of Lazare's credit facility, and the ECC, in fact, made such decisions. 43:21-53:15, 54:21-57:08, 58:20-64:16, 65:4-68:20, 255:08-260:13, 319:12-321:11, 321:23-322:06.

The terms "Services Agreement" and "pooling account" do not appear in Grimmig's June 2012 declaration submitted with KBC's motion to dismiss, nor are they referenced. Id. at 84:04-100:25. In direct conflict with Grimmig's declaration, and as stated in the Services Agreement and contemplated by the May 31, 2001 Agreement, at the end of the day KBC-NY swept funds (whether positive or negative) from Lazare's KBC-NY Bank Account to ADB's Pooling Account at KBC-NY, and not to any purported bank account at ADB in Belgium. Id. at 101:09-113:24, 114:04-118:23, 151:21-25, 162:13-163:04, 233:06-22. Neither KBC nor ADB provided a copy of the Services Agreement to Lazare or the Court until September 2013 - well after the Court dismissed Lazare's Complaint and after the United States Court of Appeals vacated that dismissal and remanded the proceedings to this Court. Id. at 84:04-100:25.

1