# Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 6 Ln: 21 - 25**

**Annotation:**
```
6:21      Q.    Okay. Good morning, Ms. Grimmig.
  22    I'm Chris Sullivan and I'm with the law
  23    firm of Herrick Feinstein and we
  24    represent the Plaintiff in this case,
  25    Lazare Kaplan International.
```

**Pg: 7 Ln: 7 - 21**

**Annotation:**
```
7: 7      Q.    Okay.  And can you tell us where
   8    you live, what your current address is?
   9      A.    I live at 62 Smith Street,
  10    Lynbrook, New York, 11563.
  11      Q.    And how long have you lived
  12    there?
  13      A.    Approximately 15 years.
  14      Q.    What's your nationality?
  15      A.    American.
  16      Q.    So do I assume correctly that
  17    you speak and read English fluently?
  18      A.    Yes, I do.
  19      Q.    Do you -- and what other
  20    languages do you speak or read?
  21      A.    No others.
```

**Pg: 8 Ln: 18 - Pg: 9 Ln: 6**

**Annotation:**
```
8:18      Q.    I'm going to use a number of
  19    abbreviations for my questions. I'm
  20    going to -- for convenience sake, I'm
  21    going to refer to Lazare Kaplan
  22    International, Inc. as Lazare; to
  23    Lazare Kaplan Belgium as Lazare
  24    Belgium; to Antwerp Diamond Bank as
  25    ADB; to the New York office of ADB as
9: 1    ADB New York; to KBC Bank as KBC; and
   2    to the New York branch of KBC as KBC
   3    New York, unless you or I specify
   4    otherwise.
   5          Do you understand that?
   6      A.    Yes.
```

**Pg: 10 Ln: 8 - Pg: 11 Ln: 12**

**Annotation:**
```
10: 8      Q.    Okay. What is the highest level
    9    of formal education that you've
   10    completed?
   11      A.    Law school.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 10 Ln: 8 - Pg: 11 Ln: 12** continued...

**Annotation:**

```
10:12      Q.     And where did you obtain your
   13   law degree?
   14      A.     Loyola University.
   15      Q.     And when did you do so?
   16      A.     I graduated, I believe, in 1986.
   17      Q.     And where did you complete your
   18   undergraduate studies?
   19      A.     Providence College.
   20      Q.     Are you a member of any bars?
   21      A.     Yeah. Yes. Yes.
   22      Q.     Which bars?
   23      A.     The New York bar.
   24      Q.     Okay. Do you have any
   25   specialized training or education in
11: 1   regard to diamonds or diamond
    2   companies?
    3      A.     No.
    4      Q.     Do you have any specialized
    5   training or education in regard to laws
    6   and regulations applicable to diamond
    7   transactions?
    8      A.     No.
    9      Q.     Do you have any specialized
   10   training or education in regard to
   11   correspondent bank accounts?
   12      A.     No.
```

**Pg: 12 Ln: 15 - Pg: 13 Ln: 7**

**Annotation:**

```
12:15      Q.     Now, you're currently employed
   16   by KBC. Is that correct?
   17      A.     I'm employed by KBC New York.
   18      Q.     KBC New York. So you're not
   19   employed by KBC as a Belgian institute,
   20   simply by the New York branch of KBC?
   21      A.     KBC New York is the one that
   22   cuts my paycheck.
   23      Q.     And have you ever been employed
   24   by KBC, itself?
   25      A.     My employment has always been
13: 1   through the KBC New York.
    2      Q.     When did you first start working
    3   at KBC New York?
    4      A.     1987.
    5      Q.     Okay. Did you do so right out of
    6   law school?
    7      A.     Yes.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 13 Ln: 17 - Pg: 17 Ln: 23**

**Annotation:**

```
13:17        Q.    So you've never worked as a
   18     banker?  Do I understand correctly that
   19     you've always worked as a lawyer?
   20        A.    I work for a bank, so I work --
   21     I have responsibilities beyond legal
   22     advisor. I'm also the Compliance
   23     Officer. So I would say I also have
   24     banking knowledge.
   25        Q.    Okay. Have you ever originated
14: 1     loans at KBC?
    2        A.    No.
    3        Q.    Have you helped a client set up
    4     a line of credit or a credit facility?
    5        A.    I've handled the documentation
    6     for creation of a line of credit.
    7        Q.    Did you ever discuss with a
    8     client its working capital needs?
    9        A.    No.
   10        Q.    Ever opened a bank account for a
   11     client?
   12        A.    Not the opening of the account,
   13     no, I've handled the documentation.
   14        Q.    What type of documentation have
   15     you handled?
   16        A.    It depends upon the bank
   17     product.
   18        Q.    What does that mean?
   19        A.    Each bank product has a
   20     different set of documentation. If it's
   21     a bank account, then it would have a
   22     DDA account agreement.  If it's a loan,
   23     it would have a loan agreement. If it's
   24     a treasury product more than likely it
   25     would have a swap documentation.
15: 1        Q.    What is involved in handling the
    2     documentation, in your words?
    3        A.    The relationship manager
    4     provides the terms and conditions on
    5     relating to the product.  Based on
    6     that, I draft the necessary, relevant
    7     documentation. That gets furnished to
    8     the relationship manager for comment.
    9     If he has -- he or she has any
   10     comments, I'll revise it.  If it's
   11     acceptable to them I send it out to the
   12     customer and the customer has an
   13     opportunity to review and comment on
   14     the documentation. If a customer
   15     comments on it, it comes back,
   16     depending upon the type of comment, if
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 13 Ln: 17 - Pg: 17 Ln: 23** continued...

**Annotation:**

```
15:17   it's a business comment I have a
   18   discussion with the relationship
   19   manager as to whether or not it's
   20   acceptable. If it's a legal comment I
   21   will handle it.
   22          Once all the parties have agreed
   23   to the terms, the final documentation
   24   is drafted and then submitted for
   25   execution by my relationship manager
16: 1   and by his customer.
    2   Q.     In the course of performing the
    3   tasks you've just described, have you
    4   ever interacted with people at the New
    5   York Representative Office of ADB?
    6   A.     No.
    7   Q.     You've never handled account
    8   matters for clients of ADB New York?
    9   A.     If the client is a customer of
   10   KBC New York, then I handle it or I
   11   will be involved.
   12   Q.     And does it happen or has it
   13   happened that the client is a customer
   14   of both KBC New York and ADB New York?
   15   A.     It has occurred with respect to
   16   some of our DDA customers.
   17   Q.     And in those instances do you
   18   interact with anyone at ADB New York or
   19   have you done so in the past in
   20   connection with the performance of your
   21   duties?
   22   A.     No. Because we're -- that
   23   customer is deemed to be our customer
   24   and so we will discuss and negotiate
   25   the documentation with the DDA
17: 1   customer, itself.
    2   Q.     Was Lazare deemed to be a
    3   customer of KBC New York?
    4   A.     Yes.
    5   Q.     KBC New York is a -- is a branch
    6   of KBC. Is that correct?
    7   A.     Correct.
    8   Q.     And KBC New York is licensed by
    9   the New York State Department of
   10   Financial Services. Is that correct?
   11   A.     Yes.
   12   Q.     And it's subject to supervision
   13   and examination by both the New York
   14   State Department of Finance and the
   15   Federal Reserve Bank. Is that correct?
   16   A.     Yes.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 13 Ln: 17 - Pg: 17 Ln: 23** continued...

**Annotation:**

```
17:17        Q.    And what is your current job
   18    title or position at KBC New York?
   19        A.    Managing Director.
   20        Q.    Are you also General Counsel?
   21        A.    I am head of the Legal
   22    Department and head of the Compliance
   23    Department.
```

**Pg: 35 Ln: 19 - Pg: 37 Ln: 22**

**Annotation:**

```
35:19        Q.    Okay. Would you look at tab 89
   20    in that giant binder to your left,
   21    which is the amended Notice of
   22    Deposition? Give your lawyer a chance
   23    to find it.
   24            MR. FORESTA:  Thank you.
   25        Q.    Do you recognize this document?
36: 1        A.    Yes.
    2        Q.    And who showed it to you?
    3        A.    My counsel.
    4        Q.    Do you understand what the
    5    Notice of Deposition calls for?
    6        A.    Yes.
    7        Q.    When did you see it for the
    8    first time?
    9        A.    At the time it was delivered.
   10        Q.    Have you ever been designated as
   11    a Rule 30(b)(6) witness in any other
   12    lawsuit or proceeding?
   13        A.    No.
   14        Q.    Can you tell us, in general,
   15    what you did to educate yourself as to
   16    the topics listed in this Amended
   17    Notice of Deposition?
   18        A.    I talked to my fellow colleagues
   19    in various departments at KBC New York.
   20        Q.    And who are those colleagues?
   21        A.    I've talked to Anthony Martinez
   22    in the Finance Department, I talked to
   23    Susan Silver and Eric Raskin in the
   24    Credit Department, I talked to Ruggerio
   25    Pestana in the Cash Management and
37: 1    Payment Department. I might have
    2    talked to others but...
    3        Q.    Did you speak to Walter Haeck or
    4    communicate with Walter Haeck in any
    5    way --
    6        A.    Yes.
    7        Q.    -- in connection with this
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 35 Ln: 19 - Pg: 37 Ln: 22** continued...

**Annotation:**

| | |
|---|---|
| 37: 8 | Amended Notice of Deposition and your |
| 9 | testimony? |
| 10 | A.    No. |
| 11 | Q.    Prior to that time? |
| 12 | A.    Prior to that time. |
| 13 | Q.    And for what purpose did you |
| 14 | communicate with Mr. Haeck? |
| 15 | A.    To inform him that we had been |
| 16 | served with a complaint by LKI -- |
| 17 | Lazare. Sorry. |
| 18 | Q.    And since that time have you had |
| 19 | any communications with Mr. Haeck about |
| 20 | this lawsuit or any of the proceedings |
| 21 | in this lawsuit? |
| 22 | A.    I -- nothing material. |

**Pg: 38 Ln: 8 - Pg: 40 Ln: 4**

**Annotation:**

| | |
|---|---|
| 38: 8 | Q.    Is it Haeck or Haeck, by the |
| 9 | way? You don't know? |
| 10 | A.    I don't speak Flemish. |
| 11 | Q.    Let's go by Haeck. |
| 12 | A.    I struggle with the names |
| 13 | myself. |
| 14 | Q.    Why did you contact Mr. Haeck to |
| 15 | inform him that Lazare had filed this |
| 16 | lawsuit? |
| 17 | A.    Because it had also named ADB |
| 18 | and just to inform them there was a |
| 19 | lawsuit that involved not only KBC but |
| 20 | also involved an affiliate of KBC. |
| 21 | Q.    Did you -- is that the sum and |
| 22 | substance of your communication or |
| 23 | conversation with Mr. Haeck? |
| 24 | A.    Yes. |
| 25 | Q.    And that's the only |
| 39: 1 | communication that you can recall with |
| 2 | Mr. Haeck on the subject of this |
| 3 | lawsuit? |
| 4 | A.    We've also kept in touch with |
| 5 | respect to the proceedings and |
| 6 | notifying each other with respect to, |
| 7 | if a motion was up before the Court, |
| 8 | what decisions were taken on motions, |
| 9 | what depositions were going to be taken |
| 10 | and when. More of a procedural nature. |
| 11 | Q.    Are you aware Mr. Haeck |
| 12 | submitted a sworn Declaration in |
| 13 | connection with a motion that was filed |

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 38 Ln: 8 - Pg: 40 Ln: 4** continued...

**Annotation:**

```
39:14      by KBC and ADB in this lawsuit?
   15      A.    Yes.
   16      Q.    Did you review his Declaration
   17      at any point in time?
   18      A.    Yes.
   19      Q.    When did you do so?
   20      A.    At the time -- after it was
   21      delivered to the Court.
   22      Q.    After. Did you rely on his
   23      Declaration in connection with
   24      reviewing or signing your own
   25      Declaration in the lawsuit?
40:  1     A.    I read it.
     2     Q.    You read it prior to signing
     3     your own Declaration or after?
     4     A.    I don't recall who it was.
```

**Pg: 40 Ln: 5 - Pg: 41 Ln: 2**

**Annotation:**

```
40:  5     Q.    How about Veerle Snyers, did you
     6     communicate with Ms. Snyers in any way
     7     regarding the Amended Notice of
     8     Deposition or your testimony today?
     9     A.    No.
    10     Q.    When was the last time you spoke
    11     to Ms. Snyers about this lawsuit?
    12     A.    Not recently.
    13     Q.    Are you aware that Ms. Snyers
    14     submitted Declarations in connection
    15     with the motion that was filed by KBC
    16     and ADB in this lawsuit?
    17     A.    Yes.
    18     Q.    Did you review those
    19     Declarations before signing your own
    20     Declaration?
    21     A.    I know I read them. I don't know
    22     if I saw it before I signed mine.
    23     Q.    Can you think of anyone else at
    24     KBC with whom you discussed the Amended
    25     Notice of Deposition or your testimony
41:  1     today?
     2     A.    No one.
```

**Pg: 42 Ln: 23 - Pg: 43 Ln: 2**

**Annotation:**

```
42:23      Q.    Did you go over each of the
   24      topics in the Amended Notice of
   25      Deposition in preparation for your
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 42 Ln: 23 - Pg: 43 Ln: 2 continued...**

**Annotation:**
```
43: 1     testimony today?
    2     A.    Yes.
```

**Pg: 43 Ln: 17 - 20**

**Annotation:**
```
43:17     Q.    Prior to today have you ever met
   18     or communicated directly with any of
   19     the officers or directors of Lazare?
   20     A.    No.
```

**Pg: 43 Ln: 21 - Pg: 53 Ln: 15**

**Annotation:**
```
43:21     Q.    When did KBC first acquire a
   22     controlling interest in ADB?
   23     A.    I don't know.
   24     Q.    Can you give me an approximate
   25     time? Was it prior to the time you
44: 1     started working at KBC New York?
    2     A.    I don't know.
    3     Q.    Well, do you recall whether the
    4     governance of ADB changed after KBC
    5     acquired its controlling interest?
    6     A.    I don't think it changed.
    7     Q.    You don't think it changed.
    8     A.    Let me step back. What do you
    9     mean by "governance"?
   10     Q.    Management, the manner in which
   11     the bank was managed.
   12     A.    No.
   13     Q.    You don't recall or it didn't
   14     change?
   15     A.    It changed.
   16     Q.    In what respect did it change?
   17     A.    By members of KBC New York were
   18     put on the Board of Directors of ADB.
   19     Q.    Were members of KBC New York put
   20     on any committees or other management
   21     bodies of ADB?
   22     A.    No.
   23     Q.    Did the credit approval process
   24     change after KBC acquired its
   25     controlling interest in ADB?
45: 1         MR. FORESTA:  Did the ADB credit
    2     approval process change?
    3         MR. SULLIVAN:  Yes.
    4     A.    Yes.
    5     Q.    In what respect did it change?
    6     A.    Its delegation authorities would
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 43 Ln: 21 - Pg: 53 Ln: 15** continued...

**Annotation:**

| | |
|---|---|
| 45: 7 | have changed. |
| 8 | Q.     Sorry. It's what? |
| 9 | A.     We called them -- the credit |
| 10 | delegation authorities might have |
| 11 | changed. |
| 12 | Q.     Can you explain in what respect? |
| 13 | A.     For -- there are various Credit |
| 14 | Committees with respect to the handling |
| 15 | of credit facilities. There is a Credit |
| 16 | Committee at the local level which |
| 17 | would have been at the ADB level, but |
| 18 | depending upon various factors, |
| 19 | including probability of default, loss |
| 20 | given default and the group exposure, a |
| 21 | local credit might have had to be |
| 22 | submitted to a higher Credit Committee |
| 23 | and the higher Credit Committees were |
| 24 | located in KBC. |
| 25 | Q.     In Belgium? |
| 46: 1 | A.     In Belgium. |
| 2 | Q.     Can you give an example of a |
| 3 | higher Credit Committee? |
| 4 | A.     There was at the time I think |
| 5 | three committees, the LCC, the ECC and |
| 6 | I forget what the third one is called. |
| 7 | Q.     Okay. Is the ECC, the Extended |
| 8 | Credit Committee, an ADB or a KBC body? |
| 9 | A.     It's a KBC body. |
| 10 | Q.     Okay. And the KBC |
| 11 | representatives participate on that |
| 12 | committee then? |
| 13 | A.     KBC Belgium -- |
| 14 | Q.     -- representatives? |
| 15 | A.     -- representatives, yes. |
| 16 | Q.     And can you think of any other |
| 17 | committees or management bodies beyond |
| 18 | the Board of Directors, the ECC, the |
| 19 | LCC? |
| 20 | A.     No. |
| 21 | Q.     Was there an initial level |
| 22 | Credit Committee below or in addition |
| 23 | to the ECC and LCC? |
| 24 | A.     There is also a Local Credit |
| 25 | Committee, so in this case ADB would |
| 47: 1 | have had its own Credit Committee. |
| 2 | Q.     Did KBC representatives sit or |
| 3 | participate on ADB's own Credit |
| 4 | Committee? |
| 5 | A.     No. |
| 6 | Q.     Did KBC representatives sit or |

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 43 Ln: 21 - Pg: 53 Ln: 15** continued...

**Annotation:**

```
47:  7    participate on the Local Credit
      8    Committee?
      9    A.    The LCC?
     10    Q.    The LCC.
     11    A.    Yes. That's at the KBC.
     12    Q.    And it's at KBC Brussels?
     13    A.    Yes.
     14    Q.    So both the LCC and ECC are at
     15    KBC Brussels?
     16    A.    Yes.
     17    Q.    Was participation of KBC
     18    representatives required for a quorum
     19    at either the LCC or ECC? Could they
     20    make a decision without KBC
     21    representatives being there?
     22    A.    I know these Credit Committees
     23    required a quorum. I don't know the
     24    makeup of the quorum.
     25    Q.    What was the function of the
48:  1    LCC?
      2    A.    Let me just -- can I explain the
      3    credit approval process?
      4    Q.    Please do.
      5    A.    So if ADB had a customer that it
      6    wanted to extend credit to, ADB would
      7    write a credit application with the
      8    proposed credit facility for the
      9    relevant customer. If they thought it
     10    was something that they were interested
     11    in doing, if it was within their
     12    delegation authorities, they would take
     13    the decision and book the credit. If it
     14    was outside their credit delegations,
     15    then it would get submitted up to a
     16    higher Credit Committee, which were
     17    located in KBC Belgium. The committee
     18    that got escalated to depended upon
     19    various factors; probability of
     20    default, loss given default and group
     21    exposure amount.
     22          Depending upon those factors the
     23    committee that would make -- would next
     24    make a decision on it would be either
     25    the LCC or the ECC. If the LCC or the
49:  1    ECC agreed to it, the credit
      2    application went back down to ADB and
      3    ADB would have the veto right,
      4    equivalent of a veto right that would
      5    accept the decision of the LCC and/or
      6    the ECC or not.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

Pg: 43 Ln: 21 - Pg: 53 Ln: 15 continued...

