# Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 6 Ln: 21 - 25**

**Annotation:**

```
6:21      Q.    Okay. Good morning, Ms. Grimmig.
  22      I'm Chris Sullivan and I'm with the law
  23      firm of Herrick Feinstein and we
  24      represent the Plaintiff in this case,
  25      Lazare Kaplan International.
```

**Pg: 7 Ln: 7 - 21**

**Annotation:**

```
7: 7      Q.    Okay.  And can you tell us where
   8      you live, what your current address is?
   9      A.    I live at 62 Smith Street,
  10      Lynbrook, New York, 11563.
  11      Q.    And how long have you lived
  12      there?
  13      A.    Approximately 15 years.
  14      Q.    What's your nationality?
  15      A.    American.
  16      Q.    So do I assume correctly that
  17      you speak and read English fluently?
  18      A.    Yes, I do.
  19      Q.    Do you -- and what other
  20      languages do you speak or read?
  21      A.    No others.
```

**Pg: 8 Ln: 18 - Pg: 9 Ln: 6**

**Annotation:**

```
8:18      Q.    I'm going to use a number of
  19      abbreviations for my questions. I'm
  20      going to -- for convenience sake, I'm
  21      going to refer to Lazare Kaplan
  22      International, Inc. as Lazare; to
  23      Lazare Kaplan Belgium as Lazare
  24      Belgium; to Antwerp Diamond Bank as
  25      ADB; to the New York office of ADB as
9: 1      ADB New York; to KBC Bank as KBC; and
   2      to the New York branch of KBC as KBC
   3      New York, unless you or I specify
   4      otherwise.
   5            Do you understand that?
   6      A.    Yes.
```

**Pg: 10 Ln: 8 - Pg: 11 Ln: 12**

**Annotation:**

```
10: 8      Q.    Okay. What is the highest level
    9      of formal education that you've
   10      completed?
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 10 Ln: 8 - Pg: 11 Ln: 12** continued...

**Annotation:**

```
10:11        A.    Law school.
   12        Q.    And where did you obtain your
   13   law degree?
   14        A.    Loyola University.
   15        Q.    And when did you do so?
   16        A.    I graduated, I believe, in 1986.
   17        Q.    And where did you complete your
   18   undergraduate studies?
   19        A.    Providence College.
   20        Q.    Are you a member of any bars?
   21        A.    Yeah. Yes. Yes.
   22        Q.    Which bars?
   23        A.    The New York bar.
   24        Q.    Okay. Do you have any
   25   specialized training or education in
11: 1   regard to diamonds or diamond
    2   companies?
    3        A.    No.
    4        Q.    Do you have any specialized
    5   training or education in regard to laws
    6   and regulations applicable to diamond
    7   transactions?
    8        A.    No.
    9        Q.    Do you have any specialized
   10   training or education in regard to
   11   correspondent bank accounts?
   12        A.    No.
```

**Pg: 12 Ln: 15 - Pg: 13 Ln: 7**

**Annotation:**

```
12:15        Q.    Now, you're currently employed
   16   by KBC. Is that correct?
   17        A.    I'm employed by KBC New York.
   18        Q.    KBC New York. So you're not
   19   employed by KBC as a Belgian institute,
   20   simply by the New York branch of KBC?
   21        A.    KBC New York is the one that
   22   cuts my paycheck.
   23        Q.    And have you ever been employed
   24   by KBC, itself?
   25        A.    My employment has always been
13: 1   through the KBC New York.
    2        Q.    When did you first start working
    3   at KBC New York?
    4        A.    1987.
    5        Q.    Okay. Did you do so right out of
    6   law school?
    7        A.    Yes.
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 17 Ln: 17 - 23**

**Annotation:**

```
17:17        Q.    And what is your current job
   18    title or position at KBC New York?
   19        A.    Managing Director.
   20        Q.    Are you also General Counsel?
   21        A.    I am head of the Legal
   22    Department and head of the Compliance
   23    Department.
```

**Pg: 70 Ln: 17 - Pg: 71 Ln: 25**

**Annotation:**

```
70:17            (Exhibit 136, Declaration of
   18    Diane Grimmig, was received and marked
   19    on this date for identification.)
   20            MS. GREDD:  I have a copy that
   21    doesn't have a marking.
   22            MR. SULLIVAN:  I stand corrected
   23    by Mr. D'Angelo and Ms. Gredd. Let's
   24    mark it.
   25        Q.    Do you have P-136 in front of
71: 1    you, Ms. Grimmig?
    2        A.    Yes.
    3        Q.    Is this the sworn Declaration
    4    that you submitted in this lawsuit?
    5        A.    Yes.
    6        Q.    Okay. Is that your signature on
    7    the last page of the Declaration, which
    8    I believe is page 8?
    9        A.    Yes.
   10        Q.    Okay. And above your signature
   11    you declared under penalty of perjury
   12    that the foregoing is true and correct.
   13    Do you see that?
   14        A.    Yes.
   15        Q.    And the Declaration is dated
   16    June 15, 2012. Correct?
   17        A.    Yes.
   18        Q.    As you sit here today, is there
   19    anything that you believe to be false
   20    or incorrect in your Declaration?
   21        A.    No.
   22        Q.    Who drafted this document?
   23        A.    I did.
   24        Q.    When did you do so?
   25        A.    At the time requested.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 74 Ln: 22 - Pg: 82 Ln: 20**

**Annotation:**

```
74:22            (Exhibit 146, letter dated
  23    September 9, 2013 from KBC New York's
  24    attorney to Judge Andrew Carter, was
  25    received and marked on this date for
75: 1    identification.)
   2        Q.    Plaintiff's Exhibit 146 is a
   3    letter dated September 9, 2013 from KBC
   4    New York's attorney to Judge Andrew
   5    Carter of the United States District
   6    Court.
   7            Do you have that in front of
   8    you, Ms. Grimmig?
   9        A.    Yes.
  10        Q.    Did you review this letter to
  11    the Court before it was filed?
  12        A.    Yes.
  13        Q.    Do you recall there being
  14    anything inaccurate or untrue in the
  15    letter?
  16        A.    No.
  17        Q.    Would you turn to page 7 of the
  18    letter? Do you see in the second
  19    paragraph, where it says "KBC has
  20    agreed to produce the Services
  21    Agreement that Ms. Grimmig referred to
  22    in her Declaration, which governed the
  23    terms under which KBC's New York branch
  24    provided banking services to Antwerp
  25    Bank's customers in New York?"
76: 1            Do you see those words in the
   2    second paragraph of the letter from
   3    KBC's counsel to the Court?
   4        A.    Yes.
   5        Q.    And you see the following
   6    sentence that reads "A copy of that
   7    agreement is attached hereto as Exhibit
   8    A?"
   9        A.    Yes.
  10        Q.    Do you agree with the statement
  11    in this letter that the Services
  12    Agreement annexed as an exhibit to the
  13    letter governed the terms under which
  14    KBC New York provided banking services
  15    to Antwerp's bank's customers in New
  16    York?
  17        A.    It governed the agreement
  18    between ADB and New York branch with
  19    respect to the services that KBC New
  20    York would furnish to ADB's customers
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 74 Ln: 22 - Pg: 82 Ln: 20** continued...

**Annotation:**

| | |
|---|---|
| 76:21 | that had overdraft accounts with ADB. |
| 22 | Q.    So do you agree with your |
| 23 | counsel's representation to the Court |
| 24 | that the Services Agreement that is |
| 25 | annexed as an exhibit to this letter |
| 77: 1 | governed the terms under which KBC New |
| 2 | York provided banking services to ADB's |
| 3 | customers in New York? |
| 4 |         MR. FORESTA:  Note my objection. |
| 5 | You can answer. |
| 6 | Q.    Is that a true statement by your |
| 7 | attorneys to the Court? |
| 8 | A.    It governed the handling -- |
| 9 | ADB's agreement with ADB to open a DDA |
| 10 | account for ADB's customers in New |
| 11 | York. |
| 12 | Q.    Is there a difference between |
| 13 | what you just said and what your |
| 14 | attorney said?  Is that why you are |
| 15 | rephrasing it? |
| 16 | A.    It's all interrelated. |
| 17 | Q.    Is it the same thing? |
| 18 | A.    It's the same thing, yes. |
| 19 | Q.    It is the same thing. And does |
| 20 | the Services Agreement, the copy of the |
| 21 | Services Agreement that is attached as |
| 22 | Exhibit A to KBC's attorney's letter, |
| 23 | accurately reflect the manner in which |
| 24 | KBC New York provided such services to |
| 25 | ADB's customers in New York, like |
| 78: 1 | Lazare? |
| 2 | A.    It set forth how KBC New York |
| 3 | would -- would handle ADB's customer's |
| 4 | account, DDA account with KBC. |
| 5 | Q.    So the Services Agreement |
| 6 | accurately sets forth the manner in |
| 7 | which accounts would be handled? There |
| 8 | is nothing in the Services Agreement |
| 9 | that you disagree with or think is |
| 10 | untrue? |
| 11 | A.    No. |
| 12 | Q.    Good. So your familiar with the |
| 13 | Services Agreement? |
| 14 | A.    Yes, I am. |
| 15 | Q.    And Lazare was a customer of ADB |
| 16 | in New York, correct? |
| 17 | A.    Yes. |
| 18 | Q.    A diamond company customer, |
| 19 | correct? |

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 74 Ln: 22 - Pg: 82 Ln: 20** continued...

**Annotation:**

```
78:20      A.    Yes.
   21      Q.    And did the Services Agreement,
   22  therefore, govern the banking services
   23  that KBC New York provided to Lazare?
   24      A.    No.
   25      Q.    Why not?
79: 1      A.    There was a separate account
    2  agreement between Lazare and KBC New
    3  York that set forth the terms and
    4  conditions of Lazare's DDA account with
    5  KBC New York.
    6      Q.    Did that account agreement
    7  supersede anything in the Services
    8  Agreement?
    9      MR. FORESTA:  Note my objection.
   10  You can answer.
   11      A.    No. It's -- there are three
   12  parties to this transaction, to this
   13  relationship. So there is an agreement
   14  between ADB and KBC New York, and there
   15  is an agreement between ADB and Lazare
   16  and there is also an agreement between
   17  Lazare and KBC New York and there were
   18  multiple documents and various
   19  documents that reflected the
   20  relationship among the parties.
   21      Q.    Perhaps we need to clarify the
   22  question.
   23      A.    Okay.
   24      Q.    I just asked you whether the
   25  Services Agreement governed the terms
80: 1  under which KBC New York provided
    2  banking services to ADB's customers in
    3  New York.
    4      A.    It sets forth the terms and
    5  conditions -- it sets forth KBC's New
    6  York agreement to provide -- it's an
    7  agreement between KBC New York and ADB
    8  that sets forth the terms and
    9  conditions under which KBC New York
   10  would furnish a DDA account to Lazare.
   11      Q.    It spells out the operational
   12  banking services to be provided by KBC
   13  New York to ADB's customers, correct?
   14      MR. FORESTA:  Note my objection.
   15      Q.    That's what it says, Ms.
   16  Grimmig. Is it correct?
   17      A.    It sets forth the terms and
   18  conditions under which KBC New York
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 74 Ln: 22 - Pg: 82 Ln: 20** continued...

**Annotation:**

```
80:19    agrees to provide a DDA account to
   20    customers of ADB in New York.
   21    Q.    Is there anything in the
   22    Services Agreement that you believe to
   23    be incorrect or untrue?
   24    A.    No.
   25    Q.    Did KBC New York provide the
81: 1    banking services spelled out in the
    2    Services Agreement to ADB's customers
    3    in New York?
    4    MR. FORESTA:  Objection.
    5    Q.    You can answer.
    6    MR. FORESTA:  She already has
    7    multiple times.
    8    A.    Yes.
    9    MR. SULLIVAN:  Counsel, no
   10    colloquy on the record.
   11    A.    Yes.
   12    Q.    The answer is yes. Did you have
   13    any role, did you play any role in the
   14    development or preparation of the
   15    Services Agreement?
   16    A.    The Legal Department would have
   17    played a role.
   18    Q.    Who at the Legal Department
   19    played a role?
   20    A.    I believe it was the General
   21    Counsel at the time.
   22    Q.    Who is that?
   23    A.    Michael Curran.
   24    Q.    Do you know who drafted the
   25    Services Agreement?
82: 1    A.    No.
    2    Q.    Did you read the deposition
    3    testimony of Philippe Loral in this
    4    case?
    5    A.    I read it at the time, right
    6    after he gave his deposition.
    7    Q.    Do you recall Mr. Loral
    8    testifying that he drafted the Services
    9    Agreement?
   10    A.    I don't recall.
   11    Q.    Is it correct that the Services
   12    Agreement that's referred or referenced
   13    by KBC's counsel letter and attached as
   14    Exhibit A to the letter is the same
   15    Services Agreement you referred to in
   16    your Declaration?
   17    A.    Yes.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 74 Ln: 22 - Pg: 82 Ln: 20** continued...

