# ANNEX A

| Snyers's Direct Testimony Paragraph Numbers | Basis for Striking Under FRE 402 and/or 602 |
|---|---|
| **9** | • KBC failed to lay any foundation as to Snyers's competence to testify about what banking functions ADB's New York office has performed, what credit decisions it made, or what would legally bind ADB as she is not a lawyer licensed to practice in Belgium or New York.  Her testimony is therefore improper under FRE 602.  See Memorandum of Law in Support of Plaintiff's Post-Trial Motion to Strike the Testimony of Veerle Snyers ("Pltf. Mem.")  at 7. <br><br> • To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 7-10. <br><br> • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office.  Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 8-9. <br><br> • To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof.  Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 8-9. <br><br> • To the extent that Snyers's testimony is intended to be applicable to ADB's relationship with other customers, it is not relevant under FRE 401 and is therefore inadmissible under FRE 402.  See Pltf. Mem. at 4-5, 24-25. <br><br> • To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. See Pltf. Mem. at 10-17. |
| **10** | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office.  Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 8-9. <br><br> • To the extent that Snyers's testimony is based upon her review of certain ADB |

| Snyers's Direct Testimony Paragraph Numbers | Basis for Striking Under FRE 402 and/or 602 |
|---|---|
|  | files, such testimony is improper under FRE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. See Pltf. Mem. 10-17. |
| **11 & 12** | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office.  Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 8-9.<br><br>• To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's credit granting practices generally, or as they related to Lazare, including with respect to ADB's "Guidelines for Credit Granting to the Diamond and Jewelry Market in New York," the "IKB Counterparty Delegations," the "Services Agreement," ADB's "Pooling Account" at KBC's New York Branch, Lazare's bank account at KBC's New York Branch, and the "May 31, 2001 Agreement." Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 8-10.<br><br>• To the extent that Snyers's testimony is intended to be applicable to ADB's relationship with other customers, it is not relevant under FRE 401 and is therefore inadmissible under FRE 402.  See Pltf. Mem. at 4-5, 24-25.<br><br>• To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. See Pltf. Mem. at 10-17.<br><br>• To the extent that Snyers's testimony relates to ADB and Lazare's relationship with KBC's New York branch, she has no personal knowledge thereof. Her testimony is thus improper under FRE 602. See Pltf. Mem. at 9-10. |
| **13-20** | • To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 7-10.<br><br>• To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office.  Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 8.<br><br>• To the extent that Snyers's testimony is based upon her review of certain ADB |

| Snyers's Direct Testimony Paragraph Numbers | Basis for Striking Under FRE 402 and/or 602 |
|---|---|
| | files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. <u>See</u> Pltf. Mem. at 10-17. |
| | • To the extent that Snyers's testimony is intended to be applicable to ADB's relationship with other customers, it is not relevant under FRE 401 and is therefore inadmissible under FRE 402. <u>See</u> Pltf. Mem. at 4-5, 24-25. |
| | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's credit granting practices generally, or as they related to Lazare, including with respect to ADB's "Guidelines for Credit Granting to the Diamond and Jewelry Market in New York," the "IKB Counterparty Delegations," the "Services Agreement," ADB's "Pooling Account" at KBC's New York Branch, Lazare's bank account at KBC's New York Branch, and the "May 31, 2001 Agreement." Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8-10. |
| | • To the extent that Snyers's testimony relates to ADB and Lazare's relationship with KBC's New York branch, she has no personal knowledge thereof. Her testimony is thus improper under FRE 602. <u>See</u> Pltf. Mem. at 9-10. |
| **21** | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8. |
| | • To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. <u>See</u> Pltf. Mem. at 10-17. |
| | • To the extent that Snyers's testimony is intended to be applicable to ADB's relationship with other customers, it is not relevant under FRE 401 and is therefore inadmissible under FRE 402. <u>See</u> Pltf. Mem. at 4-5, 24-25. |
| **22** | • To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 7-8. |
| | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she |

