# EXHIBIT 2

| | |
|---|---|
| Police | PRO JUSTITIA |
| | SUBSEQUENT OFFICIAL REPORT |
| FEDERAL JUD. POLICE ARR | 005181/2018 – 07-02-2018 |
| BRUSSELS CAPITAL – 6458 | Note BR.70.99.001748/2016 |
| Research Dept. 4 | Dossier Examining Magistr.: 113/2016 – |
| Koningsstraat 202A, Box 1 | Examining Magistrate – Brussels |
| 1000 Brussels | (Brussels-Capital) Mr. Gaudius – 10-11-2016 |

| | |
|---|---|
| Recipient(s) | Examining magistrate – Brussels (Brussels-Capital) – Mr. Gaudius<br>Other – FGP BRUSSELS OA4 (copy) |
| Topic of the official report | Information credit decisions DDM/KT – assignment request |
| Facts | Abuse of good faith taking place between 01-01-2007 at 00:00 am and 31-12-2014 at 11:59 pm<br>Embezzlement and/or intentional destruction of money, papers, etc. taking place between 01-01-2007 at 00:00 am and 31-12-2014 at 11:59 pm<br>Money laundering taking place between 01-01-2007 at 00:00 am and 31-12-2014 at 11:59<br>Theft, without violence or threat, without aggravating circumstances (Ordinary theft) taking place between 01-01-2007 at 00:00 am and 31-12-2014 at 11:59 pm |
| Parties involved | **In the case**<br>KBC BANK (NV (Commercial Company))<br>ANTWERPSE DIAMANTBANK (NV (Commercial Company))<br>**Aggrieved parties**<br>LAZARE KAPLAN INTERNATIONAL INC (Foreign legal form with legal personality)<br>LAZARE KAPLAN BELGIUM (NV (Commercial Company)) |

| | |
|---|---|
| Sent on | Reserved recipient |
| Endorsed: 08/02/2018 | |
| *(signed)* | |
| Number of annexes: | |

PRO JUSTITIA

On Wednesday 07-02-2018 at 9:30 am,
We, VAN DE GUCHT ANDRE, detective, Officer of the Judicial Police, STINKENS ELLEN, detective, officer of the Judicial Police,

Inform your office of the following information,

### REFERENCES

Dossier 113/2016 – Examining Magistrate GAUDIUS in BRUSSELS
Note number BR.70.99.001748/2016 – Prosecution of BRUSSELS
Official report 45204/2017 of 20/11/2017

### INFORMATION

Under official report 45204 we drew up a discussion of a correspondence with DD Management and KT Collection, documents that were found in the folder 'folder 36' with the mention 'Group DD/KT'. This folder was seized at the offices of KBC Antwerp/BC Diamant (see official report 27139/2017).
Also, under that official report documents were analyzed that can be found on the USB drive 'BAR ASSOCIATION BRUSSELS – Dutch-language bar association', being the information carrier containing data which was named by the Bâtonnier as not covered by the attorney professional secrecy. Under the folder 'credit decisions DD KT', we found a document 'kred10.pdf' (adjoined under annex 04 to official report 45204/2017).

In this document, the situation regarding the credits of DD Manufacturing and KT Collection on 18/02/2009 is elucidated.

In the 'executive summary' an overview is provided of the situation.

At that time (18/02/2009) there was talk of a debit position of $ 99.1 million, with a shortage in 'collateral'/coverage of $ 76.4 million.

A number of additional guarantees were obtained by Antwerp Diamond Bank, whereby for instance diamonds were taken as pledge for a 'declared' value of $ 51 million.

On top of letters urging for a correction of the situation, the 'company' was visited a number of times by commercial agents of the bank and by the 'special risk officer':

- 2 letters have been sent to the customer in order to urge him to cure the situation as soon as possible, to obtain more information on the status of the companies and on the assets of the guarantors (the status of the additional information requested is described below)
- Numerous visits have been made to the company by the commercial department and the special risk officer in order to speed up the actions described above.

In official report 45204/2017 we stated the following:

It would be useful to verify who from the 'commercial department' visited DD Manufacturing and who was at that time the 'special risk officer'.

After all, in this period Mr. Daleyot pledged an art collection with a 'declared' value of $ 28 mio and a written commitment received from Mr. Daleyot, in which it was stated that the proceeds ('free funds') of the sale of the residence in Knokke would be transferred into the account of DD Management with Antwerp Diamond Bank.

A stock list was also featured in the situation overview showing the diamonds of the companies of Mr. Daleyot. The stock value at that time was allegedly $125,100.00, of which $ 47,000.00 pledged to Antwerp Diamond Bank.

The following pages from the summary deal with the risk analysis and the advice from the 'commercial department'.

The image that was formed by the commercial department regarding Mr. Daleyot and his companies seems rather embellished, relatively positive.

The 'SWOT analysis' provided only a few minor negative points:
- The fact that Mr. Daleyot was the only person to run business and any issues that could arise Mr. Dalyot had to suddenly make disappear + the fact that there is no arrangement on a possible succession (next generation...);
- DD Management and KT Collection are still separate companies that are not part of any group consolidation.

In the advice to the LCC of 19/02/20009 (annex 04/11 to official report 45204/2017) it was proposed that clear agreements had to be made with the client. In the advice, a number of hand-written remarks/changes were made. At the bottom of the page it says:
"If result of the meeting is unsatisfactory, a forensic auditor is to be appointed in order to establish a clear situation of A/R."

On 13/02/2009, the LKC decided that an overview of all bookings for 2008-2009 between DD Manufacturing / KT Collection and LKI/LKB needed to be obtained.

As a result of this information, we mentioned in official report 45204/2017 the following:

We will verify whether, as a result of the statement "If result of the meeting is unsatisfactory, a forensic auditor is to be appointed in order to establish a clear situation of A/R." there were indeed steps made in this direction. If not, the question why not can be raised. After all, we can make out based on further information from credit committees and such that the situation has not really evolved favorably after February 2009.

In light of the importance of these elements we ask that your office provide us with an instruction to allow us to:

1) Enquire among executive staff of Antwerp Diamond Bank and/or KBC regarding the persons who, as executive staff members from 'commercial', held talks with Mr. Daleyot – and by extension to be able to interrogate these persons.

2) Enquire among executive staff of Antwerp Diamond Bank and/or KBC regarding the appointment or lack thereof of a forensic auditor, and if so, to obtain the report of this forensic audit.

                                                Whereof deed,
*(signed)*    *(signed)*