**Annotation:**

```
49:  7      Q.    And where is this protocol that
      8    you've just described set forth in
      9    writing?
     10      A.    It's set forth in what's called
     11    an IKB credit delegation.
     12      Q.    And what does IKB stand for?
     13      A.    I don't know.
     14      Q.    What does it mean for a credit
     15    to be outside of credit delegations?
     16      A.    Again, you got to examine the
     17    three factors and that made a
     18    determination as to what Credit
     19    Committee made -- took a decision on
     20    it.
     21        So if it was -- if it was
     22    outside ADB's Credit Committee
     23    delegation authorities that meant it
     24    got calculated to the next higher
     25    Credit Committee.
50:  1      Q.    And was there an applicable
      2    monetary limit that applied to credit
      3    decisions at any stage of this process?
      4      A.    Group exposure amount.
      5      Q.    Can you explain the group
      6    exposure amounts that were applicable
      7    here?
      8      A.    It's --
      9        MR. FORESTA:  Hold on a second.
     10    When you say "applicable here", are you
     11    talking about the --
     12      Q.    Explain them in general and then
     13    we'll apply them more specifically.
     14      A.    There were group exposure
     15    amounts.  Each Credit Committee had
     16    authority to take a decision on credits
     17    up to a certain group exposure amount.
     18    If it was -- if the amount was above
     19    their credit delegation the -- the
     20    credit got escalated up to a higher
     21    authority.
     22      Q.    And are the applicable amounts
     23    set forth in the IKB counterparty
     24    delegations?
     25      A.    Yes.
51:  1      Q.    And do you recall what those
      2    amounts are?
      3      A.    Not off the top of my head, no.
      4      Q.    Can you give me an
      5    approximation?
      6      A.    No.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 43 Ln: 21 - Pg: 53 Ln: 15** continued...

**Annotation:**

```
51: 7          Q.    If the ECC denied a
    8     recommendation of ADB, could ADB veto
    9     or reject that decision and grant the
   10     credit anyway?
   11          A.    No. ADB could seek an appeal.
   12          Q.    An appeal to KBC?
   13          A.    To the Credit Committee that
   14     took the decision.
   15          Q.    With the LCC and ECC both being
   16     at KBC Brussels, correct?
   17          A.    Correct. So if LCC or ECC took a
   18     decision and ADB disagreed with the
   19     decision, ADB could appeal the decision
   20     and seek the relevant LCC or ECC to
   21     change their position.
   22          Q.    So in other words, KBC had the
   23     ultimate authority on the decision,
   24     correct?
   25          A.    No. It always went back down to
52: 1     the local level.
    2          Q.    The local level being?
    3          A.    In this case ADB.
    4          Q.    But didn't you just tell me that
    5     ADB did not have the right to reject
    6     the decision of either the LCC or the
    7     ECC at KBC Brussels?
    8          A.    They had the right to appeal it.
    9          Q.    To KBC?
   10          A.    Right.
   11          Q.    So whose ultimate authority --
   12          A.    Well, if they won the appeal
   13     then ADB was the final authority.
   14          Q.    And who decides if they won
   15     the -- win the appeal, KBC, correct?
   16          A.    It's always the local authority
   17     has the ultimate decision.
   18          Q.    I'm sorry. I'm not -- maybe I'm
   19     not being clear, Ms. Grimmig.
   20          The appeal is to KBC, to the
   21     committees resident at KBC, correct?
   22          A.    Correct.
   23          Q.    And the committees decide the
   24     appeal, correct?
   25          A.    Correct.
53: 1          Q.    So KBC decides the appeal,
    2     correct?
    3          A.    To reject the credit.
    4          Q.    And ADB does not have the right
    5     to overrule the decision of KBC to
    6     reject the credit?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 43 Ln: 21 - Pg: 53 Ln: 15** continued...

**Annotation:**

```
53: 7          A.    To reject a credit, correct.
    8          Q.    Correct. Did the procedures that
    9     you just described apply to
   10     diamond-related credits?
   11          A.    It applied to all credits
   12     proposed by ADB.
   13          Q.    Was the procedure different for
   14     diamond-related credits in any way?
   15          A.    No.
```

**Pg: 65 Ln: 4 - Pg: 68 Ln: 20**

**Annotation:**

```
65: 4          Q.    What was the approval process
    5     for terminating an ADB credit facility?
    6          A.    It would be subject to the IKB
    7     credit delegations.
    8          Q.    And do you recall what those
    9     delegations provide with respect to the
   10     termination of a credit facility?
   11          A.    It is my understanding ADB was
   12     not required to notify LCC or ECC of a
   13     termination, but they chose to do so.
   14          Q.    Are the IKB credit delegations a
   15     KBC document or an ADB document?
   16          A.    They are a KBC document.
   17          Q.    And so it's the KBC document
   18     that governs the procedure or process
   19     for terminating an ADB credit facility?
   20     Is that correct?
   21          A.    Yes.
   22          Q.    And do you know what role KBC
   23     played in connection with the
   24     termination of the Lazare credit
   25     facility?
66: 1          A.    ADB would have written a credit
    2     application or a credit memo with a
    3     proposed course of action that would
    4     have got submitted to the appropriate
    5     Credit Committee, who would take a
    6     decision on the action proposed by ADB.
    7          Q.    And did ADB have the right to
    8     disregard the decision taken by the
    9     appropriate committee at KBC Brussels?
   10          A.    ADB was not required to go to
   11     LCC or ECC, they chose to do so.  So
   12     once you submit something to Credit
   13     Committee they will -- requesting a
   14     decision, the LCC or ECC will take a
   15     decision on it.
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 65 Ln: 4 - Pg: 68 Ln: 20** continued...

**Annotation:**

```
66:16        Q.    Do you know why ADB chose to do
   17   so, chose is to seek approval of KBC,
   18   Brussels?
   19        A.    No.
   20        Q.    Do you know who made the
   21   decision to terminate the Lazare credit
   22   facility, what committee?
   23        A.    I believe it was ECC.
   24        Q.    And do you know who the members
   25   of the ECC were at that point in time?
67: 1        A.    No. The IKB credit delegations
    2   would set forth the position of the
    3   members of the ECC.
    4        Q.    Were there any ADB
    5   representatives on the ECC at the time?
    6        A.    I don't know.
    7        Q.    As a matter of -- as a matter of
    8   course, did ADB representatives serve
    9   on the ECC at KBC Brussels?
   10        A.    No.
   11        Q.    So it was an all KBC committee?
   12        A.    It -- the committee changed and
   13   they -- others could be invited to the
   14   meetings.  So ADB could have been
   15   there. I don't know.
   16        Q.    Apart from attending as a guest,
   17   is it fair to say that the members, the
   18   membership of the committee was
   19   entirely comprised of KBC
   20   representatives?
   21             MR. FORESTA:  Note my objection.
   22        A.    Yes.
   23             MR. SULLIVAN:  You have to wait
   24   for him to speak too.
   25             THE WITNESS: Sorry.
68: 1             MR. FORESTA:  Now you can
    2   answer.
    3        A.    Yes.
    4        Q.    Do you know who made the
    5   decision to terminate the Lazare credit
    6   facility on behalf of ADB?
    7        A.    It would be in the credit
    8   application, ADB's credit application.
    9        Q.    Do you recall the individuals
   10   involved in that decision?
   11        A.    I don't recall the individual's
   12   names, no.
   13        Q.    Do you know who made the
   14   decision to -- for ADB to file a
   15   lawsuit against Lazare?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 65 Ln: 4 - Pg: 68 Ln: 20** continued...

    **Annotation:**
```
68:16        A.    No.
   17        Q.    Do you know whether that
   18   decision was submitted to KBC Brussels
   19   in advance?
   20        A.    I don't know.
```

**Pg: 70 Ln: 17 - Pg: 71 Ln: 25**

    **Annotation:**
```
70:17             (Exhibit 136, Declaration of
   18   Diane Grimmig, was received and marked
   19   on this date for identification.)
   20        MS. GREDD:  I have a copy that
   21   doesn't have a marking.
   22        MR. SULLIVAN:  I stand corrected
   23   by Mr. D'Angelo and Ms. Gredd. Let's
   24   mark it.
   25        Q.    Do you have P-136 in front of
71: 1   you, Ms. Grimmig?
    2        A.    Yes.
    3        Q.    Is this the sworn Declaration
    4   that you submitted in this lawsuit?
    5        A.    Yes.
    6        Q.    Okay. Is that your signature on
    7   the last page of the Declaration, which
    8   I believe is page 8?
    9        A.    Yes.
   10        Q.    Okay. And above your signature
   11   you declared under penalty of perjury
   12   that the foregoing is true and correct.
   13   Do you see that?
   14        A.    Yes.
   15        Q.    And the Declaration is dated
   16   June 15, 2012. Correct?
   17        A.    Yes.
   18        Q.    As you sit here today, is there
   19   anything that you believe to be false
   20   or incorrect in your Declaration?
   21        A.    No.
   22        Q.    Who drafted this document?
   23        A.    I did.
   24        Q.    When did you do so?
   25        A.    At the time requested.
```

**Pg: 74 Ln: 22 - Pg: 82 Ln: 20**

    **Annotation:**
```
74:22             (Exhibit 146, letter dated
   23   September 9, 2013 from KBC New York's
   24   attorney to Judge Andrew Carter, was
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 74 Ln: 22 - Pg: 82 Ln: 20** continued...

**Annotation:**

```
74:25        received and marked on this date for
75: 1        identification.)
     2           Q.    Plaintiff's Exhibit 146 is a
     3        letter dated September 9, 2013 from KBC
     4        New York's attorney to Judge Andrew
     5        Carter of the United States District
     6        Court.
     7           Do you have that in front of
     8        you, Ms. Grimmig?
     9           A.    Yes.
    10           Q.    Did you review this letter to
    11        the Court before it was filed?
    12           A.    Yes.
    13           Q.    Do you recall there being
    14        anything inaccurate or untrue in the
    15        letter?
    16           A.    No.
    17           Q.    Would you turn to page 7 of the
    18        letter? Do you see in the second
    19        paragraph, where it says "KBC has
    20        agreed to produce the Services
    21        Agreement that Ms. Grimmig referred to
    22        in her Declaration, which governed the
    23        terms under which KBC's New York branch
    24        provided banking services to Antwerp
    25        Bank's customers in New York?"
76: 1           Do you see those words in the
     2        second paragraph of the letter from
     3        KBC's counsel to the Court?
     4           A.    Yes.
     5           Q.    And you see the following
     6        sentence that reads "A copy of that
     7        agreement is attached hereto as Exhibit
     8        A?"
     9           A.    Yes.
    10           Q.    Do you agree with the statement
    11        in this letter that the Services
    12        Agreement annexed as an exhibit to the
    13        letter governed the terms under which
    14        KBC New York provided banking services
    15        to Antwerp's bank's customers in New
    16        York?
    17           A.    It governed the agreement
    18        between ADB and New York branch with
    19        respect to the services that KBC New
    20        York would furnish to ADB's customers
    21        that had overdraft accounts with ADB.
    22           Q.    So do you agree with your
    23        counsel's representation to the Court
    24        that the Services Agreement that is
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 74 Ln: 22 - Pg: 82 Ln: 20** continued...

**Annotation:**

```
76:25        annexed as an exhibit to this letter
77: 1        governed the terms under which KBC New
    2        York provided banking services to ADB's
    3        customers in New York?
    4            MR. FORESTA:  Note my objection.
    5        You can answer.
    6        Q.    Is that a true statement by your
    7        attorneys to the Court?
    8        A.    It governed the handling --
    9        ADB's agreement with ADB to open a DDA
   10        account for ADB's customers in New
   11        York.
   12        Q.    Is there a difference between
   13        what you just said and what your
   14        attorney said?  Is that why you are
   15        rephrasing it?
   16        A.    It's all interrelated.
   17        Q.    Is it the same thing?
   18        A.    It's the same thing, yes.
   19        Q.    It is the same thing. And does
   20        the Services Agreement, the copy of the
   21        Services Agreement that is attached as
   22        Exhibit A to KBC's attorney's letter,
   23        accurately reflect the manner in which
   24        KBC New York provided such services to
   25        ADB's customers in New York, like
78: 1        Lazare?
    2        A.    It set forth how KBC New York
    3        would -- would handle ADB's customer's
    4        account, DDA account with KBC.
    5        Q.    So the Services Agreement
    6        accurately sets forth the manner in
    7        which accounts would be handled? There
    8        is nothing in the Services Agreement
    9        that you disagree with or think is
   10        untrue?
   11        A.    No.
   12        Q.    Good. So your familiar with the
   13        Services Agreement?
   14        A.    Yes, I am.
   15        Q.    And Lazare was a customer of ADB
   16        in New York, correct?
   17        A.    Yes.
   18        Q.    A diamond company customer,
   19        correct?
   20        A.    Yes.
   21        Q.    And did the Services Agreement,
   22        therefore, govern the banking services
   23        that KBC New York provided to Lazare?
   24        A.    No.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 74 Ln: 22 - Pg: 82 Ln: 20** continued...

**Annotation:**

```
78:25        Q.      Why not?
79: 1        A.      There was a separate account
  2     agreement between Lazare and KBC New
  3     York that set forth the terms and
  4     conditions of Lazare's DDA account with
  5     KBC New York.
  6          Q.      Did that account agreement
  7     supersede anything in the Services
  8     Agreement?
  9              MR. FORESTA:  Note my objection.
 10     You can answer.
 11          A.      No. It's -- there are three
 12     parties to this transaction, to this
 13     relationship. So there is an agreement
 14     between ADB and KBC New York, and there
 15     is an agreement between ADB and Lazare
 16     and there is also an agreement between
 17     Lazare and KBC New York and there were
 18     multiple documents and various
 19     documents that reflected the
 20     relationship among the parties.
 21          Q.      Perhaps we need to clarify the
 22     question.
 23          A.      Okay.
 24          Q.      I just asked you whether the
 25     Services Agreement governed the terms
80: 1     under which KBC New York provided
  2     banking services to ADB's customers in
  3     New York.
  4          A.      It sets forth the terms and
  5     conditions -- it sets forth KBC's New
  6     York agreement to provide -- it's an
  7     agreement between KBC New York and ADB
  8     that sets forth the terms and
  9     conditions under which KBC New York
 10     would furnish a DDA account to Lazare.
 11          Q.      It spells out the operational
 12     banking services to be provided by KBC
 13     New York to ADB's customers, correct?
 14              MR. FORESTA:  Note my objection.
 15          Q.      That's what it says, Ms.
 16     Grimmig. Is it correct?
 17          A.      It sets forth the terms and
 18     conditions under which KBC New York
 19     agrees to provide a DDA account to
 20     customers of ADB in New York.
 21          Q.      Is there anything in the
 22     Services Agreement that you believe to
 23     be incorrect or untrue?
 24          A.      No.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 74 Ln: 22 - Pg: 82 Ln: 20** continued...