**Annotation:**

```
82:18        Q.    We're not talking about a
   19    different Services Agreement?
   20        A.    No.
```

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25**

**Annotation:**

```
84: 4        Q.    Did you review the Services
    5    Agreement before signing your
    6    Declaration?
    7        A.    Yes.
    8        Q.    Did you rely on the Services
    9    Agreement in preparing your
   10    Declaration?
   11        A.    Yes.
   12        Q.    In fact, your Declaration was
   13    addressed, in part, to the banking
   14    services that KBC New York provided to
   15    Lazare pursuant to the Services
   16    Agreement, correct?
   17        MR. FORESTA:  Note my objection.
   18    You can answer.
   19        A.    The services that KBC provided
   20    to Lazare were governed by the account
   21    agreement between Lazare and KBC New
   22    York.
   23        Q.    But you've told us that the
   24    services that are spelled out in the
   25    Services Agreement, the banking
85: 1    services, were also provided by KBC New
    2    York to Lazare, correct?
    3        A.    They were the beneficiary, yes.
    4        Q.    So the answer is yes?
    5        A.    Yes.
    6        Q.    Would you take a look at your
    7    Declaration again?
    8        A.    Yes.
    9        Q.    Can you tell me where the words
   10    "Services Agreement" or "services level
   11    agreement" appear in your Declaration,
   12    Ms. Grimmig?
   13        A.    I don't think it's specifically
   14    referenced, but its contents are
   15    discussed in my Declaration.
   16        Q.    Okay. So let's start with
   17    specific reference. There is no
   18    reference in the Services Agreement to
   19    the Service Agreement in your sworn
   20    Declaration, is there?
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
85:21      A.    Correct.
   22      Q.    So your counsel's statement to
   23   the Court is incorrect in that regard,
   24   correct?
   25      A.    Technically, yes.
86: 1      Q.    Technically, yes. Okay. And is
    2   it your testimony that you discussed,
    3   in your sworn Declaration, the contents
    4   of the Service Agreement? Is that your
    5   testimony?
    6      A.    There are concepts, there are
    7   terms in the Service Agreement that are
    8   referenced in my Declaration.
    9      Q.    Well, is there a disclosure of
   10   any kind in your sworn Declaration that
   11   KBC New York and ADB had a formal
   12   written agreement pertaining to the
   13   banking services to be provided by KBC
   14   New York to ADB's customers in New
   15   York?  Is there a disclosure of any
   16   kind that there was a formal written
   17   agreement, Ms. Grimmig?
   18         Take a look at your Declaration
   19   if you like.
   20         (Whereupon, the Deponent reviews
   21   the document.)
   22      A.    There is not a specific
   23   reference or naming of the servicing
   24   agreement, but the concepts in the
   25   servicing agreement are captured in my
87: 1   Declaration.
    2      Q.    Well, we'll get to the capture
    3   part of your testimony, but I'm asking
    4   you a different question.
    5      A.    Sorry.
    6      Q.    I'd like an answer to my
    7   question.
    8      A.    Sorry.
    9      Q.    My question is, did you tell
   10   Judge Carter in your Declaration that
   11   KBC New York and ADB had entered into a
   12   formal written agreement regarding the
   13   operational banking services to be
   14   provided by KBC New York to ADB's
   15   customers in New York?
   16         We know you didn't mention the
   17   Service Agreement. Did you tell the
   18   Court that there existed a formal
   19   written agreement?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
87:20      A.    I did not.
   21      Q.    You did not.  So let me see if I
   22   understand correctly, you didn't
   23   disclose to the Court that -- the
   24   existence of the Service Agreement.
   25   You didn't disclose to the Court that
88: 1   KBC New York and ADB had a formal
    2   written agreement with respect to the
    3   operational services to be provided by
    4   KBC New York to ADB's customers. You
    5   didn't produce or submit a copy of the
    6   Services Agreement to the Court. Is
    7   that all correct?
    8      A.    I believe we produced a copy of
    9   the servicing agreement as part of the
   10   production of documents.
   11      Q.    In discovery?
   12      A.    Yes.
   13      Q.    After the motions to the Court
   14   were decided?
   15      A.    I don't know the timing of the
   16   discovery versus motions.
   17      Q.    Take a look at the date of your
   18   attorney's letter to the Court
   19   enclosing the agreement, September 9,
   20   2013.
   21         Do you recall when the Motion to
   22   Dismiss, that your bank made to Judge
   23   Carter, was decided both by the
   24   District Court in the Second Circuit?
   25      A.    I don't recall.
89: 1      Q.    I'll represent to you that it
    2   was before September, 2013, Ms.
    3   Grimmig.
    4         So is there anything incorrect
    5   about the facts that I just asked you;
    6   one, you didn't tell Judge Carter about
    7   the Services Agreement, about the
    8   existence of the Service Agreement;
    9   two, you didn't submit a copy of the
   10   Services Agreement to the Court; three,
   11   you didn't tell Judge Carter that KBC
   12   New York and ADB had entered into a
   13   formal written agreement regarding the
   14   operational banking services to be
   15   provided by KBC New York to ADB's
   16   customers in New York? Anything
   17   incorrect about those three facts?
   18      A.    All I can tell you is we
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
89:19       produced the servicing agreement as
   20       part of the discovery. I did not
   21       explicitly reference the Service
   22       Agreement in my Declaration, but I
   23       incorporated its terms in my
   24       Declaration.
   25       Q.    Did you quote from the Services
90: 1       Agreement in your Declaration anywhere?
    2       A.    No, but I paraphrased.
    3       Q.    You paraphrased?
    4       A.    Yes.
    5       Q.    So who made the decision, Ms.
    6       Grimmig, not to tell Judge Carter about
    7       the existence of the Service Agreement,
    8       not to give him a copy of the Service
    9       Agreement, not to quote from the
   10       Service Agreement, not even to tell him
   11       there was a formal written agreement
   12       that might apply to the banking
   13       services provided by KBC New York?  Who
   14       made that decision, you?
   15            MR. FORESTA:  Objection to the
   16       question.
   17       Q.    You can answer.
   18       A.    No.
   19       Q.    Who made the decision?
   20       A.    I don't know.
   21       Q.    Did you give any thought
   22       whatsoever to submitting the Service
   23       Agreement that you summarized
   24       submitting it to the Court in
   25       connection with your attorney's motion?
91: 1       A.    I -- as part of the document
    2       production, I produced the Service
    3       Agreement.
    4       Q.    After the motion was decided by
    5       the District Court in the Second
    6       Circuit Court of Appeals, why did you
    7       wait until then?
    8            MR. FORESTA:  Objection.
    9       Q.    Why didn't you do so prior?
   10       A.    I produced it when I was
   11       required to provide it.
   12       Q.    Is it your sworn testimony, Ms.
   13       Grimmig, that you accurately and
   14       honestly summarized the provisions of
   15       the Services Agreement in your sworn
   16       Declaration?
   17       A.    Yes.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

| | |
|---|---|
| 91:18 | Q.    That's your sworn testimony? |
| 19 | A.    Yes. |
| 20 | Q.    And you weren't trying to |
| 21 | mislead or deceive the Court by not |
| 22 | disclosing or producing the Services |
| 23 | Agreement, correct? |
| 24 | A.    Not at all. |
| 25 | Q.    You understood at the time you |
| 92: 1 | signed your Declaration that KBC New |
| 2 | York was claiming that it had nothing |
| 3 | to do with the transactions in the |
| 4 | Complaint, correct? |
| 5 | MR. FORESTA:  Objection. |
| 6 | A.    I stated that there was no |
| 7 | allegation or claims asserted against |
| 8 | KBC New York. |
| 9 | Q.    And did you understand that KBC |
| 10 | New York was arguing to Judge Carter |
| 11 | that this case should be litigated in |
| 12 | Belgium instead of New York because it |
| 13 | has no connection to Lazare's banking |
| 14 | relationship at KBC New York? Did you |
| 15 | understand that at the time you signed |
| 16 | your Declaration? |
| 17 | A.    I understood that the |
| 18 | allegations and the disputes related to |
| 19 | transactions between Lazare and ADB. |
| 20 | Q.    Did you understand that KBC New |
| 21 | York was arguing that it played a |
| 22 | merely ministerial role in connection |
| 23 | with the credit facility and that the |
| 24 | case properly belongs in Belgium and |
| 25 | New York, that it's centered in Belgium |
| 93: 1 | and not New York? Did you understand |
| 2 | that? |
| 3 | A.    Yes. |
| 4 | Q.    And so you summarized in your |
| 5 | words the concepts in the Services |
| 6 | Agreement instead of producing the |
| 7 | Services Agreement? |
| 8 | MR. FORESTA:  Objection. |
| 9 | A.    Correct. |
| 10 | Q.    And you weren't trying to |
| 11 | mislead or deceive Judge Carter in any |
| 12 | way, correct? |
| 13 | A.    Correct. |
| 14 | Q.    Okay.  Is there anything in the |
| 15 | Services Agreement that contradicts the |
| 16 | factual assertions in your Declaration, |

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
93:17        Ms. Grimmig?
   18        A.    No.
   19        Q.    Are you sure about that?
   20        A.    I'm sure.
   21        Q.    Do you know whether Veerle
   22    Snyers disclosed the existence of the
   23    Services Agreement or produced a copy
   24    in her sworn Declarations to the Court?
   25        A.    I don't know.
94: 1        Q.    You reviewed her sworn
    2    Declarations prior to signing your own,
    3    did you not?
    4        A.    I reviewed them. I don't know
    5    whether I reviewed them -- I reviewed
    6    them at the time that she had signed
    7    and delivered them. I don't know if
    8    that was before or after mine.
    9        Q.    You actually cite to her
   10    Declaration in your own Declaration,
   11    Ms. Grimmig?
   12        A.    Okay.
   13        Q.    Does that mean to you that you
   14    looked at the Declaration --
   15        A.    Yes.
   16        Q.    -- before you signed it?
   17             You have to let me finish,
   18    please. The answer is yes?
   19        A.    Yes.
   20        Q.    How about Walter Haeck, he
   21    submitted sworn Declaration to the
   22    Court, didn't he?
   23        A.    Yes.
   24        Q.    Did he produce a copy of the
   25    Services Agreement?
95: 1        A.    I don't recall.
    2        Q.    Did he quote from the Services
    3    Agreement in his Declaration?
    4        A.    I don't recall.
    5        Q.    Are you aware that you,
    6    Ms. Snyers, and Mr. Haeck all submitted
    7    sworn Declarations to the Federal
    8    District Court in this case regarding
    9    the banking services provided by KBC
   10    New York to Lazare and not one of you
   11    produced the Services Agreement or
   12    quoted from it? Are you aware of that?
   13             MR. FORESTA:  Objection. You can
   14    answer.
   15        A.    Yes.
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
95:16        Q.      Not one of you produced the
   17    Services Agreement, even though it
   18    governs, by your testimony, Ms.
   19    Grimmig, its terms under which KBC New
   20    York provided banking services to
   21    Lazare? Do you understand that?
   22            MR. FORESTA:  Objection.
   23        A.    It's -- the servicing agreement
   24    is an agreement between KBC New York
   25    and ADB. Lazare is not a party to the
96: 1    Service Agreement.
    2        Q.     Lazare is a beneficiary of the
    3    Services Agreement, according to you?
    4    Is that correct?
    5        A.     The relationship between KBC New
    6    York and Lazare is governed by an
    7    account agreement, not the Service
    8    Level Agreement.
    9        Q.    Is that why you made the
   10    decision not to tell Judge Carter about
   11    the Services Agreement?
   12            MR. FORESTA:  Objection.
   13        Q.    Did you think it was irrelevant
   14    to the issues before the Court?
   15        A.    No. Again, we -- we -- I
   16    produced the Service Level Agreement as
   17    required.
   18        Q.    You produced the agreement in
   19    September, 2013 in discovery after the
   20    Second Circuit reversed and remanded to
   21    the District Court for further
   22    proceedings. Is that correct?
   23        A.    According to the timeline you've
   24    given me, yes.
   25        Q.    Are you aware that the Service
97: 1    Agreement requires ADB to open a
    2    pooling account at ADB -- at KBC New
    3    York, rather? Sorry.
    4        A.    The account was already opened.
    5        Q.    When was the pooling account
    6    opened at KBC New York?
    7        A.    It was opened at -- I don't know
    8    the time but it's prior to the relevant
    9    time of this case.
   10        Q.    Is it prior to the date of the
   11    Services Agreement, October, 1999?
   12        A.    I believe so.
   13        Q.    Okay.
   14            MR. FORESTA:  Chris, we've been
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
97:15      going about an hour and a half.  Would
   16      this be a good time for a break?
   17           MR. SULLIVAN:  Let's take five
   18      minutes.
   19        Q.   So I ask you again, are you
   20      aware that the Services Agreement
   21      expressly requires ADB to open a
   22      pooling account at KBC New York?
   23        A.   Yes, but the account was already
   24      opened.
   25        Q.   But you're aware that the
98: 1      agreement --
    2        A.   Yes.
    3        Q.   -- contains that express
    4      provision, correct?
    5        A.   Correct.
    6        Q.   And are you aware that the
    7      Services Agreement described how the
    8      pooling account operates in connection
    9      with bank accounts opened by New York
   10      diamond customers such as Lazare?
   11           MR. FORESTA:  Objection. Go
   12      ahead. You can answer.
   13        A.   Yes.
   14        Q.   Okay. You didn't mention the
   15      pooling account in your Declaration,
   16      did you, Ms. Grimmig?
   17        A.   No.
   18        Q.   Veerle Snyers didn't mention the
   19      pooling account in her Declarations,
   20      did she?
   21        A.   I don't recall.
   22        Q.   Walter Haeck didn't mention the
   23      pooling account in his Declaration, did
   24      he?
   25        A.   I don't recall.
99: 1        Q.   You do recall that you declared
    2      under penalty of perjury that the
    3      statements in your Declaration are true
    4      and correct, you do recall that?
    5        A.   Yes.
    6        Q.   You are a lawyer with a license
    7      to practice law in New York, are you
    8      not?
    9        A.   Yes.
   10        Q.   And you understand what it means
   11      to make a Declaration under oath?
   12        A.   Yes.
   13        Q.   Is there a reason why you didn't
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 84 Ln: 4 - Pg: 100 Ln: 25** continued...

**Annotation:**