| Snyers's Direct Testimony Paragraph Numbers | Basis for Striking Under FRE 402 and/or 602 |
|---|---|
| | had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8-10. |
| | • To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8-9. |
| | • To the extent that Snyers's testimony is intended to be applicable to ADB's relationship with other customers, it is not relevant under FRE 401 and is therefore inadmissible under FRE 402. <u>See</u> Pltf. Mem. at 4-5, 24-25. |
| | • To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. <u>See</u> Pltf. Mem. at 10-17. |
| | • To the extent that Snyers's testimony relates to ADB and Lazare's relationship with KBC's New York branch, she has no personal knowledge thereof. Her testimony is thus improper under FRE 602. <u>See</u> Pltf. Mem. at 9-10. |
| **24, 28** | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8. |
| | • To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8-9. |
| | • To the extent that Snyers's testimony is intended to be applicable to ADB's relationship with other customers, it is not relevant under FRE 401 and is therefore inadmissible under FRE 402. <u>See</u> Pltf. Mem. at 4-5, 24-25. |
| | • To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. <u>See</u> Pltf. Mem. at 10-17. |
| **29-35, 37-39** | • To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. |

| Snyers's Direct Testimony Paragraph Numbers | Basis for Striking Under FRE 402 and/or 602 |
|---|---|
| | Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 7-8. |
| | • To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. See Pltf. Mem. at 10-17. |
| | • To the extent that Snyers's testimony is based upon her reliance on Defendant's Exhibit 6, which is a document that is dated prior to when Snyers began working at ADB, her testimony is improper under FRE 602.  In addition, Defendant's Exhibit 6 (including Defendant's English translation) is not a sufficiently reliable basis for Snyers's testimony.  See Pltf. Mem. at 17-18.  There is no credible evidence that Defendant's Exhibit 6 relates to Lazare or evidences the opening of a demand bank account at ADB in Belgium for Lazare.  See Pltf. Mem at 17-18.  In addition, Defendant's Exhibit 4 is an incomplete document of no evidentiary value.  See Pltf. Mem at 16. |
| **40** | • To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 7-8. |
| | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office.  Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 8. |
| | • To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. See Pltf. Mem. at 10-17. |
| | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's credit granting practices generally, or as they related to Lazare, including with respect to ADB's "Guidelines for Credit Granting to the Diamond and Jewelry Market in New York," the "IKB Counterparty Delegations," the "Services Agreement," ADB's "Pooling Account" at KBC's New York Branch, Lazare's bank account at KBC's New York Branch, and the "May 31, 2001 Agreement." Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 8-10. |
| **41-44** | • To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to |

| Snyers's Direct Testimony Paragraph Numbers | Basis for Striking Under FRE 402 and/or 602 |
|---|---|
| | Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 7-8. |
| | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 8. |
| | • To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 8-9. |
| | • To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. See Pltf. Mem. at 10-17. |
| **45-47** | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 8. |
| | • To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 8-9. |
| | • To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. See Pltf. Mem. at 10-17. |
| | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's credit granting practices generally, or as they related to Lazare, including with respect to ADB's "Guidelines for Credit Granting to the Diamond and Jewelry Market in New York," the "IKB Counterparty Delegations," the "Services Agreement," ADB's "Pooling Account" at KBC's New York Branch, Lazare's bank account at KBC's New York Branch, and the "May 31, 2001 Agreement." Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 8-10. |
| | • To the extent that Snyers's testimony relates to ADB and Lazare's relationship |