**Annotation:**

```
80:25         Q.    Did KBC New York provide the
81: 1    banking services spelled out in the
   2     Services Agreement to ADB's customers
   3     in New York?
   4             MR. FORESTA:  Objection.
   5         Q.    You can answer.
   6             MR. FORESTA:  She already has
   7     multiple times.
   8         A.    Yes.
   9             MR. SULLIVAN:  Counsel, no
  10     colloquy on the record.
  11         A.    Yes.
  12         Q.    The answer is yes. Did you have
  13     any role, did you play any role in the
  14     development or preparation of the
  15     Services Agreement?
  16         A.    The Legal Department would have
  17     played a role.
  18         Q.    Who at the Legal Department
  19     played a role?
  20         A.    I believe it was the General
  21     Counsel at the time.
  22         Q.    Who is that?
  23         A.    Michael Curran.
  24         Q.    Do you know who drafted the
  25     Services Agreement?
82: 1        A.    No.
   2         Q.    Did you read the deposition
   3     testimony of Philippe Loral in this
   4     case?
   5         A.    I read it at the time, right
   6     after he gave his deposition.
   7         Q.    Do you recall Mr. Loral
   8     testifying that he drafted the Services
   9     Agreement?
  10         A.    I don't recall.
  11         Q.    Is it correct that the Services
  12     Agreement that's referred or referenced
  13     by KBC's counsel letter and attached as
  14     Exhibit A to the letter is the same
  15     Services Agreement you referred to in
  16     your Declaration?
  17         A.    Yes.
  18         Q.    We're not talking about a
  19     different Services Agreement?
  20         A.    No.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25**

**Annotation:**

```
84:  4        Q.     Did you review the Services
      5   Agreement before signing your
      6   Declaration?
      7        A.     Yes.
      8        Q.     Did you rely on the Services
      9   Agreement in preparing your
     10   Declaration?
     11        A.     Yes.
     12        Q.     In fact, your Declaration was
     13   addressed, in part, to the banking
     14   services that KBC New York provided to
     15   Lazare pursuant to the Services
     16   Agreement, correct?
     17            MR. FORESTA:  Note my objection.
     18   You can answer.
     19        A.     The services that KBC provided
     20   to Lazare were governed by the account
     21   agreement between Lazare and KBC New
     22   York.
     23        Q.     But you've told us that the
     24   services that are spelled out in the
     25   Services Agreement, the banking
85:  1   services, were also provided by KBC New
      2   York to Lazare, correct?
      3        A.     They were the beneficiary, yes.
      4        Q.     So the answer is yes?
      5        A.     Yes.
      6        Q.     Would you take a look at your
      7   Declaration again?
      8        A.     Yes.
      9        Q.     Can you tell me where the words
     10   "Services Agreement" or "services level
     11   agreement" appear in your Declaration,
     12   Ms. Grimmig?
     13        A.     I don't think it's specifically
     14   referenced, but its contents are
     15   discussed in my Declaration.
     16        Q.     Okay. So let's start with
     17   specific reference. There is no
     18   reference in the Services Agreement to
     19   the Service Agreement in your sworn
     20   Declaration, is there?
     21        A.     Correct.
     22        Q.     So your counsel's statement to
     23   the Court is incorrect in that regard,
     24   correct?
     25        A.     Technically, yes.
86:  1        Q.     Technically, yes. Okay. And is
      2   it your testimony that you discussed,
      3   in your sworn Declaration, the contents
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

Pg: 84 Ln: 4 - Pg: 100 Ln: 25 continued...

**Annotation:**

| | |
|---|---|
| 86: 4 | of the Service Agreement? Is that your |
| 5 | testimony? |
| 6 | A.    There are concepts, there are |
| 7 | terms in the Service Agreement that are |
| 8 | referenced in my Declaration. |
| 9 | Q.    Well, is there a disclosure of |
| 10 | any kind in your sworn Declaration that |
| 11 | KBC New York and ADB had a formal |
| 12 | written agreement pertaining to the |
| 13 | banking services to be provided by KBC |
| 14 | New York to ADB's customers in New |
| 15 | York?  Is there a disclosure of any |
| 16 | kind that there was a formal written |
| 17 | agreement, Ms. Grimmig? |
| 18 | Take a look at your Declaration |
| 19 | if you like. |
| 20 | (Whereupon, the Deponent reviews |
| 21 | the document.) |
| 22 | A.    There is not a specific |
| 23 | reference or naming of the servicing |
| 24 | agreement, but the concepts in the |
| 25 | servicing agreement are captured in my |
| 87: 1 | Declaration. |
| 2 | Q.    Well, we'll get to the capture |
| 3 | part of your testimony, but I'm asking |
| 4 | you a different question. |
| 5 | A.    Sorry. |
| 6 | Q.    I'd like an answer to my |
| 7 | question. |
| 8 | A.    Sorry. |
| 9 | Q.    My question is, did you tell |
| 10 | Judge Carter in your Declaration that |
| 11 | KBC New York and ADB had entered into a |
| 12 | formal written agreement regarding the |
| 13 | operational banking services to be |
| 14 | provided by KBC New York to ADB's |
| 15 | customers in New York? |
| 16 | We know you didn't mention the |
| 17 | Service Agreement. Did you tell the |
| 18 | Court that there existed a formal |
| 19 | written agreement? |
| 20 | A.    I did not. |
| 21 | Q.    You did not.  So let me see if I |
| 22 | understand correctly, you didn't |
| 23 | disclose to the Court that -- the |
| 24 | existence of the Service Agreement. |
| 25 | You didn't disclose to the Court that |
| 88: 1 | KBC New York and ADB had a formal |
| 2 | written agreement with respect to the |
| 3 | operational services to be provided by |

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

| | |
|---|---|
| 88: 4 | KBC New York to ADB's customers. You |
| 5 | didn't produce or submit a copy of the |
| 6 | Services Agreement to the Court. Is |
| 7 | that all correct? |
| 8 | A.    I believe we produced a copy of |
| 9 | the servicing agreement as part of the |
| 10 | production of documents. |
| 11 | Q.    In discovery? |
| 12 | A.    Yes. |
| 13 | Q.    After the motions to the Court |
| 14 | were decided? |
| 15 | A.    I don't know the timing of the |
| 16 | discovery versus motions. |
| 17 | Q.    Take a look at the date of your |
| 18 | attorney's letter to the Court |
| 19 | enclosing the agreement, September 9, |
| 20 | 2013. |
| 21 | Do you recall when the Motion to |
| 22 | Dismiss, that your bank made to Judge |
| 23 | Carter, was decided both by the |
| 24 | District Court in the Second Circuit? |
| 25 | A.    I don't recall. |
| 89: 1 | Q.    I'll represent to you that it |
| 2 | was before September, 2013, Ms. |
| 3 | Grimmig. |
| 4 | So is there anything incorrect |
| 5 | about the facts that I just asked you; |
| 6 | one, you didn't tell Judge Carter about |
| 7 | the Services Agreement, about the |
| 8 | existence of the Service Agreement; |
| 9 | two, you didn't submit a copy of the |
| 10 | Services Agreement to the Court; three, |
| 11 | you didn't tell Judge Carter that KBC |
| 12 | New York and ADB had entered into a |
| 13 | formal written agreement regarding the |
| 14 | operational banking services to be |
| 15 | provided by KBC New York to ADB's |
| 16 | customers in New York? Anything |
| 17 | incorrect about those three facts? |
| 18 | A.    All I can tell you is we |
| 19 | produced the servicing agreement as |
| 20 | part of the discovery. I did not |
| 21 | explicitly reference the Service |
| 22 | Agreement in my Declaration, but I |
| 23 | incorporated its terms in my |
| 24 | Declaration. |
| 25 | Q.    Did you quote from the Services |
| 90: 1 | Agreement in your Declaration anywhere? |
| 2 | A.    No, but I paraphrased. |
| 3 | Q.    You paraphrased? |

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
90:  4        A.    Yes.
      5        Q.    So who made the decision, Ms.
      6   Grimmig, not to tell Judge Carter about
      7   the existence of the Service Agreement,
      8   not to give him a copy of the Service
      9   Agreement, not to quote from the
     10   Service Agreement, not even to tell him
     11   there was a formal written agreement
     12   that might apply to the banking
     13   services provided by KBC New York?  Who
     14   made that decision, you?
     15        MR. FORESTA:  Objection to the
     16   question.
     17        Q.    You can answer.
     18        A.    No.
     19        Q.    Who made the decision?
     20        A.    I don't know.
     21        Q.    Did you give any thought
     22   whatsoever to submitting the Service
     23   Agreement that you summarized
     24   submitting it to the Court in
     25   connection with your attorney's motion?
91:  1        A.    I -- as part of the document
      2   production, I produced the Service
      3   Agreement.
      4        Q.    After the motion was decided by
      5   the District Court in the Second
      6   Circuit Court of Appeals, why did you
      7   wait until then?
      8        MR. FORESTA:  Objection.
      9        Q.    Why didn't you do so prior?
     10        A.    I produced it when I was
     11   required to provide it.
     12        Q.    Is it your sworn testimony, Ms.
     13   Grimmig, that you accurately and
     14   honestly summarized the provisions of
     15   the Services Agreement in your sworn
     16   Declaration?
     17        A.    Yes.
     18        Q.    That's your sworn testimony?
     19        A.    Yes.
     20        Q.    And you weren't trying to
     21   mislead or deceive the Court by not
     22   disclosing or producing the Services
     23   Agreement, correct?
     24        A.    Not at all.
     25        Q.    You understood at the time you
92:  1   signed your Declaration that KBC New
      2   York was claiming that it had nothing
      3   to do with the transactions in the
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
92:  4      Complaint, correct?
      5              MR. FORESTA:  Objection.
      6        A.    I stated that there was no
      7      allegation or claims asserted against
      8      KBC New York.
      9        Q.    And did you understand that KBC
     10      New York was arguing to Judge Carter
     11      that this case should be litigated in
     12      Belgium instead of New York because it
     13      has no connection to Lazare's banking
     14      relationship at KBC New York?  Did you
     15      understand that at the time you signed
     16      your Declaration?
     17        A.    I understood that the
     18      allegations and the disputes related to
     19      transactions between Lazare and ADB.
     20        Q.    Did you understand that KBC New
     21      York was arguing that it played a
     22      merely ministerial role in connection
     23      with the credit facility and that the
     24      case properly belongs in Belgium and
     25      New York, that it's centered in Belgium
93:  1      and not New York?  Did you understand
      2      that?
      3        A.    Yes.
      4        Q.    And so you summarized in your
      5      words the concepts in the Services
      6      Agreement instead of producing the
      7      Services Agreement?
      8              MR. FORESTA:  Objection.
      9        A.    Correct.
     10        Q.    And you weren't trying to
     11      mislead or deceive Judge Carter in any
     12      way, correct?
     13        A.    Correct.
     14        Q.    Okay.  Is there anything in the
     15      Services Agreement that contradicts the
     16      factual assertions in your Declaration,
     17      Ms. Grimmig?
     18        A.    No.
     19        Q.    Are you sure about that?
     20        A.    I'm sure.
     21        Q.    Do you know whether Veerle
     22      Snyers disclosed the existence of the
     23      Services Agreement or produced a copy
     24      in her sworn Declarations to the Court?
     25        A.    I don't know.
94:  1        Q.    You reviewed her sworn
      2      Declarations prior to signing your own,
      3      did you not?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
94: 4      A.     I reviewed them. I don't know
    5   whether I reviewed them -- I reviewed
    6   them at the time that she had signed
    7   and delivered them. I don't know if
    8   that was before or after mine.
    9      Q.     You actually cite to her
   10   Declaration in your own Declaration,
   11   Ms. Grimmig?
   12      A.     Okay.
   13      Q.     Does that mean to you that you
   14   looked at the Declaration --
   15      A.     Yes.
   16      Q.     -- before you signed it?
   17             You have to let me finish,
   18   please. The answer is yes?
   19      A.     Yes.
   20      Q.     How about Walter Haeck, he
   21   submitted sworn Declaration to the
   22   Court, didn't he?
   23      A.     Yes.
   24      Q.     Did he produce a copy of the
   25   Services Agreement?
95: 1      A.     I don't recall.
    2      Q.     Did he quote from the Services
    3   Agreement in his Declaration?
    4      A.     I don't recall.
    5      Q.     Are you aware that you,
    6   Ms. Snyers, and Mr. Haeck all submitted
    7   sworn Declarations to the Federal
    8   District Court in this case regarding
    9   the banking services provided by KBC
   10   New York to Lazare and not one of you
   11   produced the Services Agreement or
   12   quoted from it? Are you aware of that?
   13             MR. FORESTA:  Objection. You can
   14   answer.
   15      A.     Yes.
   16      Q.     Not one of you produced the
   17   Services Agreement, even though it
   18   governs, by your testimony, Ms.
   19   Grimmig, its terms under which KBC New
   20   York provided banking services to
   21   Lazare? Do you understand that?
   22             MR. FORESTA:  Objection.
   23      A.     It's -- the servicing agreement
   24   is an agreement between KBC New York
   25   and ADB. Lazare is not a party to the
96: 1   Service Agreement.
    2      Q.     Lazare is a beneficiary of the
    3   Services Agreement, according to you?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
96: 4          Is that correct?
     5          A.    The relationship between KBC New
     6     York and Lazare is governed by an
     7     account agreement, not the Service
     8     Level Agreement.
     9          Q.    Is that why you made the
    10     decision not to tell Judge Carter about
    11     the Services Agreement?
    12          MR. FORESTA:  Objection.
    13          Q.    Did you think it was irrelevant
    14     to the issues before the Court?
    15          A.    No. Again, we -- we -- I
    16     produced the Service Level Agreement as
    17     required.
    18          Q.    You produced the agreement in
    19     September, 2013 in discovery after the
    20     Second Circuit reversed and remanded to
    21     the District Court for further
    22     proceedings. Is that correct?
    23          A.    According to the timeline you've
    24     given me, yes.
    25          Q.    Are you aware that the Service
97: 1     Agreement requires ADB to open a
     2     pooling account at ADB -- at KBC New
     3     York, rather? Sorry.
     4          A.    The account was already opened.
     5          Q.    When was the pooling account
     6     opened at KBC New York?
     7          A.    It was opened at -- I don't know
     8     the time but it's prior to the relevant
     9     time of this case.
    10          Q.    Is it prior to the date of the
    11     Services Agreement, October, 1999?
    12          A.    I believe so.
    13          Q.    Okay.
    14          MR. FORESTA:  Chris, we've been
    15     going about an hour and a half.  Would
    16     this be a good time for a break?
    17          MR. SULLIVAN:  Let's take five
    18     minutes.
    19          Q.    So I ask you again, are you
    20     aware that the Services Agreement
    21     expressly requires ADB to open a
    22     pooling account at KBC New York?
    23          A.    Yes, but the account was already
    24     opened.
    25          Q.    But you're aware that the
98: 1     agreement --
     2          A.    Yes.
     3          Q.    -- contains that express
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
98: 4       provision, correct?
    5       A.     Correct.
    6       Q.     And are you aware that the
    7       Services Agreement described how the
    8       pooling account operates in connection
    9       with bank accounts opened by New York
   10       diamond customers such as Lazare?
   11              MR. FORESTA:  Objection. Go
   12       ahead. You can answer.
   13       A.     Yes.
   14       Q.     Okay. You didn't mention the
   15       pooling account in your Declaration,
   16       did you, Ms. Grimmig?
   17       A.     No.
   18       Q.     Veerle Snyers didn't mention the
   19       pooling account in her Declarations,
   20       did she?
   21       A.     I don't recall.
   22       Q.     Walter Haeck didn't mention the
   23       pooling account in his Declaration, did
   24       he?
   25       A.     I don't recall.
99: 1       Q.     You do recall that you declared
    2       under penalty of perjury that the
    3       statements in your Declaration are true
    4       and correct, you do recall that?
    5       A.     Yes.
    6       Q.     You are a lawyer with a license
    7       to practice law in New York, are you
    8       not?
    9       A.     Yes.
   10       Q.     And you understand what it means
   11       to make a Declaration under oath?
   12       A.     Yes.
   13       Q.     Is there a reason why you didn't
   14       tell Judge Carter about the ADB pooling
   15       account at KBC New York?
   16       A.     I think my Declaration mentioned
   17       that there was a -- ADB had an account
   18       with us.
   19       Q.     Does it contain any reference to
   20       the pooling account?
   21       A.     In KBC New York we do not call
   22       it a pooling account. It's just an ADB
   23       U.S. dollar account.
   24       Q.     Can you point me to the
   25       reference in your Declaration that
100: 1      describes the pooling account?
    2              (Whereupon, the Deponent reviews
    3       the document.)
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
100: 4        A.      It mentions the Lazare Antwerp
      5    bank account.
      6        Q.      But I'm asking you about the
      7    pooling account, or an account under
      8    any different terminology that you care
      9    to employ, is there a reference in your
     10    Declaration to the pooling account
     11    under any name, the ADB pooling account
     12    at KBC New York?
     13        A.      No.
     14        Q.      Were you trying to deceive the
     15    Court into granting KBC's motion by not
     16    informing Judge Carter about the ADB
     17    pooling account?
     18        A.      Not at all.
     19        Q.      Do you know why Veerle Snyers
     20    and Walter Haeck didn't tell the Court
     21    about the pooling account?
     22        A.      No.
     23        Q.      Did anyone tell you not to
     24    reference the pooling account?
     25        A.      Not at all.
```

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24**

**Annotation:**