```
99:14      tell Judge Carter about the ADB pooling
   15      account at KBC New York?
   16      A.    I think my Declaration mentioned
   17      that there was a -- ADB had an account
   18      with us.
   19      Q.    Does it contain any reference to
   20      the pooling account?
   21      A.    In KBC New York we do not call
   22      it a pooling account. It's just an ADB
   23      U.S. dollar account.
   24      Q.    Can you point me to the
   25      reference in your Declaration that
100: 1     describes the pooling account?
    2          (Whereupon, the Deponent reviews
    3      the document.)
    4      A.    It mentions the Lazare Antwerp
    5      bank account.
    6      Q.    But I'm asking you about the
    7      pooling account, or an account under
    8      any different terminology that you care
    9      to employ, is there a reference in your
   10      Declaration to the pooling account
   11      under any name, the ADB pooling account
   12      at KBC New York?
   13      A.    No.
   14      Q.    Were you trying to deceive the
   15      Court into granting KBC's motion by not
   16      informing Judge Carter about the ADB
   17      pooling account?
   18      A.    Not at all.
   19      Q.    Do you know why Veerle Snyers
   20      and Walter Haeck didn't tell the Court
   21      about the pooling account?
   22      A.    No.
   23      Q.    Did anyone tell you not to
   24      reference the pooling account?
   25      A.    Not at all.
```

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24**

**Annotation:**

```
101: 9     Q.    So would you turn to the
   10      Services Agreement that is next to your
   11      attorney's letter as an exhibit and
   12      it's also separate in front of you, I
   13      believe?
   14          And let's begin with -- you
   15      testified, I believe, that the pooling
   16      account, the ADB pooling account at KBC
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24 continued...**

**Annotation:**

| | |
|---|---|
| 101:17 | New York, was opened prior to the date |
| 18 | of the Services Agreement which is |
| 19 | October 15, 1999. Is that correct? |
| 20 | A.    Yes. |
| 21 | Q.    So you were aware at the time |
| 22 | you signed your Declaration that ADB |
| 23 | had opened a pooling account at the New |
| 24 | York branch of KBC, is that correct? |
| 25 | A.    Yes. |
| 102: 1 | Q.    And looking at the Services |
| 2 | Agreement, itself, do you see the |
| 3 | fourth "whereas" clause that reads -- |
| 4 | it's on page 1, "ADB agrees to open a |
| 5 | pooling account with KBC to fund the |
| 6 | payments effectuated by KBC on behalf |
| 7 | of the diamond clients." Do you see |
| 8 | that "whereas" clause? |
| 9 | A.    Yes. |
| 10 | Q.    And the reference to KBC is to |
| 11 | KBC New York. Is that correct? |
| 12 | A.    Yes. |
| 13 | Q.    And Lazare was one of the |
| 14 | diamond clients that was covered by |
| 15 | this provision, correct? |
| 16 | A.    Once ADB had opened up a DDA |
| 17 | account with New York. |
| 18 | Q.    Once ADB had opened up -- |
| 19 | A.    Sorry. Lazare had opened up. |
| 20 | Q.    That upon opening an account at |
| 21 | KBC New York Lazare was covered by this |
| 22 | provision? |
| 23 | A.    Would be -- have the benefits. |
| 24 | Q.    Would have the benefits of this |
| 25 | provision. Okay. |
| 103: 1 | And ADB maintained that pooling |
| 2 | account at KBC New York consistently |
| 3 | through the relevant period of time -- |
| 4 | A.    Yes. |
| 5 | Q.    -- correct? Okay. And would you |
| 6 | take a look at paragraph 3 on page 2 of |
| 7 | the Services Agreement?  Would you read |
| 8 | the first sentence of paragraph 3 to |
| 9 | us? |
| 10 | A.    "Each day KBC clears the |
| 11 | customer's account via ADB's pooling |
| 12 | under agreement advisement with the |
| 13 | diamond client." |
| 14 | Q.    So does the reference to |
| 15 | customer's account include Lazare from |

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24** continued...

**Annotation:**

```
103:16    and after the time Lazare opened an
   17     account at KBC New York?
   18     A.    Yes.
   19     Q.    So under this provision KBC New
   20     York is clearing Lazare's account at
   21     KBC New York via ADB's pooling. Is that
   22     correct?
   23     A.    We would be making debits and --
   24     every debit and credit entry on
   25     Lazare's KBC New York account, we would
104: 1    make a corresponding or the reverse
    2     entry, debit and credit on the what you
    3     call ADB's pooling account.
    4     Q.    And what is the reference to
    5     "agreement/advisement with the diamond
    6     client" mean?
    7     A.    Every time there was a debit or
    8     credit to Lazare's DDA account at KBC
    9     New York we informed both Lazare and we
   10     also at the same time informed ADB.
   11     Q.    And turning to the second
   12     sentence, do you see the sentence that
   13     reads "Credit positions on the diamond
   14     client's accounts are transferred to
   15     the pooling account as well?"
   16          Again, does the reference to
   17     "diamond clients" include Lazare from
   18     and after the time Lazare opened an
   19     account at KBC New York?
   20     A.    Yes.
   21     Q.    And can you explain how credit
   22     positions on Lazare's account would be
   23     transferred to ADB's pooling account at
   24     KBC New York?
   25     A.    At the end of each day KBC New
105: 1    York would look at the balance on
    2     Lazare's DDA account.  If there was a
    3     credit on the account a debit entry
    4     would be made on Lazare's DDA account
    5     at KBC New York to zero it out and a
    6     corresponding credit would be made to
    7     ADB's pooling account.
    8     Q.    And this process pertains to
    9     both debits and credits in Lazare's
   10     account at KBC New York, correct?
   11     A.    Yes.
   12     Q.    So let's look at how you went
   13     about describing the concept of
   14     paragraph 3 in your Declaration,
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24** continued...

**Annotation:**

```
105:15    Ms. Snyers -- Grimmig, sorry. Would you
    16    turn to paragraph 11 of your sworn
    17    Declaration?
    18        Do you see in the second
    19    sentence of paragraph 11 the sentence
    20    that begins "Similarly and as described
    21    in the Snyers reply Declaration, if the
    22    amounts deposited in the KBC account
    23    exceeded the amounts withdrawn from the
    24    account on any given day the excess
    25    funds would be swept out of the account
106: 1    regardless of whether the funds were
     2    unused credits from the Lazare Antwerp
     3    Bank account or payments received from
     4    Lazare's customers and credited to the
     5    Lazare Antwerp Bank account. The amount
     6    of the overdraft outstanding at the
     7    Lazare Antwerp Bank account would be
     8    reduced by the amount swept into the
     9    Lazare Antwerp Bank account?"
    10        Is that statement by you to the
    11    Court, Ms. Grimmig, consistent with
    12    paragraph 3 of the Services Agreement?
    13    A.    The shared agreement has more
    14    details than the description in the
    15    Declaration.
    16    Q.    Well, can you explain to me how
    17    the pooling account factors into the
    18    description in paragraph 11 of your
    19    Declaration that I just read out loud?
    20    What part of that pertains to the
    21    pooling account?
    22    A.    So as I say, at the end of the
    23    day if there is a credit balance on
    24    Lazare's DDA account with KBC New York,
    25    KBC New York would put a debit entry on
107: 1    the Lazare DDA account and then would
     2    make a credit entry on ADB's pooling
     3    account with -- to zero out Lazare's
     4    DDA account, and then once the funds
     5    are in the ADB's pooling account, ADB
     6    could do with those funds what it
     7    wanted to.
     8    Q.    So, Ms. Grimmig --
     9    A.    Let me step back. Sorry. Can I
    10    --
    11    Q.    Please.
    12    A.    So every time there was a debit
    13    or credit on the Lazare DDA account,
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24** continued...

**Annotation:**

```
107:14   notification was given to Lazare at the
     15   same time we were giving SWIFT messages
     16   in real-time informing ADB of debits
     17   and credits so that that ADB could be
     18   making entries on the Lazare's
     19   overdraft account at ADB.
     20       Q.    So according to the Services
     21   Agreement, Lazare's credit position was
     22   reduced by the amount of funds that KBC
     23   New York swept into ADB's pooling
     24   account at KBC New York, correct?
     25       A.    Correct.
108: 1       Q.    And that reduction was achieved
     2   via internal entries --
     3       A.    Right.
     4       Q.    -- to quote the Services
     5   Agreement, made by ADB upon receipt of
     6   notice, via informational SWIFT
     7   messages from KBC New York. Correct?
     8   Sorry, you have to answer out layout.
     9   Court reporter can't take down a nod.
     10      A.    Sorry. Correct.
     11      Q.    So to be clear, the funds,
     12   positive or negative, from Lazare's
     13   bank account at KBC New York were swept
     14   by KBC New York into ADB's pooling
     15   account at KBC New York, correct?
     16      A.    Correct.
     17      Q.    So, Ms. Grimmig, it's not true
     18   then that KBC New York swept funds from
     19   Lazare's bank account at KBC New York
     20   into an alleged Lazare bank account at
     21   ADB Belgium, is it?
     22           MR. FORESTA:  Objection.  You
     23   can answer.
     24      A.    KBC New York only had authority
     25   to withdraw funds out of Lazare's DDA
109: 1   account and put them into ADB's pooling
     2   account. Once the money was in ADB's
     3   pooling account, ADB could do what it
     4   wanted with those funds, and if they
     5   wanted to move those funds out of the
     6   ADB pooling account to anyplace else,
     7   they had the right to do so.
     8       Q.    But that's not what you told the
     9   Judge. In your Declaration you told the
     10   Judge, under oath, that the monies in
     11   Lazare's bank account, the balance,
     12   positive or negative, was swept into an
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24** continued...

**Annotation:**

```
109:13      alleged bank account in Belgium. You
    14      left out the pooling account. You left
    15      out the fact that the sweeping process
    16      went from Lazare bank account at KBC
    17      New York to ADB bank account at KBC New
    18      York. Why did you do that?
    19           MR. FORESTA:  Objection. You can
    20      answer.
    21      A.    Because ultimately the funds
    22      went to ADB.
    23      Q.    So you made the decision not to
    24      tell Judge Carter about the
    25      intermediate step, you jumped right to
110: 1      "ultimately". Is that your testimony,
     2      Ms. Grimmig?
     3           MR. FORESTA:  Objection.
     4      A.    The Declaration is supposed to
     5      give as accurate a description of the
     6      process as possible, but it's not meant
     7      to contain every nitty-gritty detail of
     8      the process.
     9      Q.    Is that -- is the pooling
    10      account a nitty-gritty detail, Ms.
    11      Grimmig? Is that your testimony?
    12      A.    My testimony is that at the end
    13      of the day what was important to
    14      disclose was that the funds ultimately
    15      went into the possession of ADB.
    16      Q.    Who made the decision as to what
    17      was important to disclose to Judge
    18      Carter in connection with your
    19      attorney's motion, you?
    20           MR. FORESTA:  Note my objection.
    21      Q.    You?
    22           MR. FORESTA:  I'll just caution
    23      you not to disclose sum or substance of
    24      any discussions that you had with
    25      counsel, to the extent you did.
111: 1      A.    It was not my -- I did not take
     2      a decision.
     3      Q.    You didn't make the decision not
     4      to disclose to Judge Carter in this
     5      lawsuit the existence of the pooling
     6      account or the operation of the pooling
     7      account? Is that your testimony?
     8           MR. FORESTA:  Objection. You can
     9      answer.
    10      A.    In my Declaration I made a
    11      disclosure of the process of the
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24** continued...