| Snyers's Direct Testimony Paragraph Numbers | Basis for Striking Under FRE 402 and/or 602 |
|---|---|
| | with KBC's New York branch, she has no personal knowledge thereof. Her testimony is thus improper under FRE 602. <u>See</u> Pltf. Mem. at 9-10. |
| **48** | • To the extent that Snyers's testimony relates to ADB and Lazare's relationship with KBC's New York branch, she has no personal knowledge thereof. Her testimony is thus improper under FRE 602. <u>See</u> Pltf. Mem. at 9-10.<br><br>• To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 7-8.<br><br>• To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8.<br><br>• To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8-9.<br><br>• To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FRE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. <u>See</u> Pltf. Mem. at 10-17. |
| **49** | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8.<br><br>• To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. <u>See</u> Pltf. Mem. at 10-17.<br><br>• To the extent that Snyers's testimony is intended to be applicable to ADB's relationship with other customers, it is not relevant under FRE 401 and is therefore inadmissible under FRE 402. <u>See</u> Pltf. Mem. at 4-5, 24-25. |
| **50** | • To the extent that Snyers's testimony relates to the time period prior to August |

| Snyers's Direct Testimony Paragraph Numbers | Basis for Striking Under FRE 402 and/or 602 |
|---|---|
|  | 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 7-8. |
|  | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8. |
|  | • To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. <u>See</u> Pltf. Mem. at 10-17. |
| **51** | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8. |
|  | • To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8-9. |
|  | • To the extent that Snyers's testimony relates to ADB and Lazare's relationship with KBC's New York branch, she has no personal knowledge thereof. Her testimony is thus improper under FRE 602. <u>See</u> Pltf. Mem. at 9-10. |
| **52** | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8. |
|  | • To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8-9. |
| **57-59** | • To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she |

| Snyers's Direct Testimony Paragraph Numbers | Basis for Striking Under FRE 402 and/or 602 |
|---|---|
| | had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 8. <ul><li>To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 8-9.</li></ul> |
| **70** | <ul><li>To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 7-8.</li><li>To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 8-9.</li><li>To the extent that Snyers's testimony is intended to be applicable to ADB's relationship with other customers, it is not relevant under FRE 401 and is therefore inadmissible under FRE 402. See Pltf. Mem. at 4-5, 24-25.</li><li>To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FRE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. See Pltf. Mem. at 10-17.</li></ul> |
| **73** | <ul><li>To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 7-8.</li><li>To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 8-9.</li><li>To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. See Pltf. Mem. at 10-17.</li></ul> |
| **74, 77** | <ul><li>To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's</li></ul> |

| Snyers's Direct Testimony Paragraph Numbers | Basis for Striking Under FRE 402 and/or 602 |
|---|---|
| | operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8. <br><br>• To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8-9. <br><br>• To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. <u>See</u> Pltf. Mem. at 10-17. |

x

## ANNEX B

| New Moon Evidentiary Transcript (Page/Line) | Snyers's Live Testimony | Basis for Striking Under FRE 402 and/or FRE 602 |
|---|---|---|
| **408:17-21, 410:21-411:08** | 408<br><br>Q. Was Defendant Exhibit 19 and Defendant Exhibit 21, the Dutch version, the version of the banking conditions that were in effect at the time that LC's first credit confirmation letter was signed?<br><br>A. Yes, they were.<br><br>\*\*\*<br><br>410<br><br>Q. Is Defendants' Exhibit 22 the set of general banking conditions that was in effect for the Lazare account from November 21 on?<br><br>A. November 21?<br><br>Q. I'm sorry, November 2001.<br><br>411<br><br>A. November 2001?<br><br>Q. Yes.<br><br>A. No.<br><br>Q. As of when was it in effect?<br><br>A. This new set was only signed in 2004.<br><br>Q. Were they then the conditions that were in effect for | • To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602. <u>See</u> Memorandum of Law in Support of Plaintiff's Post-Trial Motion to Strike the Testimony of Veerle Snyers ("Pltf. Mem.") at 7-8.<br><br>• To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8.<br><br>• To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8-9. |