```
101: 9        Q.      So would you turn to the
     10    Services Agreement that is next to your
     11    attorney's letter as an exhibit and
     12    it's also separate in front of you, I
     13    believe?
     14            And let's begin with -- you
     15    testified, I believe, that the pooling
     16    account, the ADB pooling account at KBC
     17    New York, was opened prior to the date
     18    of the Services Agreement which is
     19    October 15, 1999. Is that correct?
     20        A.      Yes.
     21        Q.      So you were aware at the time
     22    you signed your Declaration that ADB
     23    had opened a pooling account at the New
     24    York branch of KBC, is that correct?
     25        A.      Yes.
102: 1        Q.      And looking at the Services
      2    Agreement, itself, do you see the
      3    fourth "whereas" clause that reads --
      4    it's on page 1, "ADB agrees to open a
      5    pooling account with KBC to fund the
      6    payments effectuated by KBC on behalf
      7    of the diamond clients." Do you see
```

---

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24** continued...

**Annotation:**

```
102:  8      that "whereas" clause?
       9      A.      Yes.
      10      Q.      And the reference to KBC is to
      11      KBC New York. Is that correct?
      12      A.      Yes.
      13      Q.      And Lazare was one of the
      14      diamond clients that was covered by
      15      this provision, correct?
      16      A.      Once ADB had opened up a DDA
      17      account with New York.
      18      Q.      Once ADB had opened up --
      19      A.      Sorry. Lazare had opened up.
      20      Q.      That upon opening an account at
      21      KBC New York Lazare was covered by this
      22      provision?
      23      A.      Would be -- have the benefits.
      24      Q.      Would have the benefits of this
      25      provision. Okay.
103:  1              And ADB maintained that pooling
       2      account at KBC New York consistently
       3      through the relevant period of time --
       4      A.      Yes.
       5      Q.      -- correct? Okay. And would you
       6      take a look at paragraph 3 on page 2 of
       7      the Services Agreement?  Would you read
       8      the first sentence of paragraph 3 to
       9      us?
      10      A.      "Each day KBC clears the
      11      customer's account via ADB's pooling
      12      under agreement advisement with the
      13      diamond client."
      14      Q.      So does the reference to
      15      customer's account include Lazare from
      16      and after the time Lazare opened an
      17      account at KBC New York?
      18      A.      Yes.
      19      Q.      So under this provision KBC New
      20      York is clearing Lazare's account at
      21      KBC New York via ADB's pooling. Is that
      22      correct?
      23      A.      We would be making debits and --
      24      every debit and credit entry on
      25      Lazare's KBC New York account, we would
104:  1      make a corresponding or the reverse
       2      entry, debit and credit on the what you
       3      call ADB's pooling account.
       4      Q.      And what is the reference to
       5      "agreement/advisement with the diamond
       6      client" mean?
       7      A.      Every time there was a debit or
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

Pg: 101 Ln: 9 - Pg: 113 Ln: 24 continued...

**Annotation:**

```
104:  8    credit to Lazare's DDA account at KBC
      9    New York we informed both Lazare and we
     10    also at the same time informed ADB.
     11    Q.     And turning to the second
     12    sentence, do you see the sentence that
     13    reads "Credit positions on the diamond
     14    client's accounts are transferred to
     15    the pooling account as well?"
     16         Again, does the reference to
     17    "diamond clients" include Lazare from
     18    and after the time Lazare opened an
     19    account at KBC New York?
     20    A.     Yes.
     21    Q.     And can you explain how credit
     22    positions on Lazare's account would be
     23    transferred to ADB's pooling account at
     24    KBC New York?
     25    A.     At the end of each day KBC New
105:  1    York would look at the balance on
      2    Lazare's DDA account.  If there was a
      3    credit on the account a debit entry
      4    would be made on Lazare's DDA account
      5    at KBC New York to zero it out and a
      6    corresponding credit would be made to
      7    ADB's pooling account.
      8    Q.     And this process pertains to
      9    both debits and credits in Lazare's
     10    account at KBC New York, correct?
     11    A.     Yes.
     12    Q.     So let's look at how you went
     13    about describing the concept of
     14    paragraph 3 in your Declaration,
     15    Ms. Snyers -- Grimmig, sorry. Would you
     16    turn to paragraph 11 of your sworn
     17    Declaration?
     18         Do you see in the second
     19    sentence of paragraph 11 the sentence
     20    that begins "Similarly and as described
     21    in the Snyers reply Declaration, if the
     22    amounts deposited in the KBC account
     23    exceeded the amounts withdrawn from the
     24    account on any given day the excess
     25    funds would be swept out of the account
106:  1    regardless of whether the funds were
      2    unused credits from the Lazare Antwerp
      3    Bank account or payments received from
      4    Lazare's customers and credited to the
      5    Lazare Antwerp Bank account. The amount
      6    of the overdraft outstanding at the
      7    Lazare Antwerp Bank account would be
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

Pg: 101 Ln: 9 - Pg: 113 Ln: 24 continued...

**Annotation:**

```
106:  8      reduced by the amount swept into the
      9      Lazare Antwerp Bank account?"
     10            Is that statement by you to the
     11      Court, Ms. Grimmig, consistent with
     12      paragraph 3 of the Services Agreement?
     13      A.    The shared agreement has more
     14      details than the description in the
     15      Declaration.
     16      Q.    Well, can you explain to me how
     17      the pooling account factors into the
     18      description in paragraph 11 of your
     19      Declaration that I just read out loud?
     20      What part of that pertains to the
     21      pooling account?
     22      A.    So as I say, at the end of the
     23      day if there is a credit balance on
     24      Lazare's DDA account with KBC New York,
     25      KBC New York would put a debit entry on
107:  1      the Lazare DDA account and then would
      2      make a credit entry on ADB's pooling
      3      account with -- to zero out Lazare's
      4      DDA account, and then once the funds
      5      are in the ADB's pooling account, ADB
      6      could do with those funds what it
      7      wanted to.
      8      Q.    So, Ms. Grimmig --
      9      A.    Let me step back. Sorry. Can I
     10      --
     11      Q.    Please.
     12      A.    So every time there was a debit
     13      or credit on the Lazare DDA account,
     14      notification was given to Lazare at the
     15      same time we were giving SWIFT messages
     16      in real-time informing ADB of debits
     17      and credits so that that ADB could be
     18      making entries on the Lazare's
     19      overdraft account at ADB.
     20      Q.    So according to the Services
     21      Agreement, Lazare's credit position was
     22      reduced by the amount of funds that KBC
     23      New York swept into ADB's pooling
     24      account at KBC New York, correct?
     25      A.    Correct.
108:  1      Q.    And that reduction was achieved
      2      via internal entries --
      3      A.    Right.
      4      Q.    -- to quote the Services
      5      Agreement, made by ADB upon receipt of
      6      notice, via informational SWIFT
      7      messages from KBC New York. Correct?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24** continued...

**Annotation:**

| | |
|---|---|
| 108: 8 | Sorry, you have to answer out layout. |
| 9 | Court reporter can't take down a nod. |
| 10 | A.    Sorry. Correct. |
| 11 | Q.    So to be clear, the funds, |
| 12 | positive or negative, from Lazare's |
| 13 | bank account at KBC New York were swept |
| 14 | by KBC New York into ADB's pooling |
| 15 | account at KBC New York, correct? |
| 16 | A.    Correct. |
| 17 | Q.    So, Ms. Grimmig, it's not true |
| 18 | then that KBC New York swept funds from |
| 19 | Lazare's bank account at KBC New York |
| 20 | into an alleged Lazare bank account at |
| 21 | ADB Belgium, is it? |
| 22 | MR. FORESTA:  Objection.  You |
| 23 | can answer. |
| 24 | A.    KBC New York only had authority |
| 25 | to withdraw funds out of Lazare's DDA |
| 109: 1 | account and put them into ADB's pooling |
| 2 | account. Once the money was in ADB's |
| 3 | pooling account, ADB could do what it |
| 4 | wanted with those funds, and if they |
| 5 | wanted to move those funds out of the |
| 6 | ADB pooling account to anyplace else, |
| 7 | they had the right to do so. |
| 8 | Q.    But that's not what you told the |
| 9 | Judge. In your Declaration you told the |
| 10 | Judge, under oath, that the monies in |
| 11 | Lazare's bank account, the balance, |
| 12 | positive or negative, was swept into an |
| 13 | alleged bank account in Belgium. You |
| 14 | left out the pooling account. You left |
| 15 | out the fact that the sweeping process |
| 16 | went from Lazare bank account at KBC |
| 17 | New York to ADB bank account at KBC New |
| 18 | York. Why did you do that? |
| 19 | MR. FORESTA:  Objection. You can |
| 20 | answer. |
| 21 | A.    Because ultimately the funds |
| 22 | went to ADB. |
| 23 | Q.    So you made the decision not to |
| 24 | tell Judge Carter about the |
| 25 | intermediate step, you jumped right to |
| 110: 1 | "ultimately". Is that your testimony, |
| 2 | Ms. Grimmig? |
| 3 | MR. FORESTA:  Objection. |
| 4 | A.    The Declaration is supposed to |
| 5 | give as accurate a description of the |
| 6 | process as possible, but it's not meant |
| 7 | to contain every nitty-gritty detail of |

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24** continued...

**Annotation:**

```
110:  8    the process.
       9        Q.    Is that -- is the pooling
      10    account a nitty-gritty detail, Ms.
      11    Grimmig? Is that your testimony?
      12        A.    My testimony is that at the end
      13    of the day what was important to
      14    disclose was that the funds ultimately
      15    went into the possession of ADB.
      16        Q.    Who made the decision as to what
      17    was important to disclose to Judge
      18    Carter in connection with your
      19    attorney's motion, you?
      20            MR. FORESTA:  Note my objection.
      21        Q.   You?
      22            MR. FORESTA:  I'll just caution
      23    you not to disclose sum or substance of
      24    any discussions that you had with
      25    counsel, to the extent you did.
111:  1        A.    It was not my -- I did not take
       2    a decision.
       3        Q.    You didn't make the decision not
       4    to disclose to Judge Carter in this
       5    lawsuit the existence of the pooling
       6    account or the operation of the pooling
       7    account?  Is that your testimony?
       8            MR. FORESTA:  Objection. You can
       9    answer.
      10        A.    In my Declaration I made a
      11    disclosure of the process of the
      12    handling of the KBC New York DDA
      13    account for Lazare and KBC New York's
      14    handling of ADB's pooling account. I
      15    did not provide nitty-gritty details.
      16        Q.    You knew at the time you signed
      17    your Declaration that no money went to
      18    or from Belgium in this process, didn't
      19    you, Ms. Grimmig?
      20        A.    I don't know that's a true
      21    statement. ADB -- the funds went into
      22    -- the funds were owned by ADB.  ADB
      23    can do with those funds as it wanted
      24    to.
      25        Q.    We're talking about the
112:  1    allegation or the factual assertion in
       2    your Declaration regarding the movement
       3    of monies, positive or negative
       4    balances, out of Lazare's bank account?
       5        A.    Okay.
       6        Q.    And I'm asking you whether you
       7    knew at the time you signed your
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24** continued...

**Annotation:**

```
112:  8        Declaration under oath that the money,
      9        the positive or negative balance moved
     10        from Lazare's bank account in New York
     11        to ADB's bank account in New York? Did
     12        you know that at the time you signed
     13        your Declaration?
     14        A.    I knew that KBC New York would,
     15        at the end of the day, put a debit
     16        entry on Lazare's DDA account and make
     17        a corresponding credit entry on ADB's
     18        U.S. what you call pooling account.
     19        Once those funds went into the pooling
     20        account, ADB had the right to do with
     21        those funds as it pleased.
     22        Q.    And you testified earlier, I
     23        believe, that you drafted your
     24        Declaration?
     25        A.    Yes, I did.
113:  1        Q.    So without disclosing anything
      2        that your attorneys may have said to
      3        you, did you discuss with anyone before
      4        signing your Declaration the decision
      5        to describe the contents of the
      6        Services Agreement in the manner in
      7        which you did?
      8        A.    I wrote it, so...
      9        Q.    Did you discuss with anyone the
     10        decision not to tell Judge Carter about
     11        the pooling account, the movement of
     12        monies or the Services Agreement --
     13              MR. FORESTA:  Objection.
     14        Q.    -- other than counsel?
     15              MR. FORESTA:  You can answer.
     16        A.    No, but --
     17        Q.    Sorry.
     18        A.    -- but the shared agreement was
     19        not deemed -- I did not -- as long as I
     20        disclosed the process, I didn't think
     21        it was necessary to explicitly
     22        reference the shared agreement. There
     23        was no intention to -- to hide or --
     24        the existence of the sharing agreement.
```

**Pg: 114 Ln: 4 - Pg: 118 Ln: 23**

**Annotation:**

```
114:  4        Q.    I'm going to ask you to turn to
      5        the sworn Declaration submitted by
      6        Veerle Snyers to the Court, which is
      7        115 and 117. I'm going to direct to you
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

Pg: 114 Ln: 4 - Pg: 118 Ln: 23 continued...

**Annotation:**

| | |
|---|---|
| 114: 8 | page 6, paragraph 11 of Ms. Snyers' |
| 9 | sworn Declaration, which is dated June |
| 10 | 18, 2012 -- sorry -- June 14, 2012, and |
| 11 | in particular, subparagraph H on page |
| 12 | 6. |
| 13 | Do you recall reviewing the |
| 14 | language in paragraph 11(h) of |
| 15 | Ms. Snyers' Declaration before signing |
| 16 | your own Declaration? |
| 17 | A.    I recall reading her |
| 18 | Declaration, but I don't remember the |
| 19 | specifics. |
| 20 | Q.    Do you know who drafted Ms. |
| 21 | Snyers' Declaration? |
| 22 | A.    It's my understanding that she |
| 23 | drafted it, herself. |
| 24 | Q.    And did you consider Ms. Snyers |
| 25 | competent to testify regarding the |
| 115: 1 | matters discussed in her Declaration? |
| 2 | A.    As the author of her |
| 3 | Declaration, I would say she was |
| 4 | competent to testify with respect to |
| 5 | it. |
| 6 | Q.    Do you know Ms. Snyers, other |
| 7 | than casually? |
| 8 | A.    No. |
| 9 | Q.    You're not friends? |
| 10 | A.    No. |
| 11 | Q.    Did you take any steps to verify |
| 12 | whether the statements in Ms. Snyers' |
| 13 | Declaration were accurate and true |
| 14 | before you signed your own Declaration? |
| 15 | A.    Yes. |
| 16 | Q.    What steps did you take? |
| 17 | A.    I discussed with our Cash |
| 18 | Management and Payment Department how |
| 19 | DDA accounts worked and the zero |
| 20 | balancing of accounts worked. |
| 21 | Q.    And who is that person?  What is |
| 22 | the name of that person. |
| 23 | A.    Ruggerio Pestana. |
| 24 | Q.    Based here in New York? |
| 25 | A.    Yes. |
| 116: 1 | Q.    And directing your attention in |
| 2 | particular to the last sentence of (h), |
| 3 | 11(h), do you see where it says "In |
| 4 | addition, because the account at KBC |
| 5 | New York is a Zero Balance Account any |
| 6 | funds transferred into the KBC New York |
| 7 | account are automatically credited to |

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

Pg: 114 Ln: 4 - Pg: 118 Ln: 23 continued...