**Annotation:**

```
111:12      handling of the KBC New York DDA
    13      account for Lazare and KBC New York's
    14      handling of ADB's pooling account. I
    15      did not provide nitty-gritty details.
    16         Q.    You knew at the time you signed
    17      your Declaration that no money went to
    18      or from Belgium in this process, didn't
    19      you, Ms. Grimmig?
    20         A.    I don't know that's a true
    21      statement. ADB -- the funds went into
    22      -- the funds were owned by ADB.  ADB
    23      can do with those funds as it wanted
    24      to.
    25         Q.    We're talking about the
112: 1      allegation or the factual assertion in
     2      your Declaration regarding the movement
     3      of monies, positive or negative
     4      balances, out of Lazare's bank account?
     5         A.    Okay.
     6         Q.    And I'm asking you whether you
     7      knew at the time you signed your
     8      Declaration under oath that the money,
     9      the positive or negative balance moved
    10      from Lazare's bank account in New York
    11      to ADB's bank account in New York? Did
    12      you know that at the time you signed
    13      your Declaration?
    14         A.    I knew that KBC New York would,
    15      at the end of the day, put a debit
    16      entry on Lazare's DDA account and make
    17      a corresponding credit entry on ADB's
    18      U.S. what you call pooling account.
    19      Once those funds went into the pooling
    20      account, ADB had the right to do with
    21      those funds as it pleased.
    22         Q.    And you testified earlier, I
    23      believe, that you drafted your
    24      Declaration?
    25         A.    Yes, I did.
113: 1         Q.    So without disclosing anything
     2      that your attorneys may have said to
     3      you, did you discuss with anyone before
     4      signing your Declaration the decision
     5      to describe the contents of the
     6      Services Agreement in the manner in
     7      which you did?
     8         A.    I wrote it, so...
     9         Q.    Did you discuss with anyone the
    10      decision not to tell Judge Carter about
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 101 Ln: 9 - Pg: 113 Ln: 24** continued...

**Annotation:**

```
113:11      the pooling account, the movement of
   12       monies or the Services Agreement --
   13            MR. FORESTA:   Objection.
   14       Q.   -- other than counsel?
   15            MR. FORESTA:   You can answer.
   16       A.   No, but --
   17       Q.   Sorry.
   18       A.   -- but the shared agreement was
   19       not deemed -- I did not -- as long as I
   20       disclosed the process, I didn't think
   21       it was necessary to explicitly
   22       reference the shared agreement. There
   23       was no intention to -- to hide or --
   24       the existence of the sharing agreement.
```

**Pg: 114 Ln: 4 - Pg: 118 Ln: 23**

**Annotation:**

```
114: 4      Q.    I'm going to ask you to turn to
    5       the sworn Declaration submitted by
    6       Veerle Snyers to the Court, which is
    7       115 and 117. I'm going to direct to you
    8       page 6, paragraph 11 of Ms. Snyers'
    9       sworn Declaration, which is dated June
   10       18, 2012 -- sorry -- June 14, 2012, and
   11       in particular, subparagraph H on page
   12       6.
   13            Do you recall reviewing the
   14       language in paragraph 11(h) of
   15       Ms. Snyers' Declaration before signing
   16       your own Declaration?
   17       A.    I recall reading her
   18       Declaration, but I don't remember the
   19       specifics.
   20       Q.    Do you know who drafted Ms.
   21       Snyers' Declaration?
   22       A.    It's my understanding that she
   23       drafted it, herself.
   24       Q.    And did you consider Ms. Snyers
   25       competent to testify regarding the
115: 1      matters discussed in her Declaration?
    2       A.    As the author of her
    3       Declaration, I would say she was
    4       competent to testify with respect to
    5       it.
    6       Q.    Do you know Ms. Snyers, other
    7       than casually?
    8       A.    No.
    9       Q.    You're not friends?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

Pg: 114 Ln: 4 - Pg: 118 Ln: 23 continued...

**Annotation:**

```
115:10    A.    No.
    11    Q.    Did you take any steps to verify
    12  whether the statements in Ms. Snyers'
    13  Declaration were accurate and true
    14  before you signed your own Declaration?
    15    A.    Yes.
    16    Q.    What steps did you take?
    17    A.    I discussed with our Cash
    18  Management and Payment Department how
    19  DDA accounts worked and the zero
    20  balancing of accounts worked.
    21    Q.    And who is that person?  What is
    22  the name of that person.
    23    A.    Ruggerio Pestana.
    24    Q.    Based here in New York?
    25    A.    Yes.
116: 1    Q.    And directing your attention in
     2  particular to the last sentence of (h),
     3  11(h), do you see where it says "In
     4  addition, because the account at KBC
     5  New York is a Zero Balance Account any
     6  funds transferred into the KBC New York
     7  account are automatically credited to
     8  or swept into the customer's bank
     9  account at Antwerp Bank at the end of
    10  the day."
    11        Do you see where Ms. Snyers
    12  wrote that?
    13    A.    Right.
    14    Q.    She didn't reference the pooling
    15  account either, did she, in this
    16  description?
    17    A.    No.
    18    Q.    Do you know why?
    19    A.    No.
    20    Q.    Did you rely on the language in
    21  her Declaration, the "swept into the
    22  customer's bank account at Antwerp
    23  Bank?"  Did you rely on that language
    24  in drafting your own Declaration?
    25    A.    No. I relied on my conversations
117: 1  with my Cash Management and Payment
     2  team, who told me every time there was
     3  a debit or credit to Lazare's DDA
     4  account with KBC New York, KBC New
     5  York, in real-time, would send a SWIFT
     6  message to ADB in -- in Belgium of the
     7  debit and credit so they could make a
     8  corresponding entry into the overdraft
```

---

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

Pg: 114 Ln: 4 - Pg: 118 Ln: 23 continued...

**Annotation:**

```
117: 9      account that Lazare had at ADB.
     10      Q.    And that corresponding entry is
     11  a book entry or an accounting entry?
     12      A.    Yes.
     13      Q.    Is that correct?
     14      A.    KBC New York does not handle
     15  physical cash.
     16      Q.    And dollars never leave America,
     17  do they, Ms. Grimmig?
     18      A.    They can't.
     19      Q.    Did they, in this case, ever
     20  leave?
     21      A.    ADB's pooling account, yes, had
     22  both debits and credits to the account
     23  and so, the debit entry would require
     24  movement of funds.
     25      Q.    Is it your testimony that U.S.
118: 1   dollars moved from the pooling account
      2  to Belgium as opposed to accounting or
      3  bookkeeping entries?
      4      MR. FORESTA:  Note my objection.
      5      Q.    Was there a physical movement of
      6  dollars?
      7      A.    We -- KBC New York does not
      8  handle physical cash, so movement of
      9  funds was done by -- by book entries.
     10      Q.    And that's true of all the
     11  increases and decreases to Lazare's
     12  outstanding loan balance under the
     13  credit facility, correct?  All that
     14  happened were book entries or
     15  accounting entries?  All that happened
     16  in Belgium were book entries or
     17  accounting entries, correct?
     18      MR. FORESTA:  Note my objection.
     19      Q.    You can answer.
     20      A.    That is how banks transfer
     21  money.  You don't physically deliver
     22  cash, you do wire transfers of funds
     23  which are book entries.
```

Pg: 140 Ln: 25 - Pg: 145 Ln: 11

**Annotation:**

```
140:25      Q.    Would you turn to your
141: 1   Declaration again, paragraph 2 but at
      2  the top of page 2?
      3      A.    Right.
      4      Q.    Do you see the sentence, second
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 140 Ln: 25 - Pg: 145 Ln: 11** continued...

**Annotation:**

```
141: 5      to last sentence that reads "I submit
     6      this Declaration to describe KBC's
     7      relationship with Lazare, its local
     8      partner banking relationship with
     9      Antwerp Bank etcetera etcetera"?  Do
    10      you see where I'm reading from?
    11      A.    Yes.
    12      Q.    What does the reference to KBC's
    13      local partner relationship with Antwerp
    14      Bank mean?
    15      A.    KBC New York provided a U.S.
    16      dollar account for ADB.
    17      Q.    What is a local partner bank?
    18      A.    I don't know.
    19      Q.    Well, you wrote the Declaration.
    20      So --
    21      A.    I think for me it was just
    22      describing that we opened up a U.S.
    23      dollar clearing account for ADB and we
    24      would open up a DDA account for ADB's
    25      U.S. customers to facilitate ADB's
142: 1      overdraft account with the same
     2      customer.
     3      Q.    But you knew at the time you
     4      wrote this that ADB had also opened a
     5      pooling account at KBC New York, a
     6      pooling account?
     7      A.    That is what I call the U.S.
     8      dollar account. Sorry. It's --
     9      Q.    How many different accounts did
    10      ADB open and/or maintain at KBC New
    11      York during the relevant period of
    12      time?
    13      A.    I believe it had -- it had the
    14      U.S. dollar account, the pooling
    15      account.
    16      Q.    Is that the only bank account
    17      you're aware of?
    18      A.    I believe it might have also had
    19      a second account that was an expense
    20      account.
    21      Q.    Is that a subaccount or a
    22      separate bank account?
    23      A.    It's a separate bank account.
    24      Q.    Were there any subaccounts to
    25      either of the pooling account or the
143: 1      expense account?
     2      A.    No.
     3      Q.    What is an expense account?
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016

**Transcript:** [2/16/2016] Grimmig, Diane

**Issue Filter:** Revised Deposition Designations

**Pg: 140 Ln: 25 - Pg: 145 Ln: 11** continued...

**Annotation:**

```
143: 4        A.    I believe it was an account used
       5    to cover ADB's cost and expenses with
       6    respect to the New York Rep Office. So
       7    it would cover their rental payments on
       8    the ADB New York reps sublease here in
       9    New York.
      10        Q.    ADB sublet its space from KBC
      11    New York?
      12        A.    Yes, it did.
      13        Q.    And it paid rent for that space?
      14        A.    Yes.
      15        Q.    Is the term "local partner bank"
      16    defined in any banking rules or
      17    regulations or laws that you're aware
      18    of?
      19        A.    No.
      20        Q.    Where did you get the term?
      21        A.    It was just a term describing --
      22    in this case, it was describing the --
      23    the KBC New York opening a DDA account
      24    on behalf of ADB's diamond customers in
      25    the U.S.
144: 1        Q.    What is the difference between a
       2    local partner bank relationship and a
       3    correspondent bank relationship?
       4        A.    They can be the same.
       5        Q.    Can they be different?
       6        A.    They can be different.
       7        Q.    In what sense can they be
       8    different?
       9        A.    I think in this particular case
      10    we provided ADB with not just U.S.
      11    dollar clearing, but we also agreed to
      12    open up DDA accounts for ADB's diamond
      13    customers in the U.S. to facilitate an
      14    overdraft account between ADB and such
      15    diamond customers.
      16        Q.    Is a local partner bank
      17    relationship different in any other
      18    respect from a correspondent bank
      19    relationship?
      20        A.    It could be.
      21        Q.    In what other respects could it
      22    be different?
      23        A.    We could have -- if the bank
      24    provided any other services to ADB
      25    or...
145: 1        Q.    So did I understand correctly
       2    that a local partner bank has a greater
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 140 Ln: 25 - Pg: 145 Ln: 11** continued...

**Annotation:**

```
145: 3    responsibility than a correspondent
      4    bank?
      5    A.    Not greater. It could be
      6    different.
      7    Q.    But you don't know where the
      8    term comes from?
      9    A.    No. It's just a term I used to
     10    describe the relationship between ADB
     11    and myself -- and KBC New York.
```

**Pg: 145 Ln: 12 - Pg: 147 Ln: 25**

**Annotation:**

```
145:12    Q.    Are the operational banking
     13    services that are described in the
     14    Service Agreement correspondent bank
     15    services?
     16    A.    I think it -- no. It's more
     17    focused on -- I don't recall. I would
     18    have to read the agreement.
     19    Q.    The Services Agreement?
     20    A.    But I think the Service
     21    Agreement was primarily focusing on KBC
     22    New York agreeing to open up DDA
     23    accounts for ADB's customers to
     24    facilitate ADB's overdraft accounts
     25    with the same customer.
146: 1    Q.    Well, would you turn back to the
      2    Services Agreement, and in particular
      3    the second "whereas" clause on page 1?
      4    It's annexed to 57.
      5    MR. D'ANGELO:  It's a separate
      6    document.
      7    Q.    It's a pile in that folder.
      8    There should be a Services Agreement
      9    folder in there.
     10    So directing your attention to
     11    the second "whereas" clause, would you
     12    read that clause?
     13    A.    "KBC agrees to provide certain
     14    operational services to ADB and to
     15    ADB's clients, hereinafter referred to
     16    as diamond clients, specifically
     17    allowing diamond clients to open
     18    current accounts in their books and
     19    effectuating both local and
     20    international payments and other
     21    banking services on behalf of the
     22    diamond clients."
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 145 Ln: 12 - Pg: 147 Ln: 25** continued...