| New Moon Evidentiary Transcript (Page/Line) | Snyers's Live Testimony | Basis for Striking Under FRE 402 and/or FRE 602 |
|---|---|---|
| | the account from 2004 on?<br><br>A. Yes. | |
| 411:23-412:01, 412:08-10, 412:17-23 | 411<br>Q. Ms. Snyers, you were not in court yesterday, but I represent to you that Mr. Moryto characterized this document as only a preliminary application to open a bank account with<br><br>412<br>Antwerp Bank.<br><br>Q. Ms. Snyers, is this a preliminary application to open a bank account?<br><br>A. No.<br><br>Q. Why not?<br><br>A. Because it has all the signatures at the bottom of the people in the bank approving the application.<br><br>Q. Ms. Snyers, was there any requirement at Antwerp Bank that a handwritten change to an account opening -- account application opening form be initialed?<br><br>A. No. | • To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 7-8.<br><br>• To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof. Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8-9.<br><br>• To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. <u>See</u> Pltf. Mem. at 10-17.<br><br>• To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's credit granting practices generally, or as they related to Lazare, including with respect to ADB's "Guidelines for Credit Granting to the Diamond and Jewelry Market in New York," the "IKB Counterparty Delegations," the |

| New Moon Evidentiary Transcript (Page/Line) | Snyers's Live Testimony | Basis for Striking Under FRE 402 and/or FRE 602 |
|---|---|---|
| | | "Services Agreement," ADB's "Pooling Account" at KBC's New York Branch, Lazare's bank account at KBC's New York Branch, and the "May 31, 2001 Agreement." Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 8-10. |
| 414:07-13 | 414<br>Q. How do we know what form of account was opened?<br><br>A. Because the one that is being put in bold, which is the zichtrekening.<br>Q. And is that the first of the list of accounts?<br><br>A. Yes.<br><br>Q. And what is zichtrekening in English, please?<br><br>A. Demand account. | • To the extent that Snyers's testimony is based upon her reliance on Defendant's Exhibit 6, which is a document that is dated prior to when Snyers began working at ADB, her testimony is improper under FRE 602. In addition, Defendant's Exhibit 6 (including Defendant's English translation) is not a sufficiently reliable basis for Snyers's testimony. See Pltf. Mem. at 17-18. There is no credible evidence that Defendant's Exhibit 6 relates to Lazare or evidences the opening of a demand bank account at ADB in Belgium for Lazare. See Pltf. Mem at 17-18. In addition, Defendant's Exhibit 4 is an incomplete document of no evidentiary value. See Pltf. Mem at 16.<br><br>• To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch. Her testimony is therefore improper under FRE 602. See Pltf. Mem. at 7-8. |
| 414:14-25, 415:13-18, 417:01-15, | 414<br><br>Q. Ms. Snyers, you were also | • To the extent that Snyers's testimony relates to the time period prior to August 1, 2001, she has no personal |

| New Moon Evidentiary Transcript (Page/Line) | Snyers's Live Testimony | Basis for Striking Under FRE 402 and/or FRE 602 |
|---|---|---|
| 417:19-418:05 | asked on cross-examination about straight loans.  Again, so the record is clear, what is a straight loan at Antwerp Bank?<br><br>A.  A straight loan is a fixed term loan, and the bank could choose clients or allow clients to convert part of their overdraft balance into a straight loan.<br><br>Q.  And if the customer exercised that option to convert a portion of its balance into a straight loan, what would happen to the demand account or overdraft facility?<br><br>A.  You would see the amount of the portion that they would be allowed a straight loan would be credited into the account so that the outstanding balance would reduce.<br><br>***<br><br>415<br>Q.  Does this document indicate that the account that Lazare Kaplan International had at Antwerp Bank was a loan account?<br><br>A.  No.<br><br>Q.  Why not?<br><br>A.  It just confirms that the part of the overdraft balance can be -- that it can be kept as a straight | knowledge to testify as to matters relating to Lazare, ADB, ADB's New York office, KBC, or KBC's New York Branch.   Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 7-8.<br><br>• To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's New York office's operations or the banking functions it provided given that she testified that she had no personal responsibilities specific to ADB's New York office.  Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8.<br><br>• To the extent that Snyers's testimony is intended to be applicable to ADB's New York office's relationship with Lazare, Snyers has minimal, indirect personal knowledge thereof.   Her testimony is therefore improper under FRE 602. <u>See</u> Pltf. Mem. at 8-9.<br><br>• To the extent that Snyers's testimony is intended to be applicable to ADB's relationship with other customers, it is not relevant under FRE 401 and is therefore inadmissible under FRE 402. <u>See</u> Pltf. Mem. at 4-5, 24-25.<br><br>• To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FRE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents.  <u>See</u>  Pltf. |