**Annotation:**

```
116: 8      or swept into the customer's bank
      9      account at Antwerp Bank at the end of
     10      the day."
     11             Do you see where Ms. Snyers
     12      wrote that?
     13      A.     Right.
     14      Q.     She didn't reference the pooling
     15      account either, did she, in this
     16      description?
     17      A.     No.
     18      Q.     Do you know why?
     19      A.     No.
     20      Q.     Did you rely on the language in
     21      her Declaration, the "swept into the
     22      customer's bank account at Antwerp
     23      Bank?"  Did you rely on that language
     24      in drafting your own Declaration?
     25      A.     No. I relied on my conversations
117: 1      with my Cash Management and Payment
      2      team, who told me every time there was
      3      a debit or credit to Lazare's DDA
      4      account with KBC New York, KBC New
      5      York, in real-time, would send a SWIFT
      6      message to ADB in -- in Belgium of the
      7      debit and credit so they could make a
      8      corresponding entry into the overdraft
      9      account that Lazare had at ADB.
     10      Q.     And that corresponding entry is
     11      a book entry or an accounting entry?
     12      A.     Yes.
     13      Q.     Is that correct?
     14      A.     KBC New York does not handle
     15      physical cash.
     16      Q.     And dollars never leave America,
     17      do they, Ms. Grimmig?
     18      A.     They can't.
     19      Q.     Did they, in this case, ever
     20      leave?
     21      A.     ADB's pooling account, yes, had
     22      both debits and credits to the account
     23      and so, the debit entry would require
     24      movement of funds.
     25      Q.     Is it your testimony that U.S.
118: 1      dollars moved from the pooling account
      2      to Belgium as opposed to accounting or
      3      bookkeeping entries?
      4             MR. FORESTA:  Note my objection.
      5      Q.     Was there a physical movement of
      6      dollars?
      7      A.     We -- KBC New York does not
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 114 Ln: 4 - Pg: 118 Ln: 23** continued...

**Annotation:**

```
118:  8      handle physical cash, so movement of
      9      funds was done by -- by book entries.
     10        Q.    And that's true of all the
     11      increases and decreases to Lazare's
     12      outstanding loan balance under the
     13      credit facility, correct?  All that
     14      happened were book entries or
     15      accounting entries?  All that happened
     16      in Belgium were book entries or
     17      accounting entries, correct?
     18          MR. FORESTA:  Note my objection.
     19        Q.    You can answer.
     20        A.    That is how banks transfer
     21      money. You don't physically deliver
     22      cash, you do wire transfers of funds
     23      which are book entries.
```

**Pg: 140 Ln: 25 - Pg: 145 Ln: 11**

**Annotation:**

```
140:25        Q.    Would you turn to your
141:  1      Declaration again, paragraph 2 but at
      2      the top of page 2?
      3        A.    Right.
      4        Q.    Do you see the sentence, second
      5      to last sentence that reads "I submit
      6      this Declaration to describe KBC's
      7      relationship with Lazare, its local
      8      partner banking relationship with
      9      Antwerp Bank" etcetera etcetera"?  Do
     10      you see where I'm reading from?
     11        A.    Yes.
     12        Q.    What does the reference to KBC's
     13      local partner relationship with Antwerp
     14      Bank mean?
     15        A.    KBC New York provided a U.S.
     16      dollar account for ADB.
     17        Q.    What is a local partner bank?
     18        A.    I don't know.
     19        Q.    Well, you wrote the Declaration.
     20      So --
     21        A.    I think for me it was just
     22      describing that we opened up a U.S.
     23      dollar clearing account for ADB and we
     24      would open up a DDA account for ADB's
     25      U.S. customers to facilitate ADB's
142:  1      overdraft account with the same
      2      customer.
      3        Q.    But you knew at the time you
      4      wrote this that ADB had also opened a
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

Pg: 140 Ln: 25 - Pg: 145 Ln: 11 continued...

**Annotation:**

```
142:  5    pooling account at KBC New York, a
      6    pooling account?
      7    A.    That is what I call the U.S.
      8    dollar account. Sorry. It's --
      9    Q.    How many different accounts did
     10    ADB open and/or maintain at KBC New
     11    York during the relevant period of
     12    time?
     13    A.    I believe it had -- it had the
     14    U.S. dollar account, the pooling
     15    account.
     16    Q.    Is that the only bank account
     17    you're aware of?
     18    A.    I believe it might have also had
     19    a second account that was an expense
     20    account.
     21    Q.    Is that a subaccount or a
     22    separate bank account?
     23    A.    It's a separate bank account.
     24    Q.    Were there any subaccounts to
     25    either of the pooling account or the
143:  1    expense account?
      2    A.    No.
      3    Q.    What is an expense account?
      4    A.    I believe it was an account used
      5    to cover ADB's cost and expenses with
      6    respect to the New York Rep Office. So
      7    it would cover their rental payments on
      8    the ADB New York reps sublease here in
      9    New York.
     10    Q.    ADB sublet its space from KBC
     11    New York?
     12    A.    Yes, it did.
     13    Q.    And it paid rent for that space?
     14    A.    Yes.
     15    Q.    Is the term "local partner bank"
     16    defined in any banking rules or
     17    regulations or laws that you're aware
     18    of?
     19    A.    No.
     20    Q.    Where did you get the term?
     21    A.    It was just a term describing --
     22    in this case, it was describing the --
     23    the KBC New York opening a DDA account
     24    on behalf of ADB's diamond customers in
     25    the U.S.
144:  1    Q.    What is the difference between a
      2    local partner bank relationship and a
      3    correspondent bank relationship?
      4    A.    They can be the same.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 140 Ln: 25 - Pg: 145 Ln: 11** continued...

**Annotation:**

```
144:  5        Q.     Can they be different?
      6        A.     They can be different.
      7        Q.     In what sense can they be
      8    different?
      9        A.     I think in this particular case
     10    we provided ADB with not just U.S.
     11    dollar clearing, but we also agreed to
     12    open up DDA accounts for ADB's diamond
     13    customers in the U.S. to facilitate an
     14    overdraft account between ADB and such
     15    diamond customers.
     16        Q.     Is a local partner bank
     17    relationship different in any other
     18    respect from a correspondent bank
     19    relationship?
     20        A.     It could be.
     21        Q.     In what other respects could it
     22    be different?
     23        A.     We could have -- if the bank
     24    provided any other services to ADB
     25    or...
145:  1        Q.     So did I understand correctly
      2    that a local partner bank has a greater
      3    responsibility than a correspondent
      4    bank?
      5        A.     Not greater. It could be
      6    different.
      7        Q.     But you don't know where the
      8    term comes from?
      9        A.     No. It's just a term I used to
     10    describe the relationship between ADB
     11    and myself -- and KBC New York.
```

**Pg: 145 Ln: 12 - Pg: 147 Ln: 25**

**Annotation:**

```
145:12        Q.     Are the operational banking
     13    services that are described in the
     14    Service Agreement correspondent bank
     15    services?
     16        A.     I think it -- no. It's more
     17    focused on -- I don't recall. I would
     18    have to read the agreement.
     19        Q.     The Services Agreement?
     20        A.     But I think the Service
     21    Agreement was primarily focusing on KBC
     22    New York agreeing to open up DDA
     23    accounts for ADB's customers to
     24    facilitate ADB's overdraft accounts
     25    with the same customer.
```

---

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 145 Ln: 12 - Pg: 147 Ln: 25 continued...**

**Annotation:**

```
146: 1      Q.    Well, would you turn back to the
       2      Services Agreement, and in particular
       3      the second "whereas" clause on page 1?
       4      It's annexed to 57.
       5            MR. D'ANGELO:  It's a separate
       6      document.
       7      Q.    It's a pile in that folder.
       8      There should be a Services Agreement
       9      folder in there.
      10            So directing your attention to
      11      the second "whereas" clause, would you
      12      read that clause?
      13      A.    "KBC agrees to provide certain
      14      operational services to ADB and to
      15      ADB's clients, hereinafter referred to
      16      as diamond clients, specifically
      17      allowing diamond clients to open
      18      current accounts in their books and
      19      effectuating both local and
      20      international payments and other
      21      banking services on behalf of the
      22      diamond clients."
      23      Q.    Thank you. So doesn't this
      24      clause indicate to you that KBC was
      25      agreeing to provide operational
147: 1      services to ADB as well as to ADB's
       2      clients?
       3            That's what the clause says
       4      doesn't it, Ms. Grimmig?
       5      A.    Yes.
       6      Q.    So the services were not limited
       7      to the clients of ADB, they included
       8      services provided by KBC New York to
       9      ADB?
      10      A.    With respect to ADB's clients.
      11      Q.    Okay. So I ask you again, are
      12      the operational banking services
      13      described in the clause you just read
      14      correspondent banking services?
      15      A.    No.
      16      Q.    Why not?
      17      A.    I view corresponding banking
      18      relationship to refer to the U.S.
      19      dollar clearing activity.
      20      Q.    And do you view correspondent
      21      banking services to be limited to the
      22      U.S. dollar clearing activity?
      23      A.    Typically the terminology is
      24      used with respect to U.S. dollar
      25      clearing activity.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 148 Ln: 7 - 18**

**Annotation:**
```
148: 7        Q.    Do you know whether KBC New York
      8    has an agreement with ADB concerning
      9    correspondent banking services, other
     10    than the Services Agreement? Is there a
     11    separate agreement of any kind?
     12        A.    I would believe that there is an
     13    account opening agreement between ADB
     14    and KBC New York.
     15        Q.    Other than the account opening
     16    agreement, is there another agreement
     17    of any kind --
     18        A.    Not to my knowledge.
```

**Pg: 151 Ln: 21 - 25**

**Annotation:**
```
151:21        Q.    The Lazare account was a Zero
     22    Balance Account, wasn't it, Ms.
     23    Grimmig?
     24        A.    It zeroed out at the end of
     25    every day.
```

**Pg: 158 Ln: 10 - Pg: 159 Ln: 17**

**Annotation:**
```
158:10        Q.    Would you look at paragraph 3 of
     11    your Declaration?
     12        A.    Okay.
     13        Q.    You see at the end of paragraph
     14    3 you cite to Ms. Snyers' Declaration
     15    at paragraph 7?
     16        A.    Yes.
     17        Q.    Did you also rely on Ms. Snyers'
     18    Reply Declaration in the case?
     19        A.    I don't recall.
     20        Q.    Do you see at the top of
     21    paragraph 3, second sentence, the
     22    sentence that reads "The KBC account is
     23    an ordinary checking account, also
     24    known as a Demand Deposit Account."
     25        A.    Yes.
159: 1        Q.    The KBC account to which you are
      2    referring in this sentence is Lazare's
      3    bank account at KBC New York, correct?
      4        A.    Yes.
      5        Q.    Okay. Was that account a
      6    checking account?
      7        A.    I believe it had checking
      8    possibilities. I don't know if checks
      9    were ordered.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 158 Ln: 10 - Pg: 159 Ln: 17** continued...

**Annotation:**
```
159:10        Q.     You don't know whether KBC New
    11    York ever provided checks to Lazare?
    12        A.     I don't know if Lazare ever
    13    requested checks.  If it did so we
    14    would have furnished them to them.
    15        Q.     What is your definition of an
    16    ordinary checking account?
    17        A.     An ordinary demand account.
```

**Pg: 161 Ln: 22 - Pg: 162 Ln: 12**

**Annotation:**
```
161:22        Q.     Do the bank statements that KBC
    23    New York issued to Lazare show deposits
    24    of funds into Lazare's account before
    25    being wired to the beneficiary
162: 1    designated by Lazare in its payment
     2    orders?
     3        A.     I -- the account statements just
     4    reflect the activity on the account for
     5    a particular day. I don't think it --
     6    it lists the order in which the payment
     7    is processed. It just shows debits and
     8    credits, in aggregates, the debits and
     9    credits. So it's -- it's just showing
    10    -- it's not showing the timing or the
    11    order of the payments by time, if my
    12    memory serves me right.
```

**Pg: 162 Ln: 13 - Pg: 163 Ln: 4**

**Annotation:**
```
162:13        Q.     Do you understand how a Zero
    14    Balance Account works?
    15        A.     Yes.
    16        Q.     Is a Zero Balance Account an
    17    ordinary checking account?
    18        A.     It can be, yes.
    19        Q.     How does a Zero Balance Account
    20    work?
    21        A.     At the end of the day you look
    22    at the balance on the account. If there
    23    is an outstanding credit, then the
    24    credit is -- a debit entry is made to
    25    the account equal to the credit balance
163: 1    and the money is swept out and moved
     2    into another account, so that the
     3    account has a balance of zero at the
     4    end of the day.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 163 Ln: 18 - Pg: 164 Ln: 7**

**Annotation:**

```
163:18        Q.    Do you know when Lazare
    19    submitted the necessary account opening
    20    information to KBC New York to set up
    21    its account?
    22        A.    It would be contained in the
    23    account opening documentation that was
    24    produced.
    25        Q.    Okay. And do you know whether
164: 1    the necessary account opening
     2    information was complete as of
     3    December, 2000?
     4        A.    I don't know the date. I know it
     5    started in the end of one year and got
     6    completed in the following year, but I
     7    don't know the exact years.
```

**Pg: 164 Ln: 8 - Pg: 167 Ln: 14**

**Annotation:**

```
164: 8        Q.    Would you look at paragraph 4 of
     9    your Declaration, and in particular, to
    10    the second sentence that reads
    11    "Contrary to the statement in the
    12    Moryto Affidavit that KBC was a primary
    13    banker to Lazare, KBC's New York branch
    14    only provided basic account services
    15    for Lazare's KBC account which were
    16    incidental to Lazare's bank account at
    17    Antwerp Bank, etcetera." Do you see
    18    where I'm reading from?
    19        A.    Yes.
    20        Q.    Let me ask you a few questions
    21    about your definition of "bank account
    22    services."
    23        You told us that KBC New York
    24    provided the operational banking
    25    services that are described in the
165: 1    Services Agreement, correct?
     2        A.    Correct.
     3        Q.    And according to the Services
     4    Agreement those operational banking
     5    services were provided through the bank
     6    account that ADB -- or bank accounts
     7    that ADB's customers in New York opened
     8    at KBC New York, correct?
     9        A.    Correct.
    10        Q.    Okay. And Lazare, one of ADB's
    11    diamond customers in New York, opened
    12    its bank account at the New York branch
    13    of KBC at the direction of ADB,
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 164 Ln: 8 - Pg: 167 Ln: 14** continued...

**Annotation:**

```
165:14      correct?
    15          A.     Yes.
    16          Q.     And the operational banking
    17      services that KBC New York provided
    18      under the Services Agreement included
    19      accepting payment orders from Lazare
    20      under its credit facility with ADB,
    21      correct?
    22          A.     Correct.
    23          Q.     And matching the payment orders
    24      with Lazare's available credit under
    25      its credit facility, correct?
166: 1          A.     Correct.
     2          Q.     And effectuating or executing
     3      the payments in accordance with
     4      Lazare's instructions, correct?
     5          A.     Correct.
     6          Q.     Accepting incoming payments to
     7      Lazare and booking them accordingly,
     8      correct?
     9          A.     Correct.
    10          Q.     Opening a pooling account for
    11      ADB at KBC New York to reimburse itself
    12      for the payments it made for Lazare,
    13      correct?
    14          A.     Correct.
    15          Q.     By agreement with Lazare,
    16      notifying ADB what it did via SWIFT
    17      electronic message so that ADB could
    18      adjust its records accordingly with
    19      respect to Lazare's outstanding loan
    20      balance, correct?
    21          A.     Correct.
    22          Q.     Is it your testimony, Ms.
    23      Grimmig, that each of these banking
    24      services that I've just read to you is
    25      a basic account service?
167: 1          A.     Yes.
     2          Q.     And do you consider these
     3      account services to be de minimus
     4      business dealings with Lazare?
     5          A.     Yes.
     6          Q.     And these banking services were
     7      all provided to Lazare here in New
     8      York, correct?
     9          A.     With respect to KBC New York?
    10          Q.     Yes.
    11          A.     Yes.
    12          Q.     And they're all services
    13      provided by KBC New York, correct?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 164 Ln: 8 - Pg: 167 Ln: 14** continued...