**Annotation:**

```
146:23        Q.    Thank you. So doesn't this
    24    clause indicate to you that KBC was
    25    agreeing to provide operational
147: 1    services to ADB as well as to ADB's
     2    clients?
     3         That's what the clause says
     4    doesn't it, Ms. Grimmig?
     5    A.    Yes.
     6    Q.    So the services were not limited
     7    to the clients of ADB, they included
     8    services provided by KBC New York to
     9    ADB?
    10    A.    With respect to ADB's clients.
    11    Q.    Okay. So I ask you again, are
    12    the operational banking services
    13    described in the clause you just read
    14    correspondent banking services?
    15    A.    No.
    16    Q.    Why not?
    17    A.    I view corresponding banking
    18    relationship to refer to the U.S.
    19    dollar clearing activity.
    20    Q.    And do you view correspondent
    21    banking services to be limited to the
    22    U.S. dollar clearing activity?
    23    A.    Typically the terminology is
    24    used with respect to U.S. dollar
    25    clearing activity.
```

**Pg: 146 Ln: 23 - Pg: 147 Ln: 25**

**Annotation:**

```
146:23        Q.    Thank you. So doesn't this
    24    clause indicate to you that KBC was
    25    agreeing to provide operational
147: 1    services to ADB as well as to ADB's
     2    clients?
     3         That's what the clause says
     4    doesn't it, Ms. Grimmig?
     5    A.    Yes.
     6    Q.    So the services were not limited
     7    to the clients of ADB, they included
     8    services provided by KBC New York to
     9    ADB?
    10    A.    With respect to ADB's clients.
    11    Q.    Okay. So I ask you again, are
    12    the operational banking services
    13    described in the clause you just read
    14    correspondent banking services?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 146 Ln: 23 - Pg: 147 Ln: 25** continued...

**Annotation:**

```
147:15      A.    No.
    16      Q.    Why not?
    17      A.    I view corresponding banking
    18 relationship to refer to the U.S.
    19 dollar clearing activity.
    20      Q.    And do you view correspondent
    21 banking services to be limited to the
    22 U.S. dollar clearing activity?
    23      A.    Typically the terminology is
    24 used with respect to U.S. dollar
    25 clearing activity.
```

**Pg: 148 Ln: 7 - 18**

**Annotation:**

```
148: 7      Q.    Do you know whether KBC New York
     8 has an agreement with ADB concerning
     9 correspondent banking services, other
    10 than the Services Agreement? Is there a
    11 separate agreement of any kind?
    12      A.    I would believe that there is an
    13 account opening agreement between ADB
    14 and KBC New York.
    15      Q.    Other than the account opening
    16 agreement, is there another agreement
    17 of any kind --
    18      A.    Not to my knowledge.
```

**Pg: 164 Ln: 8 - Pg: 167 Ln: 14**

**Annotation:**

```
164: 8      Q.    Would you look at paragraph 4 of
     9 your Declaration, and in particular, to
    10 the second sentence that reads
    11 "Contrary to the statement in the
    12 Moryto Affidavit that KBC was a primary
    13 banker to Lazare, KBC's New York branch
    14 only provided basic account services
    15 for Lazare's KBC account which were
    16 incidental to Lazare's bank account at
    17 Antwerp Bank, etcetera." Do you see
    18 where I'm reading from?
    19      A.    Yes.
    20      Q.    Let me ask you a few questions
    21 about your definition of "bank account
    22 services."
    23           You told us that KBC New York
    24 provided the operational banking
    25 services that are described in the
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 164 Ln: 8 - Pg: 167 Ln: 14** continued...

**Annotation:**

```
165: 1         Services Agreement, correct?
       2         A.      Correct.
       3         Q.      And according to the Services
       4    Agreement those operational banking
       5    services were provided through the bank
       6    account that ADB -- or bank accounts
       7    that ADB's customers in New York opened
       8    at KBC New York, correct?
       9         A.      Correct.
      10         Q.      Okay. And Lazare, one of ADB's
      11    diamond customers in New York, opened
      12    its bank account at the New York branch
      13    of KBC at the direction of ADB,
      14    correct?
      15         A.      Yes.
      16         Q.      And the operational banking
      17    services that KBC New York provided
      18    under the Services Agreement included
      19    accepting payment orders from Lazare
      20    under its credit facility with ADB,
      21    correct?
      22         A.      Correct.
      23         Q.      And matching the payment orders
      24    with Lazare's available credit under
      25    its credit facility, correct?
166: 1         A.      Correct.
       2         Q.      And effectuating or executing
       3    the payments in accordance with
       4    Lazare's instructions, correct?
       5         A.      Correct.
       6         Q.      Accepting incoming payments to
       7    Lazare and booking them accordingly,
       8    correct?
       9         A.      Correct.
      10         Q.      Opening a pooling account for
      11    ADB at KBC New York to reimburse itself
      12    for the payments it made for Lazare,
      13    correct?
      14         A.      Correct.
      15         Q.      By agreement with Lazare,
      16    notifying ADB what it did via SWIFT
      17    electronic message so that ADB could
      18    adjust its records accordingly with
      19    respect to Lazare's outstanding loan
      20    balance, correct?
      21         A.      Correct.
      22         Q.      Is it your testimony, Ms.
      23    Grimmig, that each of these banking
      24    services that I've just read to you is
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 164 Ln: 8 - Pg: 167 Ln: 14** continued...

**Annotation:**
```
166:25      a basic account service?
167: 1      A.    Yes.
     2      Q.    And do you consider these
     3      account services to be de minimus
     4      business dealings with Lazare?
     5      A.    Yes.
     6      Q.    And these banking services were
     7      all provided to Lazare here in New
     8      York, correct?
     9      A.    With respect to KBC New York?
    10      Q.    Yes.
    11      A.    Yes.
    12      Q.    And they're all services
    13      provided by KBC New York, correct?
    14      A.    Correct.
```

**Pg: 167 Ln: 25 - Pg: 168 Ln: 9**

**Annotation:**
```
167:25      Q.    Which bank disbursed to the
168: 1      payee designated by Lazare, Ms.
     2      Grimmig? Who executed or effectuated
     3      the payment order?
     4      A.    Out of the KBC New York account
     5      it was KBC New York.
     6      Q.    Okay. Which bank accepted the
     7      repayment into the KBC -- Lazare's KBC
     8      New York bank account?
     9      A.    KBC New York.
```

**Pg: 168 Ln: 20 - Pg: 171 Ln: 1**

**Annotation:**
```
168:20      Q.    Which bank calculated the amount
    21      due under the credit facility before
    22      effectuating or executing Lazare's
    23      payment orders?
    24      A.    ADB furnished the credit limit
    25      to KBC New York, so that KBC New York
169: 1      could process payments based on the
     2      availability under the overdraft
     3      account.
     4      Q.    Is that what the Services
     5      Agreement says, Ms. Grimmig, or is that
     6      what you say?
     7      A.    That's how it worked.
     8      Q.    What does the Services Agreement
     9      say? Let me direct your attention to
    10      paragraph 1.
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 168 Ln: 20 - Pg: 171 Ln: 1** continued...

**Annotation:**

```
169:11          The second sentence, "KBC will
   12   keep records of the movements on the
   13   diamond client's accounts in order to
   14   be able to calculate the available
   15   credit against those lines."
   16      A.    In order to do so ADB had to
   17   first furnish to KBC New York the
   18   credit limit under the overdraft
   19   account between KBC New York -- between
   20   ADB and ADB's customer.
   21      Q.    Okay.
   22      A.    So we needed to know -- so ADB
   23   had to furnish the credit limit. Once
   24   that was -- KBC was informed of the
   25   credit limit, then KBC would process
170: 1   payments, depending upon availability
    2   under the overdraft.
    3          KBC New York would inform both
    4   Lazare and ADB in real-time every time
    5   there was a debit or credit entry on
    6   the KBC New York account, so that a
    7   corresponding entry could be made on
    8   the ADB overdraft account. It's not one
    9   or the other. It's -- it starts -- it
   10   starts and ends with ADB.
   11      Q.    Where did ADB get the
   12   information about the transactions in
   13   Lazare's bank account?  From where did
   14   ADB get the information?
   15      A.    KBC New York -- first of all,
   16   ADB would inform KBC New York about the
   17   credit limit and then if there was a
   18   debit entry on a KBC New York account
   19   on any particular day, KBC New York
   20   informed both Lazare and ADB in
   21   real-time of each and every debit and
   22   credit entry.
   23      Q.    So KBC New York was the source
   24   of the debit and credit information
   25   that ADB received?
171: 1      A.    Yes.
```

---

**Pg: 174 Ln: 1 - 18**

**Annotation:**

```
174: 1      Q.    Did KBC New York perform
    2   enhanced due diligence procedures on
    3   any bank accounts or banking activities
    4   undertaken by New York diamond clients
```

---

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 174 Ln: 1 - 18** continued...

**Annotation:**

```
174: 5      of ADB?
     6      A.   Diamond customers were in a risk
     7   category as being high risk, yes.
     8      Q.   So the answer is yes?
     9      A.   Yes.
    10      Q.   How about enhanced due diligence
    11   with respect to ADB, the holder of the
    12   local partner bank or correspondent
    13   bank account at KBC New York?
    14      A.   As you mentioned before, under
    15   the corresponding banking rules and
    16   regulations they're subject to
    17   additional AML documentation
    18   requirements.
```

**Pg: 189 Ln: 5 - Pg: 191 Ln: 16**

**Annotation:**

```
189: 5      Q.   Ms. Grimmig, would you turn to
     6   Plaintiff's Exhibit 55, which is one of
     7   the loose documents in that pile in
     8   front of you in that folder?
     9         Do you recognize that document?
    10      A.   Yes.
    11      Q.   What is it?
    12      A.   It's a Letter Agreement between
    13   ADB and Lazare.
    14      Q.   And it's dated May 31, 2001. Is
    15   that correct?
    16      A.   Yes.
    17      Q.   It pertains to the bank account
    18   that Lazare opened at the New York
    19   branch of KBC, does it not?
    20      A.   Yes.
    21      Q.   And did anyone at KBC New York
    22   participate in the drafting of this
    23   document?
    24      A.   No.
    25      Q.   Do you know who drafted this
190: 1   document?
     2      A.   It's on ADB's letterhead, so I
     3   assume an ADB officer drafted it.
     4      Q.   Are you acquainted with Philippe
     5   Loral?
     6      A.   I know the name.
     7      Q.   Do you know whether he drafted
     8   this document?
     9      A.   No.
    10      Q.   Have you ever met Mr. Loral?
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 189 Ln: 5 - Pg: 191 Ln: 16** continued...

**Annotation:**

| | | |
|---|---|---|
| 190:11 | A. | No. |
| 12 | Q. | Ever spoken with him? |
| 13 | A. | No. |
| 14 | Q. | Do you know whether diamond |
| 15 | clients of ADB, other than Lazare, who |
| 16 | open accounts at KBC New York sign this |
| 17 | kind of agreement? |
| 18 | A.    If they were opening up a DDA |
| 19 | account to effectuate their overdraft |
| 20 | account between ADB and themselves, |
| 21 | then we would have got this document. |
| 22 | KBC New York would have received this |
| 23 | document. |
| 24 | Q.    Is it fair to say then that you |
| 25 | are familiar with this form of |
| 191: 1 | document? |
| 2 | A.    I've seen it, yes. |
| 3 | Q.    You've seen it in contexts other |
| 4 | than Lazare? |
| 5 | A.    It would be part of the customer |
| 6 | file. |
| 7 | Q.    When you say "part of the |
| 8 | customer file", do you mean the account |
| 9 | opening documentation that customers |
| 10 | sign and submit to KBC New York in |
| 11 | connection with bank accounts that they |
| 12 | open at KBC New York? |
| 13 | A.    Yes. Customer file has the |
| 14 | account opening documentation and KYC |
| 15 | information and verification |
| 16 | documentation. |

**Pg: 192 Ln: 21 - Pg: 193 Ln: 6**

**Annotation:**

| | | |
|---|---|---|
| 192:21 | Q.    Well, directing your attention |
| 22 | to the first sentence that reads "We |
| 23 | hereby agree that all disbursements and |
| 24 | payments under our credit facility with |
| 25 | Antwerpse Diamantbank NV has been |
| 193: 1 | effected through our account with KBC |
| 2 | NV New York branch and shall result in |
| 3 | a same day debit or credit to our loan |
| 4 | balance with Antwerpse Diamantbank NV", |
| 5 | do you see that language? |
| 6 | A.    Yes. |

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 193 Ln: 17 - Pg: 195 Ln: 14**

**Annotation:**