| **New Moon Evidentiary Transcript (Page/Line)** | **Snyers's Live Testimony** | **Basis for Striking Under FRE 402 and/or FRE 602** |
|---|---|---|
| | loan.<br><br>***<br><br>417<br><br>Q.  Ms. Snyers, could a customer at Antwerp Bank have a straight loan without having an overdraft account?<br><br>A.  No.<br><br>Q.  Why not?<br><br>A.  Because it's like I said, the straight loan would be that you would be able to put a part of the overdraft balance into a fixed-term loan.<br><br>Q.  During your 14 years at Antwerp Bank, did any customer at Antwerp Bank, to your knowledge, have the ability to borrow from Antwerp Bank without first opening a bank account?<br><br>A.  No.<br><br>Q.  During your 14 years at Antwerp Bank, were you aware of any customer who was a borrower without also being an account holder?<br><br>A.  No.<br><br>*** | Mem. at 10-17.<br><br>• To the extent the Snyers's testimony relates to the time period after August 1, 2001, she has no personal knowledge as to ADB's credit granting practices generally, or as they related to Lazare, including with respect to ADB's "Guidelines for Credit Granting to the Diamond and Jewelry Market in New York," the "IKB Counterparty Delegations," the "Services Agreement," ADB's "Pooling Account" at KBC's New York Branch, Lazare's bank account at KBC's New York Branch, and the "May 31, 2001 Agreement."  Her testimony is therefore improper under FRE 602.  See Pltf. Mem. at 8-10. |

| **New Moon Evidentiary Transcript (Page/Line)** | **Snyers's Live Testimony** | **Basis for Striking Under FRE 402 and/or FRE 602** |
|---|---|---|
| | 417<br><br>Q. Was Mr. Loral authorized to permit a customer to exceed the credit limit specified in a credit confirmation letter?<br><br>A. No, that could be a decision to be made by the credit committee.<br><br>Q. Could the credit committee authorize a customer to temporarily exceed the limits specified in a credit confirmation letter?<br><br>418<br><br>A. Yes, it could.<br><br>Q. To your knowledge, did that ever happen with respect to Lazare?<br><br>A. Yes. I do remember -- I don't know all the times, but I do remember one time in May 2001. | |
| **418:11-25** | 418<br><br>Q. Okay. Do you have reason to believe that the bank's standard procedures for deleting e-mails of departing employees resulted in the loss of any document of significance to this case?<br><br>A. No. | • To the extent that Snyers's testimony is based upon her review of certain ADB files, such testimony is improper under FRE 602 because Snyers testified that ADB's files are compromised and incomplete as a result of Snyers's and ADB's failure to preserve documents. <u>See</u> Pltf. Mem. at 10-17. |

| **New Moon Evidentiary Transcript (Page/Line)** | **Snyers's Live Testimony** | **Basis for Striking Under FRE 402 and/or FRE 602** |
|---|---|---|
| | Q.  Why is that?<br><br>A.  Because, first of all, we have a standard practice in the bank that every document, including fax messages or e-mails of any significance to have be kept in the file, either the client's file or the credit file, which is evidenced in several files, and also, Lazare, International file. And, of course, e-mails are being sent to other people; so let's say that one person would have departed, the possibility is still there that the other person is still in the bank and kept the records. | |