**Annotation:**

```
167:14      A.    Correct.
```

**Pg: 167 Ln: 25 - Pg: 168 Ln: 9**

**Annotation:**

```
167:25      Q.    Which bank disbursed to the
168: 1    payee designated by Lazare, Ms.
      2    Grimmig? Who executed or effectuated
      3    the payment order?
      4      A.    Out of the KBC New York account
      5    it was KBC New York.
      6      Q.    Okay. Which bank accepted the
      7    repayment into the KBC -- Lazare's KBC
      8    New York bank account?
      9      A.    KBC New York.
```

**Pg: 168 Ln: 20 - Pg: 171 Ln: 1**

**Annotation:**

```
168:20      Q.    Which bank calculated the amount
      21    due under the credit facility before
      22    effectuating or executing Lazare's
      23    payment orders?
      24      A.    ADB furnished the credit limit
      25    to KBC New York, so that KBC New York
169: 1    could process payments based on the
      2    availability under the overdraft
      3    account.
      4      Q.    Is that what the Services
      5    Agreement says, Ms. Grimmig, or is that
      6    what you say?
      7      A.    That's how it worked.
      8      Q.    What does the Services Agreement
      9    say? Let me direct your attention to
      10    paragraph 1.
      11         The second sentence, "KBC will
      12    keep records of the movements on the
      13    diamond client's accounts in order to
      14    be able to calculate the available
      15    credit against those lines."
      16      A.    In order to do so ADB had to
      17    first furnish to KBC New York the
      18    credit limit under the overdraft
      19    account between KBC New York -- between
      20    ADB and ADB's customer.
      21      Q.    Okay.
      22      A.    So we needed to know -- so ADB
      23    had to furnish the credit limit. Once
      24    that was -- KBC was informed of the
      25    credit limit, then KBC would process
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 168 Ln: 20 - Pg: 171 Ln: 1** continued...

**Annotation:**

```
170: 1      payments, depending upon availability
      2      under the overdraft.
      3          KBC New York would inform both
      4      Lazare and ADB in real-time every time
      5      there was a debit or credit entry on
      6      the KBC New York account, so that a
      7      corresponding entry could be made on
      8      the ADB overdraft account. It's not one
      9      or the other. It's -- it starts -- it
     10      starts and ends with ADB.
     11      Q.    Where did ADB get the
     12      information about the transactions in
     13      Lazare's bank account? From where did
     14      ADB get the information?
     15      A.    KBC New York -- first of all,
     16      ADB would inform KBC New York about the
     17      credit limit and then if there was a
     18      debit entry on a KBC New York account
     19      on any particular day, KBC New York
     20      informed both Lazare and ADB in
     21      real-time of each and every debit and
     22      credit entry.
     23      Q.    So KBC New York was the source
     24      of the debit and credit information
     25      that ADB received?
171: 1      A.    Yes.
```

**Pg: 174 Ln: 1 - 18**

**Annotation:**

```
174: 1      Q.    Did KBC New York perform
      2      enhanced due diligence procedures on
      3      any bank accounts or banking activities
      4      undertaken by New York diamond clients
      5      of ADB?
      6      A.    Diamond customers were in a risk
      7      category as being high risk, yes.
      8      Q.    So the answer is yes?
      9      A.    Yes.
     10      Q.    How about enhanced due diligence
     11      with respect to ADB, the holder of the
     12      local partner bank or correspondent
     13      bank account at KBC New York?
     14      A.    As you mentioned before, under
     15      the corresponding banking rules and
     16      regulations they're subject to
     17      additional AML documentation
     18      requirements.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 189 Ln: 5 - Pg: 191 Ln: 16**

**Annotation:**

```
189:  5         Q.     Ms. Grimmig, would you turn to
       6    Plaintiff's Exhibit 55, which is one of
       7    the loose documents in that pile in
       8    front of you in that folder?
       9           Do you recognize that document?
      10    A.     Yes.
      11    Q.     What is it?
      12    A.     It's a Letter Agreement between
      13    ADB and Lazare.
      14    Q.     And it's dated May 31, 2001. Is
      15    that correct?
      16    A.     Yes.
      17    Q.     It pertains to the bank account
      18    that Lazare opened at the New York
      19    branch of KBC, does it not?
      20    A.     Yes.
      21    Q.     And did anyone at KBC New York
      22    participate in the drafting of this
      23    document?
      24    A.     No.
      25    Q.     Do you know who drafted this
190:  1    document?
       2    A.     It's on ADB's letterhead, so I
       3    assume an ADB officer drafted it.
       4    Q.     Are you acquainted with Philippe
       5    Loral?
       6    A.     I know the name.
       7    Q.     Do you know whether he drafted
       8    this document?
       9    A.     No.
      10    Q.     Have you ever met Mr. Loral?
      11    A.     No.
      12    Q.     Ever spoken with him?
      13    A.     No.
      14    Q.     Do you know whether diamond
      15    clients of ADB, other than Lazare, who
      16    open accounts at KBC New York sign this
      17    kind of agreement?
      18    A.     If they were opening up a DDA
      19    account to effectuate their overdraft
      20    account between ADB and themselves,
      21    then we would have got this document.
      22    KBC New York would have received this
      23    document.
      24    Q.     Is it fair to say then that you
      25    are familiar with this form of
191:  1    document?
       2    A.     I've seen it, yes.
       3    Q.     You've seen it in contexts other
       4    than Lazare?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 189 Ln: 5 - Pg: 191 Ln: 16** continued...

**Annotation:**

```
191:  5        A.      It would be part of the customer
       6    file.
       7        Q.      When you say "part of the
       8    customer file", do you mean the account
       9    opening documentation that customers
      10    sign and submit to KBC New York in
      11    connection with bank accounts that they
      12    open at KBC New York?
      13        A.      Yes. Customer file has the
      14    account opening documentation and KYC
      15    information and verification
      16    documentation.
```

**Pg: 192 Ln: 21 - Pg: 193 Ln: 6**

**Annotation:**

```
192:21        Q.      Well, directing your attention
      22    to the first sentence that reads "We
      23    hereby agree that all disbursements and
      24    payments under our credit facility with
      25    Antwerpse Diamantbank NV has been
193:  1    effected through our account with KBC
       2    NV New York branch and shall result in
       3    a same day debit or credit to our loan
       4    balance with Antwerpse Diamantbank NV",
       5    do you see that language?
       6        A.      Yes.
```

**Pg: 193 Ln: 17 - Pg: 195 Ln: 14**

**Annotation:**

```
193:17        Q.      Was this document signed
      18    pursuant to the Services Agreement that
      19    you testified about earlier this
      20    morning?
      21        A.      It's a separate document.
      22        Q.      Is it contemplated by the
      23    Services Agreement?
      24        A.      I don't know if contemplated is
      25    the right word.
194:  1        Q.      Well, let me direct your
       2    attention to the Services Agreement,
       3    which you should also have in front of
       4    you in the loose pile. And in
       5    particular, to the third "whereas"
       6    clause that begins "In agreement with
       7    the diamond clients etcetera." Do you
       8    see that?
       9        A.      Yes.
      10        Q.      Is Plaintiff's 55 the agreement
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 193 Ln: 17 - Pg: 195 Ln: 14** continued...

**Annotation:**

| | |
|---|---|
| 194:11 | with the diamond clients that's |
| 12 | referred to in the third "whereas" |
| 13 | clause in the Services Agreement? |
| 14 | MR. FORESTA:  Note my objection. |
| 15 | Go ahead and answer. |
| 16 | A.    You would need -- KBC New York |
| 17 | would need this document in order to |
| 18 | communicate information about debits -- |
| 19 | payments falling through KBC New York |
| 20 | with the DDA account with Lazare. |
| 21 | Q.    Did KBC New York rely upon |
| 22 | Plaintiff's 55 in order to communicate |
| 23 | information to ADB about payments? |
| 24 | A.    Yes. |
| 25 | Q.    Did KBC New York keep either the |
| 195: 1 | original or a copy of this document in |
| 2 | its files? |
| 3 | A.    KBC would not have the original. |
| 4 | It's a -- it's a document between ADB |
| 5 | and Lazare. So either ADB -- both ADB |
| 6 | and Lazare should have the original. |
| 7 | KBC New York would have a copy. |
| 8 | Q.    But it was necessary for Lazare |
| 9 | to sign this document in order to open |
| 10 | its bank account at KBC New York. Is |
| 11 | that correct? |
| 12 | A.    It was necessary for them to be |
| 13 | able to open the account and utilize |
| 14 | the account at KBC New York. |

**Pg: 197 Ln: 4 - Pg: 198 Ln: 24**

**Annotation:**

| | |
|---|---|
| 197: 4 | Q.    And moving up to paragraph 3, |
| 5 | second paragraph, do you see where it |
| 6 | says in the second clause, first clause |
| 7 | second paragraph, "If these clearing |
| 8 | operations yield a balance deficiency |
| 9 | on the pooling account KBC New York |
| 10 | will grant ADB an overnight placement |
| 11 | on money market rates on a best efforts |
| 12 | basis." |
| 13 | A.    Yes. |
| 14 | Q.    What is that talking about? What |
| 15 | does that sentence mean? |
| 16 | A.    If -- if at the end of the day |
| 17 | you would reconcile the DDA account of |
| 18 | Lazare, if it had a debit balance you |
| 19 | -- we would access funds out of ADB's |
| 20 | pooling account. |

## TextMap Annotation Digest Report

**Case Name:**  Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:**  [2/16/2016] Grimmig, Diane
**Issue Filter:**  Depo Designation

---

**Pg: 197 Ln: 4 - Pg: 198 Ln: 24** continued...

**Annotation:**
```
197:21              If the ADB pooling account did
    22      not have sufficient funds, KBC would
    23      lend funds to ADB in order to cover the
    24      negative balance.
    25          Q.    And those funds would be loaned
198: 1      or lent on money market rates?
     2          A.    They would be lent on an
     3      overnight basis at a market rate.
     4          Q.    And what does the sentence after
     5      that mean, the sentence that refers to
     6      "This placement will be against the
     7      presently established line at KBC New
     8      York etcetera?"
     9          A.    KBC provided a -- had an
    10      overdraft limit with respect to the
    11      U.S. dollar accounts held by KBC
    12      entities, including ADB.
    13          Q.    Can you explain what you mean
    14      when you say that they had an overdraft
    15      limit with respect to the accounts?
    16          A.    Essentially, a line of credit
    17      with a maximum -- maximum amount that
    18      could be utilized.
    19          Q.    So do I understand correctly
    20      that KBC extended a line of credit to
    21      ADB for use in connection with the
    22      arrangement discussed in this Services
    23      Agreement?
    24          A.    KBC could extend credit to ADB.
```

**Pg: 200 Ln: 7 - Pg: 204 Ln: 23**

**Annotation:**
```
200: 7          Q.    Okay. Well, directing your
     8      attention to the first sentence of
     9      paragraph 3 that begins "Each day KBC
    10      clears customer's account via ADB's
    11      pooling etcetera", at what point in the
    12      day did KBC clear the customer's
    13      account?
    14          A.    Lazare's?
    15          Q.    Or any customer that is covered
    16      by this agreement.
    17          A.    So intraday there would be
    18      debits and credits on Lazare's KBC New
    19      York DDA account in real-time.  Those
    20      debits and credits were reported to
    21      Lazare and at the same time to ADB to
    22      make the corresponding entries on the
    23      overdraft account.
```

---

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

Pg: 200 Ln: 7 - Pg: 204 Ln: 23 continued...

**Annotation:**

| | |
|---|---|
| 200:24 | At the end of the day KBC New |
| 25 | York would reconcile the balance to see |
| 201: 1 | whether or not there was a credit |
| 2 | balance or a -- and if there was a |
| 3 | credit balance the account would be |
| 4 | zeroed out and there would be a debit |
| 5 | on the KBC New York DDA account and |
| 6 | there would be a credit to the ADB, as |
| 7 | you call it, pooling account. |
| 8 | Q.    So the reconciliation took place |
| 9 | at the end of the day, the settling of |
| 10 | the transactions? |
| 11 | A.    The final settlement of the |
| 12 | transactions, because debits and |
| 13 | credits are made throughout the day on |
| 14 | the -- on any bank account. They're not |
| 15 | all done at the end of the day.  It's |
| 16 | done throughout the day, with a final |
| 17 | reconciliation at the end of the day. |
| 18 | Q.    Why does the second paragraph |
| 19 | refer to an overnight placement in the |
| 20 | event that the clearing operations that |
| 21 | you've described yield a balance |
| 22 | deficiency on the pooling account? |
| 23 | A.    Because as I mentioned before, |
| 24 | for administrative convenience we might |
| 25 | not have made debit entries against |
| 202: 1 | ADB's account to fund payment orders or |
| 2 | for insufficient -- to cover the |
| 3 | insufficient funds in the KBC New York |
| 4 | DDA account during the day, we just |
| 5 | would do one final settlement and |
| 6 | reconciliation at the end of the day. |
| 7 | Q.    And when KBC effectuates or |
| 8 | executes a payment order from a |
| 9 | customer like Lazare, under the |
| 10 | arrangement described in this Services |
| 11 | Agreement, where does KBC obtain the |
| 12 | funds with which to fulfill or carry |
| 13 | out that payment order? |
| 14 | A.    Ultimately, the funds are |
| 15 | acquired from ADB. |
| 16 | Q.    In the first instance where does |
| 17 | it obtain the funds? Whose funds does |
| 18 | it use? |
| 19 | A.    First instance, the customer's |
| 20 | funds. It's a DDA account. So they |
| 21 | might have deposits of funds from their |
| 22 | selling of goods and services to |
| 23 | another counterparty. So the first |

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 200 Ln: 7 - Pg: 204 Ln: 23** continued...

**Annotation:**

```
202:24        source of funds is their own funds.
     25        Q.    And if the Zero Balance Account
203: 1        does not contain the funds with which
      2        to execute the payment order?
      3        A.    KBC New York would look to see
      4        what the credit limit was on the ADB
      5        overdraft account. If there was
      6        availability under the ADB overdraft
      7        account, KBC could and at times did use
      8        its own funds intraday and then at the
      9        end of the day reconciled and settled
     10        with ADB and ADB would cover KBC, such
     11        that it was ADB funds and ADB retained
     12        the credit risk.
     13        Q.    And why do you say "at times",
     14        as opposed to all the time?
     15        A.    We had -- KBC New York had the
     16        right to make entries against the ADB
     17        account for the funds at any point in
     18        time, because the funds were available.
     19        We just -- for administrative purposes
     20        it was easier, instead of making
     21        multiple entries throughout the day
     22        because there could be debits and
     23        credits, depending upon the flow and
     24        funds in and out of the account.  We
     25        did it -- it was administratively more
204: 1        convenient to tend to do it at the end
      2        of the day and do it once. It saved --
      3        it save the -- in this case Lazare, in
      4        the sense that we didn't have to access
      5        the overdraft account, it saved them
      6        interest and also saved them fees and
      7        also saved ADB fees.
      8        Q.    And when you say "it", you are
      9        referring to the reconciliation between
     10        KBC's funding of Lazare's payment order
     11        and KBC's -- and the settling of that
     12        transaction against the pooling
     13        account?
     14        A.    Yeah.
     15        Q.    And all that took place in New
     16        York?
     17        A.    KBC New York handled its side of
     18        the transaction and ADB -- KBC handled
     19        everything with respect to the KBC New
     20        York DDA account for Lazare, and what
     21        you call the ADB pooling account.  ADB
     22        in Belgium handled the ADB overdraft
     23        account.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 205 Ln: 1 - Pg: 207 Ln: 9**

**Annotation:**

```
205:  1          Q.     So the what I call the pooling
      2     account is the pooling account that is
      3     referred to in your Services Agreement,
      4     Ms. Grimmig --
      5          A.     Right.
      6          Q.     -- in case there is any
      7     question?
      8          A.     Right.
      9          Q.     You understand that?
     10          A.     Yes.
     11          Q.     Do you understand what the
     12     approximate amount of U.S.
     13     dollar-denominated transactions was
     14     that KBC New York executed for ADB and
     15     its customers in any given year during
     16     the relevant period of time?
     17          A.     It would be -- through ADB's
     18     U.S. dollar account?
     19          Q.     Yes.
     20          A.     Billions of dollars.
     21          Q.     And did all of those
     22     transactions flow through the ADB
     23     pooling account at KBC New York?
     24          A.     If KBC New York was handling the
     25     U.S. dollar clearing activity on that
206:  1     particular payment, yes. If they used
      2     another bank, ADB used another U.S.
      3     clearing account with another bank, no.
      4          Q.     Were clearing activities
      5     conducted through the pooling account
      6     as well as the operational banking
      7     services described in the Services
      8     Agreement?
      9          A.     Yes.
     10          Q.     So the pooling account was both
     11     a clearing account and a pooling
     12     account?
     13          A.     KBC New York does not call it a
     14     pooling account. So I don't know where
     15     that term comes from. I'm not familiar
     16     with it.
     17                 KBC New York had a U.S. dollar
     18     account for ADB that handled any U.S.
     19     dollar transactions that ADB processed
     20     through KBC New York.
     21          Q.     And that would apply to all
     22     customers of ADB for which it processed
     23     transactions?
     24          A.     If it processed through the ADB
     25     pooling account.
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 205 Ln: 1 - Pg: 207 Ln: 9** continued...