```
193:17        Q.    Was this document signed
     18    pursuant to the Services Agreement that
     19    you testified about earlier this
     20    morning?
     21        A.    It's a separate document.
     22        Q.    Is it contemplated by the
     23    Services Agreement?
     24        A.    I don't know if contemplated is
     25    the right word.
194: 1        Q.    Well, let me direct your
      2    attention to the Services Agreement,
      3    which you should also have in front of
      4    you in the loose pile. And in
      5    particular, to the third "whereas"
      6    clause that begins "In agreement with
      7    the diamond clients etcetera." Do you
      8    see that?
      9        A.    Yes.
     10        Q.    Is Plaintiff's 55 the agreement
     11    with the diamond clients that's
     12    referred to in the third "whereas"
     13    clause in the Services Agreement?
     14        MR. FORESTA:  Note my objection.
     15    Go ahead and answer.
     16        A.    You would need -- KBC New York
     17    would need this document in order to
     18    communicate information about debits --
     19    payments falling through KBC New York
     20    with the DDA account with Lazare.
     21        Q.    Did KBC New York rely upon
     22    Plaintiff's 55 in order to communicate
     23    information to ADB about payments?
     24        A.    Yes.
     25        Q.    Did KBC New York keep either the
195: 1    original or a copy of this document in
      2    its files?
      3        A.    KBC would not have the original.
      4    It's a -- it's a document between ADB
      5    and Lazare. So either ADB -- both ADB
      6    and Lazare should have the original.
      7    KBC New York would have a copy.
      8        Q.    But it was necessary for Lazare
      9    to sign this document in order to open
     10    its bank account at KBC New York. Is
     11    that correct?
     12        A.    It was necessary for them to be
     13    able to open the account and utilize
     14    the account at KBC New York.
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 197 Ln: 4 - Pg: 198 Ln: 24**

**Annotation:**

```
197: 4        Q.    And moving up to paragraph 3,
     5    second paragraph, do you see where it
     6    says in the second clause, first clause
     7    second paragraph, "If these clearing
     8    operations yield a balance deficiency
     9    on the pooling account KBC New York
    10    will grant ADB an overnight placement
    11    on money market rates on a best efforts
    12    basis."
    13        A.    Yes.
    14        Q.    What is that talking about? What
    15    does that sentence mean?
    16        A.    If -- if at the end of the day
    17    you would reconcile the DDA account of
    18    Lazare, if it had a debit balance you
    19    -- we would access funds out of ADB's
    20    pooling account.
    21        If the ADB pooling account did
    22    not have sufficient funds, KBC would
    23    lend funds to ADB in order to cover the
    24    negative balance.
    25        Q.    And those funds would be loaned
198: 1    or lent on money market rates?
     2        A.    They would be lent on an
     3    overnight basis at a market rate.
     4        Q.    And what does the sentence after
     5    that mean, the sentence that refers to
     6    "This placement will be against the
     7    presently established line at KBC New
     8    York etcetera?"
     9        A.    KBC provided a -- had an
    10    overdraft limit with respect to the
    11    U.S. dollar accounts held by KBC
    12    entities, including ADB.
    13        Q.    Can you explain what you mean
    14    when you say that they had an overdraft
    15    limit with respect to the accounts?
    16        A.    Essentially, a line of credit
    17    with a maximum -- maximum amount that
    18    could be utilized.
    19        Q.    So do I understand correctly
    20    that KBC extended a line of credit to
    21    ADB for use in connection with the
    22    arrangement discussed in this Services
    23    Agreement?
    24        A.    KBC could extend credit to ADB.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 200 Ln: 7 - Pg: 204 Ln: 23**

**Annotation:**

```
200: 7        Q.    Okay. Well, directing your
      8     attention to the first sentence of
      9     paragraph 3 that begins "Each day KBC
     10     clears customer's account via ADB's
     11     pooling etcetera", at what point in the
     12     day did KBC clear the customer's
     13     account?
     14        A.    Lazare's?
     15        Q.    Or any customer that is covered
     16     by this agreement.
     17        A.    So intraday there would be
     18     debits and credits on Lazare's KBC New
     19     York DDA account in real-time.  Those
     20     debits and credits were reported to
     21     Lazare and at the same time to ADB to
     22     make the corresponding entries on the
     23     overdraft account.
     24        At the end of the day KBC New
     25     York would reconcile the balance to see
201: 1     whether or not there was a credit
      2     balance or a -- and if there was a
      3     credit balance the account would be
      4     zeroed out and there would be a debit
      5     on the KBC New York DDA account and
      6     there would be a credit to the ADB, as
      7     you call it, pooling account.
      8        Q.    So the reconciliation took place
      9     at the end of the day, the settling of
     10     the transactions?
     11        A.    The final settlement of the
     12     transactions, because debits and
     13     credits are made throughout the day on
     14     the -- on any bank account. They're not
     15     all done at the end of the day.  It's
     16     done throughout the day, with a final
     17     reconciliation at the end of the day.
     18        Q.    Why does the second paragraph
     19     refer to an overnight placement in the
     20     event that the clearing operations that
     21     you've described yield a balance
     22     deficiency on the pooling account?
     23        A.    Because as I mentioned before,
     24     for administrative convenience we might
     25     not have made debit entries against
202: 1     ADB's account to fund payment orders or
      2     for insufficient -- to cover the
      3     insufficient funds in the KBC New York
      4     DDA account during the day, we just
      5     would do one final settlement and
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 200 Ln: 7 - Pg: 204 Ln: 23** continued...

**Annotation:**

```
202: 6      reconciliation at the end of the day.
      7        Q.     And when KBC effectuates or
      8      executes a payment order from a
      9      customer like Lazare, under the
     10      arrangement described in this Services
     11      Agreement, where does KBC obtain the
     12      funds with which to fulfill or carry
     13      out that payment order?
     14        A.     Ultimately, the funds are
     15      acquired from ADB.
     16        Q.     In the first instance where does
     17      it obtain the funds? Whose funds does
     18      it use?
     19        A.     First instance, the customer's
     20      funds. It's a DDA account. So they
     21      might have deposits of funds from their
     22      selling of goods and services to
     23      another counterparty. So the first
     24      source of funds is their own funds.
     25        Q.     And if the Zero Balance Account
203: 1      does not contain the funds with which
      2      to execute the payment order?
      3        A.     KBC New York would look to see
      4      what the credit limit was on the ADB
      5      overdraft account. If there was
      6      availability under the ADB overdraft
      7      account, KBC could and at times did use
      8      its own funds intraday and then at the
      9      end of the day reconciled and settled
     10      with ADB and ADB would cover KBC, such
     11      that it was ADB funds and ADB retained
     12      the credit risk.
     13        Q.     And why do you say "at times",
     14      as opposed to all the time?
     15        A.     We had -- KBC New York had the
     16      right to make entries against the ADB
     17      account for the funds at any point in
     18      time, because the funds were available.
     19      We just -- for administrative purposes
     20      it was easier, instead of making
     21      multiple entries throughout the day
     22      because there could be debits and
     23      credits, depending upon the flow and
     24      funds in and out of the account.  We
     25      did it -- it was administratively more
204: 1      convenient to tend to do it at the end
      2      of the day and do it once. It saved --
      3      it save the -- in this case Lazare, in
      4      the sense that we didn't have to access
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 200 Ln: 7 - Pg: 204 Ln: 23** continued...

**Annotation:**

```
204: 5     the overdraft account, it saved them
     6     interest and also saved them fees and
     7     also saved ADB fees.
     8      Q.    And when you say "it", you are
     9     referring to the reconciliation between
    10     KBC's funding of Lazare's payment order
    11     and KBC's -- and the settling of that
    12     transaction against the pooling
    13     account?
    14      A.    Yeah.
    15      Q.    And all that took place in New
    16     York?
    17      A.    KBC New York handled its side of
    18     the transaction and ADB -- KBC handled
    19     everything with respect to the KBC New
    20     York DDA account for Lazare, and what
    21     you call the ADB pooling account.  ADB
    22     in Belgium handled the ADB overdraft
    23     account.
```

**Pg: 205 Ln: 1 - Pg: 207 Ln: 9**

**Annotation:**

```
205: 1     Q.    So the what I call the pooling
     2     account is the pooling account that is
     3     referred to in your Services Agreement,
     4     Ms. Grimmig --
     5      A.    Right.
     6      Q.    -- in case there is any
     7     question?
     8      A.    Right.
     9      Q.    You understand that?
    10      A.    Yes.
    11      Q.    Do you understand what the
    12     approximate amount of U.S.
    13     dollar-denominated transactions was
    14     that KBC New York executed for ADB and
    15     its customers in any given year during
    16     the relevant period of time?
    17      A.    It would be -- through ADB's
    18     U.S. dollar account?
    19      Q.    Yes.
    20      A.    Billions of dollars.
    21      Q.    And did all of those
    22     transactions flow through the ADB
    23     pooling account at KBC New York?
    24      A.    If KBC New York was handling the
    25     U.S. dollar clearing activity on that
206: 1     particular payment, yes. If they used
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 205 Ln: 1 - Pg: 207 Ln: 9** continued...

**Annotation:**

```
206: 2        another bank, ADB used another U.S.
     3        clearing account with another bank, no.
     4          Q.    Were clearing activities
     5        conducted through the pooling account
     6        as well as the operational banking
     7        services described in the Services
     8        Agreement?
     9          A.    Yes.
    10          Q.    So the pooling account was both
    11        a clearing account and a pooling
    12        account?
    13          A.    KBC New York does not call it a
    14        pooling account. So I don't know where
    15        that term comes from. I'm not familiar
    16        with it.
    17              KBC New York had a U.S. dollar
    18        account for ADB that handled any U.S.
    19        dollar transactions that ADB processed
    20        through KBC New York.
    21          Q.    And that would apply to all
    22        customers of ADB for which it processed
    23        transactions?
    24          A.    If it processed through the ADB
    25        pooling account.
207: 1          Q.    So that would include customers
     2        around the world as well as based in
     3        New York, would it not?
     4          A.    If it was a U.S. dollar payment
     5        that got processed through ADB's
     6        pooling account held at KBC New York,
     7        KBC New York handled it. If it went
     8        through another account at another
     9        bank, KBC New York had no involvement.
```

**Pg: 208 Ln: 7 - Pg: 211 Ln: 18**

**Annotation:**

```
208: 7          Q.    And dropping down to paragraph 2
     8        at the bottom of the first page of the
     9        Services Agreement you see the sentence
    10        that begins "KBC will accept and
    11        registrate all incoming funds via the
    12        customary channels, etcetera, in favor
    13        of the diamond clients"?
    14          A.    A-hum.
    15          Q.    What does that mean?
    16          A.    It means that all
    17        incoming/outgoing payments flowing
    18        through Lazare's account would be --
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 208 Ln: 7 - Pg: 211 Ln: 18** continued...

**Annotation:**

```
208:19      would be captured and kept.
    20      Q.    What does "captured" mean,
    21      booked?
    22      A.    Via -- well, it would be
    23      presented a payment order, we would
    24      have a copy of the payment order. We
    25      would have the debits and entries would
209: 1      be reflected on our account statement
     2      that was furnished to the customer. So
     3      we would have copies of the customer's
     4      account statements.
     5      Q.    So effectively, the monies that
     6      KBC accepted and registrated were used
     7      to repay the customer's loans under
     8      their credit facilities with ADB,
     9      correct?
    10      A.    It's one of the -- Lazare Kaplan
    11      -- if Lazare left any credit balances
    12      in its KBC New York DDA account at the
    13      end of the day those credit balances
    14      got moved and sent to ADB, but Lazare
    15      had the ability to leave no funds in
    16      the account at which point there would
    17      be no credit balances to use to pay
    18      amounts drawn under the ADB overdraft
    19      account.
    20      Q.    Where does it say that in this
    21      agreement?
    22      A.    It doesn't say it, but Lazare
    23      Kaplan -- Lazare controls the funds in
    24      its account. If it didn't want to have
    25      funds used to pay down an overdraft on
210: 1      an overdraft account Lazare had the
     2      capability of withdrawing any credit
     3      balances and moving it into another
     4      bank account with another bank, so that
     5      there would be no credit balances and
     6      there would be no pay-down on the
     7      overdraft account.
     8      Q.    According to this paragraph 2 of
     9      the Services Agreement, where KBC
    10      accepted incoming funds it was KBC that
    11      credited the customer's account on its
    12      books, correct?
    13      A.    Correct.
    14      Q.    It was KBC that sent a SWIFT
    15      message to ADB giving information
    16      regarding that credit, correct?
    17      A.    Every time there was a credit to
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 208 Ln: 7 - Pg: 211 Ln: 18** continued...