**Annotation:**

```
207:  1          Q.     So that would include customers
      2      around the world as well as based in
      3      New York, would it not?
      4          A.     If it was a U.S. dollar payment
      5      that got processed through ADB's
      6      pooling account held at KBC New York,
      7      KBC New York handled it. If it went
      8      through another account at another
      9      bank, KBC New York had no involvement.
```

**Pg: 208 Ln: 7 - Pg: 211 Ln: 18**

**Annotation:**

```
208:  7          Q.     And dropping down to paragraph 2
      8      at the bottom of the first page of the
      9      Services Agreement you see the sentence
     10      that begins "KBC will accept and
     11      registrate all incoming funds via the
     12      customary channels, etcetera, in favor
     13      of the diamond clients"?
     14          A.     A-hum.
     15          Q.     What does that mean?
     16          A.     It means that all
     17      incoming/outgoing payments flowing
     18      through Lazare's account would be --
     19      would be captured and kept.
     20          Q.     What does "captured" mean,
     21      booked?
     22          A.     Via -- well, it would be
     23      presented a payment order, we would
     24      have a copy of the payment order. We
     25      would have the debits and entries would
209:  1      be reflected on our account statement
      2      that was furnished to the customer. So
      3      we would have copies of the customer's
      4      account statements.
      5          Q.     So effectively, the monies that
      6      KBC accepted and registrated were used
      7      to repay the customer's loans under
      8      their credit facilities with ADB,
      9      correct?
     10          A.     It's one of the -- Lazare Kaplan
     11      -- if Lazare left any credit balances
     12      in its KBC New York DDA account at the
     13      end of the day those credit balances
     14      got moved and sent to ADB, but Lazare
     15      had the ability to leave no funds in
     16      the account at which point there would
     17      be no credit balances to use to pay
     18      amounts drawn under the ADB overdraft
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

Pg: 208 Ln: 7 - Pg: 211 Ln: 18 continued...

**Annotation:**

```
209:19    account.
     20        Q.    Where does it say that in this
     21    agreement?
     22        A.    It doesn't say it, but Lazare
     23    Kaplan -- Lazare controls the funds in
     24    its account. If it didn't want to have
     25    funds used to pay down an overdraft on
210: 1    an overdraft account Lazare had the
      2    capability of withdrawing any credit
      3    balances and moving it into another
      4    bank account with another bank, so that
      5    there would be no credit balances and
      6    there would be no pay-down on the
      7    overdraft account.
      8        Q.    According to this paragraph 2 of
      9    the Services Agreement, where KBC
     10    accepted incoming funds it was KBC that
     11    credited the customer's account on its
     12    books, correct?
     13        A.    Correct.
     14        Q.    It was KBC that sent a SWIFT
     15    message to ADB giving information
     16    regarding that credit, correct?
     17        A.    Every time there was a credit to
     18    the account we -- Lazare was notified
     19    and ADB was notified.
     20        Q.    It was KBC that added
     21    information about the ordering customer
     22    of the payment, correct?
     23        A.    For what type of payment?
     24        Q.    Well, I'm referring you to the
     25    bottom of paragraph 2, top of paragraph 2 of
211: 1    the Services Agreement, in particular,
      2    the sentence "KBC also adds information
      3    about the ordering customer of the
      4    payment."
      5        A.    That would be information that
      6    we received from Lazare who inputted it
      7    into the payment order.
      8            To the extent that it was
      9    contained within the payment order,
     10    which had to be because we would have
     11    to know who to make the payment to, we
     12    also informed ADB.
     13        Q.    And you performed an AML or
     14    Compliance obligation or function with
     15    respect to the information about the
     16    customer or the source of funds?
     17        A.    It was subject to our BSA AML
     18    OFAC program.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 218 Ln: 14 - Pg: 219 Ln: 16**

**Annotation:**

```
218:14        Q.    Does the account agreement say
     15   anything at all about zeroing out the
     16   account?
     17        A.    I would have to read it but I
     18   don't recall off the top of my head.
     19        Q.    The account agreement is the
     20   Exhibit A to your sworn Declaration,
     21   Ms. Grimmig.
     22        MR. FORESTA:  Is there a
     23   question?
     24        MR. SULLIVAN:  Yes.
     25        Does the account agreement allow
219: 1   KBC New York to zero out Lazare's KBC
      2   New York account? Same question I asked
      3   before.
      4        A.    The account agreement permits
      5   the debits and credits to the account
      6   which are evidenced in account
      7   statement. The account statement would
      8   have evidenced the zeroing out of
      9   Lazare's account at the end of the day.
     10        Q.    What paragraph of the account
     11   agreement are you looking at?
     12        A.    I'm just looking at the totality
     13   of the agreement.
     14        Q.    Is there a specific reference to
     15   zeroing out in the agreement?
     16        A.    No.
```

**Pg: 223 Ln: 7 - Pg: 226 Ln: 25**

**Annotation:**

```
223: 7        Q.    Is there any other agreement
      8   that allowed KBC New York to zero out
      9   Lazare's account at the end of the day,
     10   beyond the account agreement and the
     11   bank statements that you referred to as
     12   the totality of the situation?
     13        A.    Was the Letter Agreement between
     14   ADB and Lazare? I think --
     15        Q.    That's Plaintiff's 55, one-page
     16   agreement.
     17        A.    -- reflected the workings of the
     18   account too.
     19        Q.    You are referring to the first
     20   sentence of Plaintiff's 55? Do you have
     21   the document in front of you? It's a
     22   one-page document.
     23        A.    I think it's one of the tabs.
     24        MR. D'ANGELO:  It should be
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 223 Ln: 7 - Pg: 226 Ln: 25** continued...

**Annotation:**

```
223:25      separate.
224: 1      A.    Yes.
     2      Q.    Okay. What language in the
     3   document are you relying on?
     4      A.    The first sentence, the second
     5   half of the first sentence, "Same day
     6   debits or credits to our loan balance
     7   with Antwerp Diamond Bank NV.
     8      Q.    So this document then pertains
     9   to the Lazare account at KBC New York
    10   as well, the operation of the Lazare
    11   account at KBC New York as well?
    12      A.    Yes.
    13      Q.    And did KBC New York and ADB
    14   exchange information pursuant to this
    15   document?
    16      A.    Yes. As I stated, we shared
    17   information regarding debits and
    18   credits to Lazare's DDA account with
    19   KBC New York, so corresponding entries
    20   could be made by ADB on its overdraft
    21   account.
    22      Q.    And do you understand this
    23   document to require that all
    24   disbursements and payments under
    25   Lazare's credit facility with ADB have
225: 1   to be effected through its account at
     2   KBC New York?
     3      A.    No.
     4      Q.    So directing your attention to
     5   the first sentence that reads "We
     6   hereby agree that all disbursements and
     7   payments under our credit facility with
     8   Antwerpse Diamantbank NV shall be
     9   effected through our account with KBC
    10   New York and New York branch etcetera",
    11   what part of that doesn't require
    12   Lazare to --
    13      A.    You have to --
    14      Q.    You have to let me finish.
    15            -- to effect all transactions
    16   through its account at KBC New York?
    17      A.    You have to read the sentence in
    18   its totality. The first part makes no
    19   sense without the second part.
    20            Basically, what this is -- the
    21   purpose of this was to state to Lazare,
    22   if you wanted to receive funds under
    23   your overdraft account from ADB same
    24   day in real-time you had to effectuate
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 223 Ln: 7 - Pg: 226 Ln: 25** continued...

**Annotation:**

```
225:25    those payment orders through the KBC
226: 1    New York account.
     2       Q.   The agreement, the word "all"
     3    refers to disbursement -- do you
     4    understand the word "all" to refer to
     5    disbursements and payments under the
     6    credit facility?
     7       A.   You have to read the sentence in
     8    its totality. The second part of the
     9    sentence I believe qualifies the first
    10    part of the sentence.
    11       Q.   So "all" doesn't mean "all"?
    12       A.   I do know that Lazare, during
    13    the time of the overdraft account, did
    14    process payment orders directly to ADB.
    15    So I do not -- I don't think "all"
    16    means "all" here, because there was
    17    activity to the contrary.
    18       Q.   And when did that activity take
    19    place?
    20       A.   I don't know.
    21       Q.   Was Lazare free to disregard
    22    this agreement?
    23       A.    It's an agreement between ADB
    24    and Lazare, so I cannot speak for ADB
    25    or Lazare.
```

**Pg: 228 Ln: 10 - 15**

**Annotation:**

```
228:10       Q.   But KBC New York did not
    11    repudiate this agreement in any
    12    respect?
    13       A.   No. It was a requirement in
    14    order to -- for Lazare to open and
    15    utilize the KBC ADB DDA account.
```

**Pg: 228 Ln: 16 - Pg: 230 Ln: 21**

**Annotation:**

```
228:16       Q.    And directing your attention to
    17    paragraph 4 of your Declaration, Ms.
    18    Grimmig, do you see the sentence that
    19    begins "Contrary to the statement in
    20    the Moryto Affidavit, KBC was a primary
    21    banker to Lazare. KBC's branch only
    22    provided basic account service for
    23    Lazare's KBC account which were
    24    incidental to Lazare's bank account at
    25    Antwerp Bank."
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 228 Ln: 16 - Pg: 230 Ln: 21** continued...

**Annotation:**

```
229: 1     A.    Yes.
       2     Q.    What is your basis for claiming
       3  that KBC was not Lazare's primary
       4  banker in New York?
       5     A.    One, we knew that we were not
       6  the only banker that Lazare did
       7  business with in the U.S.; and two, we
       8  only furnished them with one bank
       9  product. We did not provide them or
      10  offer them our more prominent bank
      11  product and services provided by KBC
      12  New York.
      13     Q.    Directing your attention to the
      14  Moryto Affidavit that you refer to in
      15  your Declaration, which is tab 116 of
      16  your big binder.
      17         (Exhibit 116, Affidavit of
      18  William Moryto, was received and marked
      19  on this date for identification.)
      20     Q.    Directing your attention to
      21  paragraph 20, page 8 of Mr. Moryto's
      22  Affidavit, would you read the first
      23  sentence?
      24     A.    "In 2008 alone deposits into the
      25  KBC New York bank account from third
230: 1  parties were approximately $178.5
       2  million and disbursements to third
       3  parties were approximately $178.2
       4  million."
       5     Q.    Do you have any reason to
       6  believe that statement is not accurate?
       7     A.    No.
       8     Q.    Do you know how -- approximately
       9  how much money passed through Lazare's
      10  bank account at KBC New York during the
      11  relevant period of time?
      12     A.    A couple hundred million.
      13     Q.    Well, we know that 350-odd
      14  million --
      15     A.    Okay.
      16     Q.    -- of transactions took place in
      17  2008 alone?
      18     A.    Okay.
      19     Q.    So in the 11-year period do you
      20  have any idea?
      21     A.    No.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 233 Ln: 6 - 22**

**Annotation:**

```
233: 6      Q.      Going back to paragraph 4 of
      7      your Declaration, do you see the
      8      sentence on page 2, three lines up from
      9      the bottom that reads "KBC did not make
     10      any loans or extend any credit to
     11      Lazare."
     12      A.      Yes.
     13      Q.      So is it correct, if I
     14      understand your testimony, that at the
     15      start of each day Lazare had a zero
     16      balance in its KBC New York bank
     17      account?
     18      A.      Yes.
     19      Q.      And when Lazare wanted to
     20      disburse funds it would send a transfer
     21      request to KBC New York?
     22      A.      Yes.
```

**Pg: 234 Ln: 20 - Pg: 235 Ln: 9**

**Annotation:**

```
234:20      Q.      Is it true, Ms. Grimmig, that
     21      KBC initially funded Lazare's payment
     22      requests with its own money?
     23              MR. FORESTA:  Objection. Asked
     24      and answered.
     25      Q.      You can answer the question.
235: 1      A.      On an intraday basis, if there
      2      was funds available in the ADB pooling
      3      account we, KBC, would use its own
      4      funds and then at the end of the day
      5      reconcile and settle and be reimbursed
      6      by ADB.  So on a daily basis the credit
      7      risk always was retained by ADB because
      8      it was ultimately ADB funds that
      9      covered the payment orders.
```

**Pg: 255 Ln: 8 - Pg: 256 Ln: 21**

**Annotation:**

```
255: 8      Q.      Is it the case or is it correct
      9      that each time the amount of Lazare's
     10      credit facility was increased the
     11      increase was approved by KBC or a
     12      committee at KBC?
     13      A.      If it met certain criteria.
     14      Q.      Do you recall what the initial
     15      amount of the credit facility was?
     16      A.      It's in one of the documents
     17      produced.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

### Pg: 255 Ln: 8 - Pg: 256 Ln: 21 continued...

**Annotation:**

```
255:18         Q.     If I suggested to you that it
    19    was $10 million, would that refresh
    20    your recollection?
    21         A.     No. I believe it was more than
    22    that.
    23         Q.     Can you walk us through the
    24    process by which ADB would obtain KBC
    25    approval of the increase in the amount
256: 1    of the credit facility?
     2         A.     Any increase in the credit
     3    facility would be processed in a
     4    similar manner to an initial grant of
     5    credit. ADB would make a decision as to
     6    whether or not it wanted to increase
     7    the credit limit.  If it decided to do
     8    so, ADB would write a credit
     9    application or a credit memo and it
    10    would get submitted to the appropriate
    11    Credit Committee.
    12         The determination of the
    13    appropriate Credit Committee was -- is
    14    based upon several factors; one,
    15    probability of default; loss given
    16    default; and group exposure. So the
    17    decision might have been made at the
    18    local committee at ADB or if based upon
    19    the factors it might have needed to be
    20    escalated up to a Credit Committee
    21    located at KBC Belgium.
```

### Pg: 256 Ln: 22 - Pg: 260 Ln: 13

**Annotation:**

```
256:22         Q.     You identified this morning two
    23    Credit Committees located at KBC
    24    Belgium, the Extended Credit Committee
    25    or ECC and the Local Credit Committee
257: 1    or LCC and now you also indicated there
     2    was a third committee.
     3         Do I understand correctly the
     4    third committee is the initial Credit
     5    Committee, just CC, if you will, at ADB
     6    and from there the decision goes to the
     7    LCC or ECC at KBC? Am I understanding
     8    that distinction correctly?
     9         A.     I think I might have misspoke
    10    and said that the LCC was at KBC
    11    Belgium. I believe the LCC stands for
    12    the Local Credit Committee, which would
    13    refer to ADB's Credit Committee.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 256 Ln: 22 - Pg: 260 Ln: 13** continued...

**Annotation:**

```
257:14    Q.    So ECC is KBC?
     15   A.    ECC is KBC.
     16   Q.    And LCC is ADB?
     17   A.    Yes.
     18   Q.    And is there third committee
     19   like an initial committee, a CC?
     20   A.    If my memory serves me right, in
     21   the IKB delegations there is another
     22   Credit Committee.
     23   Q.    And was it -- is it the case
     24   that the request to increase the
     25   available line of credit, the amount of
258: 1   the available line of credit to Lazare,
      2   would be coupled with the line of
      3   credit that was made available to
      4   Lazare Kaplan Belgium, the Belgian
      5   subsidiary of Lazare, so the two in the
      6   aggregate would be presented to the
      7   applicable committee?
      8   A.    If at the time there -- Lazare
      9   was looking to increase the credit
     10   limit but there was no changes to a
     11   Lazare Belgian credit facility, ADB
     12   would prepare a credit application that
     13   spoke specifically about the LK --
     14   Lazare credit facility and the request
     15   to increase the credit limit, but it
     16   more than likely would have background
     17   information about their group exposure
     18   to Lazare and Lazare Belgium.
     19   Q.    Do you know for a fact that the
     20   ECC, the KBC committee, approved the
     21   increase in the amount of the Lazare
     22   credit facility up to the $45 million
     23   level at which it resided when it was
     24   terminated?
     25   A.    I know there was a credit
259: 1   application submitted. I don't recall
      2   off the top of my head what committee
      3   decided it. I believe it was ECC.
      4   Q.    And if I remember your testimony
      5   correctly, KBC had representatives on
      6   the LCC?
      7   A.    No. I was mistaken. That's the
      8   Local Credit Committee, that's ADB's
      9   Credit Committee and it is my
     10   understanding that just ADB personnel
     11   are on the ADB's LCC.
     12   Q.    Is that what the IKB
     13   counterparty delegations say?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

Pg: 256 Ln: 22 - Pg: 260 Ln: 13 continued...

**Annotation:**

```
259:14        A.     I think the IKB delegations just
    15    talk about the representatives on the
    16    Credit Committees located in KBC
    17    Belgium. I don't recall it setting
    18    forth who are the representatives of
    19    the Local Credit Committees held at the
    20    local levels.
    21        Q.     Are you referring to the LCC?
    22        A.     Yes.
    23        Q.     So is your testimony that you
    24    don't recall whether KBC
    25    representatives sat on the LCC or that
260: 1    they did not sit on the LCC?
     2        A.     I don't recall.
     3        Q.     What written record exists of
     4    the decision by the ECC to increase the
     5    amount of Lazare's credit facility
     6    during the relevant period of time or
     7    what written record would exist of such
     8    approval?
     9        A.     For every credit application
    10    submitted to a Credit Committee there
    11    would be a written credit decision
    12    linked to that particular credit
    13    application.
```

Pg: 260 Ln: 14 - Pg: 261 Ln: 9

**Annotation:**