**Annotation:**

```
210:18      the account we -- Lazare was notified
    19      and ADB was notified.
    20          Q.    It was KBC that added
    21      information about the ordering customer
    22      of the payment, correct?
    23          A.    For what type of payment?
    24          Q.    Well, I'm referring you to the
    25      bottom of paragraph 2, top of page 2 of
211: 1      the Services Agreement, in particular,
     2      the sentence "KBC also adds information
     3      about the ordering customer of the
     4      payment."
     5          A.    That would be information that
     6      we received from Lazare who inputted it
     7      into the payment order.
     8              To the extent that it was
     9      contained within the payment order,
    10      which had to be because we would have
    11      to know who to make the payment to, we
    12      also informed ADB.
    13          Q.    And you performed an AML or
    14      Compliance obligation or function with
    15      respect to the information about the
    16      customer or the source of funds?
    17          A.    It was subject to our BSA AML
    18      OFAC program.
```

**Pg: 218 Ln: 14 - Pg: 219 Ln: 16**

**Annotation:**

```
218:14      Q.    Does the account agreement say
    15      anything at all about zeroing out the
    16      account?
    17          A.    I would have to read it but I
    18      don't recall off the top of my head.
    19          Q.    The account agreement is the
    20      Exhibit A to your sworn Declaration,
    21      Ms. Grimmig.
    22          MR. FORESTA:  Is there a
    23      question?
    24          MR. SULLIVAN:  Yes.
    25              Does the account agreement allow
219: 1      KBC New York to zero out Lazare's KBC
     2      New York account? Same question I asked
     3      before.
     4          A.    The account agreement permits
     5      the debits and credits to the account
     6      which are evidenced in account
     7      statement. The account statement would
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 218 Ln: 14 - Pg: 219 Ln: 16** continued...

**Annotation:**

```
219: 8    have evidenced the zeroing out of
     9    Lazare's account at the end of the day.
    10         Q.    What paragraph of the account
    11    agreement are you looking at?
    12         A.    I'm just looking at the totality
    13    of the agreement.
    14         Q.    Is there a specific reference to
    15    zeroing out in the agreement?
    16         A.    No.
```

**Pg: 223 Ln: 7 - Pg: 226 Ln: 25**

**Annotation:**

```
223: 7         Q.    Is there any other agreement
     8    that allowed KBC New York to zero out
     9    Lazare's account at the end of the day,
    10    beyond the account agreement and the
    11    bank statements that you referred to as
    12    the totality of the situation?
    13         A.    Was the Letter Agreement between
    14    ADB and Lazare? I think --
    15         Q.    That's Plaintiff's 55, one-page
    16    agreement.
    17         A.    -- reflected the workings of the
    18    account too.
    19         Q.    You are referring to the first
    20    sentence of Plaintiff's 55? Do you have
    21    the document in front of you? It's a
    22    one-page document.
    23         A.    I think it's one of the tabs.
    24         MR. D'ANGELO:  It should be
    25    separate.
224: 1         A.    Yes.
     2         Q.    Okay. What language in the
     3    document are you relying on?
     4         A.    The first sentence, the second
     5    half of the first sentence, "Same day
     6    debits or credits to our loan balance
     7    with Antwerp Diamond Bank NV.
     8         Q.    So this document then pertains
     9    to the Lazare account at KBC New York
    10    as well, the operation of the Lazare
    11    account at KBC New York as well?
    12         A.    Yes.
    13         Q.    And did KBC New York and ADB
    14    exchange information pursuant to this
    15    document?
    16         A.    Yes. As I stated, we shared
    17    information regarding debits and
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 223 Ln: 7 - Pg: 226 Ln: 25** continued...

**Annotation:**

```
224:18      credits to Lazare's DDA account with
    19      KBC New York, so corresponding entries
    20      could be made by ADB on its overdraft
    21      account.
    22          Q.      And do you understand this
    23      document to require that all
    24      disbursements and payments under
    25      Lazare's credit facility with ADB have
225: 1      to be effected through its account at
     2      KBC New York?
     3          A.      No.
     4          Q.      So directing your attention to
     5      the first sentence that reads "We
     6      hereby agree that all disbursements and
     7      payments under our credit facility with
     8      Antwerpse Diamantbank NV shall be
     9      effected through our account with KBC
    10      New York and New York branch etcetera",
    11      what part of that doesn't require
    12      Lazare to --
    13          A.      You have to --
    14          Q.      You have to let me finish.
    15              -- to effect all transactions
    16      through its account at KBC New York?
    17          A.      You have to read the sentence in
    18      its totality. The first part makes no
    19      sense without the second part.
    20              Basically, what this is -- the
    21      purpose of this was to state to Lazare,
    22      if you wanted to receive funds under
    23      your overdraft account from ADB same
    24      day in real-time you had to effectuate
    25      those payment orders through the KBC
226: 1      New York account.
     2          Q.      The agreement, the word "all"
     3      refers to disbursement -- do you
     4      understand the word "all" to refer to
     5      disbursements and payments under the
     6      credit facility?
     7          A.      You have to read the sentence in
     8      its totality. The second part of the
     9      sentence I believe qualifies the first
    10      part of the sentence.
    11          Q.      So "all" doesn't mean "all"?
    12          A.      I do know that Lazare, during
    13      the time of the overdraft account, did
    14      process payment orders directly to ADB.
    15      So I do not -- I don't think "all"
    16      means "all" here, because there was
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 223 Ln: 7 - Pg: 226 Ln: 25** continued...

**Annotation:**
```
226:17    activity to the contrary.
    18      Q.    And when did that activity take
    19    place?
    20      A.    I don't know.
    21      Q.    Was Lazare free to disregard
    22    this agreement?
    23      A.    It's an agreement between ADB
    24    and Lazare, so I cannot speak for ADB
    25    or Lazare.
```

**Pg: 228 Ln: 10 - 15**

**Annotation:**
```
228:10    Q.    But KBC New York did not
    11    repudiate this agreement in any
    12    respect?
    13      A.    No. It was a requirement in
    14    order to -- for Lazare to open and
    15    utilize the KBC ADB DDA account.
```

**Pg: 228 Ln: 16 - Pg: 230 Ln: 21**

**Annotation:**
```
228:16    Q.    And directing your attention to
    17    paragraph 4 of your Declaration, Ms.
    18    Grimmig, do you see the sentence that
    19    begins "Contrary to the statement in
    20    the Moryto Affidavit, KBC was a primary
    21    banker to Lazare. KBC's branch only
    22    provided basic account service for
    23    Lazare's KBC account which were
    24    incidental to Lazare's bank account at
    25    Antwerp Bank."
229: 1    A.    Yes.
     2      Q.    What is your basis for claiming
     3    that KBC was not Lazare's primary
     4    banker in New York?
     5      A.    One, we knew that we were not
     6    the only banker that Lazare did
     7    business with in the U.S.; and two, we
     8    only furnished them with one bank
     9    product. We did not provide them or
    10    offer them our more prominent bank
    11    product and services provided by KBC
    12    New York.
    13      Q.    Directing your attention to the
    14    Moryto Affidavit that you refer to in
    15    your Declaration, which is tab 116 of
    16    your big binder.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 228 Ln: 16 - Pg: 230 Ln: 21** continued...

**Annotation:**

```
229:17              (Exhibit 116, Affidavit of
   18      William Moryto, was received and marked
   19      on this date for identification.)
   20      Q.     Directing your attention to
   21      paragraph 20, page 8 of Mr. Moryto's
   22      Affidavit, would you read the first
   23      sentence?
   24      A.     "In 2008 alone deposits into the
   25      KBC New York bank account from third
230: 1      parties were approximately $178.5
    2      million and disbursements to third
    3      parties were approximately $178.2
    4      million."
    5      Q.     Do you have any reason to
    6      believe that statement is not accurate?
    7      A.     No.
    8      Q.     Do you know how -- approximately
    9      how much money passed through Lazare's
   10      bank account at KBC New York during the
   11      relevant period of time?
   12      A.     A couple hundred million.
   13      Q.     Well, we know that 350-odd
   14      million --
   15      A.     Okay.
   16      Q.     -- of transactions took place in
   17      2008 alone?
   18      A.     Okay.
   19      Q.     So in the 11-year period do you
   20      have any idea?
   21      A.     No.
```

**Pg: 233 Ln: 6 - 22**

**Annotation:**

```
233: 6      Q.     Going back to paragraph 4 of
    7      your Declaration, do you see the
    8      sentence on page 2, three lines up from
    9      the bottom that reads "KBC did not make
   10      any loans or extend any credit to
   11      Lazare."
   12      A.     Yes.
   13      Q.     So is it correct, if I
   14      understand your testimony, that at the
   15      start of each day Lazare had a zero
   16      balance in its KBC New York bank
   17      account?
   18      A.     Yes.
   19      Q.     And when Lazare wanted to
   20      disburse funds it would send a transfer
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 233 Ln: 6 - 22** continued...

**Annotation:**

```
233:21      request to KBC New York?
     22     A.    Yes.
```

**Pg: 234 Ln: 20 - Pg: 235 Ln: 9**

**Annotation:**

```
234:20      Q.    Is it true, Ms. Grimmig, that
     21     KBC initially funded Lazare's payment
     22     requests with its own money?
     23          MR. FORESTA:  Objection. Asked
     24     and answered.
     25     Q.    You can answer the question.
235: 1      A.    On an intraday basis, if there
      2     was funds available in the ADB pooling
      3     account we, KBC, would use its own
      4     funds and then at the end of the day
      5     reconcile and settle and be reimbursed
      6     by ADB.  So on a daily basis the credit
      7     risk always was retained by ADB because
      8     it was ultimately ADB funds that
      9     covered the payment orders.
```

**Pg: 255 Ln: 8 - Pg: 256 Ln: 21**

**Annotation:**

```
255: 8      Q.    Is it the case or is it correct
      9     that each time the amount of Lazare's
     10     credit facility was increased the
     11     increase was approved by KBC or a
     12     committee at KBC?
     13     A.    If it met certain criteria.
     14     Q.    Do you recall what the initial
     15     amount of the credit facility was?
     16     A.    It's in one of the documents
     17     produced.
     18     Q.    If I suggested to you that it
     19     was $10 million, would that refresh
     20     your recollection?
     21     A.    No. I believe it was more than
     22     that.
     23     Q.    Can you walk us through the
     24     process by which ADB would obtain KBC
     25     approval of the increase in the amount
256: 1      of the credit facility?
      2     A.    Any increase in the credit
      3     facility would be processed in a
      4     similar manner to an initial grant of
      5     credit. ADB would make a decision as to
      6     whether or not it wanted to increase
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

---

**Pg: 255 Ln: 8 - Pg: 256 Ln: 21** continued...

**Annotation:**

```
256: 7     the credit limit.  If it decided to do
     8     so, ADB would write a credit
     9     application or a credit memo and it
    10     would get submitted to the appropriate
    11     Credit Committee.
    12          The determination of the
    13     appropriate Credit Committee was -- is
    14     based upon several factors; one,
    15     probability of default; loss given
    16     default; and group exposure. So the
    17     decision might have been made at the
    18     local committee at ADB or if based upon
    19     the factors it might have needed to be
    20     escalated up to a Credit Committee
    21     located at KBC Belgium.
```

**Pg: 260 Ln: 14 - Pg: 261 Ln: 9**

**Annotation:**

```
260:14     Q.    And going back for a moment to
    15     the Service Agreement --
    16     A.    Yes.
    17     Q.    -- paragraph 2, the paragraph
    18     that begins "KBC will accept and
    19     registrate all incoming funds,
    20     etcetera", would a payment by a third
    21     party for diamonds sold by Lazare be an
    22     example of incoming funds under this
    23     paragraph?
    24     A.    If Lazare sold -- sorry. Could
    25     you ask the question --
261: 1     Q.    Would a payment by a third party
     2     for diamonds sold by Lazare be an
     3     example of incoming funds under this
     4     paragraph 2 of the Services Agreement?
     5     A.    The positive funds from any
     6     transaction that Lazare had with its
     7     counterpart that it directed that
     8     counterpart to deposit funds into the
     9     DDA account, yes.
```

**Pg: 264 Ln: 5 - Pg: 265 Ln: 11**

**Annotation:**

```
264: 5     Q.    Well, in this particular case
     6     I'm directing your attention to
     7     paragraph 10 of your Declaration, in
     8     which you are describing the manner in
     9     which KBC New York effectuated
```

---

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 264 Ln: 5 - Pg: 265 Ln: 11** continued...