```
260:14        Q.     And going back for a moment to
    15    the Service Agreement --
    16        A.     Yes.
    17        Q.     -- paragraph 2, the paragraph
    18    that begins "KBC will accept and
    19    registrate all incoming funds,
    20    etcetera", would a payment by a third
    21    party for diamonds sold by Lazare be an
    22    example of incoming funds under this
    23    paragraph?
    24        A.     If Lazare sold -- sorry. Could
    25    you ask the question --
261: 1        Q.     Would a payment by a third party
     2    for diamonds sold by Lazare be an
     3    example of incoming funds under this
     4    paragraph 2 of the Services Agreement?
     5        A.     The positive funds from any
     6    transaction that Lazare had with its
     7    counterpart that it directed that
     8    counterpart to deposit funds into the
     9    DDA account, yes.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 264 Ln: 5 - Pg: 265 Ln: 11**

**Annotation:**

```
264:  5          Q.     Well, in this particular case
      6     I'm directing your attention to
      7     paragraph 10 of your Declaration, in
      8     which you are describing the manner in
      9     which KBC New York effectuated
     10     payments --
     11          A.     Okay.
     12          Q.     -- as per the Services
     13     Agreement, payments requested by
     14     Lazare.
     15          A.     Okay. So if we received a
     16     payment order the first thing we check
     17     is to whether or not there were funds
     18     in the account. If there was not
     19     sufficient funds in the account to
     20     cover the payment order, then KBC New
     21     York would look at the credit limit
     22     under the overdraft account with ADB.
     23     If there was availability under that
     24     overdraft account, then KBC could
     25     either --  would on an intraday basis
265:  1     or -- we could have debited ADB's
      2     account right then and there or more
      3     often than not for administrative
      4     convenience purposes we would fund --
      5     KBC New York would fund the payment
      6     order and then at the end of the day we
      7     would reconcile and do a final
      8     settlement and withdraw the funds out
      9     of the ADB account to cover KBC New
     10     York so that the credit risk always
     11     remained with ADB.
```

**Pg: 271 Ln: 19 - Pg: 272 Ln: 9**

**Annotation:**

```
271:19          Q.     Let me see if I understand your
     20     testimony correctly.
     21              We know that KBC New York
     22     initially funded Lazare's payment
     23     request, correct?
     24          A.     As long as there was
     25     availability under the overdraft
272:  1     account, as long as there was dollars
      2     in ADB's pooling account.
      3              At times KBC New York would use
      4     its funds on an intraday basis to cover
      5     any payment orders, and that at the end
      6     of day KBC New York would do one final
      7     reconciliation and settlement and ADB
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 271 Ln: 19 - Pg: 272 Ln: 9** continued...

**Annotation:**

```
272: 8      would pay KBC New York to make KBC New
      9      York whole.
```

**Pg: 272 Ln: 22 - Pg: 273 Ln: 11**

**Annotation:**

```
272:22      Q.    Isn't it also true that KBC
     23      funded those requests even when there
     24      weren't sufficient funds in the ADB
     25      pooling account to cover the request?
273: 1      Isn't that the point of this language
      2      about overnight placements on money
      3      market interest rates?
      4      A.    If there was insufficient funds
      5      in the ADB pooling account, KBC New
      6      York had an overdraft or a credit line
      7      for ADB that we could cover the
      8      shortage of funds. It didn't
      9      necessarily have to be Lazare. It
     10      related to any of ADB's transactions,
     11      U.S. dollar transactions.
```

**Pg: 275 Ln: 11 - Pg: 280 Ln: 7**

**Annotation:**

```
275:11      Q.    Okay. Would you look -- turn to
     12      Exhibit 8 in your binder, please?
     13      A.    Sure.
     14      Q.    Tell me whether you can identify
     15      this document?
     16      A.    It's a -- it's a memo written by
     17      Maiike Maeckelbergh.
     18      Q.    And who are Greg, Barbara and
     19      Donna referred to in this document?
     20      A.    Greg is Greg Boston, who is the
     21      head of cash management/payments;
     22      Barbara worked in the back office and
     23      so did Bob Quintin, they might have
     24      worked for Greg Boston.  I'm not too
     25      sure who Donna is.
276: 1      Q.    And directing your attention to
      2      the first sentence, do you see the
      3      reference to ICM, "Kindly note that ICM
      4      has made a new account operational"?
      5      A.    Yes.
      6      Q.    What is ICM?
      7      A.    It stands for International Cash
      8      Management.
      9      Q.    And what is that?
     10      A.    That is the unit that handled
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

Pg: 275 Ln: 11 - Pg: 280 Ln: 7 continued...

**Annotation:**

```
276:11      DDA accounts.
    12      Q.    The unit at KBC New York?
    13      A.    The unit at KBC New York.
    14      Q.    And why was Maaike notifying
    15      Greg, Barbara and Donna that ICM had
    16      made Lazare's bank accounts at KBC New
    17      York operational?
    18      A.    Because they would have needed
    19      to inform the back office people to put
    20      a limit on the DDA account.
    21      Q.    And does the number from the
    22      second line from the top, 24079801, is
    23      that the account number assigned by KBC
    24      New York to Lazare's bank account?
    25      A.    Yes.
277: 1      Q.    And directing your attention to
     2      the very last sentence that reads
     3      "Payments to accounts at ADB are done
     4      by book transfer to ADB's account
     5      11743901", is that a reference to ADB's
     6      pooling account at KBC New York?
     7      A.    I believe so.
     8      Q.    Can you explain what that last
     9      sentence means?
    10      A.    KBC New York did not deal in
    11      physical cash, so movement of funds,
    12      transfer of funds, was done by book
    13      entries. Another word for book entry
    14      would be a book transfer.
    15      Q.    Is that a correspondent bank
    16      function?
    17            MR. FORESTA:  Objection.
    18      A.    It's a function for any bank
    19      account, whether it's correspondent or
    20      DDA.
    21      Q.    If Lazare Kaplan Belgium, which
    22      did not have a KBC New York bank
    23      account, requested a U.S. dollar
    24      transfer from ADB, was that transfer
    25      initially funded by KBC New York?
278: 1      A.    No.
     2      Q.    Who funded it?
     3      A.    ADB.
     4      Q.    ADB funded a U.S. dollar
     5      transfer?
     6      A.    ADB had a U.S. dollar account
     7      with KBC New York with U.S. dollars in
     8      it.
     9      Q.    Did ADB then fund that request
    10      by and through its New York bank
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

Pg: 275 Ln: 11 - Pg: 280 Ln: 7 continued...

**Annotation:**

```
278:11        account at KBC New York?
    12              MR. FORESTA:  Objection. You can
    13        answer.
    14        A.     KBC New York would have been the
    15        intermediary bank.  So ADB, as the
    16        originating bank, would have sent wire
    17        instructions naming KBC New York as
    18        intermediary bank and then would name
    19        who the beneficiary bank.  And so KBC
    20        just moved U.S. dollar funds from ADB's
    21        account to the beneficiary bank's
    22        account.
    23        Q.     And would the same be true of
    24        other diamond customers of ADB who did
    25        not have a bank account at KBC New
279: 1        York, would KBC New York reconcile at
     2        the end of the day with ADB transfers
     3        made using ADB's pooling account in New
     4        York?
     5        A.     Assuming that ADB transmitted
     6        the wire transfer through KBC New York
     7        and not through another U.S. Bank.
     8        Q.     And similarly or
     9        correspondingly, if a customer of ADB
    10        received a deposit in U.S. dollars from
    11        a third party and that customer did not
    12        have a KBC New York bank account, was
    13        the transaction processed through the
    14        ADB pooling account at KBC New York?
    15        A.     Not necessarily.
    16        Q.     Could it have been?
    17        A.     It could have been.
    18        Q.     Under what circumstances would
    19        it not have been processed through the
    20        ADB pooling account at KBC New York?
    21        A.     ADB would have had to give
    22        wiring instructions.  If it named KBC
    23        New York as the intermediary bank, then
    24        the funds would have flowed through KBC
    25        New York.
280: 1        Q.     To the extent that funds
     2        generated by transactions of ADB
     3        customers flowed through New York, were
     4        they all processed through the ADB
     5        pooling account at KBC New York?
     6        A.     Any -- ADB only had the one
     7        account.  So, yes.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

### Pg: 287 Ln: 9 - 22

**Annotation:**

```
287: 9        Q.     You don't consider the initial
     10    funding by KBC to be an extension of
     11    credit to Lazare, Ms. Grimmig?
     12       A.    No.
     13       Q.     From Lazare's perspective who
     14    was funding its drawdown requests under
     15    the credit facility?
     16          MR. FORESTA:  Objection.
     17       A.    ADB.
     18       Q.     Really? Even though KBC advanced
     19    the money?
     20       A.     KBC temporarily advanced funds
     21    on an intraday basis, but at the end of
     22    each day it was ADB's funds.
```

### Pg: 306 Ln: 13 - Pg: 309 Ln: 19

**Annotation:**

```
306:13        Q.     And if a customer of Lazare,
     14    such as an Erez Daleyot affiliated
     15    company, DD or KT, for example,
     16    transferred money to New York, to and
     17    through the ADB pooling account, would
     18    KBC New York maintain records of that
     19    transaction?
     20          MR. FORESTA:  Objection. You can
     21    answer.
     22       A.     We would have retained the SWIFT
     23    payment message.
     24       Q.    I'm sorry?
     25       A.     We would have retained the SWIFT
307: 1    payment message.
      2       Q.     You'd also have a record of the
      3    transaction in the pooling account
      4    statements, wouldn't you?
      5       A.     Yes. There would be an entry.
      6    Can I step back?
      7       Q.     Sorry?
      8       A.     On that question who was
      9    originating the funds transfer and from
     10    what account?
     11       Q.     Let's use a specific example, if
     12    we could. Can you turn to I think it's
     13    Exhibit 58 in your big binder?
     14          So directing your attention to
     15    Plaintiff's Exhibit 58, is this an
     16    account statement, albeit redacted for
     17    ADB's pooling account at KBC New York,
     18    Ms. Grimmig?
     19       A.     Yes.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 306 Ln: 13 - Pg: 309 Ln: 19** continued...

**Annotation:**

| | |
|---|---|
| 307:20 | Q.     And does this account statement |
| 21 | indicate to you that two transactions |
| 22 | of the companies known as KT Collection |
| 23 | and DD Manufacturing went through the |
| 24 | ADB pooling account at KBC New York? |
| 25 | A.     Yes. |
| 308: 1 | Q.     And does the fact that both |
| 2 | transactions went through the ADB |
| 3 | pooling account mean that DD and KT had |
| 4 | a bank account at KBC New York? |
| 5 | A.     No. They did not. |
| 6 | Q.     Does it mean that their |
| 7 | transactions were executed ADB's |
| 8 | pooling account at KBC New York? |
| 9 | A.     They were executed through ADB's |
| 10 | pooling account as a non-customer. |
| 11 | Q.     And this pooling account record |
| 12 | is a document maintained by KBC New |
| 13 | York in New York? |
| 14 | A.     Yes. |
| 15 | Q.     And you consider that to be a |
| 16 | "routine" -- |
| 17 | MR. FORESTA:  -- clearance |
| 18 | procedure. |
| 19 | MR. SULLIVAN:  -- clearance |
| 20 | procedure. Thank you so much, counsel. |
| 21 | MR. FORESTA:  Not that I'm in a |
| 22 | rush or anything. |
| 23 | A.     Yes. It's standard practice for |
| 24 | every account to issue an account |
| 25 | statement on a -- I believe this was a |
| 309: 1 | monthly basis. |
| 2 | Q.     So this is an example of the ADB |
| 3 | pooling account being used for U.S. |
| 4 | dollar-denominated transactions of |
| 5 | non-New York-based ADB clients, |
| 6 | correct? |
| 7 | A.     This is reflecting -- all I can |
| 8 | tell you is it's reflecting a U.S. |
| 9 | dollar transaction involving |
| 10 | non-customers of KBC New York. |
| 11 | Q.     Are you familiar with the |
| 12 | entities known as DD Manufacturing and |
| 13 | KT Collection? |
| 14 | A.     I believe their names were |
| 15 | mentioned in the Complaint letter |
| 16 | Lazare filed with the New York State |
| 17 | Department of Financial Services and |
| 18 | are in the legal Complaint for this |
| 19 | litigation. |

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

---

**Pg: 319 Ln: 12 - Pg: 321 Ln: 11**

**Annotation:**

```
319:12        Q.      Turning to paragraph 4 of your
   13     Declaration --
   14        A.      Yes.
   15        Q.      -- last sentence, "Antwerp Bank
   16     not KBC had the sole authority to
   17     approve overdrafts on the Lazare
   18     Antwerp Bank account or to extend or
   19     terminate the credit facility Antwerp
   20     extended to Lazare."
   21        A.      Yes.
   22        Q.      What document gives ADB the sole
   23     authority that you refer to in this
   24     language I quoted?
   25        A.      As the credit provider, as the
320: 1     owner of the overdraft account, they
    2     had authority with respect to
    3     overdrafts and they were the party that
    4     informed us of credit limits with
    5     respect to that overdraft account.
    6        Q.      Didn't KBC also have authority,
    7     as you've testified earlier today, with
    8     respect to the credit facility Lazare
    9     had with ADB?
   10        A.      KBC participated in the credit
   11     approval process as per the IKB credit
   12     delegations.
   13        Q.      And didn't the IKB credit
   14     delegation create certain
   15     responsibilities for KBC with respect
   16     to the Lazare credit facility,
   17     including with respect to ADB's ability
   18     to extend or terminate the credit
   19     facility?
   20        A.      It -- ADB had credit -- certain
   21     local credit delegation authority that
   22     it can make certain decisions. Others
   23     had to be escalated up to a KBC Credit
   24     Committee, depending upon different
   25     risk factors, including probabilities
321: 1     of default, loss given default and the
    2     -- the aggregate risk -- group risk
    3     exposure to a customer.
    4        Q.      Isn't it true that ADB could not
    5     have entered into a $45 million credit
    6     agreement with Lazare without the prior
    7     approval and consent of KBC?
    8        A.      I would have to look at the IKB
    9     credit delegations to note the amount
   10     of their local delegation authority
   11     versus the need to escalate.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

### Pg: 321 Ln: 12 - 22

**Annotation:**

```
321:12        Q.     Are you testifying today as a
   13    30(b)(6) witness on behalf of KBC or
   14    KBC New York?
   15         A.     On behalf of KBC -- KBC Bank NV,
   16    which includes its New York branch.
   17         Q.     Did you go over each of the
   18    topics set forth in the Amended Notice
   19    of Deposition in preparation for your
   20    testimony today?
   21         A.     I read the topics, yes. I read
   22    the description of topics.
```

### Pg: 321 Ln: 23 - Pg: 322 Ln: 6

**Annotation:**

```
321:23        Q.     Do you know what governing
   24    bodies at KBC were involved or
   25    consulted in connection with the
322: 1    decision to terminate the Lazare credit
    2    facility?
    3         A.     It is my understanding that that
    4    credit application prepared by ADB was
    5    approved at the local level and then
    6    submitted to the ECC at KBC Belgium.
```

### Pg: 345 Ln: 19 - Pg: 346 Ln: 25

**Annotation:**

```
345:19        Q.     But my question pertains to your
   20    preparation for your testimony today,
   21    2016.
   22               Did you speak with anybody at
   23    KBC Group Legal or KBC in order to
   24    prepare yourself to testify today as a
   25    30(b)(6) witness on behalf of KBC?
346: 1         A.    Yes.
    2         Q.     With whom did you speak?
    3         A.     Walter Haeck.
    4         Q.     So when did you speak with
    5    Mr. Haeck?
    6         A.     I've known about this deposition
    7    was going to take place for several
    8    months, so from the time I was notified
    9    that I would be the witness, I have
   10    reached out to various parties and I
   11    have read various documents in order to
   12    prepare for this deposition.
   13         Q.     So, you've had conversations in
   14    2015 and even perhaps 2016 in order to
   15    prepare yourself for today's testimony?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Depo Designation

**Pg: 345 Ln: 19 - Pg: 346 Ln: 25 continued...**

**Annotation:**

```
346:16      A.    Yes.
    17      Q.    So when did the conversation
    18  with Mr. Haeck take place?
    19      A.    I've had conversations with
    20  Haeck over -- for the preparation of
    21  this deposition?
    22      Q.    Yes.
    23      A.    From the time I was notified
    24  that I was going to be a witness, which
    25  was several months ago.
```