**Annotation:**

```
264:10      payments --
    11       A.    Okay.
    12       Q.    -- as per the Services
    13   Agreement, payments requested by
    14   Lazare.
    15       A.    Okay. So if we received a
    16   payment order the first thing we check
    17   is to whether or not there were funds
    18   in the account. If there was not
    19   sufficient funds in the account to
    20   cover the payment order, then KBC New
    21   York would look at the credit limit
    22   under the overdraft account with ADB.
    23   If there was availability under that
    24   overdraft account, then KBC could
    25   either --  would on an intraday basis
265: 1   or -- we could have debited ADB's
     2   account right then and there or more
     3   often than not for administrative
     4   convenience purposes we would fund --
     5   KBC New York would fund the payment
     6   order and then at the end of the day we
     7   would reconcile and do a final
     8   settlement and withdraw the funds out
     9   of the ADB account to cover KBC New
    10   York so that the credit risk always
    11   remained with ADB.
```

**Pg: 271 Ln: 19 - Pg: 272 Ln: 9**

**Annotation:**

```
271:19      Q.    Let me see if I understand your
    20   testimony correctly.
    21           We know that KBC New York
    22   initially funded Lazare's payment
    23   request, correct?
    24       A.    As long as there was
    25   availability under the overdraft
272: 1   account, as long as there was dollars
     2   in ADB's pooling account.
     3           At times KBC New York would use
     4   its funds on an intraday basis to cover
     5   any payment orders, and that at the end
     6   of day KBC New York would do one final
     7   reconciliation and settlement and ADB
     8   would pay KBC New York to make KBC New
     9   York whole.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 272 Ln: 22 - Pg: 273 Ln: 11**

**Annotation:**

```
272:22        Q.    Isn't it also true that KBC
    23    funded those requests even when there
    24    weren't sufficient funds in the ADB
    25    pooling account to cover the request?
273: 1    Isn't that the point of this language
     2    about overnight placements on money
     3    market interest rates?
     4        A.    If there was insufficient funds
     5    in the ADB pooling account, KBC New
     6    York had an overdraft or a credit line
     7    for ADB that we could cover the
     8    shortage of funds. It didn't
     9    necessarily have to be Lazare. It
    10    related to any of ADB's transactions,
    11    U.S. dollar transactions.
```

**Pg: 275 Ln: 11 - Pg: 280 Ln: 7**

**Annotation:**

```
275:11        Q.    Okay. Would you look -- turn to
    12    Exhibit 8 in your binder, please?
    13        A.    Sure.
    14        Q.    Tell me whether you can identify
    15    this document?
    16        A.    It's a -- it's a memo written by
    17    Maiike Maeckelbergh.
    18        Q.    And who are Greg, Barbara and
    19    Donna referred to in this document?
    20        A.    Greg is Greg Boston, who is the
    21    head of cash management/payments;
    22    Barbara worked in the back office and
    23    so did Bob Quintin, they might have
    24    worked for Greg Boston.  I'm not too
    25    sure who Donna is.
276: 1        Q.    And directing your attention to
     2    the first sentence, do you see the
     3    reference to ICM, "Kindly note that ICM
     4    has made a new account operational"?
     5        A.    Yes.
     6        Q.    What is ICM?
     7        A.    It stands for International Cash
     8    Management.
     9        Q.    And what is that?
    10        A.    That is the unit that handled
    11    DDA accounts.
    12        Q.    The unit at KBC New York?
    13        A.    The unit at KBC New York.
    14        Q.    And why was Maaike notifying
    15    Greg, Barbara and Donna that ICM had
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 275 Ln: 11 - Pg: 280 Ln: 7** continued...

**Annotation:**

```
276:16    made Lazare's bank accounts at KBC New
    17    York operational?
    18    A.    Because they would have needed
    19    to inform the back office people to put
    20    a limit on the DDA account.
    21    Q.    And does the number from the
    22    second line from the top, 24079801, is
    23    that the account number assigned by KBC
    24    New York to Lazare's bank account?
    25    A.    Yes.
277: 1    Q.    And directing your attention to
     2    the very last sentence that reads
     3    "Payments to accounts at ADB are done
     4    by book transfer to ADB's account
     5    11743901", is that a reference to ADB's
     6    pooling account at KBC New York?
     7    A.    I believe so.
     8    Q.    Can you explain what that last
     9    sentence means?
    10    A.    KBC New York did not deal in
    11    physical cash, so movement of funds,
    12    transfer of funds, was done by book
    13    entries. Another word for book entry
    14    would be a book transfer.
    15    Q.    Is that a correspondent bank
    16    function?
    17    MR. FORESTA:    Objection.
    18    A.    It's a function for any bank
    19    account, whether it's correspondent or
    20    DDA.
    21    Q.    If Lazare Kaplan Belgium, which
    22    did not have a KBC New York bank
    23    account, requested a U.S. dollar
    24    transfer from ADB, was that transfer
    25    initially funded by KBC New York?
278: 1    A.    No.
     2    Q.    Who funded it?
     3    A.    ADB.
     4    Q.    ADB funded a U.S. dollar
     5    transfer?
     6    A.    ADB had a U.S. dollar account
     7    with KBC New York with U.S. dollars in
     8    it.
     9    Q.    Did ADB then fund that request
    10    by and through its New York bank
    11    account at KBC New York?
    12    MR. FORESTA:    Objection. You can
    13    answer.
    14    A.    KBC New York would have been the
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 275 Ln: 11 - Pg: 280 Ln: 7** continued...

**Annotation:**

```
278:15      intermediary bank.  So ADB, as the
     16     originating bank, would have sent wire
     17     instructions naming KBC New York as
     18     intermediary bank and then would name
     19     who the beneficiary bank.  And so KBC
     20     just moved U.S. dollar funds from ADB's
     21     account to the beneficiary bank's
     22     account.
     23       Q.    And would the same be true of
     24     other diamond customers of ADB who did
     25     not have a bank account at KBC New
279: 1     York, would KBC New York reconcile at
      2     the end of the day with ADB transfers
      3     made using ADB's pooling account in New
      4     York?
      5       A.     Assuming that ADB transmitted
      6     the wire transfer through KBC New York
      7     and not through another U.S. Bank.
      8       Q.    And similarly or
      9     correspondingly, if a customer of ADB
     10     received a deposit in U.S. dollars from
     11     a third party and that customer did not
     12     have a KBC New York bank account, was
     13     the transaction processed through the
     14     ADB pooling account at KBC New York?
     15       A.    Not necessarily.
     16       Q.    Could it have been?
     17       A.    It could have been.
     18       Q.    Under what circumstances would
     19     it not have been processed through the
     20     ADB pooling account at KBC New York?
     21       A.    ADB would have had to give
     22     wiring instructions.  If it named KBC
     23     New York as the intermediary bank, then
     24     the funds would have flowed through KBC
     25     New York.
280: 1       Q.    To the extent that funds
      2     generated by transactions of ADB
      3     customers flowed through New York, were
      4     they all processed through the ADB
      5     pooling account at KBC New York?
      6       A.    Any -- ADB only had the one
      7     account.  So, yes.
```

**Pg: 287 Ln: 9 - 22**

**Annotation:**

```
287: 9       Q.    You don't consider the initial
     10     funding by KBC to be an extension of
```

Case 1:11-cv-09490-ALC-JCF    Document 192-13    Filed 02/07/17    Page 55 of 57

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

## Pg: 287 Ln: 9 - 22 continued...

**Annotation:**

```
287:11      credit to Lazare, Ms. Grimmig?
    12      A.    No.
    13      Q.    From Lazare's perspective who
    14    was funding its drawdown requests under
    15    the credit facility?
    16          MR. FORESTA:  Objection.
    17      A.    ADB.
    18      Q.    Really? Even though KBC advanced
    19    the money?
    20      A.    KBC temporarily advanced funds
    21    on an intraday basis, but at the end of
    22    each day it was ADB's funds.
```

## Pg: 306 Ln: 13 - Pg: 309 Ln: 19

**Annotation:**

```
306:13      Q.    And if a customer of Lazare,
    14    such as an Erez Daleyot affiliated
    15    company, DD or KT, for example,
    16    transferred money to New York, to and
    17    through the ADB pooling account, would
    18    KBC New York maintain records of that
    19    transaction?
    20          MR. FORESTA:  Objection. You can
    21    answer.
    22      A.    We would have retained the SWIFT
    23    payment message.
    24      Q.    I'm sorry?
    25      A.    We would have retained the SWIFT
307: 1    payment message.
     2      Q.    You'd also have a record of the
     3    transaction in the pooling account
     4    statements, wouldn't you?
     5      A.    Yes. There would be an entry.
     6    Can I step back?
     7      Q.    Sorry?
     8      A.    On that question who was
     9    originating the funds transfer and from
    10    what account?
    11      Q.    Let's use a specific example, if
    12    we could. Can you turn to I think it's
    13    Exhibit 58 in your big binder?
    14          So directing your attention to
    15    Plaintiff's Exhibit 58, is this an
    16    account statement, albeit redacted for
    17    ADB's pooling account at KBC New York,
    18    Ms. Grimmig?
    19      A.    Yes.
    20      Q.    And does this account statement
```

# TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig
2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 306 Ln: 13 - Pg: 309 Ln: 19** continued...

**Annotation:**

```
307:21      indicate to you that two transactions
    22      of the companies known as KT Collection
    23      and DD Manufacturing went through the
    24      ADB pooling account at KBC New York?
    25      A.    Yes.
308: 1      Q.    And does the fact that both
     2      transactions went through the ADB
     3      pooling account mean that DD and KT had
     4      a bank account at KBC New York?
     5      A.    No. They did not.
     6      Q.    Does it mean that their
     7      transactions were executed ADB's
     8      pooling account at KBC New York?
     9      A.    They were executed through ADB's
    10      pooling account as a non-customer.
    11      Q.    And this pooling account record
    12      is a document maintained by KBC New
    13      York in New York?
    14      A.    Yes.
    15      Q.    And you consider that to be a
    16      "routine" --
    17         MR. FORESTA:  -- clearance
    18      procedure.
    19         MR. SULLIVAN:  -- clearance
    20      procedure. Thank you so much, counsel.
    21         MR. FORESTA:  Not that I'm in a
    22      rush or anything.
    23      A.    Yes. It's standard practice for
    24      every account to issue an account
    25      statement on a -- I believe this was a
309: 1      monthly basis.
     2      Q.    So this is an example of the ADB
     3      pooling account being used for U.S.
     4      dollar-denominated transactions of
     5      non-New York-based ADB clients,
     6      correct?
     7      A.    This is reflecting -- all I can
     8      tell you is it's reflecting a U.S.
     9      dollar transaction involving
    10      non-customers of KBC New York.
    11      Q.    Are you familiar with the
    12      entities known as DD Manufacturing and
    13      KT Collection?
    14      A.    I believe their names were
    15      mentioned in the Complaint letter
    16      Lazare filed with the New York State
    17      Department of Financial Services and
    18      are in the legal Complaint for this
    19      litigation.
```

## TextMap Annotation Digest Report

**Case Name:** Plaintiff Lazare Kaplan International Inc.'s Revised Deposition Designations for Diane Grimmig 2/16/2016
**Transcript:** [2/16/2016] Grimmig, Diane
**Issue Filter:** Revised Deposition Designations

**Pg: 321 Ln: 12 - 22**

**Annotation:**

```
321:12        Q.    Are you testifying today as a
   13    30(b)(6) witness on behalf of KBC or
   14    KBC New York?
   15        A.    On behalf of KBC -- KBC Bank NV,
   16    which includes its New York branch.
   17        Q.    Did you go over each of the
   18    topics set forth in the Amended Notice
   19    of Deposition in preparation for your
   20    testimony today?
   21        A.    I read the topics, yes. I read
   22    the description of topics.
```